UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 21-cr-10175-ADB |
| (2) JESSE JAMES MORAES, and (3) HUGO GIOVANNI MORAES, | |
| Defendant | |

## Government's Sentencing Memorandum

The government respectfully submits this memorandum in connection with the sentencing of defendants Jesse James Moraes (Jesse) and Hugo Giovanni Moraes (Hugo).

In the plea agreements, the government agreed to recommend the low end of the Guideline Sentencing Range (GSR) as found by the Court. The government recommends the Court adopt Probation's guideline calculations as set out in the respective Presentence Reports (PSRs): 24-30 months for Jesse, *see* Presentence Report for Jesse James Moraes (Jesse PSR) ¶¶ 38-51, 87, and 18-24 months for Hugo, *see* Presentence Report for Hugo Giovanni Moraes (Hugo PSR) ¶¶ 43-53, 86.[1] The government urges the Court not to depart or vary downward from these GSRs but to impose  sentences at the low end of the GSRs,[2] which would be sufficient, but not greater than necessary, to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

---

[1] The citations are to the Revised Presentence Reports disclosed March 20, 2025.

[2] If the Court determines a lower GSR applies, the government will adjust its recommendation accordingly.

This memorandum will focus on the expected points of contention between the parties: the guideline calculations, whether a downward departure or variance is warranted, the reliability of the witness accounts, and, preliminarily, restitution.

## BACKGROUND

The defendants were charged along with three others in a Second Superseding Indictment with substantive and conspiracy violations of the alien smuggling statute, 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i) (encouraging or inducing an alien to come to, enter, or reside in the United States for commercial advantage or private gain), forced labor, attempted forced labor, forced labor conspiracy, labor trafficking and attempted labor trafficking. Jesse was also charged with money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). In plea agreements, the defendants agreed to plead guilty to Count One (Alien Smuggling Conspiracy, both defendants) and Eight (Money Laundering Conspiracy, Jesse). As discussed below, the parties reached agreement as to the guidelines except for two disputed adjustments.

The indictment describes an elaborate human smuggling operation that brought migrants from Brazil to the United States through Mexico for large sums of money, most of which were to be repaid after the migrants reached the U.S. Some of these migrants were enticed by promises that they could work in the defendants' restaurants and have a better life. The promises of a better life proved to be false.

### *Background on Migrant Smuggling Business*[3]

---

[3] These facts are set out in the statement of offense conduct in the PSRs, *see* Jesse PSR ¶¶ 11-33 and Hugo PSR ¶¶ 13-37. The defendants have objected to many of these facts, see Jesse PSR, Addendum and Hugo PSR, Addendum, but in the plea agreements and at their Rule 11 hearing, they admitted to many of the core facts, *see* Plea Agreement for Jesse James Moraes (Dkt. 268) (Jesse PA) at 9-11 and Plea Agreement for Hugo Giovanni Moraes (Dkt. 269) (Hugo PA) at 9-12, and the remainder of the facts are sufficiently reliable for the Court to adopt at sentencing, *see* Section III below. Most of the government's facts in the PSRs and this memorandum are taken from the Second Superseding Indictment (Dkt. 114) or the Affidavit of

The defendants were U.S. coconspirators for Jesse's brother and Hugo's uncle, co-defendant, Chelbe Willams Moraes ("Chelbe"), a Brazilian resident who smuggled Brazilian nationals into the United States. The conspiracy lasted from at least July 2016 through at least October 2022. The migrants were not United States citizens and did not have prior official authorization from the United States government to come to, enter, or reside in the United States. For a substantial fee, generally between $18,000 and $32,000, Chelbe arranged for them to travel to the United States through Mexico and enter the United States, usually at a point other than an authorized port of entry. Chelbe sometimes encouraged the migrants to make false claims that unrelated migrants were part of the same family unit and to make false applications for asylum. He also gave them fake contact information for individuals who posed as the U.S. point of contact for the migrants. In some cases, Chelbe gave, or offered to give, the migrants false documentation to support their claims. Once the migrants were in the United States, Jesse and other relatives and friends would help collect the smuggling debt and provide the migrants with employment and housing.

Among other things, Jesse and Hugo would: employ the migrants in the restaurants they owned, Taste of Brazil/Tudo Na Brasa and The Dog House Bar and Grill, both in Woburn, Massachusetts; pay the migrants, at least partly in cash, below minimum wage prior to obtaining a real or fake work permit and without the legally required pay for overtime, and sometimes withholding all or part of the migrants' pay and applying that money to the migrants' smuggling debt or their rent; encourage the migrants to obtain fake identification documents from another employee of theirs and only pay the migrants minimum wage by check once they did so, collect

---

James M. Staton, dated October 3, 2022, in support of the criminal complaints in this case ("Staton Aff."). (Dkt. 1-3). Additional facts are set out below in the Argument section.

or assist in the collection of the migrants' smuggling debt payments, including encouraging them to pay their smuggling debt and at times issuing explicit or veiled threats about the consequences of nonpayment. Jesse would also help recruit migrants in Brazil, and Hugo would also house migrant employees in a building owned by a relative of his.

### Recruitment of Migrants in Brazil

While there is no evidence Hugo personally went to Brazil to recruit migrants, more than once, his father and co-owner, Jesse, met with migrants in Brazil to help entice them to move to the United States and work in his restaurant, which benefited Hugo as well. For example, a witness ("Witness A") and Witness A's spouse, along with two children, were smuggled into the United States from Brazil in 2018 by Chelbe and members of his family for a total fee of approximately $32,000.[4] Chelbe traveled to their home in Brazil to discuss the process and to sign a contract. Witness A later stated that anyone in Brazil who wants to go to the United States knows to contact Chelbe. Witness A said that to make the trip sound more appealing and legitimate, Chelbe told Witness A his brother owned a restaurant in the United States that Witness A could work at, and his brother would travel to Brazil to meet with them and prove to them the restaurant existed. Witness A said that Chelbe's brother Jesse flew to Brazil and met with Witness A and Chelbe at their house when they discussed the details of their smuggling trip. Witness A stated Chelbe's brother was the owner of Taste of Brazil and was aware of "everything going on." Witness A paid approximately half of the smuggling fee up front and was required to pay the balance in monthly installments of approximately $1,450 after reaching the United States.

---

[4] Witness A was identified in the Staton Aff. as "SOI." *See* Staton Aff. ¶¶ 11-17. HSI provided a certification for a T-Visa application by Witness A in 2023.

Another witness ("Witness B") described how Jesse encouraged Witness B to leave Brazil and come to the United States to work at his restaurant in Woburn, Massachusetts, and how Chelbe arranged for Witness B to travel from Brazil to the United States and to enter the United States unlawfully.[5] Specifically, Jesse told Witness B over the phone that if Witness B came to the United States, Witness B would have a house and a better life. Jesse said Witness B would work for him in his restaurant and would be well paid and that the fee for getting Witness B into the United States would be subtracted from Witness B's pay. Witness B met Jesse once in person in Brazil, at which time Jesse showed Witness B a picture of his restaurant. According to Witness B, Jesse knew that Witness B did not have a visa or other lawful way of coming to the United States.

Jesse's girlfriend took Witness B to meet Jesse's brother, Chelbe, at Chelbe's house in Brazil. At that meeting, Chelbe said Witness B would work for his brother, and the payment would be taken out of Witness B's paycheck. Chelbe charged Witness B $22,000 to smuggle Witness B and their three children into the United States. Chelbe said it would be very easy to cross the border, and that when Witness B arrived in the United States, they would pay him. Witness B had no money to pay a down payment to Chelbe before traveling to the United States.

---

[5] Witness B was identified in the Staton Aff. as CW-2. *See* Staton Aff. ¶¶ 45-66. Witness B was told in his/her first interview with HSI personnel that they could help address Witness B's safety concerns, immigration status, and financial situation, including paying the rest of Witness B's debt, and that they would do everything possible to help Witness B and Witness B's family, if Witness B cooperated. HSI provided Witness B with deferred action in 2023, continued presence in 2024, and has been asked by Witness B to provide certifications for T- and U-visa applications. Those certifications are currently pending approval. In addition, HSI has provided Witness B with a total of $3,200 for information and consensual recordings in connection with this investigation. The government also offered to assist Witness B with relocation expenses.

### *Typical Smuggling Journey*

Chelbe smuggled Witness A and their family into the U.S. through Mexico. Witness A described Chelbe as "the boss" or "jefe" and said he had people in Mexico working for him. According to Witness A, a man in Mexico received instructions from Chelbe to have the family split up into two groups of two to cross into the United States. Chelbe instructed Witness A to lie to immigration authorities at the border and say Witness A was not married and that Witness A did not know where Witness A's spouse was. Chelbe instructed Witness A to provide a false name to U.S. immigration authorities as Witness A's U.S. point of contact. A cousin of Jesse's told Witness A that Witness A and family could stay at a certain house in Woburn ("the Woburn House") that is owned by a relative of Hugo Moraes's. Witness A said anyone who used Chelbe's services, and who worked at Taste of Brazil, lived at the Woburn House when they first got to the United States. Numerous witnesses smuggled by Chelbe described similar circumstances.

### *Employment of Migrants and Payment of Illegal Wages*

Witness A worked at Taste of Brazil for approximately one month. Witness A told investigators the work was very hard. Witness A was required to carry heavy sacks of potatoes and other heavy items. Witness A stated they were paid $3.00 per hour, did not receive any tips, and worked 7:00 am to 9:00 pm. Witness A stated they told Jesse and Hugo (who co-owned and co-managed Taste of Brazil) that Witness A was not able to lift such heavy items and could no longer work at Taste of Brazil, to which they told Witness A "You're out, and out of [the Woburn House]." Witness A stated Jesse and Hugo brought Witness A to the basement of Taste of Brazil and yelled at Witness A. They told Witness A they wanted Witness A to work at the restaurant, but if Witness A did not, Witness A could not stay at the Woburn House. Witness A explained Hugo is Jesse's son. Witness A stated "they" used the second floor of the Woburn House to house

their employees and that if you did not work at Taste of Brazil you could not live there. Witness A stated at one point both Witness A and Witness A's spouse worked at Taste of Brazil and never received money for their work. Witness A was told the work they did at the restaurant went toward their monthly rent of $1,400 at the Woburn House.

Multiple migrants who worked at Taste of Brazil and The Dog House said Hugo handled the payroll for the restaurants. Records seized during search warrants in this case show that Hugo routinely filled out I-9 forms (used to verify the identity and employment authorization of employees in the U.S.) for employees who were U.S. citizens but failed to do so for migrant employees.

Shortly after Witness B's arrival in Woburn, Witness B began working for Jesse at Taste of Brazil. Witness B worked 7 days a week, from about 6:30 am to about 10:30 pm, except for Sundays after 3:00 pm. When Witness B began working at Taste of Brazil, they were not sure how much they were supposed to be paid for their work, but Witness B would only receive $100 in cash per week. Witness B would have to ask Jesse for specific things they needed, and sometimes Jesse would give them more money. Witness B said that at some point Jesse paid them in part by check. Sometimes Witness B would deposit the checks, and sometimes Jesse would keep the check and give Witness B cash. Witness B worked for Jesse for about three years.

Witness B also began working for Hugo at The Dog House shortly after it opened. Witness B worked as a cleaner at The Dog House from approximately 6:00 a.m. to 9:00 a.m. seven days a week, for which Hugo paid Witness B initially $800 per month, then raised it to $1,000 per month and then went back to $800 per month, always in cash.[6] At 9:00 am, Witness B would go to work

---

[6] On October 1, 2019, Witness B had a consensually recorded (audio and video) conversation with Hugo at The Dog House. During the conversation, Hugo and Witness B walked to Taste of Brazil so that Hugo could pay Witness B for cleaning The Dog House. They

for Jesse at Taste of Brazil. Jesse told Witness B that they needed to give him some of the money to pay off Chelbe. Witness B would usually only keep $100-$200 and give Jesse the rest. Witness B recounted one time when Jesse told Witness B that he was going to give Witness B this cleaning job so Witness B could pay their debt, and Hugo was present and heard this. Jesse would sometimes tell Witness B how much they still owed on their debt and other times would say Witness B was getting close but would not say how much Witness B still owed.

Jesse and Hugo encouraged the migrants working for them to obtain false identification documents and referred them to co-defendant Marcos Chacon Gil (Chacon) to obtain such false identification documents.[7] Once they did, Jesse and Hugo would start paying them by check. Jesse once loaned an employee $200 in cash to buy fake documents, and once the employee did, Hugo deducted from the employee's pay in installments until the loan was paid.  Hugo advised the employee to not walk around with fake documents because the employee could get arrested. Hugo said it would be best if Hugo kept the documents, and he did so.

Jesse and Hugo would tell migrant employees who worked over 40 hours at one of the restaurants to clock in at the other restaurant for their overtime hours. Agents seized records from the restaurants corroborating this information.[8] This scheme was to ensure there was no paper trail at the employing restaurant showing that the employee worked overtime, and therefore Jesse and

---

walked downstairs to the office, where Hugo took $1,000 in cash out of a safe, counted it, and gave it to Witness B. *See* Staton Aff. ¶¶ 60-61.

[7] On May 23, 2023, Chacon pleaded guilty to Count Ten of the Second Superseding Indictment charging him with transferring false identification documents in violation of 18 U.S.C. § 1028(a).  Chacon was an employee of Taste of Brazil and admitted supplying fake identification documents to workers at Taste of Brazil and The Dog House at the behest of Jesse and Hugo. (Dkt. 137).

[8] *See* Roberts Aff. ¶ 9.

Hugo were able to avoid their legal duty to pay time and a half for overtime hours. They knew this was the law, because they had been audited by the Wage and Hour Division of the U.S. Department of Labor 2015 and were forced to pay back wages to several employees.

### Collection of Smuggling Debts

In addition to withholding wages to pay for employees' smuggling debts, Jesse and Hugo took other steps to help the organization collect smuggling debt payments. For example, on July 31, 2020, a cooperating witness (CW-1), in a meeting that was audio and video recorded, told Jesse they needed to make a payment to Chelbe but another relative of Chelbe's was not available to collect it. Jesse told CW-1 that CW-1 could send it to Chelbe directly, but CW-1 said they did not know how to do that. Jesse then walked with CW-1 to a Brazilian meat market in Woburn that processes electronic financial transactions and gave CW-1 directions for wiring an $800 smuggling debt payment to Chelbe in Brazil.

After about six months of paying their debt by either direct wire transfers to Chelbe or having Jesse withhold money from their pay, Witness B began paying down their debt by giving Jesse the $1,000 per month that Hugo paid them to clean The Dog House. Witness B paid Jesse at Taste of Brazil, usually in Jesse's office, which is located on the downstairs floor of the restaurant. Witness B paid Jesse in cash, which he put into a safe in his office. When executing search warrants at the restaurants in this case, agents found and seized $211,912 in cash from Taste of Brazil and $60,326 from The Dog House, far in excess of the cash on hand needed to operate a restaurant. Jesse wrote down the amount Witness B paid him in a notebook that he kept in his office. On one occasion, Witness B paid another relative of Chelbe's at Jesse's suggestion. On still another occasion, Witness B left a debt payment with Jesse at the restaurant, and Jesse said, "[T]he faster you pay this debt, the better it is for your life."

Jesse also introduced another employee of his, co-defendant Eberson Vanz, to Chelbe so that he could assist Chelbe with debt collection and other tasks to help the organization. WhatsApp text messages between Vanz and another relative of Chelbe's show Jesse's ongoing involvement in transferring debt payments to Vanz and this other relative.

Hugo would sometimes claim to have nothing to do with the smuggling business, but in a recorded conversation on November 1, 2019, Chelbe told Witness B he "I'll talk to Jesse and I'll talk to Hugo" about Witness B's request that Hugo withhold pay and apply it to Witness B's smuggling debt so that the debt would not accrue interest, "and we'll solve this."

One employee reportedly worked at both Taste of Brazil and The Dog House approximately twelve hours a day, six days a week. Hugo gave the employee a receipt for approximately $500 each week but kept the money. Instead, Hugo said he was giving the money to Jesse to pay down the employee's smuggling debt.

## ARGUMENT

### I.    The Court Should Adopt Probation's Guideline Calculation

Probation agreed with the government's calculation of the guidelines in the plea agreement. *See* Jesse PSR ¶¶ 38-51, 87, and 18-24 months for Hugo, *see* Hugo PSR ¶¶ 43-53, 86. The defendants agreed with this calculation as well but reserved the right to argue that the offense involved the smuggling, transporting, or harboring of only 6-24 aliens, and therefore defendants' offense level should only be increased by 3 levels under USSG § 2L1.1(b)(2)(A). Jesse PA ¶ 3; Hugo PA ¶ 3. Jesse also reserved the right to argue that he qualifies for the adjustment for certain zero-point offenders in USSG § 4C1.1. *Id*. We will address these points in order.

### A.    The Offense Involved the Smuggling of 25 to 99 Aliens

USSG § 2L1.1(b)(2) provides that if the offense involved the smuggling, transporting, or harboring of more than 6 unlawful aliens, the offense level should be increased by 3 levels for up to 24 aliens and by 6 levels for 25-99 aliens. As the accompanying Affidavit of Sean Roberts establishes, this offense involved the smuggling of well over 25 aliens.[9]

The defendants have admitted employing at least ten migrants who were smuggled into the U.S. by Chelbe. Jesse PSR Addendum, Objection #11; Hugo PSR Addendum, Objection #17 ("Mr. Moraes concedes that he had knowledge of between 1 and 25 undocumented migrants").  The defendants have also admitted knowing that there were other smuggled migrants who did not work at their restaurants. *See* Jesse PA, Statement of Facts; Hugo PA, Statement of Facts ("The defendants arranged for *some* of the Migrants to work in restaurants in Massachusetts owned and operated by JESSE and HUGO") (emphasis added). The defendants could not plausibly have denied this, given the scope of the smuggling conspiracy to which they admitted in the plea agreements. No reasonable person would think that an international human smuggling organization that: recruits migrants in Brazil, arranges and facilitates their travel through multiple locations in Mexico, provides the migrants with methods of securely communicating with the chief smuggler, drives the migrants to the border and tells them where to cross and surrender at points other than official U.S. ports of entry, encourages the migrants to make fraudulent claims of asylum and familial relationships and provides them with false documentation to support their claims, provides them with fraudulent U.S. points of contact, arranges and pays for the migrants' travel to their final destination in the U.S., and arranges for employment and housing of the migrants at

_____

[9] Affidavit of Sean Roberts, attached hereto as Exhibit 1 (Roberts Aff.) ¶ 10.

their final destination, would exist to smuggle only ten migrants to work in two restaurants in Woburn, Massachusetts.

The evidence bears this out. To cite only a few examples, two witnesses who are related were smuggled into the U.S. by Chelbe Moraes on different occasions, one coming into the U.S. in a group of 14 migrants and the other coming in with a group of 16 migrants, all smuggled into the U.S. by Chelbe Moraes.[10] U.S. immigration records confirm this, as do text messages from Chelbe Moraes to one of these witnesses. In addition, WhatsApp text messages among Chelbe, another relative of Chelbe's, and co-defendant Eberson Vanz, who was a bartender for Jesse and Hugo Moraes and whom Jesse Moraes recruited to help Chelbe in this country, together with wire transfer records, demonstrate by themselves that over 25 migrants were smuggled into the U.S. by Chelbe.[11]  And Jesse personally assisted migrants who were not his employees. As he admitted in his statement of facts attached to the plea agreement,[12] on one occasion he sent a payment to a migrant who was en route to the United States at the direction of Chelbe Moraes.[13]  On another occasion, he helped a migrant send a money order to Chelbe Moraes from a Woburn store.[14]

---

[10] Roberts Aff. ¶ 10.

[11] *Id.* At his sentencing, Vanz did not contest that the conspiracy involved the smuggling of over 25 aliens, and the Court adopted that finding as part of its guideline calculation.

[12] He did not admit in his statement of facts that these individuals were not employees, but the evidence would show they were not.

[13] The evidence shows that he made such wire transfers more than once. Roberts Aff. ¶ 10.

[14] *Id.*

Beyond this, the evidence shows that this conspiracy set up two Voice Over Internet Protocol (VOIP) phone numbers that were used by the organization to provide bogus U.S. points of contact for smuggled migrants. Members of the conspiracy could monitor and answer calls to these numbers and pretend to be a legitimate U.S. point of contact for a smuggled migrant even though they had never met the migrant. Immigration records show that over 40 migrants gave U.S. immigration authorities one of these phone numbers as the number for their purported U.S. point of contact. The provider for these numbers was YMAX, and the service was called MagicJack. A device listed as "Iphone de Moraes" is associated with the account for one of these numbers. In 2019, a close relative of Chelbe's updated this account to add her phone number and credit card. A pen register on this phone shows frequent contact with airlines, hotels and travel agencies and with Jesse Moraes, Hugo Moraes, and the other VOIP number used by the organization.

During the time period of the charged conspiracy, the defendants had additional notice of the number of migrants smuggled into the U.S. by this organization. On October 12, 2021, Reuters ran an article titled, "Insight: As Brazilians flock to the U.S. border, an alleged smuggler cashes in."[15]  This article profiles Chelbe Moraes's human smuggling organization and describes an interview with Chelbe Moraes in part as follows:

> Moraes, who has declared his innocence to the police, told Reuters he runs a legitimate consultancy advising people on U.S. asylum claims from his home state of Minas Gerais. He said he has served up to 200 customers over a 20-year career, charging clients who meet U.S. criteria up to 100,000 reais ($18,086) to help them migrate.

---

[15] https://www.reuters.com/world/americas/brazilians-flock-us-border-an-alleged-smuggler-cashes-2021-10-12/, last accessed Feb. 1, 2025. A hard copy of this article is Attachment E to the Affidavit of Sean Roberts attached as Exhibit 1 hereto.

*Id.* Jesse and Hugo have admitted this was not a legitimate business, and it is a fair inference that this article from a worldwide news outlet about the conspiracy of which they were members did not escape their notice, including Chelbe's estimate of the number of migrants he had helped relocate from Brazil to the United States.

For all these reasons, the Court should apply the six-level enhancement under USSG § 2L1.1(b)(2)(B).

> **B.    Jesse Used Threats of Violence and Caused Substantial Financial Hardship, both of which Disqualify him for the Zero-Point Offender Adjustment**

The Court should also find that Jesse, like Hugo, is ineligible for the adjustment in USSG § 4C1.1 because he used credible threats of violence and caused substantial financial hardship in connection with the offense. *See* USSG § 4C1.1(a)(3).

This human smuggling organization relied on threats of violence to encourage smuggled migrants to pay their debts. Migrant witnesses in this case have expressed extreme fear of violent retaliation against them and their families in the U.S. and in Brazil if it were disclosed to the defendants that they provided evidence against them. These fears were magnified for Witness B, who was approached on at least two occasions, once shortly after the arrests in this case and once approximately a year ago, by a former employee of the defendants[16] who said s/he had been enlisted by Hugo to find out who had cooperated against him, telling this former employee that he would spend as much money as this case had cost him, "every last penny he had," to find out who was behind this and that "this would not stay as it is." The former employee

---

[16] This former employee was on the defendants' no-contact list. Based on this information from Witness B, the government obtained search warrants that led to the disclosure of numerous contacts from one of Hugo's phones to this former employee during March 2024 despite the court order prohibiting such contacts.

accused Witness B of being one of the cooperators based on information in the Complaint affidavit.[17] In his admitted statement of facts attached to his plea agreement, Hugo admitted that: "While this case was pending, HUGO had communications, in person or by phone or text message, with one of the migrants who previously worked at his restaurants, and who he thought might be cooperating against him. These communications, most of which were initiated by the migrant, were arguably in violation of HUGO's conditions of release, which limited his communications with this migrant to discussing restaurant-related menu and food issues." More recently, Witness B was approached by two other people who said that Jesse would pay Witness B a large sum of money to write a letter on his behalf. Witness B is sufficiently concerned about these approaches that the government has had to offer to assist Witness B in relocating.

Witness safety concerns are of paramount importance to the government and were specifically addressed in the plea agreements. *See* Jesse PA and Hugo PA ¶ 3 ("Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: … (b) … Defendant has … made any effort, direct or indirect, to identify or confirm the identity of anyone who cooperated in the investigation or prosecution of this case. Refraining from the conduct prohibited by subsection (b) of this paragraph shall be a continuing obligation before and after sentencing, and a violation of this provision shall trigger the provisions of paragraph 8 below."). This was special language added to the plea agreements in this case as a result of the fear expressed by witnesses. Jesse, in particular, stoked these fears by making credible threats of violence in connection with the offense.

---

[17] Roberts Aff. ¶ 5(c).

The Court can make the finding that Jesse used threats based solely on transcripts of consensual recordings. Jesse repeatedly threatened Witness B over non-payment of Witness B's smuggling debt. In a recorded conversation on November 2, 2019, Jesse told Witness B, "[Y]ou are playing with fire [by not making smuggling debt payments]. And sometimes [people who play with fire] get burned and they suffer… they suffer."[18]  In another recorded conversation on January 9, 2020, Jesse warned Witness B about the consequences if Witness B's relatives did not repay their smuggling debt:

> I am going to explain it just like two and two is four. For sure they will get them there. They will get them here. They will get [Witness B's relative] here. So, I know who these guys are. I know, but I don't deal with them. I don't. But I know because I know. I know who it is. I know everyone who comes here. …
>
> …When a person owes, what do they do? They get the person, make the person suffer or pay. Understand? They get one and say, "Look, I already got one. I killed one." If they don't kill the person, they take an ear…seriously. They break an arm, break it…they start off just beating up. They start beating and then they start that…If someone is going to be targeted here, you can be sure, they will beat him up here. First, pay. If you don't pay, then they can do anything they want with other people so he can feel it. Just that he doesn't feel anything. He doesn't care about anyone. [U/I] has to pay, they will get him. If they want to they can get [name redacted].

Jesse denied he was threatening Witness B, but the message was clear.[19]

Two other witnesses, Witnesses C and D,[20] also reported that Jesse had threatened them on multiple occasions. In addition, another individual (Victim 1), who was not a witness in this

---

[18] The full transcript of this conversation is Attachment F to the Roberts Aff., which is attached hereto as Exhibit 1.

[19] The full transcript of this conversation is Attachment G to the Roberts Aff., which is attached hereto as Exhibit 1.

[20] Witness C was referred to in the Staton Aff. as SOI-1. *See* Staton Aff. ¶¶ 67-74. Witness D was referred to in the Staton Aff. as SOI-3. *See* Staton Aff. ¶¶ 81-95.  Witnesses C and D have criminal records. HSI provided Witness C with deferred action in December 2023,

case, submitted a victim impact statement describing experiences that are fully consistent with those of the witnesses in this case, including fear of retaliation. *See* Victim Impact Statement of VNS # 7628388.

Victim 1 also describes the substantial financial hardship of working for the defendants. Victim 1 was forced to work an average of more than 13 hours a day, 7 days a week for $4 per hour without tips. Victim 1 writes:

> I was not prepared to work like that; there were too many hours standing, walking forth and back, going up and down stairs all the time as their kitchen is in the basement. The kitchen felt like a prison as there were no windows in the basement. Working like that made my already vulnerable emotional situation so much worse. I cried all the time there, and I got very depressed. I felt like I couldn't leave. I needed to stay there to pay off my debt, and they did give us a place to stay and let us eat at the restaurant.

> I remember when working in the kitchen that if myself or anybody did not put the dishes in the dishwasher the way that [Jesse] liked it he used to start yelling at me or them. He would yell at anybody and everybody. Anything had to be done his way. At one point they had us living with …another girl working there, she was their cook. She had been working for them for 12 years. [She] always used to tell me that I needed to do what Jesse said. She was terrified of Jesse as he often threatened to call ICE on her as he did to everyone all the time. I was already applying for my asylum case, but it sued to scare me a lot as I could not go back home as I know my ex-husband would kill me.
>
> …

> I continued working there as they said I had to keep paying my debt. Working at Taste of Brazil was bad for my body and my health. Sometimes I couldn't feel my feet and my heart would start racing. I worked so much that I couldn't even see the sun: I went there in the dark and I left that place in the dark. As I said, I was already in a bad way from the years of abuse at the hands of my ex-husband, however, since that crime, I have been living in a constant state of fear and anxiety. … I see a lot of similarities between Jesse and my abusive ex husband with their extremely volatile nature and short tempers.

---

after Witness C provided the information included in the Staton Aff. In addition, well after Witness D provided the information included in the Staton Aff., HSI provided Witness D with a different kind of immigration benefit of value to Witness D.

*Id.* at 2-4. This is fully consistent with the account of Witness A, who described working from 7:00 am to 9:00 pm for $3 per hour without tips. Such conditions clearly constitute causing substantial financial hardship, which would be an independent disqualifying factor for the zero-point offender reduction.

## II.  The Court Should Not Depart or Vary Downward from the Guidelines

In calculating the sentence to be imposed, and particularly in deciding whether to go below the guidelines, this Court should consider the seriousness of the offense committed by the defendants. *See* 18 U.S.C. § 3553(a) (requiring assessment of the nature and circumstances of a defendant's offense).

The defendants have pleaded guilty to conspiring to commit an offense that encompasses a broad variety of ways of encouraging and inducing an alien to come to, enter, or reside in the United States. *See United States* v. *Hansen*, 599 U.S. 762, 782 (2023) (surveying the cases and describing each of the following as "heartland clause (iv) prosecutions": smuggling noncitizens into the country, providing counterfeit immigration documents, and issuing fraudulent Social Security numbers to noncitizens). The offense conduct in this case was considerably more serious than many other acts of solicitation and facilitation that the Supreme Court held would be sufficient to violate the statute, and yet, provided the same specific offense characteristics applied, the GSR would be the same for these less serious violations.

More to the point, the Court should not go below the guidelines because the defendants have already received a large guideline reduction as a result of the government's agreement to

dismiss the most serious charges.[21] The circumstances that led to this plea agreement, however, should not be rewarded by a further reduction. Essentially, the conduct of the defendants and their coconspirators put victim-witnesses in such fear that they preferred this resolution to having to testify at a public trial. While the government recognizes that downward variances are common in this district, this is not a case where a downward variance would be warranted.

Finally, the recommended sentences are comparable to or lower than sentences imposed for similar violations of the alien smuggling and related statutes. *See, e.g., United States* v. *Singh*, 532 F.3d 1053 (9th Cir. 2008) (37 months for bringing an alien into the United States for commercial advantage or private gain); *United States* v. *Kocis*, 504 Fed.Appx. 865 (11th Cir. 2013) (36 months for conspiring to encourage or induce an alien to unlawfully enter the United States for the purpose of commercial advantage or private financial gain); *United States* v. *Fuji*, 301 F.3d 535 (7th Cir. 2002) (36 months in alien smuggling and false passport case); *United States* v. *Kim*, 435 F.3d 182 (2d Cir. 2006) (33 months for several counts of alien smuggling for financial gain and related offenses); *United States* v. *Mejia-Luna,* (9th Cir. 2009) (48 months for two counts of transporting illegal aliens for private financial gain, based in part on four-level upward adjustment for serious bodily injury not present in this case).

## III.    The Witness Accounts Are Reliable

The Court may and should credit the accounts of the witnesses even though they are not named. *See* U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its

---

[21] The government calculates that if convicted of the forced labor and labor trafficking charges, the defendants' GSR would be at least 78-97 months without acceptance of responsibility and 57-71 months with acceptance of responsibility.

admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy"). "For a while now, we have held that a sentencing court may consider hearsay statements of confidential informants if they otherwise show sufficient indicia of reliability." *United States* v. *Lee*, 892 F.3d 488, 492 (1st Cir. 2018); *see also United States* v. *Green*, 426 F.3d 64, 67-68 (1st Cir. 2005) (government's burden of proof on the issue of reliability "is not onerous" and trial courts have "broad discretion" in determining whether confidential statements in PSRs are reliable) (citing *United States* v. *Tardiff*, 969 F.2d 1283 (1st Cir. 1992) (reliability standard is a "generous formulation"), *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004) (sentencing court may even rely on statements "from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant"), and *United States v. Lopez*, 100 F.3d 113, 120 (10th Cir. 1996) ("Hearsay statements only need to contain *minimal* indicia of reliability to be used at sentencing") (emphasis added in *Green*).

In both *Lee* and *Green*, the First Circuit credited the statements of multiple unnamed witnesses whose statements were "detailed, internally consistent, and mutually corroborative." The same is true of the witnesses discussed in the government's statement of offense conduct in this case, where further corroboration is provided by a victim impact statement from someone who was not a witness in this case but whose account is strikingly similar to those of the witnesses in this case. *See United States* v. *Davis,* 923 F.3d 228 (1st Cir. 2019) (written victim impact statements from anonymized sources may be considered at sentencing).

The statements of fact to which each defendant admitted in their plea agreements and Rule 11 hearings, which the government contends represent only a subset of the relevant facts, nevertheless provide additional corroboration for the witness accounts. Both defendants admitted, among other things, that:

➢ they conspired with Chelbe and others to encourage and induce undocumented and unauthorized migrants from Brazil (Migrants) to come to, enter, and reside in the United States, and that the Migrants and their families paid substantial sums, generally between $12,00 and $22,000 to be smuggled into the United States;

➢ the Migrants traveled from Brazil through Mexico before entering the U.S. unlawfully, and Chelbe, who arranged and facilitated the trips, worked with human smugglers in Mexico to facilitate the unlawful entry into the U.S.;

➢ Chelbe encouraged the Migrants to make fraudulent claims of asylum and familial relationships (*e.g.*, parent and minor child) in the United States and provided them with false documentation to support their claims;

➢ Chelbe provided the Migrants with fraudulent information concerning U.S. points of contact and instructed them to give this information to U.S. immigration authorities when they were apprehended in the United States;

➢ Chelbe coordinated with relatives and associates of his in the Boston area to meet certain of the Migrants when they arrived in Boston and provide them with transportation from the airport and initial housing in the Boston area if needed;

➢ the defendants helped Migrants secure longer term housing, including in apartments owned by relatives of Hugo;

➢ the defendants arranged for some of the Migrants to work in restaurants in Massachusetts that they owned and operated, including Tudo Na Brasa/Taste of Brazil and The Dog House Bar and Grill, both in Woburn, Massachusetts, and paid the Migrants either entirely or partly in cash unless and until the Migrants obtained identification documents, at which point they would be paid at least partly by check;

> the defendants encouraged the Migrants working for Jesse and Hugo to obtain false identification documents and referred them to Marcos Chacon Gil, a/k/a "Marquito," to obtain such false identification documents;

> some of the Migrants were allowed to pay off some of their smuggling fee once they reached the United States; and

> Chelbe accepted smuggling debt payments via direct payment, the withholding of wages, or collection by relatives and other associates within and outside the United States.

In addition, Jesse admitted that:

> he recruited at least one Migrant in Brazil to move to the United States;

> he provided jobs to recent Migrants who came to the United States;

> he would often pay wages below minimum wage for the first 2-4 weeks that the Migrants worked at his restaurant during a training period;

> on one occasion, he sent a payment to a Migrant who was en route to the United States at the direction of Chelbe Moraes;

> On another occasion, he helped a Migrant send a money order to Chelbe at a local store when the Migrant claimed to not know how to send the payment himself; and

> he benefited from employing recent migrants.

Hugo also admitted that:

> he hired and managed the Migrants who worked at Tudo Na Brasa/Taste of Brazil and The Dog House Bar and Grill, including setting their hours and work locations and paying their wages;

> he helped Migrants find housing, often in apartments owned by a relative of his, and he received or held rent payments in cash at his restaurants;

22

➢ when hiring Migrants, he would not require them to show identification and would occasionally fail to fill out an I-9 form, even though he knew one was required;

➢ when compensating Migrant workers at his restaurants, he would pay them initially in cash, and would only pay wages by check after the Migrants had obtained identification documents;

➢ while this case was pending, he had communications, in person or by phone or text message, with one of the migrants who previously worked at his restaurants, and who he thought might be cooperating against him; and

➢ these communications, most of which were initiated by the migrant, were arguably in violation of his conditions of release, which limited his communications with this migrant to discussing restaurant-related menu and food issues.[22]

Collectively, these admissions, together with the other indicia of reliability, are more than enough for the Court to credit the witness statements at sentencing.

## IV.    Crime Victim Rights Issues

### A.  The Court should set a date for the final determination of the victims' losses and at that time order full restitution for the victims

The victims are entitled to restitution in the full amount of their losses, regardless of the defendants' economic circumstances. *See* 18 U.S.C. §§ 3663A(c)(1)(B), 3664; Jesse PSR ¶ 34; Hugo PSR ¶ 39; *see also United States v. Kalu*, 791 F.3d 1194, 1213 (10th Cir. 2015) (upholding restitution pursuant to the Mandatory Victim Restitution Act (MVRA) against defendant who underpaid visa workers he induced to enter the U.S.); *United States v. Mei Juan Zhang*, 789 F.3d 214, 216 (1st Cir. 2015) (upholding restitution pursuant to the MVRA against defendants who

---

[22] Jesse PA at 9-11; Hugo PA at 9-12.

underpaid the IRS). In a separate filing, the government will provide an itemized restitution request for each of the victims. The government submits that the victims' losses are not as yet fully ascertainable, and therefore, since there are fewer than ten days before sentencing, the government requests that the Court set a separate restitution hearing within 90 days of sentencing. *See* 18 U.S.C. § 3664(d)(5).

The restitution enforcement statute, 18 U.S.C. § 3664, does not require a restitution order to use a victim's name, but merely to "identify" them. 18 U.S.C. § 3664(a), (b). A victim may be "identified" by means other than their personal name. *See, e.g.*, *Paroline v. United States*, 572 U.S. 434 (2014); *United States v. Kearney*, 672 F.3d 81 (1st Cir. 2012) (both cases involving restitution to anonymous victims of the defendant's possession or distribution of child sexual abuse material). In those cases, as here, the victims were adequately "identified" even though they were not named. By contrast, "unidentified" victims are those that have not been, or cannot be, found. *See United States v. Grimes*, 173 F.3d 634, 638–40 (7th Cir. 1999) (characterizing "unidentified" victims as those who had not been "tracked down" or "interviewed or corresponded with," so the court did not know how to pay them or notify them that they could submit claims). What is important is that the court ascertains victims' identities so it can compensate them, and as the child sexual abuse material cases and others demonstrate, that is perfectly possible without publicly divulging their names.

### B.  Victims' Rights at Sentencing

The government hereby notifies the Court that at least three victims have submitted victim impact statements and several more are expected to do so before sentencing. At this time, at least three victims and one attorney for a victim have requested the opportunity to view the sentencing

hearing via Zoom, s*ee* 18 U.S.C. § 3771(a)(4). The government will apprise the Court of any other requests it receives.

The government is not aware of any victims who have requested an opportunity to address the Court in person regarding the impact of the defendants' conduct but will promptly notify the Court of any who make such a request.  *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").  The Court "may take into account 'any information that has sufficient indicia of reliability.'"  *United States v. Diaz-Rivera*, 957 F.3d 20, 27 (1st Cir. 2020) (quoting *United States v. Diaz-Arroya*, 797 F.3d 125, 130 n.3 (1st Cir. 2015)).  "In so doing, it has 'wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing.'" *Diaz-Rivera*, 957 F.3d at 27 (quoting *United States v. Cintron-Echautegui*, 604 F.3d 1, 6 (1st Cir. 2010)).

### C.  Other § 3553(a) Factors Support the Government's Recommendation

### A.  The History and Characteristics of the Defendants

Unlike with many defendants, the defendants' offense conduct does not appear to have been influenced by any particular personal or financial hardships. *See* Jesse PSR ¶ 60 and Hugo PSR ¶ 65. And unlike the victims in this case, the defendants were not smuggled into this country but legally entered this country. Nothing in the defendants' history and characteristics would begin to justify or excuse their conduct in this case.

### B.  Specific and General Deterrence

This Court should also consider specific and general deterrence in this case. *See* 18 U.S.C. § 3553(a)(2)(B), (C) (the district court may impose a sentence "to afford adequate deterrence to

criminal conduct" and "to protect the public from further crimes of the defendant"). The defendants must understand that they cannot engage in conduct such as this without consequences. The government's recommended sentences will communicate to the defendants that there are serious consequences to committing the crimes to which they have pleaded guilty. An equally important consideration is general deterrence. The government's recommended sentence will send a message to similarly situated individuals who have committed, or are thinking of committing, the same or a similar serious crimes that if they are caught and are found guilty in federal court, they, too, will face real punishment.

In competitive industries where profit margins are low, business owners such as the defendants have incentives to engage in criminal conduct. However, because of language and cultural barriers, and the fact that many victims work behind the scenes, conduct such as this often hides in plain sight, making it difficult for law enforcement to identify and pursue. With a significant possibility of evasion and incentives to engage in such conduct, proportionately significant sentences are required to deter would-be offenders. Accordingly, a substantial sentence is necessary to deter others who may engage in the defendants' particularly egregious form of alien smuggling.

**CONCLUSION**

The government respectfully recommends that this Court impose the following sentences:

1.    Jesse: 24 months' imprisonment, a fine of $20,000, 36 months of supervised release, a special assessment of $5,200, forfeiture of $50,000, jointly and severally with

Hugo, and restitution in full to the victims who have submitted claims by the time restitution is determined; and

2.    Hugo: 18 months' imprisonment, a fine of $15,000, 36 months of supervised release, a special assessment of $5,100, forfeiture of $50,000, jointly and severally with Jesse, and restitution in full to the victims who have submitted claims by the time restitution is determined.

These sentences would reflect the seriousness of the defendants' crimes, promote respect for the law, and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). They would also address specific and general deterrence and protect the public from further crimes the defendants might otherwise commit. *See* 18 U.S.C. §§ 3553(a)(2)(B), (C).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    */s/ James D. Herbert*
Kelly Begg Lawrence
James D. Herbert
Samuel R. Feldman
Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way
Boston, MA 02210

Dated: March 21, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants .

*/s/ James D. Herbert*
James D. Herbert
Assistant United States Attorney

Date: March 21, 2025

# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

(2) JESSE JAMES MORAES, and
(3) HUGO GIOVANNI MORAES,

                Defendant

No. 21-cr-10175-ADB

**<u>AFFIDAVIT OF SEAN ROBERTS</u>**

I, Sean Roberts, declare as follows:

1.      I am employed as an Assistant Special Agent in Charge (ASAC) with the United States Department of Labor, Office of Inspector General, Office of Investigations (DOL OIG OI) in Boston, Massachusetts. Prior to becoming an ASAC, I had been a Special Agent with DOL OIG OI since September 2017. I am a graduate of the Criminal Investigator Training Program of the Federal Law Enforcement Training Center in Glynco, Georgia, and have received extensive training in criminal investigation procedures and criminal law. Prior to my tenure with DOL OIG OI, I was a police officer in Massachusetts for approximately six years. I am a graduate of the Massachusetts Police Training Commission Recruit Officer Course and I hold a master's degree in criminal justice from the American Military University. My responsibilities as a Special Agent with DOL OIG OI included investigating fraud, waste, and abuse of Department of Labor programs, as well as Labor Racketeering and Labor Trafficking crimes. During my tenure as a DOL OIG OI Special Agent, I have conducted numerous types of investigations including unemployment insurance fraud, false claims fraud, money laundering, work visa fraud, and human

trafficking. During the investigation of these cases, I have participated in the execution of search and arrest warrants.

2.      I have been one of the case agents on this case since the investigation began. This declaration is based on my personal participation in this investigation as well as on my conversations with other investigative personnel and my review of reports, documents, and other evidence.

3.      Each of the witnesses described in the government's statement of offense conduct in this case was also identified as a source of information (SOI) or witness in the Affidavit of James M. Staton, dated October 3, 2022, in support of the criminal complaints in this case ("Staton Aff."). (Dkt. 1-3).  The Staton Aff. is incorporated herein by reference. Witness A was identified in the Staton Aff. as SOI.[1] Witness B was identified in the Staton Aff. as CW-2.[2] Witness C was identified in the Staton Aff. as SOI-1.[3] Witness D was referred to in the Staton Aff. as SOI-3.[4] CW-1 was also identified as CW-1 in the Staton Aff.[5]

4.      Most, if not all, of the migrants who were smuggled into the United States by this organization and who worked for Jesse and Hugo Moraes at Taste of Brazil/Tudo Na Brasa and The Dog House Bar and Grill who were interviewed as part of this investigation expressed fear about being identified to the defendants as cooperators.

5.      I am aware of the following information pertaining to what I believe were efforts by Jesse Moraes (Jesse) and Hugo Moraes (Hugo) to influence and/or intimidate Witness B:

---

[1] *See* Staton Aff. ¶¶ 11-17.
[2] *See* Staton Aff. ¶¶ 45-66.
[3] *See* Staton Aff. ¶¶ 67-74.
[4] *See* Staton Aff. ¶¶ 81-95.
[5] *See* Staton Aff. ¶¶ 18-33, 41-42, 44.

a.  On October 31, 2022, Witness B reported that s/he visited a former co-worker from Taste of Brazil, who was also a known associate of the defendants, at the co-worker's request. The co-worker, who was also smuggled into the U.S. by Chelbe Moraes, was referred to as Individual 1 in the Staton Aff.[6] (Individual 1). In addition to the above ties to the defendants, Individual 1 was represented before U.S. Citizenship and Immigration Services by a relative of Jesse and Hugo, worked at the defendants' restaurants without work authorization, lived in an apartment in Woburn, MA, that is owned by Hugo's family and that has been used to house migrants smuggled into the U.S. by Chelbe. The investigation revealed that Individual 1 received at least seven text messages from one of Hugo's phones between March 12 and 14, 2024, as well as other contacts from two other phones of Hugo's since early December, 2023, despite the fact that s/he is on the list of persons the Court had ordered Hugo to have no contact with. Individual 1 also has assisted the smuggling business in various ways since arriving in the United States, including by sharing his/her apartment with newly arrived migrants, connecting migrants to a vendor for fake identification documents, wiring money to migrants in Mexico on behalf of Chelbe, and, as discussed above, contacting Witness B presumably on behalf of Hugo to find out if Witness B was cooperating with the government.

b.  During the meeting on October 31, 2022, Individual 1 informed Witness B that Hugo had shown Individual 1 the case affidavit and witness reports, and Individual 1 stated that Witness B was "all over the documents" and that Individual 1 knew

---

[6] *See* Staton Aff. ¶¶ 60, 79.

Witness B was a source for the government. When Witness B denied being a source, Individual 1 said that Immigration would be looking to interview Witness B and that Witness B had to deny everything in the reports. Witness B strongly believed that Individual 1 was directed by Hugo to confront Witness B and request that Witness B deny all facts in the government's case, all in order to intimidate and discourage Witness B from serving as a witness in the case.

c. On March 18, 2024, Witness B reported that Individual 1 had again confronted Witness B and said that both Individual 1 and Hugo suspected Witness B of being the source for a specific incident in the discovery for this case. Witness B denied being a source. Individual 1 said that Hugo had stated that he was going to hire private investigators to find out who was the source "behind all this" and that he would spend as much money as this case had cost him, "every last penny he had," to find out who was behind this. That "this would not stay as it is." In a conversation two days earlier, Individual 1 said to Witness B, "That men will kill me" if s/he told the truth to law enforcement authorities.

d. Based on this and other information, the court issued a warrant to search the person and phone of Individual 1. M.J. No. 24-6259-MPK (under seal). While attempting to execute this warrant on April 9, 2024, I and another DOL OIG OI Special Agent and an HSI intelligence analyst approached Individual 1 with the warrant. While Individual 1 did not have possession of the phone that was the subject of the warrant, Individual 1 did admit to having been in contact with Hugo, although s/he claimed these were all in connection with Hugo's request that Individual 1 come back to work at the restaurant. A consent search of the phone in Individual 1's

possession showed numerous calls and text messages in March 2024 between one of Hugo's phones and one of Individual 1's phones. Specifically, it showed a total of 21 contacts or attempted contacts between those two phones between March 11, 2024, and March 27, 2024.

e. On February 2, 2025, Witness B reported that s/he had been visited by two friends at his/her house. One of the friends advised that Jesse had asked the friend's brother to speak with Witness B. The friend then called the brother, who asked Witness B if s/he would be willing to write a letter on behalf of Jesse to be used in court. The brother stated that Jesse offered to pay $100,000 to $150,000 in cash in exchange for the letter. The friend offered to drive Witness B to meet a female who would write the letter for Witness B to sign. Witness B declined. The brother advised Witness B to reconsider, saying Jesse planned to use Witness B's relative's legal issues in Brazil, which could lead to the relative's arrest or other unknown legal repercussions. Witness B stated that s/he felt threatened and afraid and intended to move as s/he is afraid the Moraes family will seek retribution against him/her and his/her family.

f. Based on these concerns, the government offered to assist Witness B with relocation expenses.

6. Employers in Massachusetts are required to maintain payroll records that include the worker's name, address, job/occupation, amount paid each pay period, and hours worked (each day and week). Employers must give workers a statement with their pay that says:

- the name of the employer and worker

- the date of payment (month, day and year)

- the number of hours worked during the pay period

- the hourly rate

- all deductions and increases made during the pay period.[7]

7.      On October 4, 2022, I and other federal agents executed search warrants at Taste of Brazil/Tudo Na Brasa and The Dog House Bar and Grill in Woburn, both owned by Jesse and Hugo. While we did find adequate payroll records for certain employees, we did not find adequate payroll records for any of the employees who had been smuggled into the U.S. by Chelbe. Similarly, we found I-9 forms for certain employees but none for the employees who had been smuggled into the U.S. by Chelbe. ***See* Attachment H, consisting of examples of I-9 forms found in searches.**

8.      In 2015, the U.S. Department of Labor, Wage and Hour Division (WHD) conducted an investigation of Tudo Na Brasa, Inc., d/b/a Taste of Brazil, covering the period April 28, 2013 to April 25, 2015. The investigation disclosed violations of Fair Labor Standards Act (FSLA) Section 6 resulting from the failure to pay employees at least the applicable minimum wage for all hours worked and FLSA Section 7 resulting from the failure to pay statutory overtime pay for hours worked in excess of 40 hours per week.  These violations resulted in underpayments totaling $44,208.87 due to eleven employees. The firm was also found to have failed to keep accurate time and payroll records as required by 29 CFR § 516.2.

**Attachment A hereto is a copy of the WHD report from that investigation.** Attached to the

---

[7] https://www.mass.gov/guides/pay-and-recordkeeping#-minimum-wage-, last visited March 17, 2025. The historical Massachusetts minimum wage by year can be found at: https://fred.stlouisfed.org/series/STTMINWGMA

report are statements of employees who describe working conditions and pay that are similar to those described by the migrant witnesses in this case.

9.    **Attachment B hereto are copies of select documents seized in the execution of the search warrants at Taste of Brazil/Tudo Na Brasa and The Dog House**. These show handwritten notebook entries consistent with those described by migrant employees who were paid in cash, as well as time card entries showing a failure to pay lawful overtime and the apparent splitting of time between the two restaurants in order to avoid showing any hours over 40 hours for a week as well as evidence that the defendants used ADP to process part of their payroll with withholding for certain employees.

10.    **Attachment C hereto is a report showing that over 40 migrants gave to Immigration officials as their U.S. point of contact telephone number one of the YMAX numbers used by this organization.** *See* Staton Aff. ¶ 80, noting that pen register data showed frequent contact with airlines, hotels, and travel agencies and with Jesse, Hugo, and the other YMAX phone associated with Chelbe. Jesse personally assisted migrants who were not his employees. As he admitted in his statement of facts attached to the plea agreement,[8] on one occasion he sent a payment to a migrant who was en route to the United States at the direction of Chelbe Moraes.[9]  On another occasion, he helped a migrant send a money order to Chelbe Moraes from a Woburn store. In addition, WhatsApp text messages among Chelbe, another relative of Chelbe's, and co-defendant Eberson Vanz, who was a bartender for Jesse and Hugo Moraes and whom Jesse Moraes recruited to help Chelbe in this country, together with wire

---

[8] He did not admit in his statement of facts that these individuals were not employees, but the evidence would show they were not.
[9] The evidence shows that he made such wire transfers more than once.

transfer records, demonstrate by themselves that over 25 migrants were smuggled into the U.S. by Chelbe.

11.     **Attachment D hereto is a transcript of a voice recording Chelbe left for CW-1 on October 6, 2019, indicating that Chelbe smuggled 16 people in with CW-1's relative. I am aware that Chelbe smuggled 14 people into the U.S with CW-1.**

12.     I have reviewed a text message thread between Eberson Vanz and a relative of Chelbe's who was assisting with the smuggling business, and the text messages indicate that Jesse was involved in passing to Vanz and Chelbe's relative money collected from migrants in repayment of their smuggling debts.

13.     **Attachment E hereto is a copy of the Reuters article dated October 12, 2021, entitled, "Insight: As Brazilians flock to the U.S. border, an alleged smuggler cashes in."**

14.     **Attachment F hereto is a transcript of the November 2, 2019 conversation quoted in the government's sentencing memorandum.**

15.     **Attachment G hereto is a transcript of the January 9, 2020 conversation**

16. **quoted in the government's sentencing memorandum.**

> I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.  Signed this 21st day of March, 2025,
>
> Sean Roberts
> Assistant Special Agent in Charge, United States Department of Labor, Office of Inspector General, Office of Investigations

# Attachment A

Case ER ID: ▒▒▒▒

Tudo Na Brasa, Inc.
D/b/a Taste of Brazil
414 Main Street
Woburn, MA 01801
(781) 938-0101

Case ID: ▒▒▒▒▒▒▒▒
EIN: ▒▒▒▒ 0588

**IDENTITY/COVERAGE**:

Nature of Business and Section 3(d) employer: The subject company is a full service Brazilian buffet restaurant. The company is engaged in serving Brazilian food, drinks, take-out food, and buffet style to the general public for a price. The company was established as a Corporation and was established in Massachusetts in April 2006.

Hugo Moraes, is the owner of the company, he holds all titles of the company. Mr. Moraes acts as President, Treasurer, Secretary, and Director. Mr. Hugo Moraes is actively involved in running the day to day operations of the business and setting company policies, he is the Section 3(d) employer within the meaning of the Act. The residence for the owner was provided to the WHI as ▒▒▒▒▒▒ Woburn, MA 01801, and he can be reach at ▒▒▒▒ 4830. The address and telephone number of the main office are as follows:

Tudo Na Brasa, Inc.                    (781) 938-0101
D/b/a Taste of Brazil
414 Main Street
Woburn, MA 01801
EIN: ▒▒▒▒ 0588

The subject firm employs approximate 6 full time employees. These employees handle goods such food, beverages, produce, and/or office supplies that have moved in interstate commerce, including items from Restaurant Depot, and Coca-Cola that were ordered from out of state locations, see exhibit D-6. All work is performed in the Commonwealth of MA. The firm provided the following gross sales information.

Gross Sales for 2012: $490,234.11
Gross Sales for 2013: $649,189.01
Gross Sales for 2014: $631,345.26

1

Case ER ID:

The WHI requested quarterly earnings for the 2012, and 2013 to assert enterprise coverage for the full period of Investigation. The following quarterly sales were provided:

Year 2012
Quarterly sales    Jan to Mar 2012 = 108,734.99
**Quarterly sales    Apr to Jun 2012 = 120,743.64**
**Quarterly sales    July to Sep 2012 = 122,688.68**
**Quarterly sales    Oct to Dec 2012 = 138,066.80**

**Year 2013**
**Quarterly sales    Jan to Mar 2013 = 126,915.86 Gross sales for last 4 quarters: $508,414.98**
Quarterly sales    Apr to Jun 2013 = 159,705.61
Quarterly sales    Jul to Sep 2013 = 153,225.93
Quarterly sales    Oct to Dec 2013 = 209,341.58

**When added quarterly sales from April 2012 to March 2013, the gross sales were $508,414.98, having enterprise coverage effective on 4/1/2013.**

Therefore, all employees of the establishment are covered on an enterprise basis under Sec 3(s)(1) during the period of investigation.  See exhibit C-1 through C-4.

Prior History:
This is the first investigation of the subject firm. WHISARD search was conducted with negative findings.

Period of Investigation: Full Investigation. 04/28/2013 through 04/25/2015.

**EXEMPTIONS**:
The employer claimed exemptions for the following salary employee:

541.100
Executive exemption, not applicable
Marlene Alcartara – Cook, Salary of $850.00 weekly
Ms. Alcartara does not meet the duties test to be exempt under 541.100.  Ms. Alcartara spends all her time working in the kitchen, preparing food, cooking, and brings plates upstairs/downstairs, she does not supervise any employee, she does not do the schedule of hours, she cannot adjust rates of pay towards the employees, she cannot disciple employees, and or conducts employee evaluations, she does not sit on new employees interviews. Ms. Alcartara primary duty is to cook. Also, when WHI interview the employer, Mr. Moraes stated that he did all the supervision on the restaurant, see exhibit B-6. Therefore 541.100 exemption is denied for this employee. See exhibit B-1, and Exhibit B-6.

The following employees were tested for 541.100 exemptions.
541.100 Not Applicable

2

Case ER ID:

Jackeline Tadioto "Server" Salary $400/weekly
Ms. Tadioto, does not meet the salary requirements of at least 455.00 a week. She did not supervise any employees. Ms. Tadioto was a server, and did not have any managerial duties. Ms. Tadioto does not meet the duty test, or salary test, therefore 541.100 exemption is denied for this employees. See exhibit A-10 and exhibit B-10.

541.100 Denied
Jeison Miron $550.00/week, dishwasher
Mr. Miron is a dishwasher, he spends all his time washing dishes, and stocking the kitchen, he does not place orders, nor supervise any employees, and his primary duty is not of a management, therefore 541.100 exemption is denied for Mr. Miron. See exhibit B- 7.

541.100 Denied
Rosa Portillo, salary of $360.00 /weekly
Ms. Portillo was paid a salary of $360.00 a week, Ms. Portillo primary duty is to prep salads, and she does not have any managerial duties. Ms. Portillo does not meet the salary or duties under 541.100, therefore exemption is denied. See exhibit B- 8.


**STATUS OF COMPLIANCE:**

Reason for Investigation:
This was a complaint case, the complainant alleged non-payment for overtime hours, and the non-payment of the last weeks of employment by the company. The allegations for straight time for overtime were substantiated, and the non-payments for hours worked during the last weeks of employment were not.

An unscheduled /unannounced Initial conference was conducted on 4/23/15 at the employer establishment, during this visit; the WHI took a tour of the establishment, and interview employees.

During the unannounced visit, employees were receiving cash for hours worked, some employees receive a combination between cash, and check, and employees were recording their hours. When asked for a record of hours, and records of cash payments, the employer stated he did not have records of cash payments, and time records were not maintained before the year 2015, only time records for 2015 were maintained by the employer. During the initial conference interviews and a tour of the establishment were conducted, in which the Federal Posted was in display.

The employer at a later time provided records of cash payments for the year 2015. When asked about records for the previous years, the employer stated they were not maintained.

Employees did report having worked in the past 2 years overtime hours, and were not paid for overtime hours. In certain cases the WHI average the hours that the employees reported and reconstructed going back the full two years of the POI.

3

Case ER ID: ▮

Hourly rates were retrieved from the records of cash payments for the year 2015; for the previous year's hourly rates were based on the information retrieve during interviews. The employer had records time records for the year 2015, for the previous years the hours were reconstructive based on the average of the 2015 hours worked and maintained by the subject company. Some former employees in which time records were not maintained, and alleged working overtime hours were substantiated, by one, having copies of schedule of hours, and second, having records of hours worked by saved text messages.

SECTION 11/RECORD KEEPING:

The firm failed to keep accurate time and payroll records in accordance with 29 CFR 516.2. The firm did not maintain accurate pay records including employee's rates of pay, and overtime premium, and total daily and weekly hours worked for the full period of investigation.

SECTION 6/MINIMUM WAGE: Minimum wage violations were disclosed through the investigation.

The employer violated Section 6 of the Act, by failure to pay the last three weeks of employment for one employee during three non-overtime weeks.

Mode of Calculation*
Back wages were calculated by taking the Federal MW of $7.25 times the hours she worked, and was not paid for it. Record of hours was maintained by the employee, and cross reference with a copy of the employer by text message, See exhibit A-2, D-8.

Violations also occurred when two employees worked based on a salary for all hours worked, and based on the hours the employees worked, it brought the employees hourly rate below the Minimum wage.

Mode of Calculation*
Backwages were calculated by taking the salary divided by the hours he worked to retrieve the hourly rate. If the hourly rate was below the minimum wage then the difference of the minimum wage and the employee hourly rate was calculated for back wages.

A total of $867.42 was found due as a result of 3 employees being paid below the Federal Minimum wage.

SECTION 7/OVERTIME: The firm was found to have violated Section 7 of the Act for the following reason:

Overtime violations occurred when employees worked over the 40 hours per week, and the proper overtime rate was not paid.

4

Case ER ID:

Employees were paid by the employer at straight time for overtime for all hours worked. Back wages was calculated by taking the employee's regular rate of pay times half, times the hours over the 40 per week. See exhibit A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8 A-9, A-10, and A-11.

A total of $43,341.45 was found due as a result of 11 employees being paid on a straight time for overtime.

SECTION 12/CHILD LABOR: No violations uncovered through the investigation. The Firm has no employees under the age of 18 years old.

CIVIL MONEY PENALTIES: No CMPs are recommended for this case, no prior history.

A Total of $44,208.87 was found due to 11 employees for overtime and minimum wage violations. See exhibits A-1 to A-11.

**Disposition:**

A final conference was held at the Boston District Office on 6/24/2015. Representing the firm was the company representative Igor Gomes. Representing the DOL was WHI Telmo Dasilva.

WHI Telmo Dasilva explained the coverage under the Act, and various sections of the Act. In specific, WHI Dasilva, explained: Coverage under the Act, the period of investigation, employment relationship, minimum wage, hours worked, recordkeeping, overtime, and 29 CFR 541 exemptions, with more emphasis on the duties for executive exemption, and tip credit. Mr. Gomes questioned the exemption for Marlene Alcartara.
Mr. Gomes stated that he would check with his client, but he stated that the hours reconstructive were very high, and that he was under the impression that Marlene Alcartara was exempt. The WHI further explain that Marlene did not had any managerial or supervision duties.

Mr. Gomes agreed to comply with the requirements of the Fair Labor Standards Act 1938, As Amended in the future.

When WHI Dasilva presented the findings of the investigation Mr. Gomes did disagree with the finding of the one 541.100 non –exempt salary employee. He also questioned the amount of BW calculated to the complainant; he further stated that he was going to check with his client regarding the C, and the non-exempt employee.

Mr. Gomes additionally send over to WHI three months worth of hours that the complainant had worked, indicating a much fewer hours that the complainant allegedly had work.

On 7/15/2015 Mr. Gomes, send over to the WHI Dasilva a Signed WH-56 to pay all BW by 10/14/2015.WHI reminded the employer, of the unlawfulness of any retaliation or kickbacks

Case ER ID:

towards any employee that might be due back wages; Mr. Gomes stated he has advised his client of so.

Mr. Gomes was provided with WH-58's forms for all employees, and the representative was explained the process to pay the back wages. The representative was told to pay the employees by check, by the date signed on the WH-56.

The following publications were given to the firm: FLSA, Handy Reference Guide, CL 101, Parts 516, 541, 778, 785, and the FLSA Poster in English.

The WHI attempted to contact the complainant several times throughout the investigation, another attempt was made to notify the complainant of the results of investigation on 7/15/15- no answer. The WHI left a message on the complainant voice mail.


Recommendation:

Based on the employer's agreement to comply in the future and make payment of back wages in full, I recommend that the case be closed administrative upon receipt of proof of payment in the Boston District Office.


Telmo F. DaSilva
Wage and Hour Investigator




Send all correspondence to:

Hugo Moraes, President
Tudo na Brasa, Inc.
d/b/a Taste of Brazil
414 Main St,
Woburn, MA 01801

**INDEX OF A EXHIBITS**

A-1    Marlene Alcartara         Prep. Food

A-2    Fernanda Dasilva          Server

A-3    Cricia Gallardo           Server

A-4    Marcus Gill               Prep cook

A-5    Jovanna Gonzales          Cashier

A-6    Jeison Miron              Dishwasher

A-7    Rosa Porillo              Prep. Salads

A-8    Jose Ramirez              Diswasher

A-9    Jenny Silva               Server

A-10   Jackeline Tadioto         Server

B-11   Veronica Valle            Server

Wage Transcription and Computation Worksheet

# U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

| Taste of Brasil | 05/11/2015 |
|---|---|
| Establishment | Date |

Marlena Alcantara
Employee

Cook
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | Rate of Pay per Week | | | | OT Due | Amount Due Employee |
|---|---|---|---|---|---|---|---|---|
| 05/04/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 05/11/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 05/18/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 05/25/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 06/01/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 06/08/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 06/15/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 06/22/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 06/29/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 07/06/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 07/13/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 07/20/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 07/27/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 08/03/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 08/10/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 08/17/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 08/24/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 08/31/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 09/07/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 09/14/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 09/21/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 09/28/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 10/05/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 10/12/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 10/19/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 10/26/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 11/02/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 11/09/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 11/16/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 11/23/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 11/30/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 12/07/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 12/14/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 12/21/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 12/28/2013 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 01/04/2014 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 01/11/2014 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 01/18/2014 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |
| 01/25/2014 | 80.35 | $ 10.58 | $850.00 | | | | $ 213.43 | $ 213.43 |

A - 1

| Date | | | | | | | | | |
|------|------|-----|---------|--|--|--|-----------|--|-----------|
| 02/01/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 02/08/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 02/15/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 02/22/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 03/01/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 03/08/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 03/15/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 03/22/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 03/29/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 04/05/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 04/12/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 04/19/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 04/26/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 05/03/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 05/10/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 05/17/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 05/24/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 05/31/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 06/07/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 06/14/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 06/21/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 06/28/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 07/05/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 07/12/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 07/19/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 07/26/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 08/02/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 08/09/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 08/16/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 08/23/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 08/30/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 09/06/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 09/13/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 09/20/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 09/27/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 10/04/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 10/11/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 10/18/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 10/25/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 11/01/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 11/08/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 11/15/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 11/22/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 11/29/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 12/06/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 12/13/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 12/20/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 12/27/2014 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 01/03/2015 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 01/10/2015 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 01/17/2015 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 01/24/2015 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 01/31/2015 | 80.35 | $ | 10.58 | $850.00 | | | $ 213.43 | $ | 213.43 |
| 02/07/2015 | 90.28 | $ | 9.42 | $850.00 | | | $ 236.70 | $ | 236.70 |
| 02/14/2015 | 89.36 | $ | 9.51 | $850.00 | | | $ 234.76 | $ | 234.76 |
| 02/21/2015 | 80.48 | $ | 10.56 | $850.00 | | | $ 213.77 | $ | 213.77 |

A-1-l

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 02/28/2015 | 81.44 | $ | 10.44 | $850.00 | | | $ | 216.26 | $ | 216.26 |
| 03/07/2015 | 84.15 | $ | 10.10 | $850.00 | | | $ | 222.98 | $ | 222.98 |
| 03/14/2015 | 86.39 | $ | 9.84 | $850.00 | | | $ | 228.22 | $ | 228.22 |
| 03/21/2015 | 87.09 | $ | 9.76 | $850.00 | | | $ | 229.80 | $ | 229.80 |
| 03/28/2015 | 85.29 | $ | 9.97 | $850.00 | | | $ | 225.68 | $ | 225.68 |
| 04/04/2015 | 57.04 | $ | 14.90 | $850.00 | | | $ | 126.96 | $ | 126.96 |
| 04/11/2015 | 65.3 | $ | 13.02 | $850.00 | | | $ | 164.66 | $ | 164.66 |
| 04/18/2015 | 84.01 | $ | 10.12 | $850.00 | | | $ | 222.64 | $ | 222.64 |
| 04/25/2015 | 73.39 | $ | 11.58 | $850.00 | | | $ | 193.36 | $ | 193.36 |
| | | | | | | | | | |
| | | | | | | | | $ | 22,150.95 |

Compliance Officer

Form WH-55
Rev. Oct. 1987
A -

Wage Transcription and Computation Worksheet

## U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

| Taste of Brasil | 05/11/2015 |
|---|---|
| Establishment | Date |

Fernanda Dasilva
Employee

Server
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | Hourly Rate Due | | | MW Due | OT Due | Amount Due Employee |
|---|---|---|---|---|---|---|---|---|
| 08/10/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 08/17/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 08/24/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 08/31/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 09/07/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 09/14/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 09/21/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 09/28/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 10/05/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 10/12/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 10/19/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 10/26/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 11/02/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 11/09/2013 | 52 | $ 8.00 | | | | | $ 48.00 | $ 48.00 |
| 11/16/2013 | 34 | $ - | $7.25 | | | $246.50 | $ - | $ 246.50 |
| 11/23/2013 | 33 | $ - | $7.25 | | | $239.25 | $ - | $ 239.25 |
| 11/30/2013 | 27 | $ - | $7.25 | | | $195.75 | $ - | $ 195.75 |
| | | | | | | | | $ 1,353.50 |
| | | | | | 681.5 | | 672 | 1353.5 |

Compliance Officer _JD_

Form WH-55
Rev. Oct. 1987

A -

A-2

Wage Transcription and Computation Worksheet

# U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

Taste of Brasil                                                    05/11/2015
Establishment                                       Date

Cricia Gallardo
Employee


Server
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | | | | OT Due | Amount Due Employee |
|---|---|---|---|---|---|---|---|
| 02/07/2015 | 44.09 | $ 9.00 | | | | $ 18.41 | $ 18.41 |
| 02/14/2015 | 41.52 | $ 9.00 | | | | $ 6.84 | $ 6.84 |
| 02/28/2015 | 42.58 | $ 9.00 | | | | $ 11.61 | $ 11.61 |
| 03/07/2015 | 41.11 | $ 9.00 | | | | $ 5.00 | $ 5.00 |
| 03/14/2015 | 44.18 | $ 9.00 | | | | $ 18.81 | $ 18.81 |
| 03/21/2015 | 42.06 | $ 9.00 | | | | $ 9.27 | $ 9.27 |
| 04/11/2015 | 44.23 | $ 9.00 | | | | $ 19.04 | $ 19.04 |
| | | | | | | | |
| | | | | | | $ 88.97 |

Compliance Officer  _TD_

Form WH-55
Rev. Oct. 1987
A -

p. 3

Wage Transcription and Computation Worksheet

# U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

| Taste of Brasil | 05/11/2015 |
|---|---|
| Establishment | Date |

Marcos Gill
Employee

Prep cook
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | | | | | OT Due | Amount Due Employee |
|---|---|---|---|---|---|---|---|---|
| 11/15/2014 | 47.85 | $ 9.00 | | | | | $ 35.33 | $ 35.33 |
| 11/22/2014 | 47.85 | $ 9.00 | | | | | $ 35.33 | $ 35.33 |
| 11/29/2014 | 47.85 | $ 9.00 | | | | | $ 35.33 | $ 35.33 |
| 12/06/2014 | 47.85 | $ 9.00 | | | | | $ 35.33 | $ 35.33 |
| 12/13/2014 | 47.85 | $ 9.00 | | | | | $ 35.33 | $ 35.33 |
| 12/20/2014 | 47.85 | $ 9.00 | | | | | $ 35.33 | $ 35.33 |
| 12/27/2014 | 47.85 | $ 9.00 | | | | | $ 35.33 | $ 35.33 |
| 01/03/2015 | 47.85 | $ 9.00 | | | | | $ 35.33 | $ 35.33 |
| 01/24/2015 | 41.19 | $ 9.00 | | | | | $ 5.35 | $ 5.35 |
| 02/07/2015 | 43.36 | $ 9.00 | | | | | $ 15.12 | $ 15.12 |
| 02/21/2015 | 41.37 | $ 9.00 | | | | | $ 6.16 | $ 6.16 |
| 02/28/2015 | 41.55 | $ 9.00 | | | | | $ 6.97 | $ 6.97 |
| 03/07/2015 | 54.36 | $ 9.00 | | | | | $ 64.62 | $ 64.62 |
| 03/14/2015 | 53.41 | $ 9.00 | | | | | $ 60.35 | $ 60.35 |
| 03/21/2015 | 49.38 | $ 9.00 | | | | | $ 42.21 | $ 42.21 |
| 03/28/2015 | 66.5 | $ 9.00 | | | | | $ 119.25 | $ 119.25 |
| 04/04/2015 | 65.15 | $ 9.00 | | | | | $ 113.18 | $ 113.18 |
| 04/11/2015 | 55.17 | $ 9.00 | | | | | $ 68.27 | $ 68.27 |
| 04/18/2015 | 64.37 | $ 9.00 | | | | | $ 109.67 | $ 109.67 |
| | | | | | | | | $ 893.75 |

Form WH-55
Rev. Oct. 1987
A -

Compliance Officer  TØ

A-4

Wage Transcription and Computation Worksheet

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

Taste of Brasil                                                              05/11/2015
Establishment                                                               Date

Jovana Gonzales
Employee

Cashier
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | | | | OT Due | | Amount Due Employee | |
|---|---|---|---|---|---|---|---|---|---|
| 02/07/2015 | 42.42 | $ | 9.00 | | | | $ | 10.89 | $ | 10.89 |
| 02/21/2015 | 51.09 | $ | 9.00 | | | | $ | 49.91 | $ | 49.91 |
| 02/28/2015 | 55.26 | $ | 9.00 | | | | $ | 68.67 | $ | 68.67 |
| 03/07/2015 | 40.23 | $ | 9.00 | | | | $ | 1.03 | $ | 1.03 |
| 03/14/2015 | 49.15 | $ | 9.00 | | | | $ | 41.18 | $ | 41.18 |
| 03/21/2015 | 48.43 | $ | 9.00 | | | | $ | 37.94 | $ | 37.94 |
| 03/28/2015 | 41.27 | $ | 9.00 | | | | $ | 5.72 | $ | 5.72 |
| 04/04/2015 | 45.59 | $ | 9.00 | | | | $ | 25.16 | $ | 25.16 |
| | | | | | | | | | $ | 240.48 |

Compliance Officer  _TO_

Form WH-55
Rev. Oct. 1987
A -

AS

Wage Transcription and Computation Worksheet

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

Taste of Brasil                                              05/11/2015
_____
Establishment                                Date

Jeison Miron
_____
Employee

_____

Dishwasher
_____
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | Rate of Pay per Week | | | MW Due | OT Due | Amount Due Employee |
|---|---|---|---|---|---|---|---|---|
| 05/04/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 05/11/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 05/18/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 05/25/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 06/01/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 06/08/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 06/15/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 06/22/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 06/29/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 07/06/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 07/13/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 07/20/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 07/27/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 08/03/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 08/10/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 08/17/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 08/24/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 08/31/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 09/07/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 09/14/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 09/21/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 09/28/2013 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 11/08/2014 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 11/15/2014 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 11/22/2014 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 11/29/2014 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 12/06/2014 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 12/13/2014 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 12/20/2014 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 12/27/2014 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 01/03/2015 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 01/10/2015 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 01/17/2015 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 01/24/2015 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 01/31/2015 | 56.23 | $ 9.78 | $550.00 | | | | $ 79.37 | $ 79.37 |
| 02/07/2015 | 55.08 | $ 9.99 | $550.00 | | | | $ 75.29 | $ 75.29 |
| 02/14/2015 | 54.31 | $ 10.13 | $550.00 | | | | $ 72.46 | $ 72.46 |

p-6-a

Wage Transcription and Computation Worksheet

# U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

Taste of Brasil                                                      05/11/2015
Establishment                                             Date

Rosa Portillo
Employee

Prep. Salads
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | Rate of Pay per Week | | | MW Due | OT Due | | Amount Due Employee | |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/07/2015 | 41.45 | $ 8.69 | $360.00 | | | 13.05 | $ | 6.53 | $ | 19.58 |
| 02/14/2015 | 41.23 | $ 8.73 | $360.00 | | | 11.07 | $ | 5.53 | $ | 16.61 |
| 02/21/2015 | 43.54 | $ 8.27 | $360.00 | | | 31.86 | $ | 15.93 | $ | 47.79 |
| 02/28/2015 | 41.36 | $ 8.70 | $360.00 | | | 12.24 | $ | 6.12 | $ | 18.36 |
| 04/11/2015 | 43.32 | $ 8.31 | $360.00 | | | 29.88 | $ | 14.94 | $ | 44.82 |
| | | | | | | | | | | |
| | | | | | | | | $ | 147.15 |
| | 98.1 | | | | | | 49.05 | | |

Compliance Officer  _TD_

Form WH-55
Rev. Oct. 1987
A -

A - 7

Wage Transcription and Computation Worksheet

# U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

Taste of Brasil                                                    05/11/2015
Establishment                                          Date

Jose Ramirez
Employee

Cook
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | Salary of Pay per Week | | | | OT Due | Amount Due Employee |
|---|---|---|---|---|---|---|---|---|
| 05/04/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 05/11/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 05/18/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 05/25/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 06/01/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 06/08/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 06/15/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 06/22/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 06/29/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 07/06/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 07/13/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 07/20/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 07/27/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 08/03/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 08/10/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 08/17/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 08/24/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 08/31/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 09/07/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 09/14/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 09/21/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 09/28/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 10/05/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 10/12/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 10/19/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 10/26/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 11/02/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 11/09/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 11/16/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 11/23/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 11/30/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 12/07/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 12/14/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 12/21/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 12/28/2013 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 01/04/2014 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 01/11/2014 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 01/18/2014 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |
| 01/25/2014 | 75 | $ 8.00 | | | | | $ 140.00 | $ 140.00 |

| Date | Qty | Rate | | | | | | Amount | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/01/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 02/08/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 02/15/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 02/22/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 03/01/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 03/08/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 03/15/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 03/22/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 03/29/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 04/05/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 04/12/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 04/19/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 04/26/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 05/03/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 05/10/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 05/17/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 05/24/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 05/31/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 06/07/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 06/14/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 06/21/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 06/28/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 07/05/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 07/12/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 07/19/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 07/26/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 08/02/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 08/09/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 08/16/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 08/23/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 08/30/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 09/06/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 09/13/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 09/20/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 09/27/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 10/04/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 10/11/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 10/18/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 10/25/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 11/01/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 11/08/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 11/15/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 11/22/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 11/29/2014 | 75 | $ | 8.00 | | | | | $ | 140.00 | $ | 140.00 |
| 12/06/2014 | 75 | $ | 9.00 | | | | | $ | 157.50 | $ | 157.50 |
| 12/13/2014 | 75 | $ | 9.00 | | | | | $ | 157.50 | $ | 157.50 |
| 12/20/2014 | 75 | $ | 9.00 | | | | | $ | 157.50 | $ | 157.50 |
| 12/27/2014 | 75 | $ | 9.00 | | | | | $ | 157.50 | $ | 157.50 |
| 01/03/2015 | 75 | $ | 9.00 | | | | | $ | 157.50 | $ | 157.50 |
| 01/10/2015 | 75 | $ | 9.00 | | | | | $ | 157.50 | $ | 157.50 |
| 01/17/2015 | 75 | $ | 9.00 | | | | | $ | 157.50 | $ | 157.50 |
| 01/24/2015 | 75 | $ | 9.00 | | | | | $ | 157.50 | $ | 157.50 |
| 02/14/2015 | 43.01 | $ | 9.00 | | | | | $ | 13.55 | $ | 13.55 |
| 02/21/2015 | 60.28 | $ | 9.00 | | | | | $ | 91.26 | $ | 91.26 |
| 02/28/2015 | 63.46 | $ | 9.00 | | | | | $ | 105.57 | $ | 105.57 |
| 03/21/2015 | 50.27 | $ | 9.00 | | | | | $ | 46.22 | $ | 46.22 |

A-3-6

| 03/28/2015 | 46.4 | $ | 9.00 | | | | | $ | 28.80 | $ | 28.80 |
| 04/11/2015 | 54.08 | $ | 9.00 | | | | | $ | 63.36 | $ | 63.36 |
| 04/18/2015 | 41.47 | $ | 9.00 | | | | | $ | 6.61 | $ | 6.61 |
| 04/25/2015 | 70.39 | $ | 9.00 | | | | | $ | 136.76 | $ | 136.76 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | $ | 13,372.12 |

Compliance Officer

Form WH-55
Rev. Oct. 1987
A -

Wage Transcription and Computation Worksheet

# U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

| Taste of Brasil | | 05/11/2015 |
|---|---|---|
| Establishment | | Date |

Jenny Silva
Employee

Server
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | | | | OT Due | Amount Due Employee |
|---|---|---|---|---|---|---|---|
| 04/18/2015 | 46.02 | $ 9.00 | | | | $ 27.09 | $ 27.09 |
| 04/25/2015 | 54.4 | $ 9.00 | | | | $ 64.80 | $ 64.80 |
| | | | | | | | |
| | | | | | | | $ 91.89 |
| | | | | | | | |

Compliance Officer 𝒯𝒟

Form WH-55
Rev. Oct. 1987
A -

Wage Transcription and Computation Worksheet

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

Taste of Brasil                                                                              05/11/2015
Establishment                                            Date

Jackeline Tadioto
Employee


Server
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | Rate of Pay per Week | | | | OT Due | Amount Due Employee |
|---|---|---|---|---|---|---|---|---|
| 05/04/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 05/11/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 05/18/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 05/25/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 06/01/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 06/08/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 06/15/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 06/22/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 06/29/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 07/06/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 07/13/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 07/20/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 07/27/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/03/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/10/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/17/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/24/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/31/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 09/07/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 09/14/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 09/21/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 09/28/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 10/05/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 10/12/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 10/19/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 10/26/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 11/02/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 11/09/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 11/16/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 11/23/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 11/30/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 12/07/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 12/14/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 12/21/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 12/28/2013 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 01/04/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 01/11/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 01/18/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 01/25/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |

A-10-a

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 02/01/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 02/08/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 02/15/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 02/22/2014 | 43.25 | $ 9.25 | $400.00 | | | | $ 15.03 | $ 15.03 |
| 03/01/2014 | 42.25 | $ 9.47 | $400.00 | | | | $ 10.65 | $ 10.65 |
| 03/15/2014 | 41.5 | $ 9.64 | $400.00 | | | | $ 7.23 | $ 7.23 |
| 03/29/2014 | 49.25 | $ 8.12 | $400.00 | | | | $ 37.56 | $ 37.56 |
| 04/05/2014 | 47.75 | $ 8.38 | $400.00 | | | | $ 32.46 | $ 32.46 |
| 04/12/2014 | 50.25 | $ 7.96 | $400.00 | | | | $ 41.00 | $ 41.00 |
| 04/19/2014 | 43.25 | $ 9.25 | $400.00 | | | | $ 15.03 | $ 15.03 |
| 05/03/2014 | 48.25 | $ 8.29 | $400.00 | | | | $ 34.20 | $ 34.20 |
| 05/10/2014 | 47.45 | $ 8.43 | $400.00 | | | | $ 31.40 | $ 31.40 |
| 05/24/2014 | 52.5 | $ 7.62 | $400.00 | | | | $ 50.00 | $ 50.00 |
| 05/31/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 06/07/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 06/14/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 06/21/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 06/28/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 07/05/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 07/12/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 07/19/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 07/26/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/02/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/09/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/16/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/23/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 08/30/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 09/06/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 09/13/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 09/20/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 09/27/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 10/04/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| 10/11/2014 | 46.57 | $ 8.59 | $400.00 | | | | $ 28.22 | $ 28.22 |
| | | | | | | | | $ 2,023.93 |

$0.00   $2,023.93   Form WH-55
Rev. Oct. 1987
A -

Compliance Officer

A-10-2

Wage Transcription and Computation Worksheet

# U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

Taste of Brasil                                              05/11/2015
Establishment                                              Date

Veronica Valle
Employee

Server
Occupation

| Year and Workweek Ending | Total Hours Wkd | Rate of Pay per Hour | | | | | OT Due | | Amount Due Employee |
|---|---|---|---|---|---|---|---|---|---|
| 03/28/2015 | 43.25 | $ 9.00 | | | | | $ 14.63 | $ | 14.63 |
| 04/11/2015 | 43.35 | $ 9.00 | | | | | $ 15.08 | $ | 15.08 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | $ | 29.70 |

Compliance Officer  _TD_

Form WH-55
Rev. Oct. 1987
A -

A-11

## INDEX OF B EXHIBITS

| | | | |
|---|---|---|---|
| B-1 | | Prep. Food | Establishment Interview |
| B-2 | Marcus Chacon | Prep cook | Establishment Interview |
| B-3 | | Server | Phone Interview |
| B-4 | | Server | Establishment Interview |
| B-5 | | Cashier | Establishment Interview |
| B-6 | | Owner | Establishment Interview |
| B-7 | | Dishwasher | Establishment Interview |
| B-8 | | Prep. Salads | Establishment Interview |
| B-9 | | Cook | Establishment Interview |
| B-10 | | Server | Phone Interview |
| B-11 | | Server | Establishment Interview |

Employee Personal Interview Statement

U. S. Department of Labor
Employment Standards of Administration
Wage and Hour Division



This report is authorized by Section 11 of the Fair Labor Standards Act and other Wage-Hour laws. While you are not required to respond, your cooperation is needed for the Wage Hour Division to make a determination of compliance under the applicable Act(s). Your identity will be kept confidential to the maximum extent possible under existing law.

Mr.
Miss
Mrs.
I, Ms. _____ , of _____

4/23/15
(Date)

Establishment
(Place of interview)

(Name of employee)                          (Number, street, apt. no.)

UXBRA                              MA
(City or town)                     (State)          (Zip code)

1161
(Telephone number)

(Driver's license number - Do not request
if number is same as Social Security number)

_48 years of age, (was/have been) employed by Taste o Brazil
(Establishment)

414 Maia ST  uxebra  for the approximate period from 6 anos to Present
(Location of establishment)                                    (If still employed state "present")

as Prepar a comida
(Occupation or description of duties)

Statement:  Eu preparo a comida, eu coco
a comida para encima, eu trabalho de
7 Am a 10:20 pm 6 dias a la semana.
eu nomalmate trabalho estas horas.
nos ultimos 2 anos este é o meu
horario. Eu ganho 850 pa semana.
Eu trabalho 92-93 horas por semana.
eu marco cartão. eu sou pago por
cash. Hugo paga a mim. eu não
estou encarregade de trabalhadores.
Terca Feira é o meu dia de Descanço.
Eu trabelho mais Horas aqui. Jason
1200 to 10:30  6 dias = 3 anos.
JOse - churasqueiro 8:30 to 3 pm 6 dias.
Todos os trabalhadas trabalan 6 dias. O schoker
é velho. eu não sou pago por overtime.
Não menos de 18 anos trabalhã aqui.
mesmas - 10:00 to 3 pm octra 3 pm to 10:30 pm.
Tres meseres - carol, Veronica, E celema.

(if additional space is needed continue on reverse)

Form WH-31 (Rev. Jan. 1989)
B-

B-1-a

Toda a gente marca cartão.

Eu sei em uma e se verdade

& _____

utrrssi ___

**Personal Interview Statement**

**U.S. Department of Labor**
Wage and Hour Division


U.S. Wage and Hour Division

This report is authorized by Section 11 of Fair Labor Standards Act and other Wage-Hour laws. While you are not required to respond, your cooperation is needed for the Wage Hour Division to make a determination of compliance under the applicable Act(s). Your identity will be kept confidential to the maximum extent possible under existing law.

Mr.
Miss
Mrs.

5/29/2015
(Date)

EsTaBlismenT
(Place of interview)

I, Ms. _Marcus cHacon_, of _____
(Name of employee)                    (Number, street, apt. no.)

_uoburn_          _MA_          _____
(City or town)        State              Zip Code

_8250_
(Telephone number)      (Driver's licence number - Do not request if number is same as Social Security Number)

_48_ years of age, (was/have been employed by) _Taste g Brazil_
(Establishment)

_414 main ST, woBurn_ for the approximate period from _6 men_ to _Present_
(Location of establishment)                                        (if still employed state "present")

as _____ _Pref cook_
(Occupation or description of duties)

Statement: I worh in the grill, and I PrePare the chicken. I'm Paid By Hour aT $9.00 I always receive $9.00 Per Hour. My suPervisor are Hugo and jesse. I work 5 days a week, I come in aT 12:00 To 10:00pm. I work 10 Hours a day. now That jesse is sick I work 50 Hours when he is not sick I work 40 Hours a week. I'm Paid By cash, I sign a paper when I receive my cash. LasT year I also sign a notePack. I'm Paid $9.00 Per Hour for All Hours I work, I

(If additional space is needed continue on reverse)      Form WH-31 (Rev. May 2010)

B-2

Don't realize overtime. Marlene
no supervise - solo covina. if
I need a day off or come in
early I will contact Hugo or
jesse, I normaly Take 20 minutes
lunch Break. Jesse makes the
oders for more supplies. There is
no minas that work. I work
with jose. I think jose works
more hours than me. I think
marlene and Teeny, case or work
The most hours. I have Read
above and it is True × M.H. Gif
witness: [signature]



**Employee Personal Interview Statement**    **U.S. Department Of Labor**
                                             **Wage & Hour Division**

This report is authorized by Section 11 of the Fair Labor Standards Act and other Wage and Hour
laws. While you are not required to respond, your cooperation is needed for the Wage and Hour
Division to make a determination of compliance under applicable Act(s).
Your identity will be kept confidential to the maximum extent possible under existing law.

DATE                                         May 28, 2015
MOBILE NUMBER                                ⬛-5577
OTHER NUMBER
ESTABLISHMENT                                Taste of Brazil
EMPLOYMENT PERIOD                            August 2013 to Nov 2013


⬛⬛⬛

**Palm Coast, FL 32164**


-------------------------------------------------------------------------------------
--
Establishment Interview/ **Phone Interview**/ District Office Interview/ Translated

**YEARS OF AGE:    +18              EMPLOYED AS: Bartender/cashier/server**

I worked for Taste of Brazil for only three Months, I did everything, I did cashier, clean
tables, I processed credit cards from the customers daily.  Jesse was my supervisor. I was
paid in cash. I was paid $3.00 per hour plus tips; I did around $200.00 in tips a week.
When I first started I worked around 70 hours a week, and towards the end I work less
hours. I worked with Jackeline, Luciana, Marlene, Renato, and Jose. Marlene worked in
the kitchen; Renato and Jason were her assistants. I would come in at around 10:00 Am
to about 5:30 PM or to close at about to about 11:00PM. When I first started I work 6
days a week for about a month, then I started to work 5 days a week from about 10:00
AM to about 5:00 PM for about 60 hours a week. I was always paid in cash; I was always
paid $3.00 per hour in cash by Hugo. I recorded hours in the machine; Tips at the end of
the day were divided between all servers. Credit card tips were deducted 9% for the
employer. I was never paid for overtime. Jesse was my supervisor, Marlene, she was a
cook, I don't know if she did any administrative work since I worked upstairs, she had
two assistants, Renato and Jason. Hugo paid me weekly, Hugo was supposed to pay me
weekly as we agreed, but he was always busy and he used to pay the employees late. At
least he paid every two weeks in my case, sometimes in three weeks. This was how I
ended up leaving the job, with still 3 weeks unpaid till now. Hugo did the schedule and
Hugo placed all the orders. I was not paid for a total of three weeks, from Nov 10, 2013
to Nov 28, 2013. I worked 34 hours one week, 32 second week, and 27 hours the third
week. - I was not paid for these weeks. There was no minors working at Taste of Brazil
while I was there that I know of.



1

Employee Personal Interview Statement

U. S. Department of Labor
Employment Standards of Administration
Wage and Hour Division



This report is authorized by Section 11 of the Fair Labor Standards Act and other Wage-Hour laws. While you are not required to respond, your cooperation is needed for the Wage Hour Division to make a determination of compliance under the applicable Act(s). Your identity will be kept confidential to the maximum extent possible under existing law.

Mr.
Miss
Mrs.
I, Ms. _____
   (Name of employee)

(Date)

NO OT

CASH

EsTar
_____
(Number, street, apt. no.)

WoBURn                              MA
(City or town)                     (State)

1467
(Telephone number)                 (Driver's license number - t
                                    if number is same as Social Security number)

+18 years of age, (was/have been) employed by Taste of Brazil,
(Establishment)

414 Main St, Woburn, MA for the approximate period from 1/2021 to Present
(Location of establishment)                                        (If still employed
                                                                    state "present")

as _____server_____
            (Occupation or description of duties)

Statement: I'm a server, clean Tables, serve clients. everyday I Process credit Debit cards from clients. I clock in and out everyday. I come in at 10:00 Am and I leave at 4 Pm 4 Days a week. I work around 25-30 Hours. I'm Paid By cash, I Recive 9 Per Hour. I'm Paid weekly. I'm Paid on sunday or monday. I'm Paid By Hugo, yo nunca Ha Trabajado mas de 40. I never worked more than 40 Hours a week. All servers clock in and out. All servers use credit cards from The costumers. I worked with Jackie, 5 Days a week 6 Hrs a week. no minors work Here. I'm Paid for All Hours That I work. I Have Read above and it's True.

witness: _____

(If additional space is needed continue on reverse)

Form WH-31 (Rev. Jan. 1989)
B-

8-4

**Employee Personal Interview Statement**     U.S. Department Of Labor
                                               **Wage & Hour Division**

This report is authorized by Section 11 of the Fair Labor Standards Act and other Wage and Hour laws. While you are not required to respond, your cooperation is needed for the Wage and Hour Division to make a determination of compliance under applicable Act(s). Your identity will be kept confidential to the maximum extent possible under existing law.

DATE                                    May 28, 2015
MOBILE NUMBER                           _____ 1283
OTHER NUMBER
ESTABLISHMENT                           Taste of Brazil
EMPLOYMENT PERIOD                       Aug 2014 to 3/24/2015

Ashland, MA 01801

---------------------------------------------------------------------------
Establishment Interview/ *Phone Interview*/ District Office Interview/ Translated
**YEARS OF AGE:    +18**              **EMPLOYED AS: Bartender/ Cashier**

I was a bartender, waitress, and server. I process credit cards daily when I worked at the restaurant. I did not supervise any employee. My supervisor was Jesse or Hugo. I worked 40 hours sometimes more. I left in September 2014 to December 2014, in Jan 2015 I returned to work to Taste of Brazil. In August 2014 I worked around 50 hours a week, I was paid in cash, I was paid $8 per hour, and I was paid by Hugo. I signed a notebook when I receive my cash. I did not receive any overtime payments. I returned to work in January 2015, I worked 40-50 hours a week, and I receive 8.00 per hour, and I signed a book, it was a different book from 2014. I was always paid 8.00 per hour. Marlene was a cook, she worked the most hours, and Jose Ramirez also worked a lot of hours. Jason is the dishwasher, and he preps the food. Me, Veronica, and Carolina work the most hours in the front. Jackeline also worked there, she worked in afternoon. I never received tips. Jackeline was the only one that received tips; there was no minors that worked there, that I know of. I had 15 minutes for lunch break. Everybody had 15 minutes for lunch break. I clock in and out since I return to work in January 2015, I don't remember if I clock in and out in 2014.

I recently signed a book with hours that I worked since January 2015 to April 2015. Hugo called me and told to the Department of labor that I was receiving $9 per hour, and he made me sign the book. Before what I had sign was $8.00 per hour, now he made me sign a book with me receiving $9.00 per hour. He called me to go in and sign the book. Rosa Portillo also worked there, and she received $7.00 per hour, she was going in the restaurant to sign the book as well.


I have the read the above statement and it is true to the best of by ability.

1

X:_____     Date:_____

Witness:_____     Date: 5/28/15

Personal Interview Statement

**U.S. Department of Labor**
Wage and Hour Division


U.S. Wage and Hour Division

This report is authorized by Section 11 of Fair Labor Standards Act and other Wage-Hour laws. While you are not required to respond, your cooperation is needed for the Wage Hour Division to make a determination of compliance under the applicable Act(s). Your identity will be kept confidential to the maximum extent possible under existing law.

5/29/15
(Date)

Mr.
Miss
Mrs.

_Establisment_
(Place of interview)

I, Ms. _Hugo mercies_ , of _____
(Name of employee)                          (Number, street, apt. no.)

_woBurn_                      _MA_        _01801_
(City or town)                State              Zip Code

_4830_
(Telephone number)        (Driver's licence number - Do not request if number is same as Social Security Number)

_+18_ years of age, (was/have been employed by) _Tarta y Brasil_
(Establishment)

_414 main st, woburn_ for the approximate period from _Dec 2006_ to _Present_
(Location of establishment)                                                    (if still employed state "present")

as _____ _President / owner_ _____
(Occupation or description of duties)

Statement: _The restourant open 2007, for the cost_
_2 year I Had about 2-3 full time employees._
_me or jesse hires employees, I set the_
_employes roote y pay. All employees_
_clock In and out, but the time records_
_were not saved passed 2 months. Employees_
_are paid in cash and by check. cash records_
_I only Have for 2015, I don't Have for_
_2013 and 2014. when I paid in cash_
_employes I paid them in same week._
_Employes are paid By Hourly and salary_
_my salary employees are Marlene, orosa,_
_Jesse, me, Brotza, jason, and jackline._

me and my Father 2 plus us as.
I Do the schedule of HOURS. If An employee
needs a day off they come to me. I set
their rate of Pay. Me and my father
places the orders. Me and my father
are in charge of Restaurant. Jason - salary
He is a Dishwasher, and he stocks, and keeps
the place clear. Marlene - she cooks - she
Don't Do schedule - she spends all her time
cooking. Marlene Dues not Do any
managerial Jutdes. Rosa - she did the salads,
jactela - she did cashier and serves.
servers split the tips. michelle and
katlin were on tips plus they receive
$3-4 per hour, everybody else was
Paid By the hour. no minors under
age 18 years old have worked.
I have read above and it is
True + [signature]   waitress + [signature]

Employee Personal Interview Statement



U.S. Department of Labor
Employment Standards of Administration
Wage and Hour Division

This report is authorized by Section 11 of the Fair Labor Standards Act and other Wage-Hour laws. While you are not required to respond, your cooperation is needed for the Wage Hour Division to make a determination of compliance under the applicable Act(s). Your identity will be kept confidential to the maximum extent possible under existing law.

4/23/2015

Mr.
Miss
Mrs.
I, Ms. _____, of _____,
(Number, street, apt. no.)

Woburn _____, MA
(City or town)                    (State)          (Zip code)

_____ 1063
(Telephone number)                    (Driver's license number - Do not request if name is same as Social Security number)

+18 years of age, (was/have been) employed by _Taste o Brazil_,
(Establishment)

414 Main St, Woburn for the approximate period from 4 mos to Present
(Location of establishment)                                            (If still employed state "present")

as _Dishwasher_
(Occupation or description of duties)

Statement: Yo ayo Dishwasher, Preparación de carne y ayudo la cocinera lleva a llevar los cosas para arriba. Yo trabajo 6 Dias a la semana. 11:00 a 7 Pm es mi Horario. Marco me Replaca a las 7pm. Yo marco Tarjeta de mis Horas. Yo soy Pago en cheque. Los Horas extras yo recibo en cash. Yo Recibo a $9 pr Hora. Yo trabajo con 60 Horas a semana. Yo No so Pago pr overtime. Yo salgo a 10:30pm 6 Dias. Yo soy Pago pr Todas Horas que yo trabajo $6 en cheque y $3 en cash. Hugo me paga. Mi superviso es Hugo. Cuando trabaja mas Horas. Jose 8:30 a 2-7pm 6 Dias, Carolina - mesera - 8:30 a 5pm 5 Dias 2 mos (lunes, martes) Veronica - 8:30 - 5pm 5 Dias 1 año. No menos trabajan aquí. Yo Hoy cedo arriba. y es Verdad, _____

mi Tress: _____

(If additional space is needed continue on reverse)

Form WH-31 (Rev. Jan. 1989)
B-

**April 23, 2015**



1063

Woburn, MA

4 Years to Present

I'm the dishwasher, I prepare the food, and I help the cook Marlene taking the plates upstairs. I work 6 days a week, from 11:00 to 7 PM is my schedule. Marco replaces me at 7 PM. I clock in for all my hours I'm paid by check and the extra hours I get paid in cash. I receive at $9.00 per hour. I work around 60 hours a week. I'm not paid for overtime. I leave at 10:30 PM 6 days a week. I'm paid for all hours that I work 40 hours in a check and 20 hours in cash. Hugo pays me. My supervisor is Hugo. Marlene works the most hours. Jose from 08:30 to 2-3 PM six days a week. Carolina –server -830 to 5 PM, 5 days a week (2 years) (Monday and Tuesday) Veronica 8:30 – 5 PM five days a week- one year. There is no minors that work here.

I have the read the above statement and it is true to the best of by ability.



**Employee Personal Interview Statement**    **U.S. Department Of Labor**
                                                **Wage & Hour Division**

This report is authorized by Section 11 of the Fair Labor Standards Act and other Wage and Hour laws. While you are not required to respond, your cooperation is needed for the Wage and Hour Division to make a determination of compliance under applicable Act(s).
Your identity will be kept confidential to the maximum extent possible under existing law.

DATE                                 May 28, 2015
MOBILE NUMBER                        [         ]7485
OTHER NUMBER
ESTABLISHMENT                        Taste of Brazil
EMPLOYMENT PERIOD                    January 2015 to April 2015 (Month ago)


[          ]

**Woburn, MA 01803**

---------------------------------------------------------------------------------

Establishment Interview/ *Phone Interview*/ District Office Interview/ Translated

**YEARS OF AGE:    +18**                    **EMPLOYED AS: Prep. Salads**

I prep salads, I work 8 am to 4 pm 5 days a week, and I worked around 37-40 hours a week. I started on Saturday; I had Thursday and Sunday off. I receive $360.00 salary per week. I always receive $360.00 per week in cash. When I work less I was paid less. I clock in and out. I never receive overtime payments. My supervisor was Hugo, and Jesse. When I receive my payment I sign a notebook "Libreta." I took a 15 minutes lunch break. Marlene was the cook. My supervisor was Hugo, but when he was not there then I would consult with Marlene, Marlene did not directly supervise me, if I needed a day off I would consult Hugo, when Hugo is not at the restaurant then I check with Marlene, my pay is dictated by Hugo, Marlene works the most hours.  There was not minors that worked at the restaurant that I know of.

I have the read the above statement and it is true to the best of by ability.



X:_____        Date:_____


Witness:_____        Date: 5/28/15

1

B-8

Employee Personal Interview Statement

U.S. Department of Labor
Employment Standards of Administration
Wage and Hour Division



This report is authorized by Section 11 of the Fair Labor Standards Act and other Wage-Hour laws. While you are not required to respond, your cooperation is needed for the Wage Hour Division to make a determination of compliance under the applicable Act(s). Your identity will be kept confidential to the maximum extent possible under existing law.

4/23/2015
(Date)

Mr.
Miss
Mrs.
I, Ms.

_Establisment_
(Place of interview)

(Number, street, apt. no.)

uchoovn
(City or town)

MO
(State)

(Zip code)

12 92
(Telephone number)

(Driver's license number - Do not request
if number is same as Social Security number)

+18 years of age, (was/have been) employed by _Taste o Brazil_
(Establishment)

414 uablee st (Location of establishment) for the approximate period from _3 amos_ to _Present_
(If still employed state "present")

as _cook_
(Occupation or description of duties)

Statement: _Yo soy cocinera (cleaningsquero, so estoy siempre arriba cocinando, yo no soperviso Trabajadores, yo Trabajo 6 Dias a la Semana yo entro a las 9 Am TO 9 Pm (uanes y Sabado) lo estoy 4 Dias 9 Am a 3:30 Pm Lunes yo no Trabajo. Yo gano como 10 a la Hora, yo Trabajo como 55 Horas a la Semana, las primeras 40 Horas en cheque y los otras en cash. Me pagan, yo ciempre marco Tarjeta por las Horas que yo Trabajo. las meseras usan Tarjetas de credito Todos los dias que Trabajan. Ace 8 meses atras yo Trabajaba mas Horas, yo Trabajo unas 70-80 Horas ace 8 meses. Ace 8 meses atras B 750 (300 in cheque y 450 in cash) y yo no marcaba Tarjeta antes. los demas marcan Tarjeta yo hey ido arriba y as urdades yo no soy pago yo overtime._

(If additional space is needed continue on reverse)                    Jan. 1989)

2000 471-285/39672

**April 23, 2015**

████████████████

██████
**Woburn, MA**

████ 1161

3 Years to Present

I'm the churrasqueiro, and cook. I'm always upstairs cooking, I do not supervise any employee. I work 6 days a week. I come in at 0900 AM to 9 PM (Friday and Sat), the other four days I work from 9 AM to 3:30PM. Monday I do not work.  I receive around $10.00 per hour. I work around 55 hours a week. The first 40 hours I get paid in check, and the other hours I'm paid in cash. Hugo pays me. I always record my hours in the time card. The servers all process credit cards every day of work. Since around 8 months ago I worked more hours, I worked around 70-80 hours a week. 8 months ago I receive $750, 00 (300.00) in check, and 450 in cash. I did not punch in the time card before. Everybody else records their time in the time cards, I'm not paid for overtime.

I have the read the above statement and it is true to the best of by ability.

**Employee Personal Interview Statement**   **U.S. Department Of Labor**
**Wage & Hour Division**

This report is authorized by Section 11 of the Fair Labor Standards Act and other Wage and Hour laws. While you are not required to respond, your cooperation is needed for the Wage and Hour Division to make a determination of compliance under applicable Act(s).
Your identity will be kept confidential to the maximum extent possible under existing law.

DATE                                      April 22, 2015
MOBILE NUMBER                  �(gray)   4529
OTHER NUMBER
ESTABLISHMENT                    Tudo na Brasa
EMPLOYMENT PERIOD           4/1/2011 to September 2014

**Woburn, MA 01801**

---

Establishment Interview/ *Phone Interview*/ District Office Interview/ Translated

**YEARS OF AGE:    +18**                **EMPLOYED AS: Server, Bartender, Waitress**

I did everything, waitress, bartender, hostesses, and server. I work an average of 70 hours a week, I was paid weekly, I was paid by check, I also received tips. I was paid $10.00 per hour in check, I received around $300 a week in tips. Around $50.00 a day in tips. After 40 hours a week I was not paid at all. I recorded my hours in a machine; there is schedule in the wall in the top of the machine. The kitchen is in the basement, next to the door of the office is the schedule. The owner is always there, Jesse Moraes, and son is Hugo Moraes. Total of 7 employees work there, currently I think there is 6 employees that work there. All employees work over the 40 hours a week. I normally come in 10:00 AM to close at around 11:00 PM to 11:59 PM at night, six days a week. My day off was on Sundays. Employer does not have any other establishment. I had 15 minutes of break when we were not busy. I normally work around 70 hours a week, I was never paid for overtime. I was only paid up to the 40 hours a week. I did not supervise any employees, I could not hire or fire employees, Employer serves alcohol, and they accept credit cards. I processed credit cards every day; I did the report at the end of the day. I believe a day he did around $4,000.00 sales a day. Sometimes he holds the tips money from the employees. The barbecue guy works at least 70 hours a week. Employer has around ~~140~~ *90* chairs for the customers to sit. My supervisor was the owner Jesse Moraes, and Hugo Moraes, there is no minors under the age of 18 that worked there. I did process credit/debit card daily for the time I worked for the employer.

Other employees that worked there and worked over the 40 hours a week are Michele Lima – 70 hours a week- cashier/server, she worked 2012 to 2014. (▇gray) 1147.

1

*B-10-a*

Renato Mendes – 70- 80 hours a week – barbecue, he work with me and stopped working around August 2014- _____ -3334, and Fernanda DaSilva _____ 5577.

For 17 weeks from around June 2014 to about 9/2014, I was not paid for my hours worked; I was paid nothing for that time. I did also work around 70 hours a week and I did clock in and out for this time.

I have the read the above statement and it is true to the best of by ability.

Date: 4/27/2015

Witness: _____    Date: 4/22/20 15

2

4/27/2015.

- and They Took 9% of Tips every week, paid on credit card all This ~~worked~~ worked Time...

RECORD
APR 30 2015
WAGE HOUR DIVISION

- and Jesse James MORAES, The Boss... very Rude person, during The time I worked There FRONT of customers, and mistreats employees...

- They keep holding my W2

B-10C

Personal Interview Statement          **U.S. Department of Labor**
                                      Wage and Hour Division



This report is authorized by Section 11 of Fair Labor Standards Act and other Wage-Hour laws. While you are not required to respond, your cooperation is needed for the Wage Hour Division to make a determination of compliance under the applicable Act(s). Your identity will be kept confidential to the maximum extent possible under existing law.

Mr.
Miss                                  5/29/2015
Mrs.                                  (Date)
I, Ms. ▓▓▓▓▓▓▓ , of       ESTaBLISMENT
        (Name of employee)            (Place of interview)
                           ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
                                      (Number, street, apt. no.)

woburn                     MA
(City or town)             State                        Zip Code

▓▓▓▓  9234
(Telephone number)         (Driver's licence number - Do not request if number is same as Social
                           Security Number)

+18  years of age, (was/have been employed by)  TasTe of Brazil
                                                          (Establishment)

414 Main ST woburn  for the approximate period from  11/2014  to  Present
(Location of establishment)                                    (if still employed
                                                                state "present")

as                    Server
                  (Occupation or description of duties)

Statement:  I Serve Tables, clem Tables, I
Process credit cards, Hugo and Madsa
are my superisors, I'm paid By
Hour at $9.00. I don'T receive Tips.
The Tips go to Jesse. I always Receive
$9.00 pe Hour. when Jesse is not
sick I work 39-40 Hours a week. when
He is sick or goes on vacation I work
43-44 Hours a week. last year I
Did not work overtime. marlene
works The most Hours — she cooks —
she does not supervise any Employee.
There 3 People in kitchen, marlene, Josan, Cray

(If additional space is needed continue on reverse)    Form WH-31 (Rev. May 2010)

Case 1:21-cr-10175-ADB   Document 291   Filed 03/21/25   Page 84 of 274

If I need a clay up I will
contact jesie or Hugo. There
is no miner that work. when
I recive my cash I spend, I
started to sign for my cash in
January 2015. I worked with
carol, cecuana, and, emy. I Have
Read above and it is True

x [redacted]

Witness _____

## INDEX OF C EXHIBITS

C-1    2014 Gross Sales

C-2    2013 Gross Sales

C-3    2012 Gross Sales

C-4    Quarterly sales from January 2012 to December 2013

D-5    Company EIN #

D-6    Company information from Secretary of the Commonwealth of Massachusetts

6:33 PM

04/27/15

Accrual Basis

# Tudo Na Brasa, Inc
# Profit & Loss
### January through December 2014

|  | Jan - Dec 14 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Sales | 631,345.26 |
| **Total Income** | 631,345.26 |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 336,122.15 |
| **Total COGS** | 336,122.15 |
| **Gross Profit** | 295,223.11 |
| **Expense** | |
| Advertising | 585.00 |
| Automobile Expense | 72.75 |
| Bank Service Charges | 2,931.07 |
| Cleaning Expenses | 1,100.00 |
| Food & Entertainment | 6,399.79 |
| Insurance | 6,678.89 |
| Licenses and Permits | 4,164.52 |
| Office Expenses | 340.95 |
| Professional Fees | 3,673.00 |
| Rent | 11,826.00 |
| Repairs | 240.00 |
| Taxes | 39,011.82 |
| Telephone | 300.78 |
| Uniforms | 200.00 |
| Utilities | 58,038.95 |
| xxxxxxxxxxxx | 25,076.93 |
| **Total Expense** | 160,640.45 |
| **Net Ordinary Income** | 134,582.66 |
| **Net Income** | 134,582.66 |

E-1

6:32 PM

04/27/15

Accrual Basis

# Tudo Na Brasa, Inc
## Profit & Loss
### January through December 2013

|  | Jan - Dec 13 |
|---|---|
| **Ordinary Income/Expense** |  |
| **Income** |  |
| Sales | 649,189.01 |
| **Total Income** | 649,189.01 |
| **Cost of Goods Sold** |  |
| Cost of Goods Sold | 393,766.37 |
| **Total COGS** | 393,766.37 |
| **Gross Profit** | 255,422.64 |
| **Expense** |  |
| Automobile Expense | 2,736.74 |
| Bank Service Charges | 2,264.93 |
| Depreciation Expense | 1,875.00 |
| Food & Entertainment | 849.12 |
| Insurance | 6,966.49 |
| Licenses and Permits | 3,515.33 |
| Medical Expense | 147.46 |
| Membership Dues | 83.00 |
| Office Expenses | 849.47 |
| Office Suppies | 237.94 |
| Officer's Compensation | 35,672.00 |
| Postage and Delivery | 23.30 |
| Professional Fees | 5,846.64 |
| Rent | 29,340.00 |
| Repairs | 505.75 |
| Salaries and Wages | 52,677.09 |
| Taxes | 41,928.36 |
| Telephone | 446.81 |
| Travel | 47.11 |
| Utilities | 29,831.69 |
| **Total Expense** | 215,844.23 |
| **Net Ordinary Income** | 39,578.41 |
| **Net Income** | 39,578.41 |

6:32 PM

04/27/15

Accrual Basis

# Tudo Na Brasa, Inc
# Profit & Loss
### January through December 2012

|  | Jan - Dec 12 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Sales | 490,234.11 |
| **Total Income** | 490,234.11 |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 347,816.35 |
| **Total COGS** | 347,816.35 |
| **Gross Profit** | 142,417.76 |
| **Expense** | |
| Advertising | 273.08 |
| Automobile Expense | 827.52 |
| Bank Service Charges | 5,437.66 |
| Cleaning Expenses | 175.00 |
| Credit Card Machine | 2,884.06 |
| Donations | 195.00 |
| Food & Entertainment | 5,687.51 |
| Garbage And Disposal | 304.00 |
| Insurance | 3,984.20 |
| Interest Expense | 4,914.00 |
| Licenses and Permits | 3,588.57 |
| Membership Dues | 53.00 |
| Office Expenses | 5,618.14 |
| Professional Fees | 3,910.63 |
| Rent | 13,800.00 |
| Repairs | 828.13 |
| Taxes | 35,966.76 |
| Telephone | 7,356.91 |
| Travel | 2,112.06 |
| Utilities | 32,266.34 |
| **Total Expense** | 130,182.57 |
| **Net Ordinary Income** | 12,235.19 |
| **Net Income** | 12,235.19 |

1:27 PM

05/01/15

Accrual Basis

# Tudo Na Brasa, Inc
# Profit & Loss
### January through March 2012

|  | Jan - Mar 12 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Sales | 108,734.99 |
| **Total Income** | 108,734.99 |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 72,670.59 |
| **Total COGS** | 72,670.59 |
| **Gross Profit** | 36,064.40 |
| **Expense** | |
| Advertising | 243.00 |
| Automobile Expense | 167.64 |
| Bank Service Charges | 0.81 |
| Donations | 195.00 |
| **Food & Entertainment** | |
| Meals | 2,420.05 |
| **Total Food & Entertainment** | 2,420.05 |
| Insurance | 661.26 |
| Licenses and Permits | 373.50 |
| Membership Dues | 53.00 |
| Office Expenses | 608.60 |
| **Professional Fees** | |
| Accounting | 462.00 |
| Services | 500.00 |
| **Total Professional Fees** | 962.00 |
| Rent | 4,600.00 |
| **Taxes** | |
| Meals Tax | 8,601.42 |
| State | 244.00 |
| **Total Taxes** | 8,845.42 |
| Telephone | 265.69 |
| **Utilities** | |
| Cable and Internet | 956.36 |
| Gas and Electric | 3,379.83 |
| **Total Utilities** | 4,336.19 |
| **Total Expense** | 23,732.16 |
| **Net Ordinary Income** | 12,332.24 |
| **Net Income** | **12,332.24** |

C-3

1:30 PM

05/01/15

Accrual Basis

# Tudo Na Brasa, Inc
# Profit & Loss
### April through June 2012

|  | Apr - Jun 12 |
|---|---:|
| **Ordinary Income/Expense** | |
| Income | |
| Sales | 120,743.64 |
| **Total Income** | 120,743.64 |
| Cost of Goods Sold | |
| Cost of Goods Sold | 71,149.68 |
| **Total COGS** | 71,149.68 |
| **Gross Profit** | 49,593.96 |
| Expense | |
| Automobile Expense | 108.45 |
| Bank Service Charges | 274.95 |
| Cleaning Expenses | 175.00 |
| Credit Card Machine | |
| Credit Card Fees | 474.61 |
| **Total Credit Card Machine** | 474.61 |
| Food & Entertainment | |
| Meals | 1,438.20 |
| **Total Food & Entertainment** | 1,438.20 |
| Garbage And Disposal | 304.00 |
| Insurance | 1,000.00 |
| Licenses and Permits | 131.00 |
| Office Expenses | 777.02 |
| Professional Fees | |
| Accounting | 462.00 |
| **Total Professional Fees** | 462.00 |
| Rent | 6,900.00 |
| Repairs | |
| Building Repairs | 478.13 |
| **Total Repairs** | 478.13 |
| Taxes | |
| Meals Tax | 2,577.30 |
| State | 5,214.61 |
| **Total Taxes** | 7,791.91 |
| Telephone | 222.32 |
| Utilities | |
| Cable and Internet | 1,749.95 |
| Gas and Electric | 5,278.89 |
| **Total Utilities** | 7,028.84 |
| **Total Expense** | 27,566.43 |
| **Net Ordinary Income** | 22,027.53 |
| **Net Income** | **22,027.53** |

C-4-a

1:32 PM

05/01/15

Accrual Basis

# Tudo Na Brasa, Inc
# Profit & Loss
### July through September 2012

| | Jul - Sep 12 |
|---|---|
| **Ordinary Income/Expense** | |
| Income | |
|    Sales | 122,688.68 |
| **Total Income** | 122,688.68 |
| Cost of Goods Sold | |
|    Cost of Goods Sold | 85,233.83 |
| **Total COGS** | 85,233.83 |
| **Gross Profit** | 37,454.85 |
| Expense | |
|    Advertising | 30.08 |
|    Automobile Expense | 283.53 |
|    Bank Service Charges | 5,018.95 |
|    Food & Entertainment | |
|       Meals | 611.23 |
|    **Total Food & Entertainment** | 611.23 |
|    Insurance | 2,037.64 |
|    Office Expenses | 960.58 |
|    Professional Fees | |
|       Accounting | 462.00 |
|    **Total Professional Fees** | 462.00 |
|    Rent | 2,300.00 |
|    Taxes | |
|       State | 7,102.17 |
|    **Total Taxes** | 7,102.17 |
|    Telephone | 4,903.72 |
|    Utilities | |
|       Cable and Internet | 762.00 |
|       Gas and Electric | 12,651.55 |
|    **Total Utilities** | 13,413.55 |
| **Total Expense** | 37,123.45 |
| **Net Ordinary Income** | 331.40 |
| **Net Income** | 331.40 |

C-4-d

1:35 PM

05/01/15

Accrual Basis

# Tudo Na Brasa, Inc
# Profit & Loss
### October through December 2012

|  | Oct - Dec 12 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Sales | 138,066.80 |
| **Total Income** | 138,066.80 |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 118,762.25 |
| **Total COGS** | 118,762.25 |
| **Gross Profit** | 19,304.55 |
| **Expense** | |
| Automobile Expense | 267.90 |
| Bank Service Charges | 142.95 |
| **Credit Card Machine** | |
| Credit Card Fees | 2,409.45 |
| **Total Credit Card Machine** | 2,409.45 |
| **Food & Entertainment** | |
| Entertainment | 20.00 |
| Meals | 1,198.03 |
| **Total Food & Entertainment** | 1,218.03 |
| Insurance | 285.30 |
| Interest Expense | 4,914.00 |
| Licenses and Permits | 3,084.07 |
| Office Expenses | 3,271.94 |
| **Professional Fees** | |
| Accounting | 462.00 |
| Services | 1,562.63 |
| **Total Professional Fees** | 2,024.63 |
| **Repairs** | |
| Building Repairs | 350.00 |
| **Total Repairs** | 350.00 |
| **Taxes** | |
| State | 12,227.26 |
| **Total Taxes** | 12,227.26 |
| Telephone | 1,965.18 |
| Travel | 2,112.06 |
| **Utilities** | |
| Cable and Internet | 2,257.48 |
| Gas and Electric | 5,230.28 |
| **Total Utilities** | 7,487.76 |
| **Total Expense** | 41,760.53 |
| **Net Ordinary Income** | -22,455.98 |
| **Net Income** | -22,455.98 |

C-Y-C

1:46 PM

05/01/15

Accrual Basis

# Tudo Na Brasa, Inc
## Profit & Loss
### January through March 2013

|  | Jan - Mar 13 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Sales | 126,915.86 |
| **Total Income** | 126,915.86 |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 87,609.69 |
| **Total COGS** | 87,609.69 |
| **Gross Profit** | 39,306.17 |
| **Expense** | |
| Automobile Expense | 1,655.03 |
| Bank Service Charges | 569.00 |
| Food & Entertainment | |
| Meals | 361.58 |
| **Total Food & Entertainment** | 361.58 |
| Insurance | 2,667.73 |
| Licenses and Permits | 534.50 |
| Medical Expense | 147.46 |
| Membership Dues | 83.00 |
| Office Expenses | 58.00 |
| Office Supplies | 237.94 |
| Professional Fees | |
| Accounting | 616.00 |
| Services | 1,499.49 |
| **Total Professional Fees** | 2,115.49 |
| Rent | 7,245.00 |
| Repairs | |
| Building Repairs | 505.75 |
| **Total Repairs** | 505.75 |
| Taxes | |
| State | 8,857.06 |
| **Total Taxes** | 8,857.06 |
| Telephone | 446.81 |
| Utilities | |
| Cable and Internet | 707.92 |
| Gas and Electric | 13,953.05 |
| **Total Utilities** | 14,660.97 |
| **Total Expense** | 40,145.32 |
| **Net Ordinary Income** | -839.15 |
| **Net Income** | **-839.15** |

1:47 PM

05/01/15

Accrual Basis

# Tudo Na Brasa, Inc
## Profit & Loss
### April through June 2013

|  | Apr - Jun 13 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Sales | 159,705.64 |
| **Total Income** | 159,705.64 |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 97,167.48 |
| **Total COGS** | 97,167.48 |
| **Gross Profit** | 62,538.16 |
| **Expense** | |
| Automobile Expense | 465.58 |
| Bank Service Charges | 75.00 |
| **Food & Entertainment** | |
| Meals | 487.54 |
| **Total Food & Entertainment** | 487.54 |
| Insurance | 649.53 |
| Licenses and Permits | 130.83 |
| Office Expenses | 474.39 |
| Postage and Delivery | 23.30 |
| **Professional Fees** | |
| Accounting | 462.00 |
| Services | 1,499.49 |
| **Total Professional Fees** | 1,961.49 |
| Rent | 7,245.00 |
| **Taxes** | |
| State | 7,593.27 |
| **Total Taxes** | 7,593.27 |
| Travel | 47.11 |
| **Utilities** | |
| Cable and Internet | 794.90 |
| Gas and Electric | 14,398.65 |
| **Total Utilities** | 15,193.55 |
| **Total Expense** | 34,346.59 |
| **Net Ordinary Income** | 28,191.57 |
| **Net Income** | 28,191.57 |

C-4E

1:48 PM

05/01/15

Accrual Basis

# Tudo Na Brasa, Inc
# Profit & Loss
### July through September 2013

|  | Jul - Sep 13 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Sales | 153,225.93 |
| **Total Income** | 153,225.93 |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 117,732.56 |
| **Total COGS** | 117,732.56 |
| **Gross Profit** | 35,493.37 |
| **Expense** | |
| Automobile Expense | 185.63 |
| Bank Service Charges | 1,440.95 |
| Insurance | 1,200.10 |
| Licenses and Permits | 100.00 |
| Office Expenses | 317.08 |
| **Professional Fees** | |
| Accounting | 462.00 |
| Services | 999.66 |
| **Total Professional Fees** | 1,461.66 |
| Rent | 7,245.00 |
| **Taxes** | |
| State | 11,074.43 |
| **Total Taxes** | 11,074.43 |
| **Utilities** | |
| Cable and Internet | 1,154.40 |
| Gas and Electric | 13,556.91 |
| **Total Utilities** | 14,711.31 |
| **Total Expense** | 37,736.16 |
| **Net Ordinary Income** | -2,242.79 |
| **Net Income** | **-2,242.79** |

C - 4F

1:48 PM

05/01/15

Accrual Basis

# Tudo Na Brasa, Inc
# Profit & Loss
### October through December 2013

|  | Oct - Dec 13 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Sales | 209,341.58 |
| **Total Income** | 209,341.58 |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 91,256.64 |
| **Total COGS** | 91,256.64 |
| **Gross Profit** | 118,084.94 |
| **Expense** | |
| Automobile Expense | 430.50 |
| Bank Service Charges | 179.98 |
| Depreciation Expense | 1,875.00 |
| Insurance | 2,449.13 |
| Licenses and Permits | 2,750.00 |
| Officer's Compensation | 35,672.00 |
| **Professional Fees** | |
| Accounting | 308.00 |
| **Total Professional Fees** | 308.00 |
| Rent | 7,605.00 |
| **Salaries and Wages** | |
| Payroll Taxes | 13,077.09 |
| Salaries and Wages - Other | 39,600.00 |
| **Total Salaries and Wages** | 52,677.09 |
| **Taxes** | |
| Meals Tax | 14,403.60 |
| **Total Taxes** | 14,403.60 |
| **Utilities** | |
| Cable and Internet | 1,360.84 |
| Gas and Electric | -16,094.98 |
| **Total Utilities** | -14,734.14 |
| **Total Expense** | 103,616.16 |
| **Net Ordinary Income** | 14,468.78 |
| **Net Income** | 14,468.78 |

C-46

Form **SS-4**
(Rev February 2006)
Department of the Treasury
Internal Revenue Service

## Application for Employer Identification Number
(For use by employers, corporations, partnerships, trusts, estates, churches,
government agencies, Indian tribal entities, certain individuals, and others.)
► See separate instructions for each line.    ► Keep a copy for your records.

OMB No. 1545-0003

EIN 20-4600588

| | | |
|---|---|---|
| **1** Legal name of entity (or individual) for whom the EIN is being requested | | |
| Tudo Na Brasa, Inc. | | |
| **2** Trade name of business (if different from name on line 1) | | **3** Executor, administrator, trustee, 'care of' name |
| **4a** Mailing address (room, apartment, suite number, and street, or P.O. box) | | **5a** Street address (if different) (Do not enter a P.O. box) |
| 414 Main Street | | |
| **4b** City    State  ZIP Code | | **5b** City    State  ZIP Code |
| Woburn    MA  01801 | | |
| **6** County and state where principal business is located | | |
| Middlesex County - Massachusetts | | |
| **7a** Name of principal officer, general partner, grantor, owner, or trustor | | **7b** SSN, ITIN, or EIN |
| Hugo Moraes | | ___-2110 |

**8a** Type of entity (check only one box)

| | |
|---|---|
| ☐ Sole proprietor (SSN) | ☐ Estate (SSN of decedent) |
| ☐ Partnership | ☐ Plan administrator (SSN) |
| ☐ Corporation (enter form number to be filed) ► | ☐ Trust (SSN of grantor) |
| ☐ Personal service corporation | ☐ National Guard   ☐ State/local government |
| ☐ Church or church-controlled organization | ☐ Farmers' cooperative   ☐ Federal government/military |
| ☐ Other nonprofit organization (specify) ► | ☐ REMIC   ☐ Indian tribal governments/enterprises |
| ☐ Other (specify) ► | Group Exemption Number (GEN) ► |

| | | | |
|---|---|---|---|
| **8b** If a corporation, name the state or foreign country (if applicable) where incorporated | State | Massachusetts | Foreign country |

**9** Reason for applying (check only one box)

| | |
|---|---|
| ☒ Started new business (specify type) ► | ☐ Banking purpose (specify purpose) ► |
| New Business | ☐ Changed type of organization (specify new type) ► |
| ☐ Hired employees (Check the box and see line 12.) | ☐ Purchased going business |
| ☐ Compliance with IRS withholding regulations | ☐ Created a trust (specify type) ► |
| ☐ Other (specify) ► | ☐ Created a pension plan (specify type) ► |

| | | |
|---|---|---|
| **10** Date business started or acquired (month, day, year). See instructions. | **11** Closing month of accounting year | |
| March/30/2006 | December | |

**12** First date wages or annuities were paid (month, day, year). **Note:** If applicant is a withholding agent, enter date income will first be paid to nonresident alien (month, day, year) . . . . . . . . . . . . . . . . . . . . . . . . . . . ► N/A

**13** Highest number of employees expected in the next 12 months (enter -0- if none).

Do you expect to have $1,000 or less in employment tax liability for the calendar year?

| | Agricultural | Household | Other |
|---|---|---|---|
| ☐ **Yes** ☐ **No.** (If you expect to pay $4,000 or less in wages, you can mark yes.) | 0 | 0 | 0 |

**14** Check **one** box that best describes the principal activity of your business.

| | | | |
|---|---|---|---|
| ☐ Construction | ☐ Rental & leasing | ☐ Transportation & warehousing | ☐ Health care & social assistance   ☐ Wholesale-agent/broker |
| ☐ Real estate | ☐ Manufacturing | ☐ Finance & insurance | ☐ Accommodation & food service   ☐ Wholesale-other ☐ Retail |
| | | | ☒ Other (specify)  Restaurant |

**15** Indicate principal line of merchandise sold, specific construction work done, products produced, or services provided.
Restaurant

**16a** Has the applicant ever applied for an employer identification number for this or any other business? . . . . . . . . . ☐ Yes   ☒ No

**Note:** If 'Yes,' please complete lines 16b and 16c.

**16b** If you checked 'Yes' on line 16a, give applicant's legal name & trade name shown on prior application, if different from line 1 or 2 above.
Legal name ►
Trade name ►

**16c** Approximate date when, and city and state where, the application was filed. Enter previous employer identification number if known.

| Approximate date when filed (month, day, year) | City and state where filed | Previous EIN |
|---|---|---|
| | | |

| | | |
|---|---|---|
| **Third Party Designee** | Complete this section **only** if you want to authorize the named individual to receive the entity's EIN and answer questions about the completion of this form. | |
| | Designee's name | Designee's telephone number (include area code) |
| | Address and ZIP code | Designee's fax number (include area code) |

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.

| | Applicant's telephone number (include area code) |
|---|---|
| Name and title (type or print clearly.) ►  Hugo Moraes - President | ___-4830 |
| | Applicant's fax number (include area code) |
| Signature ► _[signature]_    Date ►  March/30/2006 | ___-3890 |

BAA  For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.    FDIZ2901  02/08/06    Form SS-4 (Rev 2-2006)

C-5



**William Francis Galvin**
Secretary of the Commonwealth of Massachusetts



# Corporations Division

## Business Entity Summary

**ID Number: 000921620**

Request certificate    New search

**Summary for: TUDO NA BRASA, INC.**

| | |
|---|---|
| **The exact name of the Domestic Profit Corporation:** | TUDO NA BRASA, INC. |

**Entity type:** Domestic Profit Corporation

**Identification Number:** 000921620      **Old ID Number:**

**Date of Organization in Massachusetts:**
04-12-2006

**Last date certain:**

**Current Fiscal Month/Day:** 12/31

**The location of the Principal Office:**

Address: 414 MAIN STREET

City or town, State, Zip code,      WOBURN, MA  01801  USA
Country:

**The name and address of the Registered Agent:**

Name:   HUGO MORAES

Address: 414 MAIN ST.

City or town, State, Zip code,      WOBURN, MA  01801  USA
Country:

**The Officers and Directors of the Corporation:**

| Title | Individual Name | Address |
|---|---|---|
| PRESIDENT | HUGO MORAES | 6 PARK DR. WOBURN, MA 01801 USA |
| TREASURER | HUGO MORAES | 6 PARK DR. WOBURN, MA 01801 USA |
| SECRETARY | HUGO MORAES | 6 PARK DR. WOBURN, MA 01801 USA |
| DIRECTOR | HUGO MORAES | 6 PARK DR. WOBURN, MA 01801 USA |

**Business entity stock is publicly traded:** ☐

**The total number of shares and the par value, if any, of each class of stock which this business entity is authorized to issue:**

| Class of Stock | Par value per share | Total Authorized | Total issued and outstanding |
|---|---|---|---|

| | | No. of shares | Total par value | No. of shares |
|---|---|---|---|---|
| CWP | $ 0.01 | 10,000 | $ 100.00 | 0 |

| ☐ Consent | ☐ Confidential Data | ☐ Merger Allowed | ☐ Manufacturing |
|---|---|---|---|

**View filings for this business entity:**

ALL FILINGS
Administrative Dissolution
Annual Report
Application For Revival
Articles of Amendment
Articles of Charter Surrender

[View filings]

**Comments or notes associated with this business entity:**

[New search]

**INDEX OF D EXHIBITS**

D-1    Correspondence from the employer representative

D-2    Records of cash payments for 2015

D-3    Copy of hours for the C, from the employer

D-4    Reconstructive hours submitted by the company ICO former employees

D-5    Current and former employee's information

D-6    List of Major Vendors

D-7    Employer documents stating no more than 2 pay period saved by the time keeping company

D-8    Employee [ REDACTED ]    Evidence of hours worked, and non-payment of hours

D-9    Copy of schedule, and time cards during IC

D-10   IC Letter

D-11   Information submitted by the Complainant

**Dasilva, Telmo F - WHD**

| | |
|---|---|
| **From:** | Igor Gomes <igor@genesistaxhouse.com> |
| **Sent:** | Thursday, May 21, 2015 8:59 AM |
| **To:** | Dasilva, Telmo F - WHD |
| **Subject:** | RE: Tudo Na Brasa, Inc. |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Hello Mr. DaSilva,

I should be getting more information by the end of the day today.

The letter from TimeTrax, they are not willing to write it. Would a letter from Mr. Moraes stating this suffice?

As it pertains to your interviewing some employees, we would rather you do that in another place, not in the restaurant. I'd like to ask you to please do not show up in the same way you did the last time you were there.

Thank you,

Igor Gomes, E.A.
President/Accountant
Direct: ████-8250 • Cell: ████-9300 • Direct Fax: 1 (617) 507-0782
Skype: igorgomes80
igor@genesistaxhouse.com

 **GENESIS** TAX HOUSE

Florida Office (800) 460-4829 • Fax (954) 782-8252
**2255 Glades Road Suite 324-A • Boca Raton • Florida • 33433 (TEMPORARY)**
Main Office (866) 325-3829 • Fax (617) 284-2109
**304 Somervile Avenue • Somerville • Massachusetts • 02143**
This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this e-mail in error please notify the system manager at tax@genesistaxhouse.com

**From:** Dasilva, Telmo F - WHD [mailto:Dasilva.Telmo@dol.gov]
**Sent:** Tuesday, May 19, 2015 2:18 PM
**To:** Igor Gomes
**Subject:** RE: Tudo Na Brasa, Inc.

Igor,

I'm following up on the status of certain items:

Employees period of employment, start date – end date (Month/Year),
Records of cash payments for 2014, and 2013,
Listing of salaried employees current and past employees, including amounts, and job titles,
Any compensatory time logs,
List of your major vendors,
Letter from the company (TimeTrax), on how time records were not being maintained/stored,

D-1-2

Listing of Tip Employees, and <u>records of Tips earned by the employees</u> –past 24 months

For Year 2015, need information on the following employees:

Luis Silva;  record of hours, record of payments, contact info,
Jovana, Gonzalez; record of payments,
G, Rosa;  Record of payments, contact info,
Cricia Gallardo;   record of hours, and payments

Also, I'm planning on stopping by the establishment mid next week, to interview some employees, and review the records of cash payments.

Thank you

R/
Telmo F. A. Dasilva
Investigator
US Department of Labor
Wage and Hour Division
JFK Federal Bldg. Rm. 525
25 New Sudbury Street
Boston, MA 02203

Telephone (         )4717
Fax (857) 264-4717

***WARNING***

This e-mail, including attachments, is intended for the exclusive use of the person/entity addressed and may contain confidential information. If you are not the addressee(s), a representative or agent of the addressee(s), please note that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy the information and notify the sender of the error.

Telmo  Dasilva

**From:** Igor Gomes [mailto:igor@genesistaxhouse.com]
**Sent:** Thursday, May 14, 2015 5:11 PM
**To:** Dasilva, Telmo F - WHD
**Subject:** RE: Tudo Na Brasa, Inc.

Hello Mr. DaSilva,

Here are the Cash Records for the year 2015.

I'm checking with Hugo if he has any more. I believe he does. As soon as I have it, I'll submit them to you.

Thanks,

2

D-1-2

**Igor Gomes, E.A.**
President/Accountant
Direct: ████-8250 • Cell: ████9300 • Direct Fax: 1 (617) 507-0782
igor@genesistaxhouse.com

 **GENESIS** TAX HOUSE

Florida Office (800) 460-4829 • Fax (954) 782-8252
1100 S Federal Highway • Deerfield Beach • Florida • 33441
Main Office (866) 325-3829 • Fax (617) 284-2109
324 Somervile Avenue • Somerville • Massachusetts • 02143
This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this e-mail in error please notify the system manager at tax@genesistaxhouse.com

**From:** Dasilva, Telmo F - WHD [mailto:Dasilva.Telmo@dol.gov]
**Sent:** Thursday, May 14, 2015 1:09 PM
**To:** Igor Gomes
**Subject:** RE: Tudo Na Brasa, Inc.

Igor,

I did receive the ADP Payroll for FY 15, 14 & 13.

Thanks

Telmo

**From:** Igor Gomes [mailto:igor@genesistaxhouse.com]
**Sent:** Tuesday, May 12, 2015 6:57 PM
**To:** Dasilva, Telmo F - WHD
**Subject:** RE: Tudo Na Brasa, Inc.

Hello Mr. DaSilva,

Attached you will find the Payroll Records for 2014. I'll be sending more information in the morning.

Thanks,

**Igor Gomes, E.A.**
President/Accountant
Direct: ████-8250 • Cell: ████-9300 • Direct Fax: 1 (617) 507-0782
igor@genesistaxhouse.com

 **GENESIS** TAX HOUSE

Florida Office (800) 460-4829 • Fax (954) 782-8252
2255 Glades Road Ste. 324-A • Boca Raton • Florida • 33431 (TEMPORARY LOCATION)
411 SE Mizner Blvd. Ste. 72 • Boca Raton, FL 33432 (MAILING)
Main Office (866) 325-3829 • Fax (617) 284-2109
304 Somervile Avenue • Somerville • Massachusetts • 02143
This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this e-mail in error please notify the system manager at tax@genesistaxhouse.com

**From:** Dasilva, Telmo F - WHD [mailto:Dasilva.Telmo@dol.gov]
**Sent:** Monday, May 11, 2015 11:31 AM

3

12-1-C

**To:** Igor Gomes
**Subject:** RE: Tudo Na Brasa, Inc.

Igor,

Please review the letter that I gave to Mr. Moraes dated 4/23/15, I'm still missing quite a bit of items including:

Records of cash payments- for the past 24 months,
Time records that you provided have pages missing, please submit the missing pages, or re-do the report thru system and send it back to me,
Time records provided: please provided the full name of each employee to whom you provided the time records for. Example: G. Rosa  -  Full name,
Letter from the company, on how time records were not being maintained/stored,
List of employees current and for past 24 months, period of employment, addresses, job titles, phone numbers,
Payroll: hourly rates, hours, etc. for the past 24 months, including W-2's and 1099's issued for 2013, and 2014,
Listing of Major Vendors

Thank you

Telmo

R/
Telmo F. A. Dasilva
Investigator
US Department of Labor
Wage and Hour Division
JFK Federal Bldg. Rm. 525
25 New Sudbury Street
Boston, MA 02203

Telephone ████-4717
Fax (857) 264-4717

***WARNING***

This e-mail, including attachments, is intended for the exclusive use of the person/entity addressed and may contain confidential information. If you are not the addressee(s), a representative or agent of the addressee(s), please note that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy the information and notify the sender of the error.

**From:** Igor Gomes [mailto:igor@genesistaxhouse.com]
**Sent:** Friday, May 08, 2015 1:25 PM
**To:** Dasilva, Telmo F - WHD
**Subject:** RE: Tudo Na Brasa, Inc.

**Igor Gomes, E.A.**
President/Accountant

4

D-1-12

Direct: [redacted] 8250 • Cell: [redacted] 9300 • Direct Fax: 1 (617) 507-0782
Skype: igorgomes80
igor@genesistaxhouse.com

 **GENESIS**
TAX HOUSE

Florida Office (800) 460-4829 • Fax (954) 782-8252
2255 Glades Road Suite 324-A • Boca Raton • Florida • 33433 (TEMPORARY)
Main Office (866) 325-3829 • Fax (617) 284-2109
304 Somerville Avenue • Somerville • Massachusetts • 02143
This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have
received this e-mail in error please notify the system manager at tax@genesistaxhouse.com

**From:** Igor Gomes
**Sent:** Friday, May 8, 2015 1:17 PM
**To:** 'Dasilva, Telmo F - WHD'
**Subject:** RE: Tudo Na Brasa, Inc.

Hello Telmo,

As per our phone conversation here is Time Records for Tudo Na Brasa, Inc.'s employees for Feb 1st, through May 1st, 2015.

I'll be gathering more information and submitting them to you.

Thanks,

Igor Gomes, E.A.
President/Accountant
Direct: [redacted] -8250 • Cell: [redacted] 9300 • Direct Fax: 1 (617) 507-0782
Skype: igorgomes80
igor@genesistaxhouse.com

 **GENESIS**
TAX HOUSE

Florida Office (800) 460-4829 • Fax (954) 782-8252
2255 Glades Road Suite 324-A • Boca Raton • Florida • 33433 (TEMPORARY)
Main Office (866) 325-3829 • Fax (617) 284-2109
304 Somerville Avenue • Somerville • Massachusetts • 02143
This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have
received this e-mail in error please notify the system manager at tax@genesistaxhouse.com

**From:** Dasilva, Telmo F - WHD [mailto:Dasilva.Telmo@dol.gov]
**Sent:** Thursday, April 30, 2015 2:28 PM
**To:** Igor Gomes
**Subject:** RE: Tudo Na Brasa, Inc.

Igor,

Please let me know on the status of the requested documents

Thanks

Telmo

5

D216

R/
Telmo F. A. Dasilva
Investigator
US Department of Labor
Wage and Hour Division
JFK Federal Bldg. Rm. 525
25 New Sudbury Street
Boston, MA 02203

Telephone ▓▓▓-4717
Fax (857) 264-4717

***WARNING***

This e-mail, including attachments, is intended for the exclusive use of the person/entity addressed and may contain confidential information. If you are not the addressee(s), a representative or agent of the addressee(s), please note that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy the information and notify the sender of the error.

**From:** Dasilva, Telmo F - WHD
**Sent:** Tuesday, April 28, 2015 8:59 AM
**To:** 'Igor Gomes'
**Subject:** RE: Tudo Na Brasa, Inc.

Igor,

I've received your email, and documentation. Thank you, I will also need the Quarterly or Monthly Gross Sales for 2012, and 2013. Once you meet with Mr. Moraes, go ahead and send the rest of the information over to me. With regards to the time records, it is an issue if no time records are available for the last two years, I will need a letter from the company stating so, and information on the company used. If Mr. Moraes has some other records of recording hours, and other records of paying employees, please submit those. I will be in the office today if you have any questions.

Thank you

Telmo

R/
Telmo F. A. Dasilva
Investigator
US Department of Labor
Wage and Hour Division
JFK Federal Bldg. Rm. 525
25 New Sudbury Street
Boston, MA 02203

Telephone ▓▓▓-4717
Fax (857) 264-4717

***WARNING***

D-1-F

This e-mail, including attachments, is intended for the exclusive use of the person/entity addressed and may contain confidential information. If you are not the addressee(s), a representative or agent of the addressee(s), please note that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy the information and notify the sender of the error.

**From:** Igor Gomes [mailto:igor@genesistaxhouse.com]
**Sent:** Monday, April 27, 2015 6:39 PM
**To:** Dasilva, Telmo F - WHD
**Subject:** Tudo Na Brasa, Inc.

Hello Mr. DaSilva,

As per our phone conversation earlier today, I'll be putting together a package with all of the information you've requested on your letter dated April 23rd, 2015. As you know since I was just brought in today, I'm still catching up on what has taken place. I've spoken to Mr. Moraes after our conversation and received further clarification on what we discussed. He had mentioned to you that his brother knew how to work the Time Records System and that he needed him to pull the information. When his brother contacted the company, the company advised them that the system does not keep information for long periods of time, but that it has the past few weeks (I believe 3 weeks). In any case, I asked him if he had other records, he mentioned he did have "some other records", so he is putting everything together and will be bringing everything to my office tomorrow for review and so I can forward it to you via e-mail.

Although I understand your letter is dated April 23rd and in this letter you mention an appointment for April 28th, 2015 at 9:00am, due to special circumstances with Mr. Moraes' family being very sick and other stressful related issues, and since I was just brought in, I'd like to kindly ask you to please extend this "deadline" to April 29th, end of business day, so that I may review, organize and submit the information which will be brought to me by Mr. Moraes tomorrow.

In your letter you've asked for 13 items. Although most of this information is currently being put together by Mr. Moraes, and hopefully will be brought to me by tomorrow, I can immediately provide you with Items 4 (based on accounting), 11 and 12. So attached please see the following documents:

MA Corp Division – Articles (for Legal Name and Address)
MA Corp Division – Summary Screen (for Legal Name and Address)
EIN – SS-4 (for Tax ID Number)
2012 P&L (for Gross Sales)
2013 P&L (for Gross Sales)
2014 DRAFT P&L – Accounting not finalized. (for Gross Sales)
Hugo Moraes is the sole owner owning 100% of the S Corporation – Tudo Na Brasa, Inc.

You mentioned that this is the best way to communicate. I'll glad communicate this way, however I'm also available at ████████9300. This is my cellular phone, please feel free to contact me there as well.

Thank you,

**Igor Gomes, E.A.**
President/Accountant
Direct: ███████-8250 • Cell: ███████-9300 • Direct Fax: 1 (617) 507-0782
Skype: igorgomes80
igor@genesistaxhouse.com



**GENESIS**
TAX HOUSE

Florida Office (800) 460-4829 • Fax (954) 782-8252
2255 Glades Road Suite 324-A • Boca Raton • Florida • 33433 (TEMPORARY)
Main Office (866) 325-3829 • Fax (617) 284-2109
304 Somervile Avenue • Somerville • Massachusetts • 02143
This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this e-mail in error please notify the system manager at tax@genesistaxhouse.com

VERONICA

| | | | |
|---|---|---|---|
| 01/04 - 01/11 | 25:18 | $ 227.70 | × √.√.B.√. |
| 01/11 - 01/18 | 29:40 | $ 267.00 | √.√.B.√. |
| 01/18 - 01/25 | 31:12 | $280.80 | √.√.B.√. |
| 01/25 - 02/01 | 28:15 | $ 254.25 | √.√.B.√. |
| 02/01 - 02/08 | 39:43 | $357.45 | √.√.B.√. |
| 02/08 - 02/15 | 27:01 | $243.15 | √.√.B.√. |
| 02/15 - 02/22 | 38:07 | $ 343.05 | √.√.B.√. |
| 02/22 - 03/01 | 26:08 | $235.20 | √.√.B.√. |
| 03/01 - 03/08 | 35:07 | $316.05 | √.√.B.√ |
| 03/08 - 03/15 | 35:41 | $321.15 | √.√.B.√. |
| 03/15 - 03/22 | 36:17 | $326.55 | √.√.B.√. |
| 03/22 - 03/29 | 43:25 | $390.75 | √.√.B.√. |
| 03/29 - 04/05 | 36:39 | $329.85 | √.√.B.√. |
| 04/05 - 04/12 | 43:35 | $392.25 | √.√.B.√. |
| 04/12 - 04/19 | 38:50 | $ 349.50 | √.√.B.√. |
| 04/19 - 04/26 | 33:07 | $ 298.05 | √.√.B.√. |
| 04/26 - 05/03 | 17:31 | $ 157.65 | × √.√.B.√. |
| 05/03 - 05/10 | 43:21 | $ 360,00 + 45,22 = $405,22 | × √.√.B.√. |

MARCOS

| | | | |
|---|---|---|---|
| 01/04 - 01/11 | 31:29 | $ 283.35 | M. off. G/ |
| 01/11 - 01/18 | 35:41 | $ 321.15 | M. off. G/ |
| 01/18 - 01/25 | 41:19 | $ 371.85 | M. off. G/ |
| 01/25 - 02/01 | 39:15 | $ 353.25 | M. off. G/ |
| 02/01 - 02/08 | 43:36 | $392.40 | M. off. G/ |
| 02/08 - 02/15 | 36:02 | $ 324.30 | M. off. G/ |
| 02/15 - 02/22 | 41:37 | $ 374.55 | M. off. G/ |
| 02/22 - 03/01 | 41:55 | $ 377.25 | M. off. G/ |
| 03/01 - 03/08 | 54:36 | $ 491.41 | M. off. G/ |
| 03/08 - 03/15 | 53:41 | $ 483.15 | M. off. G/ |
| 03/15 - 03/22 | 49:38 | $ 446.70 | M. off. G/ |
| N° 03/29 | 66:50 | $ 601.50 | M. off. G/ |
| 03/29 - 04/05 | 65:15 | $ 587.25 | M. off. G/ |
| 04/05 - 04/12 | 55:17 | $ 497.55 | M. off. G/ |
| 04/12 - 04/19 | 64:37 | $ 581.55 | M. off. G/ |
| 04/19 - 04/26 | OFF | | |
| 04/26 - 05/03 | 31:21 | $ 282.15 | M. off. G/ |
| 05/03 - 05/10 | 42:45 | $360,00 + 37,13 = $ 397.13 | M. off. G/ |

D.2-h

MARLENE

| 01/04 - 01/11 | $ 850,00 | + MARlene |
| 01/11 - 01/18 | $ 850,00 | + Marlene |
| 01/18 - 01/25 | $ 850,00 | x Marlene |
| 01/25 - 02/01 | $ 850,00 | x Marlene |
| 02/01 - 02/08 | $ 850,00 | x Marlene |
| 02/08 - 02/15 | $ 850,00 | , Marlene |
| 02/15 - 02/22 | $ 850,00 | o Marlene |
| 02/22 - 03/01 | $ 850,00 | x Marlene |
| 03/01 - 03/08 | $ 850,00 | + Marlene |
| 03/08 - 03/15 | $ 850,00 | x Marlene |
| 03/15 - 03/22 | $ 850,00 | x Marlene |
| 03/22 - 03/29 | $ 850,00 | x Marlene |
| 03/29 - 04/05 | $ 850,00 | - Marlene |
| 04/05 - 04/12 | $ 850,00 | x Marlene |
| 04/12 - 04/19 | $ 850,00 | x Marlene |
| 04/19 - 04/26 | $ 852,00 | x Marlene |
| 04/26 - 05/03 | $ 850,00 | x Marlene |
| 05/03 - 05/10 | $ 850,00 | x Marlene |

JENNY SILVA                    cash only

| | | | | |
|---|---|---|---|---|
| 03/29-04/05 | 17:55 | $ 161.25 | * | JS |
| 04/05-04/12 | 32:58 | $ 296.70 | * | JS |
| 04/12-04/19 | 46:02 | $ 414.75 | * | JS |
| 04/19-04/26 | 54:40 | $ 492.00 | * | JS |
| 04/26-05/03 | 38:47 | $ 349.05 | * | JS |

D-2-D

JOSE

| | | | |
|---|---|---|---|
| 01/04 - 01/11 | 32:29 | $292.35 | |
| 01/11 - 01/18 | 31:15 | $281.25 | Jose |
| 01/18 - 01/25 | 34:18 | $308.70 | JOSE |
| 01/25 - 02/01 | 33:21 | $300.15 | Jose |
| 02/01 - 02/08 | 37:01 | $333.15 | Jose |
| 02/08 - 02/15 | 43:01 | $387.15 | Jose |
| 02/15 - 02/22 | 60:28 | $544.20 | Jose |
| 02/22 - 03/01 | 63:46 | $573.90 | Jose |
| 03/01 - 03/08 | 27:56 | $251.40 | Jose |
| 03/08 - 03/15 | 6:51 | $61.65 | Jose |
| 03/15 - 03/22 | 50:27 | $454.05 | Jose |
| 03/22 - 03/29 | 46:40 | $420,00 | Jose |
| 03/29 - 04/05 | 47:00 | $423,00 | Jose |
| 04/05 - 04/12 | 54:08 | $487.20 | Jose |
| 04/12 - 04/19 | 41:47 | $376.05 | Jose |
| 04/19 - 04/26 | 70:39 | $635.85 | Jose |
| 04/26 - 05/03 | 43:50 | $360,00 + $105.75 = $465.75 | Jose |
| 05/03 - 05/10 | 46:54 | $360,00 + 93,15 = $453.15 | |

ROSA

| | | |
|---|---|---|
| 01/18 - 01/25 | $360,00 | x Rosa Portillo |
| 01/25 - 02/01 | $360,00 | x Rosa Portillo |
| 02/01 - 02/08 | $360,00 | x Rosa Portillo |
| 02/08 - 02/15 | $360,00 | x Rosa Portillo |
| 02/15 - 02/22 | $360,00 | x Rosa Portillo |
| 02/22 - 03/01 | $360,00 | x Rosa Portillo |
| 03/01 - 03/08 | $360,00 | x Rosa Portillo |
| 03/08 - 03/15 | $360,00 | x Rosa Portillo |
| 03/15 - 03/22 | $360,00 | x Rosa Portillo |
| 03/22 - 03/29 | $360,00 | x Rosa Portillo |
| 03/29 - 04/05 | $360,00 + 135,00 | Rosa Portillo |
| 04/05 - 04/12 | $360,00 | x Rosa Portillo |
| 04/12 - 04/19 | $360,00 | x Rosa Portillo |

TERMINATED

CAROL

| | | | |
|---|---|---|---|
| 01/04 - 01/11 | 27:08 | $ 244.20 | Cricia Carolina G. |
| 01/11 - 01/18 | 31:24 | $ 282.60 | Cricia carolina G. |
| 01/18 - 01/25 | 34:28 | $ 310.20 | Cricia carolina G. |
| 01/25 - 02/01 | 37:45 | $ 339.75 | Cricia Carolina G. |
| 02/01 - 02/08 | 44:09 | $ 397.35 | Cricia Carolina G. |
| 02/08 - 02/15 | 41:52 | $ 376.80 | Cricia Carolina G. |
| 02/15 - 02/22 | 35:30 | $ 319.50 | Cricia Carolina G. |
| 02/22 - 03/01 | 42:58 | $ 386.70 | Cricia Carolina G. |
| 03/01 - 03/08 | 41:11 | $ 370.65 | Cricia Carolina G. |
| 03/08 - 03/15 | 44:18 | $ 398.70 | Cricia Carolina G. |
| 03/15 - 03/22 | 42:06 | $ 378.90 | Cricia Carolina G. |
| 03/22 - 03/29 | 34:37 | $ 311.55 | Cricia Carolina G. |
| 03/29 - 04/05 | 39:27 | $ 355.05 | Cricia Carolina C. |
| 04/05 - 04/12 | 44:23 | $ 399.45 | Cricia Carolina G. |
| 04/12 - 04/19 | 33:36 | $ 302.40 | Cricia Carolina G. |
| 04/19 - 04/26 | 34:13 | $ 307.95 | Cricia carolina G. |
| 04/26 - 05/03 | 34:52 | $ 313.80 | Cricia Carolina G. |
| 05/03 - 05/10 | 32:23 | $ 291.95 | Cricia carolina G. |

JASON                           cash

01/04-01/11        $550,00        x ~~~~~~
01/11-01/18        $550,00        x ~~~~~~
01/18-01/25        $550,00        x ~~~~~~
01/25-02/01        $550,00          ~~~~~~
02/01-02/08        $550,00        x ~~~~~~
02/08-02/15        $550,00        x ~~~~~~
02/15-02/22        $550,00          ~~~~~~
02/22-03/01        $550,00          ~~~~~~
03/01-03/08        $550,00        x ~~~~~~
03/08-03/15        $550,00          ~~~~~~
03/15-03/22        $550,00          ~~~~~~
03/22-03/29        $550,00        x ~~~~~~
03/29-04/05        $550,00        x ~~~~~~
04/05-04/12        $550,00        x ~~~~~~
04/12-04/19        $550,00          ~~~~~~
04/19-04/26        $550,00          ~~~~~~
04/26-05/03        $550,00          ~~~~~~
05/03-05/10        $550,00          ~~~~~~

A 2-4

JOVANA

| | | | |
|---|---|---|---|
| 01/04-01/11 | 47:49 | $430.35 | x Jovana Gonzalez |
| 01/11-01/18 | 36:32 | $328.80 | x Jovanna Gonzale |
| 01/18-01/25 | 38:35 | $347.25 | x Jovanna Gonzalez |
| 01/25-02/01 | 39:51 | $358.65 | x JGonzalez |
| 02/01-02/08 | 42:42 | $384.30 | x JGonzalez |
| 02/08-02/15 | 37:35 | $378.25 | x Jovana Gonzalez |
| 02/15-02/22 | 51:09 | $460.35 | x Jovanna Gonzalez |
| 02/22-03/01 | 55:26 | $498.90 | x Jovanna Gonzalez |
| 03/01-03/08 | 40:23 | $363.45 | x Jovanna Gonzalez |
| 03/08-03/15 | 49:15 | $443.25 | x Jovanna Gonzalez |
| 03/15-03/22 | 48:43 | $438.45 | x Jovanna Gonzalez |
| 03/22-03/29 | 41:27 | $373.05 | x Jovanna Gonzalez |
| 03/29-04/05 | 45:59 | $413.85 | x Jovanna Gonzalez. |
| 04/05-04/12 | OFF | — | |
| 04/12-04/19 | OFF | — | |
| 04/19-04/26 | 19:42 | $177.30 | x Jovanna Gonzalez |

* TERMINATED

D-2-J

JACKELINE.

D-3-R

HOURS 36:45

| 4/21 | MON | 21.36 |
| 4/22 | TUE | 37.45 |
| 4/23 | Wend | 28.51 |
| 4/25 | FRI | 93,93 |
| 4/26 | SAT ? | OFF |

HOURS 48:12

| 4/28 | MON | 26.94 |
| 4/29 | TUE | 31.75 |
| 4/30 | Wen | 29.35 OK |
| 5/1 | Thu | 38.60 |
| 5/2 | FRI | 73,50 |
| 5/3 | SAT | 29.63 |

| 5/5 | MON | 20,25 |
| 5/6 | Tue | 30,96 |
| 5/7 | Wen | 28,69 OK |
| 5/8 | Thu | 75,00 |
| 5/9 | FRI | 103,00 |
| 5/10 | SAT | 35,71 |

HOURS - 47:38

$\mathcal{J}$

| 4/14 | 46,54 ✓ |
| 4/15 | 17,15 |
| 4/16 | 22,34 |
| 4/17 | 76,02 |
| 4/18 | 90,02 |
| 4/19 | news 20,47 |
| | 272.54 |

HOURS. 43:08

JACKELINE

| Date | Table | Guests | Server | |
|------|-------|--------|--------|---|
| 5/18 | SUN | | 58,80 | |
| 5/20 | | | 25,00 | |
| 5/21 | | | 69,04 | |
| 5/22 | | | 64,30 | |
| 5/23 | | | 86,80 | |
| 5/24 | SAT | | 20,04 | |
| | | | | |
| | JACKIE | | | |
| | HOURS 52:34 | | | |
| | | | Tax | |
| Thank You | | | Total | |

| | | |
|------|------|------|
| 5/12 | MON | 60,06 |
| 5/13 | TUE ? | OFF |
| 5/14 | WEN | 33,87 oK |
| 5/15 | THU | 41.70 |
| 5/16 | FRI | 109,99 |
| 5/17 | SAT ? | OFF |

HOURS 31:27

JACKELINE

D-3-C

| | |
|---|---|
| 3/2 | 24.53 |
| 3/6 | 5405 24.60 |
| 3/7 | 67.00 35.94 |
| 3/8 | 53,35 |
| 3/9 | 71,45 |
| | 240 93 |

HOURS   38:12

16:87

| | | |
|---|---|---|
| 3/10 | MON | 32,60 |
| 3/11 | Tue | 19,25 |
| 3/12 | | 41,48 |
| 3/13 | | 15,37 |
| 3/14 | | 74.00 |
| 3/15 | | 44.64 |
| | | 227.34 |

HOURS.   41:36

| | |
|---|---|
| 3/31 | 39,00 |
| 4/1 | 29,32 |
| 4/2 | 21,50 |
| 4/3 | 12,00 |
| 4/4 | 70,20 |
| 4/5 | 64,50 |
| | 23652 |

HOURS   47:50

| | |
|---|---|
| 4/7 | 18,84 |
| 4/8 | 27,09 |
| 4/9 | 40,25 |
| 4/10 | 62,70 |
| 4/11 | 67,95 |
| 4/12 | 54,50 |
| | 271.33 |

HOURS

50:20

JACKELINE.

| | |
|---|---|
| 2/17 | 41.86 |
| 2/18 | 43.27    30.00 |
| 2/19 | 12.77 |
| 2/20 | 39.87    38.07 |
| 2/21 | 95.98 |
| 2/22 | 20.36 |
| | 254.11 |

HOURS   43:21

| | |
|---|---|
| 2/24 | 40.35 |
| 2/25 | 32.41 |
| 2/26 | 22.44 |
| 2/27 | 34.70 + 26.66 = |
| 2/28 | 29.08 |
| 3/1 | 94.46 |
| | 279.80 |

HOURS   42:18

| | |
|---|---|
| 3/17 | 25.60 |
| 3/18 | 21.76 |
| 3/19 | 46.43 |
| 3/20 | 33.29 |
| 3/21 | FRI ?  127.08 |
| HOURS  40:02 | 126.60 |

| | |
|---|---|
| 3/24 | 68.42 |
| 3/25 | 23.59 |
| 3/26 | 50.49 |
| 3/27 | 16.74 |
| 3/28 | 92.53  103.21 |
| 3/29 | 60.00 |
| | 322.55 |

HOURS
49:15

# Weekly Work Schedule

Department __JACKELINE TADIO TO__    Week Ending _____

\* RESTAURANT CLOSE AT 10 PM

| Employee and Assignment | Sun | Mon | Tue | Wed | Thur | Fri | Sat |
|---|---|---|---|---|---|---|---|
|  | OFF | 11 - CL | 11 - 5 | 11 - CL | 11 - CL | 11 - 5 | OFF |
| WE WOULD ALTERNATE AROUND THESE SCHEDULE | OFF | 11- CL | 11- S | 11- 5 | 11- 5 | 11-5 | 11- 5 |
|  | OFF | 11- CL | OFF | 11- CL | 11- 5 | 11- 5 | OFF |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| TWICE A YEAR SHE WOULD DO THESE HOURS TO COVER VACATIONS | OFF | 11-CL | 11-CL | 11- CL | 11- CL | 11- CL | OFF |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

# Weekly Work Schedule

artment  FERNANDA IZAR                                    Week Ending _____

* RESTAURANT CLOSE AT 10 PM

| ployee and Assignment | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|---|
| E WOULD ALTERNATE UND THESE SCHEDULE | 10-Cl 12 | OFF | 5-CL | OFF | 10-5 | 11-3 | OFF |
| | 10-CL 12 | OFF | OFF | 10-CL | 10-5 | 11-5 | OFF |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| YbE ONCE OR ICE SHE DID THESE RS TO COVER VACATIONS | 10-CL | 10-CL | 10-4 | OFF | 10-8 | 5-CL | 10-5 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

mi  nombve  es  ▆▆▆▆▆▆▆

Travajo  en  el  Resturuante  Tudo  nA  beAZA
mas  de  dos  años  mi  proFerdoon  es
Travajar  en  La  cHurasquera
cuando  yo  comence  a  travajar  mi  Salavio
era  $8.  La  Hora  pero  Ellos  en  2004
Diciembre  mecompensaron  a pagar $9  dolares
La  Hora ,  ami  megusta  Travajar  aqui
e  nunca  descontaron  que  Yo  voy  acomer
y  aveer  Tanvien  no  medescuenTan  el
Tiempo  Que  yo  como  Salgo  mi
BREAK  y  no  Tengo  nada  Que  ReClamar
Y  Travajo  mas  umenos  45  a 50  Por
Cemana.

7/07/15  ▆▆▆▆▆▆▆

# EMPLOYMENT APPLICATION

DATE _____

NAME  Fernanda Izar

SOC. SEC. NO. _____  TEL NO. ▓▓▓▓ 4159

ADDRESS  ▓▓▓▓▓▓▓▓▓▓▓▓  CITY & STATE _____

HIGH SCHOOL _____  COLLEGE _____ (ZIP CO

CITY & STATE  Woburn  CITY & STATE _____

LAST YEAR COMPLETED _____  LAST YEAR COMPLETED _____

### EMPLOYMENT RECORD (LIST MOST RECENT EMPLOYMENT FIRST)
You may include any verified work performed on a voluntary basis.

| NAME AND ADDRESS OF COMPANY | DATE TO - FROM | TYPE WORK | SALARY | NAME OF SUPERVISOR | REASON FOR LEAVING |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### AVAILABILITY - STATE ALL HOURS YOU WILL BE ABLE TO WORK IN CHART BELOW    ONE OR THE OTHER

| | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY | SUNDAY | CHECK ONE |
|---|---|---|---|---|---|---|---|---|
| FROM | | 10 - | | 10 | 10 | 10 | 10 | □ FULL TIME |
| TO | | CLOSE | | CLOSE | CLOSE | CLOSE | CLOSE | □ PART TIME |

16:00 - 17:30 OFF    IMPORTANT: WORKING PAPERS OR A CERTIFICATE OF AGE MAY BE REQUIRED BEFORE HIRING.

In answering the following questions, you may omit any information or answer "no record" with regard to any conviction for which there is a sealed record on file. You should also omit first convictions for drunkenness, simple assault, speeding, minor traffic violations, affray or disturbance of the peace.

1. Have you ever been convicted of a felony?  Yes ☐  No ☒  If yes, give details and date.

2. Have you been convicted of a misdemeanor in the last five years?  Yes ☐  No ☒  If yes, give details and date.

⟶ She had to leave during this time to pick up a friend everday

From:                                                                    06/16  15 09:39    #758 P.003/006

Jun.15.2015  10:23 AM                                        PAGE.  2/  5

# Current Employees



Veronica Valle
- Woburn MA        -9234 Date: Oct/2014

Marcos Gill
- Woburn MA        -8250 Date: Nov/2014

Jeison Miron
- Woburn MA        1063 Date: Nov/2012-Oct/2013 left. Returned Sep/2014

Jenny Silva
- Woburn MA        -4713 Date: April/2015

Marlene Alcantara
- Woburn MA        -1161 Date: Jun/2010

Jose Ramirez
- Woburn MA        -1292 Date: Nov/2012

Cricia Gallardo
- Woburn MA        -1467 Date: Mar/2014

From:

06/16 '15 09:40     #758 P.004/006

Jun.15.2015  10:24 AM                                              PAGE.  3/  5

# Former employees

Kathleen Scholze:

- ████████████ Woburn MA. ████-2559 Dates: Jun-July/2015 part-time.

Geroliza Santos:

- ██████ Lowell MA ████-3694 Date: 2013- 2014

Michelly Mueller:

- ██████ Medford MA ████ 7613 Date : Oct 2014- Jan 2015 part-time .

Jackeline Tabioto:

- ██████ Woburn MA ████-4529 Dates 2013-2014

Jovanna Gonzales

- ██████ Woburn MA ████ 1283 Date: Jan-April/2015

Jun.15.2015  10:23 AM                                    PAGE.  1/  5

# Major Vendors

- August A. Busch 1800-222-8724
- Burke Distributor 781-986-6300
- Coca Cola  781-449-4300
- Triunfo Foods 508-717-0649
- United LLC  800-323-9666
- Restaurant Depot  617-889-2244

From:                                    06/16 15 09:40    #758 P.005/006

Jun.15.2015  10:24 AM                                PAGE.  4/  5

6/12/2015                        Gmail - APPROVE PUNCHES



Hudson Moraes <santeba@gmail.com>

## APPROVE PUNCHES
1 message

Debbie Macintyre <DMacintyre@ptitime.com>                  Tue, Jun 2, 2015 at 3:07 PM
To: "SANTEBA@GMAIL.COM" <SANTEBA@gmail.com>

HI

In order for  payroll to go to archive reports  you must approve  the payroll at the end of each pay period.

Debbie Mac Intyre

Pyramid Time Systems

45 Gracey Ave

Meriden CT 06451

dmacintyre@ptitime.com

www.pyramidtimesystems.com

Phone 888-479-7264 Option 1

Fax    203-634-1696

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the sender immediately. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Even though this company takes every precaution to ensure this email is virus-free, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

Pyramid Time Systems, 45 Gracey Ave, Meriden, CT 06451, USA

http://www.pyramidtimesystems.com

📎 SKM_C284e15060214080.pdf
   58K

From:

06/16  15 09:41    #758 P.006/006

Jun.15.2015  10:24 AM                                        PAGE.  5/  5

---

*PYRAMID TIMETRAX ELITE BIO / ELITE PROX / MOBILE*

## PAYROLL DETAILS

The Payroll Detail's section is the location in the program that allows you
to enter exceptions to the employee payroll record as well as approving and
un-approving employee payroll records. Most fields are pre-populated from
both the Punch Detail and Employee Detail screens.



To enter exceptions, click the
EDIT PAYROLL DETAILS button
and select which special
pay you wish to add (the date
will only pre-populate if special
pay accrues towards overtime
as selected in payroll groups).
Enter the hours associated with
the special pay in the edited
hours field. Click SAVE.

**Approve, Un-Approve, and Approve (Next):** Once you approve the payroll,
you can only edit the payroll if you click the UN-APPROVE button first. Once
you make your change, you must click APPROVE again. The APPROVE (NEXT)
button will approve the current employee, place the data into archive and bring
you to the next employee record.

In order to run reports on time periods of more than 2 prior pay periods, you
MUST approve payroll for each employee at the end of the pay period.

---

**Dasilva, Telmo F - WHD**

| | |
|---|---|
| **From:** | ██████████████ @hotmail.com> |
| **Sent:** | Monday, June 01, 2015 11:36 PM |
| **To:** | Dasilva, Telmo F - WHD |
| **Subject:** | Tudo na Brasa |
| **Attachments:** | ANOTACOES.pdf; ATT00001.htm |

Sent from my iPhone

Begin forwarded message:

**From:** ████████████████ )hotmail.com>
**To:** "Dasilva, Telmo F - WHD" <dasilva.telmo@dol.gov>
**Subject: Tudo na Brasa**

From: ███████████ )hotmail.com
To: dasilva.telmo@dol.gov
Subject: Tudo na Brasa
Date: Wed, 13 May 2015 05:06:45 +0100

Boa tarde Sr. Telmo Da Silva
Conforme sua solicitação estou enviando as minhas anotações referente as horas que trabalhei no restaurante Tudo na Brasa e não foram pagas. Separei por semana, são 3 semanas no total.
10/Nov/2013 - Card: 50,91 - Horas: 11:00 - Trabalhei com a Mariah11/Nov/2013 - OFF12/Nov/ 2013 - Card: 52,27 - Horas: 7:30 - Trabalhei com a Jackeline13/Nov/2013 - OFF14/Nov/2013 - Card: 45,72 - Horas: 11:15 - Trabalhei com a Jackeline e Luciana15/Nov/2013 - Card: 28,66 - Horas: 4:15 - Trabalhei com a Jackeline e Michelly16/Nov/2013 - OFF
Total em Tips no cartão de crédito: 177,56Total de horas trabalhadas: 34_____
17/Nov/2013 - Card: 66,23 - Horas: 10:50 - Trabalhei com a Luciana18/Nov/2013 - OFF19/Nov/ 2013 - OFF20/Nov/2013 - Card: 57,95 - Horas: 11:08 - Trabalhei com a Mariah21/Nov/2013 - Card: 32,29 - Horas: 6:15 - Não anotei com quem trabalhei 22/Nov/2013 - Card: 18,74 - Horas: 4:30 - Trabalhei com a Jackeline e Michelly23/Nov/2013 - OFF
Total em Tips no cartão de crédito: 175,21Total de horas trabalhadas: 32:43_____
24/Nov/2013 - OFF25/Nov/2013 - Card: 55,77 - Horas: 12:00 - Trabalhei com a Jackeline26/Nov/ 2013 - OFF27/Nov/2013 - Card: 33,87 - Horas: 10:00 - Trabalhei com a Jackeline28/Nov/2013 - Card: 5,95 - Horas: 5:00 - Trabalhei com a Jackeline - Thanksgiving -

1

Olá Hugo! Aqui é a ▮▮▮▮▮▮
Conversei com o Jesse hoje a respeito daquela pendência antiga comigo. Seguem
os valores a serem acertados comigo mais as horas correspondentes a esses dias.
Por favor, de uma verificada nos seus registros. Obrigada.

10/11- 50,91
11/11-OFF
12/11-52,27
13/11-OFF
14/11-45,72
15/11-28,66
16/11-OFF

34 horas

17/11-66,23
18/11-OFF
19/11-OFF
20/11-57,95
21/11-32,29
22/11-18,74
23/11-OFF

33 horas

24/11-OFF
25/11-55,77
26/11-OFF
27/11-33,87
28/11-5,95

27 horas

Bank of America
Account Number: ▮▮▮▮▮▮▮0349
Fernanda da Silva Izar

Delivered

< Messages   **Hugo**   Contact

Oi Hugo, tudo bem? Se você não se importar vou passar amanhã umas horas por ai durante o curso, precisa pagar uma pequena parte. Você tem algum horário para falar comigo? Obrigada, Fernanda

10/11- 50,91
11/11-OFF
12/11-52,27
18/11-OFF
14/11-45,72
15/11-28,66
16/11-OFF

17/11-66,23
18/11-OFF
19/11-OFF
20/11-57,95
21/11-18,74
23/11-OFF

24/11-OFF
25/11-55,77
26/11-OFF
27/11-35,87
28/11-5,95

Oi Hugo, tá bem? Já peguei o resultado! Restinha amanhã feat Rs. Vc vai ter algum tempo p fazer o acerto comigo amanhã final de semana? To meio viajar amanhã a noite e vou demorar a voltar. Não vou tomar muito o seu tempo pq não foram tantos dias trabalhados. Me deixa saber, ok. Obrigada, Fernanda

Merry Xmas everyone!!! 🎄

Oi Hugo, aí são os dados, Bank of America, Account Number... 0349 Fernanda da Silva Izur, Muito Obrigada!

Oi Hugo, tudo bem? Você pode dar o meu pagamento para a Jackie hoje? Eu falei com ela e por ela tudo bem. Aí fica mais fácil para você. Estou precisando urgente. Me confirma o valor, por favor. Obrigada

---

Eu to consertando o Truck por que tenho que rapar neve mais tarde, mais quando eu passar no Restaurant eu olho o valor e te falo, desculpa mais eu ainda não tive tempo de ir ao banco de América estou muito busy com a construcao, mais eu do pra Jack

Tudo bem Hugo. Obrigada! Bem seria uma ótima se fosse hoje se dá!

*Jun 26, 2014 1:11 PM*

Hugoooooooo

Please!!! Não esqueceu!!!

*Jan 27, 2014 [...] PM*

Oi Hugo, tudo bem? O que esta acontecendo, acho que já esperei o suficiente numa boa, não?

*Jan 28, 2014, [...] PM*

Hugo

Você pode me responder?

A Jack não está trabalhando hoje,eu vi ela ontem mais ela tava busy e eu tive quer sair quando eu ver ela com tempo vou entregar pra ela,já te falei

tinha ficado combinado de vc deixar td pronto, assim o seu pai poderia dar para ela não? sabemos como vc e busy

Isso esta se tornando um grande problema para mim

Não eu vou entregar por que ela tem que assinar o book como ela ta pegando o seu pagamento

estou bem chateada e começo a já não acreditar na sua palavra

entendo

mas ela pode assinar o book na sua presença ou na do Jesse não?

e o seu pai fica aí 24 hrs

eu trabalhei em novembro e estamos indo para fevereiro

---

acho que seu violino competência...

não gosto de perturbar ninguém

Chateada???? Chateado ficamos nós quando vc saiu without give us a 1 week notice.

vc ficou doente e eu esperei todo o tempo que precisou para sua recuperação antes de ficar te ligando

nem vou entrar no mérito de falar das chateações

tenho no celular aqui ainda uma fala de chateações

não precisamos listar eles

gosto de vcs e acho que isso a desembaraçados

não vi ninguém la saindo e dando notice, nem quando saíram e nem qdo vcs saíram com eles

e nem por isso esperaram tanto tempo para receber

eu não vou mais te cobrar

acho que não é necessário

Nunca tiramos ninguém sem falar antes Fernanda agora vc e mais umas duas irrensponsaveis sim saíram e deixou o restaurant na mão

Hugo

como vcs falaram com as pessoas antes eu também falei com o seu pai antes

Aqui na América se vc não sabe quando sai de um emprego vc conversa antes e da pelos menos 1 semana de prazo

Não

estou dizendo que eu não vi 1 semana de notice da nenhum dos lados

porque unicamente no meu caso teria que ter sido assim?

enato voce me explica que por esse motivo eu não terei direito a 3 semanas de salário

---

não me diga que fara uma coisa do vai fazer

simple assim

Olha [redacted] o certo e entregar o pagamento somente pra vc pessoalmente eu já estou te fazendo um favor entregando pra Jack então por favor não me enche o saco por que eu estou ocupado...

nunca quis te encher o saco

acho que se fosse desse tipo ja teria feito antes

vc sabe bem que não fico te perturbando

tentei receber em mãos

tinha que acontecer exclusivamente e por causa de sua indisponibilidade

não queria me culpar por ela

sendo asam, não é um favor vc abrir a exceção de fazer o pagamento na minha conta ou usar outro método alternativo entregando para outra pessoa com a minha autorização

eu não vou mais te encher o saco ele

Vc errou saindo do jeito que vc saiu,do mesmo jeito que vc não teve responsabilidade com migo eu não tenho com vc,quando eu tiver um tempo eu entrego pra Jack ok,tenha um bom dia

se eu não receber ate amanhã eu vou entender que você não vai me pagar

faça como quiser

gostaria que resolvêssemos numa boa

pois existem outras formas

acho bem que vcs não precisam fazer isso por dinheiro

bom dia

Último dia trabalhado29/Nov/2013 - Não trabalhei mais30/Nov/2013 - Não trabalhei mais
Total em Tips no cartão de crédito: 95,59Total de horas trabalhadas:
27:00
Total a receber do período de 10/Nov/2013 a 28/Nov/2013Total em Tips no cartão de crédito a
receber: 448,36 Total de horas trabalhadas: 94:43 x 3,00/h = 283,29

Estou enviando em anexo as minhas anotações com os valores que tenho para receber referente
as tips no cartão de crédito juntamente com as horas trabalhadas. Se eu puder ajudar em algo
mais, por favor entre em contato.
Obrigada, █████████

**Dasilva, Telmo F - WHD**

| | |
|---|---|
| **From:** | @hotmail.com> |
| **Sent:** | Monday, June 01, 2015 11:22 PM |
| **To:** | Dasilva, Telmo F - WHD |
| **Subject:** | Tudo na Brasa |
| **Attachments:** | TXT_HUGO_COBRANCA.docx; TXT_HUGO_ULTIMA_COBRANCA.png; RENATO_EU_TRABALHANDO.jpg |

From: @hotmail.com
To: dasilva.telmo@dol.gov
Subject: Tudo na Brasa
Date: Tue, 26 May 2015 21:04:44 +0100

Sr. Telmo,

Seguem os nomes das pessoas com quem trabalhei e os números de quem eu tenho

Eu, Jackeline, Luciana, Mariah e Natália tinhamos as mesmas funções, entre elas: Balança, caixa, bartender, limpar mesas e buffet, servir bebidas nas mesas, repor estoque de alimentos e bebidas.

Jackeline -          4529
Michelly - (       7613
Luciana
Mariah
Natália
Renato - Assistente de cozinha/ Churrasqueiro -          3334
José - Churrasqueiro
Marlene - Cozinheira
Jason - Assistente de cozinha

Estou enviando em anexo mensagens de textos que troquei com o Hugo cobrando meu pagamento (a última foi em Setembro e ele nunca respondeu) e uma foto que tirei durante o trabalho com o Renato que também era funcionário de lá.

Obrigada,

D-8 -

WEEK 10 – 16/NOV/2013

   

WEEK 17 – 23/NOV/2013

   

WEEK 24 – 30/NOV/2013

  

**Dasilva, Telmo F - WHD**

| | |
|---|---|
| **From:** | @hotmail.com> |
| **Sent:** | Monday, June 01, 2015 11:48 PM |
| **To:** | Dasilva, Telmo F - WHD |
| **Subject:** | Tudo na Brasa |
| **Attachments:** | SCHEDULE_17_23_NOV.jpg; SCHEDULE_24_30_NOV.JPG |

Sr. Telmo,

Seguem 2 fotos que tirei dos schedules das duas últimas semanas que trabalhei (esse papel era preenchido pelo Hugo e ficava ao lado do relógio de ponto onde registrávamos entrada/saída).



D8-6

# Weekly Work Schedule

Department _____                                    Week Ending _____

| Employee and Assignment | 11/17 Sun | 11/18 Mon | 11/19 Tue | 11/20 Wed | 11/21 Thu | 11/22 Fri | 11/23 Sat |
|---|---|---|---|---|---|---|---|
| JACKELINE | OFF | 11-CL | 11-CL | OFF | 11-CL | 10-5 | 10-5 |
| FERNANDA | 10-CL | OFF | OFF | 10-CL | 10-4 | 11-5 | OFF |
| MARIAH | OFF | 10-CL | 5-CL | 11-CL | OFF | 5-CL | 11-CL |
| MICHELLE | | | | | | 11-8 | 11-8 |
| LUCIANA | 11-CL | OFF | 10-5 | OFF | 5-CL | 5-CL | 5-CL |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

2

D-8-4



## Weekly Work Schedule



**U.S. Department of Labor**    Wage and Hour Division
JFK Federal Building, Room 525
Boston, MA 02203
Telephone Number (617) 624-6700
Facsimile Number  (617) 624-6701



April 23, 2015

Hugo Moraes, President
Tudo na Brasa, Inc.
414 Main St,
Woburn, MA 01801

Dear Mr. Moraes:

The Wage and Hour Division of the U.S. Department of Labor is responsible for the administration and enforcement of the Fair Labor Standards Act of 1938 (FLSA). This Act contains certain requirements regarding wage payments and record keeping.  It also contains child labor guidelines.

I have been assigned to conduct a review of your company's practices to verify compliance with this Act. Record keeping requirements of the FLSA are contained in 29 CFR 516.   In accordance with this regulation, I am requesting that the following information be made available at **09:00 AM on April 28, 2015 at your establishment**:

1)  Payroll records for **each pay** period over the past <u>24 months</u> that show:

    - Rates of pay
    - Hours worked
    - Gross earnings
    - Deductions for all employees during this period

2)  All time records for all employees for whom hours were recorded, for *each pay period* over the past <u>24 months</u> that show:

    - <u>Hours worked each workday</u>
    - <u>Total hours for each workweek</u>

3)  A listing of all current and former employees for the <u>past 24 months</u> which includes <u>names, addresses and telephone numbers</u>.  Please list the names, dates of birth, proof of birth, hire dates, and termination dates for anybody **under age 19** along with proof of birth (Age Certificates/Birth Certificate) you have employed during this time.

4)  Gross sales figures for 2012, 2013, and 2014.

5)  Any records of cash payments made to employees for the past 24 months.

Page 1 of 2

D-10-2

6) A listing of all current salaried employees including job titles, and salary amounts.

7) A listing of all former salaried employees including job titles, and salary amounts for the past 24 months.

8) A listing of all employees or independent contractors paid on a 1099 and employees who are not on the payroll for the <u>past 24 months</u>.

9) Information regarding the following practices for the <u>past 24 months</u>:

- Any bonuses paid and how they are structured;
- Induction days, training, staff development, and other meetings where employees are present;
- Compensatory time logs;
- Cash disbursement logs (for individuals paid cash for hours worked); and
- Commissioned employees and percent of commission

10) A list of your major vendors including location and service or products used.

11) Your company's federal EIN, trade name, and exact legal name.

12) Ownership or corporate officer information (names, titles, addresses, phone numbers), including date established, changes in corporate structure and dates of such changes.

13) Copies of internal policies regarding pay practices and time keeping (memo's, emails, postings for employees); including changes and or additions existing policies and practices – for the <u>past 24 months.</u>

Please contact me at ▨▨▨▨▨▨4717 if you have any questions prior to my visit.

Very respectfully

Telmo F. A. Dasilva
Wage and Hour Investigator

Enclosures:  Handy Reference Guide
Fact Sheet No. 44, and 77A

D10-2



# THE COMMONWEALTH OF MASSACHUSETTS
# OFFICE OF THE ATTORNEY GENERAL
### FAIR LABOR DIVISION
### ONE ASHBURTON PLACE
### BOSTON, MASSACHUSETTS 02108

(617) 727-2200
(617) 727-3465 HELPLINE
WWW.MASS.GOV/AGO

MARTHA COAKLEY
ATTORNEY GENERAL

## FORMULÁRIO DE QUEIXA TRABALHISTA- Página 1

**Favor fornecer o máximo de informação que puder neste formulário e enviá-lo pelo correio para o endereço escrito acima. A informação desta página <u>não</u> será compartilhada com seu empregador.**

### Informação do Empregado

Primeiro Nome _____ Segundo Nome _____ Sobrenome _____

Número de Seguro Social* ___-**9309** Data de Nascimento ___ **7 2** Sexo: M ___ F **X**
*(mês dia ano)*

Endereço atual para correspondência _____

Cidade **WObURN** Estado **MA** Zip (CEP) **01801** Email **@gmail.com**

Telefone (Casa) _____ Telefone (Celular) _____ **4529**

Contato de emergência *(amigo / familiar que pode servir de contato)*: Nome _____ Telefone **5239**

Endereço _____ Cidade **WObURN** Estado **MA** Zip (CEP) **01801**

Data que começou a trabalhar **4 1 11** Data que terminou o emprego **10 10 14**
*(mês dia ano)* _____ *(mês dia ano)*

---

Favor ler: Na maioria dos casos, o texto objeto de sua reclamação será considerado registro público e estará disponível a qualquer integrante da população mediante solicitação. Ao atendermos tal solicitação, geralmente não divulgamos o nome, endereço, número de telefone, ou qualquer outra informação que lhe identifique. Também não divulgamos este formulário em resposta a qualquer solicitação que especificamente está relacionada à reclamação feita por você. Entretanto, seu registro, em sua totalidade, pode ser revelado aos órgãos de segurança pública ou reguladores, os quais podem ajudar na resolução de sua reclamação.

*\* Informar o número de seguro social é opcional. Isso nos ajudará a processar sua reclamação, no entanto, iremos proceder mesmo se você não fornecê-lo.*

D-11-a



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### FAIR LABOR DIVISION
### ONE ASHBURTON PLACE, ROOM 1813
### BOSTON, MASSACHUSETTS 02108

(617) 727-2200
(617) 727-3465 HELPLINE
WWW.MASS.GOV/AGO

MARTHA COAKLEY
ATTORNEY GENERAL

## FORMULÁRIO DE QUEIXA TRABALHISTA-PÁGINA 2

Nome do empregado: _____

Você fala Inglês? **Sim** X **Não**____ Em que língua prefere que lhe contatamos? _Portuguê's_

Tipo de trabalho que você fazia? _CAShier / BARteNDer / WAITRess / HOSt / BASS GiRL_

Nome da Companhia _TUDO NA BRASA_____

Ainda está trabalhando com esta companhia? **Sim**____ **Não** X

Razão que terminou o seu emprego (Se for o caso): Saiu___ Demitido X

Você assinou algum contrato com seu patrão? **Sim**____ **Não** X

Você tem um advogado representando você neste caso? **Sim**____ **Não** X

Você recebeu apoio de alguma organização comunitária ou sindicato para preencher este formulário? **Sim** X **Não**____

Se o recebeu, favor de fornecer os dados do advogado, organização ou sindicato (nome da pessoa de contato, endereço e número de telefone):. _BRAZILIAN immigRANt center,_
_617-783 8001,_ _____,

Você reclamou o salário que se lhe deve? **Sim** X **Não**____

Se o reclamou, qual foi a resposta do patrão? _eles Afirmou que NÃO Tem NADA A PAGAR p/ mim._

Você tomou qualquer outra ação contra o seu patrão neste caso? **Sim**____ **Não** X

Se tomou, favor explicar. _____

Um patrão não tem direito de ameaçar, discriminar, or retaliar contra você por seus esforços de cobrar seu salário. Se isso lhe aconteceu, favor explicar. _Trabalhei p/ essa compania poR 3 ANOS, fiquei sem Registro poR quase um ANO. Eu TRAbalhAvi NO minimo 70 hoRAs poR semANA, e NUNCA Recebi extRA hourS, eu Tinha DiReito somente de 15 min de BreAk. Eu sempre eRA muito destRAtadA verbAll em fReNte Dos clieNtes pelo DONO Jesse JAmes moRAes, →_

_- e a maquiNA de bater CARtÃO NÃO te dA o Recebi_
_p/ sabeR quaNTAs hoRAs esta fazeNDo poR dia de TRAb._

Acertos era marcado e assinado em
um book.

D-11- -C



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### FAIR LABOR DIVISION
ONE ASHBURTON PLACE, ROOM 1813
BOSTON, MASSACHUSETTS 02108

(617) 727-2200
(617) 727-3465 HELPLINE
WWW.MASS.GOV/AGO

MARTHA COAKLEY
ATTORNEY GENERAL

**FORMULÁRIO DE QUEIXA TRABALHISTA-PÁGINA 3**

__INFORMAÇÃO DO EMPREGADOR__. Favor fornecer o máximo de informação possível.

Nome da empresa _TUDO NA BRASA / TAST OF BRAZIL_

Outros nomes usados pela empresa /partrão _TAST OF BRAZIL_

Endereço da empresa _414 MAIN ST_ Cidade _WOBURN_ Estado _MA_ Zip(CEP) _01801_

Nome do Dono ou Presidente _HUGO MORAES / Jesse James MORAES_ Número(s) da Placa _____

Endereço da casa [redacted] dade _WOBURN_ Estado _MA_ Zip(CEP) _01801_

_781 938 010_ Telefone (escritório, lugar de trabalho, celular, e/ou casa) [redacted] _0101 / 781 — 4830 CCII_ [redacted]

Total de empregados na companhia (se souber) _06_ Nome(s) do gerente / supervisor local _HUGO MORAES / JOS. JAME MORA_

Cidade na qual o trabalho foi feito _WOBURN, MA_

__MOTIVO DA QUIEXA__. Favor indicar todos que se aplicam e forneçer detalhes abaixo. Se você não está seguro qual categoria lhe aplica, simplesmente descreva sua situação abaixo.

- ☑ Violação do Salário Mínimo
- ☑ Não pagamento de salário
- ☐ Violação da Politica de Férias*
- ☐ Outro / Não tem certeza
- ☑ Violação do tempo de descanso
- ☑ Violação de Pago de Hora Extra
- ☐ Hora Extra Dominical e salário de Férias
- ☐ Emprego de Menores
- ☑ Falta de Pagar Comissões
- ☑ Falta de fornecer Arquivo de empregado

*Anexar uma cópia da politica de Férias da companhia se for posível.

Quais são as datas da violação: de _4 / 1 / 11_ até _10 / 10 / 15_
(mês / dia / ano)     (mês / dia / ano)

Tarifa de salário mais recente? $ _10.00_ por (hora) ou semana (circule um) Total da quantia a receber? $ _85,311.84_

Favor fornecer informação **detalhada** sobre o que lhe aconteceu e o que se lhe deve. _TRabALHEi POR 3 ANOS p/ESSA COMPANIA, NO MINIMO 70 HORAS POR SEMANA, E NUNCA RECEBI EXTRA HORAS, ELES SEMPRE TIRAVA 9% dOS TIPS pAGO NO CRED CARd, E fiquei quASE 01 ANO SEM REGISTRO. Eu TiNHA DIREITO SOMENTE dE 15 min dE dESCANgO_

__CERTIFICAÇÃO:__ _em 10 HORAS dE TRABALHO NO MINIMO. E_

COM ESTA ASSINATURA, EU CERTIFICO QUE ESTA DECLARAÇÃO É VERÍDICA DENTRO DO MELHOR DO MEU CONHECIMENTO. _eles estao segurando meu W2 2014_

[redacted] _10 10 15_
Data

D-11 · D

end - Jesse i.mes MORAÉS = PAi

WOBURN, MA    01801

end - Hugo MORAÉS = Filho

WOBURN, MA    01801

| Worker's Name Nome do Trabalhador: | Company / Employer Empresa / Patrão: *TUDO NA BRASA TAST OF BRAZIL* |
|---|---|

CALCULATION OF OVERTIME DIFFERENTIAL OWED

CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS

| Week ending on day Semana termina no dia | Total hours worked in week Total de horas trabalhadas na semana | Hours of overtime worked in week Horas Extras trabalhadas na semana | Hourly wage Salário por hora | Overtime Differential owed for week Valor total das horas extras devidas $15.n |
|---|---|---|---|---|
| 2014 | | | | |
| 30/12  4/1 | 40 hs | 30 hs | $15.00 | $450.00 |
| 6/1  11/1 | 40 hs | 30 hs | $15.00 | $450.00 |
| 13/1  18/1 | 40 hs | 30 hs | $15.00 | $450.00 |
| 20/1  25/1 | 40 hs | 30 hs | $15.00 | $450.00 |
| 27/1  1/2 | 40 hs | 30 hs | $15.00 | $450.00 |
| 3/2  8/2 | 40 hs | 30 hs | $15.00 | $450.00 |
| 10/2  15/2 | 40 hs | 30 hs | $15.00 | $450.00 |
| 17/2  22/2 | 40 hs | 30 hs | $15.00 | $450.00 |
| 24/2  1/3 | 40 hs | 30 hs | $15.00 | $450.00 |
| 3/3  8/3 | 40 hs | 30 hs | $15.00 | $450.00 |
| 10/3  15/3 | 40 hs | 30 hs | $15.00 | $450.00 |
| 17/3  22/3 | 40 hs | 30 hs | $15.00 | $450.00 |
| 24/3  29/3 | 40 hs | 30 hs | $15.00 | $450.00 |
| 3/3  5/4 | 40 hs | 30 hs | $15.00 | $450.00 |
| 7/4  12/4 | 40 hs | 30 hs | $15.00 | $450.00 |
| 14/4  19/4 | 40 hs | 30 hs | $15.00 | $450.00 |
| 21/4  26/4 | 40 hs | 30 hs | $15.00 | $450.00 |
| 28/4  3/5 | 40 hs | 30 hs | $15.00 | $450.00 |
| 5/5  10/5 | 40 hs | 30 hs | $15.00 | $450.00 |
| 12/5  17/5 | 40 hs | 30 hs | $15.00 | $450.00 |
| 19/5  24/5 | 40 hs | 30 hs | $15.00 | $450.00 |
| 26/5  31/5 | 40 hs | 30 hs | $15.00 | $450.00 |

D-11-6

| Worker's Name / Nome do Trabalhador: | Company / Employer / Empresa / Patrão: |
|---|---|
| [redacted] | TUDO ~~CERTO~~ NA BRASA TAST of BRAZIL. |

CALCULATION OF OVERTIME DIFFERENTIAL OWED

CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS

| Week ending on day / Semana termina no dia | Total hours worked in week / Total de horas trabalhadas na semana | Hours of overtime worked in week / Horas Extras trabalhadas na semana | Hourly wage / Salário por hora | Overtime Differential owed for week / Valor total das horas extras devidas |
|---|---|---|---|---|
| 2014 | | | | |
| 28/4  3/5 | 80 hs | 30 hs | $10.00 | $450.00 |
| 5/5  10/5 | 80 hs | 30hs | $10.00 | $450.00 |
| 12/5  17/5 | 80 hs | 30hs | $10.00 | $450.00 |
| 19/5  24/5 | 80 hs | 30 hs | $10.00 | $450.00 |
| 26/5  31/5 | 80 hs | 30hs | $10.00 | $450.00 |
| 2/6  7/6 | 80 hs | 30 hs | $10.00 | $450.00 |
| | ~~Férias~~ | | | |
| 9/6  14/6 | 80 hs | 30hs | $10.00 | $450.00 |
| 16/6  21/6 | 80hs | 30hs | $10.00 | $450.00 |
| 23/6  28/6 | 80hs | 30hs | $10.00 | $450.00 |
| 30/6  5/7 | 80hs | 30hs | $10.00 | $450.00 |
| 7/7  12/7 | 80hs | 30hs | $10.00 | $450.00 |
| | ~~~~ | | | |
| 14/7  19/7 | 80 hs | 30hs | $10.00 | $450.00 |
| 21/7  26/7 | 80hs | 30hs | $10.00 | $450.00 |
| 28/7  2/8 | 80hs | 30hs | $10.00 | $450.00 |
| 4/8  9/8 | 80hs | 30hs | $10.00 | $450.00 |
| 11/8  16/8 | 80hs | 30hs | $10.00 | $450.00 |
| 18/8  25/8 | 80hs | 30hs | $10.00 | $450.00 |
| 26/8  31/8 | 80hs | 30hs | $10.00 | $450.00 |
| 1/9  5/9 | 80hs | 30hs | $10.00 | $450.00 |
| 8/9  13/9 | 80hs | 30hs | $10.00 | $450.00 |
| 15/9  20/9 | 80hs | 30 hs | $10.00 | $450.00 |
| 21/9  26/9 | 80hs | 30hs | $10.00 | $450.00 |
| 29/9  4/10 | 80hs | 30hs | $10.00 | $450.00 |
| 6/10  10/10 | Leave. LAST DAV- 60hs - 20hs-$10.00 - $300. | | | |

| Worker's Name<br>Nome do Trabalhador: | Company / Employer<br>Empresa / Patrão:<br><br>*TUDO NA BRASA*<br>*TAST OF BRAZIL* |
|---|---|

CALCULATION OF OVERTIME DIFFERENTIAL OWED

**CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS**

| Week ending on day<br>Semana termina no dia<br>*2013* | | Total hours worked in week<br>Total de horas trabalhadas na semana | Hours of overtime worked in week<br>Horas Extras trabalhadas na semana | Hourly wage<br>Salário por hora | Overtime Differential owed for week<br>Valor total das horas extras devidas $15.00 |
|---|---|---|---|---|---|
| 31/12 | 5/1 | 70 hs | 30 hs | $10.00 | $450.00 |
| 7/1 | 12/1 | 70 hs | 30 hs | $10.00 | $450.00 |
| 14/1 | 19/1 | 70 hs | 30 hs | $10.00 | $450.00 |
| 21/1 | 26/1 | 70 hs | 30 hs | $10.00 | $450.00 |
| 28/1 | 2/2 | 70 hs | 30 hs | $10.00 | $450.00 |
| 4/2 | 9/2 | 70 hs | 30 hs | $10.00 | $450.00 |
| 11/2 | 16/2 | 70 hs | 30 hs | $10.00 | $450.00 |
| 18/2 | 23/2 | 70 hs | 30 hs | $10.00 | $450.00 |
| 25/2 | 2/3 | 70 hs | 30 hs | $10.00 | $450.00 |
| 4/3 | 9/3 | 70 hs | 30 hs | $10.00 | $450.00 |
| 11/3 | 16/3 | 70 hs | 30 hs | $10.00 | $450.00 |
| 18/3 | 23/3 | 70 hs | 30 hs | $10.00 | $450.00 |
| 25/3 | 30/3 | 70 hs | 30 hs | $10.00 | $450.00 |
| 1/4 | 6/4 | 70 hs | 30 hs | $10.00 | $450.00 |
| 8/4 | 13/4 | 70 hs | 30 hs | $10.00 | $450.00 |
| 15/4 | 20/04 | 70 hs | 30 hs | $10.00 | $450.00 |
| 22/4 | 27/4 | 70 hs | 30 hs | $10.00 | $450.00 |
| 6/5 | 11/5 | 70 hs | 30 hs | $10.00 | $450.00 |
| 13/5 | 18/5 | 70 hs | 30 hs | $10.00 | $450.00 |
| 20/5 | 25/5 | 70 hs | 30 hs | $10.00 | $450.00 |
| 27/5 | 1/6 | 70 hs | 30 hs | $10.00 | $450.00 |
| 3/6 | 8/6 | 70 hs | 30 hs | $10.00 | $450.00 |

| Worker's Name / Nome do Trabalhador: | Company / Employer / Empresa / Patrão: |
|---|---|
| | *TUDO NA BRASIL* *TAST OF BRAZIL* |

*CALCULATION OF OVERTIME DIFFERENTIAL OWED*

**CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS**

| Week ending on day<br>Semana termina no dia<br><br>2013 | Total hours worked in week<br>Total de horas trabalhadas na semana | Hours of overtime worked in week<br>Horas Extras trabalhadas na semana | Hourly wage<br>Salário por hora | Overtime Differential owed for week<br>Valor total das horas extras devidas |
|---|---|---|---|---|
| 10/6  15/6 | 70 hs | 30 hs | $10.00 | $450.00 |
| 17/6  22/6 | 70 hs | 30 hs | $10.00 | $450.00 |
| 24/6  29/6 | 70 hs | 30 hs | $10.00 | $450.00 |
| 1/7  6/7 | 70 hs | 30 hs | $10.00 | $450.00 |
| 8/7  13/7 | 70 hs | 30 hs | $10.00 | $450.00 |
| 15/7  20/7 | 70 hs | 30 hs | $10.00 | $450.00 |
| 22/7  27/7 | 70 hs | 30 hs | $10.00 | $450.00 |
| 29/7  3/8 | 70 hs | 30 hs | $10.00 | $450.00 |
| 5/8  10/8 | 70 hs | 30 hs | $10.00 | $450.00 |
| 12/8  17/8 | 70 hs | 30 hs | $10.00 | $450.00 |
| 19/8  24/8 | 70 hs | 30 hs | $10.00 | $450.00 |
| 26/8  31/8 | 70 hs | 30 hs | $10.00 | $450.00 |
| 2/9  7/9 | 70 hs | 30 hs | $10.00 | $450.00 |
| 9/9  14/9 | 70 hs | 30 hs | $10.00 | $450.00 |
| 16/9  21/9 | 70 hs | 30 hs | $10.00 | $450.00 |
| 23/9  28/9 | 70 hs | 30 hs | $10.00 | $450.00 |
| 30/9  5/10 | 70 hs | 30 hs | $10.00 | $450.00 |
| 7/10  12/10 | 70 hs | 30 hs | $10.00 | $450.00 |
| 14/10  19/10 | 70 hs | 30 hs | $10.00 | $450.00 |
| 21/10  26/10 | 70 hs | 30 hs | $10.00 | $450.00 |
| 28/10  2/11 | 70 hs | 30 hs | $10.00 | $450.00 |
| 4/11  9/11 | 70 hs | 30 hs | $10.00 | $450.00 |

D - 11 - 4

| Worker's Name<br>Nome do Trabalhador: | Company / Employer<br>Empresa / Patrão:<br>TUDO NA BRASA<br>TAST OF BRAZIL |
|---|---|

**CALCULATION OF OVERTIME DIFFERENTIAL OWED**

**CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS**

| Week ending on day<br>Semana termina no dia | Total hours worked in week<br>Total de horas trabalhadas na semana | Hours of overtime worked in week<br>Horas Extras trabalhadas na semana | Hourly wage<br>Salário por hora | Overtime Differential owed for week<br>Valor total das horas extras devidas |
|---|---|---|---|---|
| 2013 | | | | |
| 11/11   16/11 | 70 hs | 30 hs | $10.00 | $450.00 |
| 18/11   23/11 | 70 hs | 30 hs | $10.00 | $450.00 |
| 25/11   30/11 | 70 hs | 30 hs | $10.00 | $450.00 |
| 2/12   7/12 | 70 hs | 30 hs | $10.00 | $450.00 |
| 9/12   14/12 | 70 hs | 30 hs | $10.00 | $450.00 |
| 16/12   21/12 | 70 hs | 30 hs | $10.00 | $450.00 |
| 23/12   28/12 | 70 hs | 30 hs | $10.00 | $450.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

$$7 \times \$450 = \$3,150.00$$
$$44 \times \$450 = \$19.800.00$$

$$\text{TOTAL} = \$22,950.00$$

| Worker's Name / Nome do Trabalhador: | Company / Employer / Empresa / Patrão: |
|---|---|
| | TUDO NA BRASA TAST OF BRAZIL |

CALCULATION OF OVERTIME DIFFERENTIAL OWED

CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS

| Week ending on day Semana termina no dia | Total hours worked in week Total de horas trabalhadas na semana | Hours of overtime worked in week Horas Extras trabalhadas na semana | Hourly wage Salário por hora | Overtime Differential owed for week Valor total das horas extras devidas |
|---|---|---|---|---|
| 2012 | | | | |
| 2/1  7/1 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 9/1  14/1 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 16/1  21/1 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 23/1  28/1 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 30/1  4/2 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 6/2  11/2 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 13/2  18/2 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 20/2  25/2 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 27/2  3/3 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 5/3  10/3 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 12/3  17/3 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 19/3  24/3 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 26/3  31/3 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 2/4  7/4 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 9/4  14/4 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 16/4  21/4 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 23/4  28/4 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 30/4  5/5 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 7/5  12/5 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 14/5  19/5 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 21/5  26/5 | 70 hs | 30 hs | $ 18.00 | $ 450. |
| 28/5  2/6 | 70 hs | 30 hs | $ 18.00 | $ 450. |

D- 11-J

| Worker's Name / Nome do Trabalhador: | Company / Employer / Empresa / Patrão: |
|---|---|
| | *TUDO NA BRASA* |
| | *TAST OF BRAZIL* |

CALCULATION OF OVERTIME DIFFERENTIAL OWED

## CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS

| Week ending on day / Semana termina no dia | Total hours worked in week / Total de horas trabalhadas na semana | Hours of overtime worked in week / Horas Extras trabalhadas na semana | Hourly wage / Salário por hora | Overtime Differential owed for week / Valor total das horas extras devidas |
|---|---|---|---|---|
| 2012 | | | | |
| 4/6 9/6 | 70 hs | 30 hs | $ 10. | $ 450. |
| 11/6 16/6 | 70 hs | 30 hs | $ 10. | $ 450. |
| 18/6 23/6 | 70 hs | 30 hs | $ 10. | $ 450. |
| 25/6 30/6 | 70 hs | 30 hs | $ 10. | $ 450. |
| 2/7 7/7 | 70 hs | 30 hs | $ 10. | $ 450. |
| 9/7 14/7 | 70 hs | 30 hs | $ 10. | $ 450. |
| 16/7 21/7 | 70 hs | 30 hs | $ 10. | $ 450. |
| 23/7 28/7 | 70 /hs | 30 hs | $ 10. | $ 450. |
| 30/7 4/8 | 70 hs | 30 hs | $ 10. | $ 450. |
| 6/8 11/8 | 70 hs | 30 hs | $ 10. | $ 450 |
| 13/8 18/8 | 70 hs | 30 hs | $ 10. | $ 450 |
| 20/8 25/8 | 70 hs | 30 hs | $ 10. | $ 450. |
| 27/8 1/9 | 70 hs | 30 hs | $ 10. | $ 450. |
| 3/9 8/9 | 70 hs | 30 hs | $ 10. | $ 450. |
| 10/9 15/9 | 70 hs | 30 hs | $ 10. | $ 450. |
| 17/9 22/9 | 70 hs | 30 hs | $ 10. | $ 450 |
| 24/9 29/9 | 70 hs | 30 HS | $ 10. | $ 450 |
| 1/10 6/10 | 70 hs | 30 HS | $ 10. | $ 450 |
| 8/10 13/10 | 70 hs | 30 HS | $ 10. | $ 450 |
| 15/10 20/10 | 70 hs | 30 HS | $ 10. | $ 450 |
| 22/10 27/10 | 70 hs | 30 HS | $ 10. | $ 450 |
| 29/10 3/11 | 70 hs | 30 HS | $ 10. | $ 450 |

11-11-12

| Worker's Name<br>Nome do Trabalhador: | Company / Employer<br>Empresa / Patrão:<br>TVDO NA BRASIA<br>TAST OF BRAZIL |
|---|---|

## CALCULATION OF OVERTIME DIFFERENTIAL OWED

## CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS

| Week ending on day<br>Semana termina no dia | Total hours worked in week<br>Total de horas trabalhadas na semana | Hours of overtime worked in week<br>Horas Extras trabalhadas na semana | Hourly wage<br>Salário por hora | Overtime Differential owed for week<br>Valor total das horas extras devidas |
|---|---|---|---|---|
| 2012 | | | | |
| 5/11    10/11 | 70 HS | 30 HS | $ 10. | $ 450. |
| 12/11   17/11 | 70 HS | 30 HS | $ 10. | $ 450. |
| 19/11   24/11 | 70 HS | 30 HS. | $ 10. | $ 450. |
| 26/11   1/12 | 70 HS | 30 HS | $ 10. | $ 450. |
| 3/12    8/12 | 70 HS | 30 HS | $ 10. | $ 450. |
| 10/12   15/12 | 70 HS | 30 HS | $ 10. | $ 450. |
| 17/12   22/12 | 70 HS | 30 HS | $ 10. | $ 450. |
| 24/12   29/12 | 70 HS | 30 HS | $ 10. | $ 450. |
| 31/12   5/1 | 70 HS | 30 HS | $ 10. | $ 450. |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

TOTAL =
$ 22,850.00

| Worker's Name Nome do Trabalhador: | Company / Employer Empresa / Patrão: |
|---|---|
| | *TUDO NA BRASA TAST OF BRAZIL* |

CALCULATION OF OVERTIME DIFFERENTIAL OWED

## CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS

| Week ending on day Semana termina no dia 2011 | Total hours worked in week Total de horas trabalhadas na semana | Hours of overtime worked in week Horas Extras trabalhadas na semana | Hourly wage Salário por hora | Overtime Differential owed for week Valor total das horas extras devidas |
|---|---|---|---|---|
| 4/4   9/4 | 70 HS | 30 HS | 10. | 450. |
| 11/4   16/4 | 70 HS | 30 HS | 10- | 450. |
| 18/4   23/4 | 70 HS | 30 HS | 10. | 450. |
| 25/4   30/4 | 70 HS | 30 HS | 10. | 450. |
| 2/5   7/5 | 70 HS | 30 HS | 10. | 450. |
| 9/5   14/5 | 70 HS | 30 HS | 10- | 450. |
| 16/5   21/5 | 70 HS | 30 HS | 10- | 450 |
| 23/5   28/5 | 70 HS | 30 HS | 10- | 450. |
| 30/5   4/6 | 70 HS | 30 HS | 10. | 450. |
| 6/6   11/6 | 70 HS | 30 HS | 10- | 450- |
| 13/6   18/6 | 70 HS | 30 HS | 10- | 450. |
| 20/6   25/6 | 70 HS | 30 HS | 10- | 450 |
| 27/6   2/6 | 70 HS | 30 HS | 10. | 450 |
| 4/7   9/7 | 70 HS | 30 HS | 10. | 450 |
| 11/7   16/7 | 70 HS | 30 HS | 10- | 450 |
| 18/7   23/7 | 70 HS | 30 HS | 10. | 450 |
| 25/7   30/7 | 70 HS | 30 HS | 10. | 450 |
| 1/8   6/8 | 70 HS | 30 HS | 10. | 450 |
| 8/8   13/8 | 70 HS | 30 HS | 10. | 450 |
| 15/8   20/8 | 70 HS | 30 HS | 10. | 450 |
| 22/8   27/8 | 70 HS | 30 HS | 10- | 450 |

| Worker's Name<br>Nome do Trabalhador: | Company / Employer<br>Empresa / Patrão:<br>*TVDO NA BRASA*<br>*TAS+ OF BRAZIL* |
|---|---|

CALCULATION OF OVERTIME DIFFERENTIAL OWED

## CÁLCULO DO DIFERENCIAL DAS HORAS EXTRAS DEVIDAS

| Week ending on day<br>Semana termina no dia<br>2011 | Total hours worked in week<br>Total de horas trabalhadas na semana | Hours of overtime worked in week<br>Horas Extras trabalhadas na semana | Hourly wage<br>Salário por hora | Overtime Differential owed for week<br>Valor total das horas extras devidas |
|---|---|---|---|---|
| 29/8   3/9 | 70 HS | 30 hs | $ 10. | $ 450. |
| 5/9   10/9 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 12/9   17/9 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 19/9   24/9 | 70 HS | 30 hs | $ 10. | $ 450 |
| 26/9   1/10 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 3/10   8/10 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 10/10   15/10 | 70 HS | 30 hs | $ 10. | $ 450 |
| 17/10   22/10 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 24/10   29/10 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 31/10   5/11 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 7/11   12/11 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 14/11   19/11 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 21/11   26/11 | 70 HS | 30 hs | $ 10. | $ 450 |
| 28/11   3/12 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 5/12   10/12 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 12/12   17/12 | 70 HS | 30 hs | $ 10.- | $ 450 |
| 19/12   24/12 | 70 HS | 30 hs | | |
| 26/12   31/12 | 70 HS | 30 hs | | |
| | | 500 hs | | |
| | | | | |
| | | | | |
| | | | | |

Total
$ 18.550.00

desc
- 9%

Cred Card/Tips

| | | | | |
|---|---|---|---|---|
| X 3 HOURS WEEK | 6/10 | Tue | 16.38 | |
| | 6/11 | Wend | 26,59 | |
| | 6/12 | Thur | 40,04 | 9% + |
| | 6/13 | FRI | 88,36 | |
| → | 6/14 | SAT | 25,38 | |
| ● | 6/16 | | 25,00 | |
| | 6/17 | | 47,49 | |
| X HOURS WEEK | 6/18 | | 61,90 | |
| | 6/19 | | 25,87 | 9% + |
| | 6/20 | | 90,46 | |
| → | 6/21 | | 21,50 | |
| | 6/30 | | 49,33 | |
| ● | 7/1 | | 30,80 | |
| | 7/2 | | 29,76 | |
| HOURS WEEK | 7/3 | | 34,49 | |
| | 7/4 | | 107,42 | 9% + |
| → | 7/5 | | 26,87 | |
| | 7/6 | | 9,99 | |
| | 7/8 | | 45,66 | |
| | 7/9 | | 38,35 | |
| WEEK HOURS | 7/10 | | 35,00 | 9% + |
| | 7/11 | | 55,23 | |
| → | 7/12 | | 58,56 | |
| | 7/14 | | 13,50 | |
| | 7/15 | | 33,86 | |
| WEEK HOURS | 7/16 | | 37,78 | 9% + |
| | 7/17 | | 25,38 | |
| | 7/18 | | 51,75 | D-11-0 |

| | Date | Value |
|---|---|---|
| → | 7/19 | 37,30 |
| | 7/21 | 22,39 |
| X UPPR HOURS | 7/22 | 67,54 |
| | 7/23 | 68,14 |
| | 7/24 | 26,51 |
| | 7/25 | 69,23 |
| → | 7/26 | 15,64 |
| | 7/28 | 47,67 |
| | 7/29 | 58,43 |
| UPPR HOURS | 7/30 | 70,29 |
| | 7/31 | 90,81 |
| | 8/1 | 51,29 |
| → | 8/2 | 35,19 |
| | 8/4 | 16.18 |
| | 8/5 | 41,93 |
| UPPR HOURS | 8/6 | 84,55 |
| | 8/7 | 89,99 |
| | 8/8 | 90,35 |
| → | 8/9 | 16,50 |
| | 8/11 | 86,07 |
| | 8/12 | 55,56 |
| UPPR HOURS | 8/13 | 89,27 |
| | 8/14 | 62,47 |
| | 8/15 | 68,91 |
| → | 8/16 | 14,44 |
| | 8/18 | 55,20 |
| UPPR HOURS | 8/19 | 43,08 |
| | 8/20 | 57,91 |
| | 8/21 | 46,43 |

P-11 -P

→ 8/25          41.93

X HOURS WORK

8/26          57,58
8/27          46,33
8/28          26,27
8/29          35,32
8/30        ?
8/31        ?

X HOURS WORK

9/1          55.00
9/2          25,98
9/3          67,17
9/4          93,55
9/5        ?

HOURS WORK

9/8.    MON     42,34
9/9          34,97
9/10         46,71
9/11         50,99
9/12         52,50
9/13         52,08

HOURS WORK

9/15         24,85
9/16         64,37
9/17         53,86
9/18         50,06
9/19         65,66
9/20         20,02

| X Hours week | 9/22 | 37,83 |
| | 9/23 | 36,23 |
| | 9/24 | 96,83 |
| | 9/26 | 64,90 |
| | | |
| | 9/29 | 45,94 |
| | 9/30 | 55,00 |
| X Hours week | 10/01 | 51,60 |
| | 10/02 | 46,25 |
| | 10/3 | 63,34 |
| | 10/4 | 65,13 |
| | | |
| | 10/6 | 38,80 |
| X Hours week | 10/7 | 79,59 |
| | 10/8 | 56,31 |
| | 10/9 | 45,48 |
| | 10/10 | 52,17 |

$1 \sim 11 \sim 12$

| Company Code | Loc/Dept | Num | Page |
|---|---|---|---|
| RG / M&S | 01/ | 1041 . | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

**Earnings Statement**

ADP

Period Starting:   09/07/2014
Period Ending:    09/13/2014
Pay Date:            09/17/2014

Taxable Marital Status:    Single
Exemptions/Allowances:            Tax Override:
     Federal:    3              Federal:
     State:      3              State:
     Local:      0              Local:
Social Security Number:    XXX-XX-XXXX

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular |  | 40.00 | 400.00 | 10800.00 |
| Gross Pay |  |  | $400.00 | $10,800.00 |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 40.00 | 1040.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 392.60 |
| Social Security | -24.80 | 669.60 |
| Medicare | -5.80 | 156.60 |
| Massachusetts State Income | -12.81 | 352.27 |
| Net Pay | $343.71 |  |

© 1999, 2006. ADP, LLC. All Rights Reserved.

▼ TEAR HERE

Your federal taxable wages this period are $400.00

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RG / M6S | 01/ | 10406 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

**Earnings Statement**

**ADP**

Period Starting:    08/31/2014
Period Ending:     09/06/2014
Pay Date:          09/10/2014

Taxable Marital Status:    Single
Exemptions/Allowances:     Tax Override:
   Federal:    3        Federal:
   State:      3        State:
   Local:      0        Local:
Social Security Number:    XXX-XX-XXXX

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 10400.00 |
| Gross Pay | | | **$400.00** | $10,400.00 |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 40.00 | 1000.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 379.72 |
| Social Security | -24.80 | 644.80 |
| Medicare | -5.80 | 150.80 |
| Massachusetts State Income | -12.81 | 339.46 |
| Net Pay | **$343.71** | |

Your federal taxable wages this period are  $400.00

**Company Code**
**RG / M6S**
Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

**Loc/Dept** **Number** **Page**
**01/** **10348** 1 of 1



## Earnings Statement

**ADP**

Period Starting: 05/25/2014
Period Ending: 05/31/2014
Pay Date: 06/04/2014

Woburn, MA 01801

Taxable Marital Status: Single
Exemptions/Allowances:
    Federal: -0-
    State: -0-
    Local: 0
Social Security Number:

Tax Override:
    Federal:
    State:
    Local:

| Earnings | rate | hours/units | this period | year to date |
|----------|------|-------------|-------------|--------------|
| Regular | | 40.00 | 400.00 | 9200.00 |
| **Gross Pay** | | | **$400.00** | $9,200.00 |

| Statutory Deductions | this period | year to date |
|----------------------|-------------|--------------|
| Federal Income | -12.88 | 296.24 |
| Social Security | -24.80 | 570.40 |
| Medicare | -5.80 | 133.40 |
| Massachusetts State Income | -12.81 | 294.63 |
| **Net Pay** | | **$343.71** |



Your federal taxable wages this period are  $400.00

**Earnings Statement**

ADP®

| | | |
|---|---|---|
| Company Code | Number | Page |
| RG / M6S | 10328 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

Period Starting:  04/27/2014
Period Ending:  05/03/2014
Pay Date:  05/07/2014

Taxable Marital Status:  Single
Exemptions/Allowances:   Tax Override:
  Federal:  3      Federal:
  State:  3      State:
  Local:  0      Local:
Social Security Number:

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 7600.00 |
| Gross Pay | | | **$400.00** | $7,600.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 244.72 |
| Social Security | -24.80 | 471.20 |
| Medicare | -5.80 | 110.20 |
| Massachusetts State Income | -12.81 | 243.39 |
| Net Pay | **$343.71** | |

Your federal taxable wages this period are  $400.00

| Company Code | Number | Page |
|---|---|---|
| RG / M&S | 10301 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Wobum, MA 01801

## Earnings Statement

**ADP®**

Period Starting:  03/23/2014
Period Ending:   03/29/2014
Pay Date:        04/02/2014

Taxable Marital Status: Single
Exemptions/Allowances:         Tax Override:
    Federal:  3              Federal:
    State:    3              State:
    Local:    0              Local:
Social Security Number:

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 5600.00 |
| **Gross Pay** | | | **$400.00** | $5,600.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 180.32 |
| Social Security | -24.80 | 347.20 |
| Medicare | -5.80 | 81.20 |
| Massachusetts State Income | -12.81 | 179.34 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are $400.00

**Company Code**    **Loc/Dept**    **Number**    **Page**
RG / M6S    01/    10343    1 of 1
Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

# Earnings Statement

**ADP**

Period Starting:   05/18/2014
Period Ending:   05/24/2014
Pay Date:   05/28/2014

| Taxable Marital Status: | Single | |
|---|---|---|
| Exemptions/Allowances: | | Tax Override: |
| Federal: | 3 | Federal: |
| State: | 3 | State: |
| Local: | 0 | Local: |
| Social Security Number: | | |

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 8800.00 |
| **Gross Pay** | | | **$400.00** | $8,800.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 283.36 |
| Social Security | -24.80 | 545.60 |
| Medicare | -5.80 | 127.60 |
| Massachusetts State Income | -12.81 | 281.82 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are  $400.00

**Company Code**
RG / M&S
Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

**Loc/Dept**
01/

**Number**
10337

**Page**
1 of 1

## Earnings Statement

**ADP**

Period Starting:    05/11/2014
Period Ending:      05/17/2014
Pay Date:           05/21/2014

Taxable Marital Status:    Single
Exemptions/Allowances:          Tax Override:
   Federal:    3          Federal:
   State:      3          State:
   Local:      0          Local:
Social Security Number:

**Woburn, MA 01801**

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 8400.00 |
| **Gross Pay** | | | **$400.00** | $8,400.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 270.48 |
| Social Security | -24.80 | 520.80 |
| Medicare | -5.80 | 121.80 |
| Massachusetts State Income | -12.81 | 269.01 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are  $400.00

| Company Code | Number | Page |
|---|---|---|
| RG 7 M6S | 10333 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

# Earnings Statement



Period Starting: 05/04/2014
Period Ending: 05/10/2014
Pay Date: 05/14/2014

Taxable Marital Status: Single
Exemptions/Allowances:      Tax Override:
  Federal: 3      Federal:
  State: 3      State:
  Local: 0      Local:
Social Security Number:

**Woburn, MA 01801**

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 8000.00 |
| **Gross Pay** | | | **$400.00** | $8,000.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 257.60 |
| Social Security | -24.80 | 496.00 |
| Medicare | -5.80 | 116.00 |
| Massachusetts State Income | -12.81 | 256.20 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are $400.00

D-1/- 2



**Earnings Statement**

| Company Code | Number | Page |
|---|---|---|
| RG / M6S | 10323 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

Period Starting:   04/20/2014
Period Ending:    04/26/2014
Pay Date:          04/30/2014



Woburn, MA 01801

Taxable Marital Status:   Single
Exemptions/Allowances:       Tax Override:
   Federal:   3          Federal:
   State:     3          State:
   Local:     0          Local:
Social Security Number:

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 7200.00 |
| Gross Pay | | | **$400.00** | $7,200.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 231.84 |
| Social Security | -24.80 | 446.40 |
| Medicare | -5.80 | 104.40 |
| Massachusetts State Income | -12.81 | 230.58 |
| Net Pay | **$343.71** | |

Your federal taxable wages this period are $400.00

| Company Code | Number | Page |
|---|---|---|
| RG / M6S | 10276 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

## Earnings Statement

Period Starting: 02/16/2014
Period Ending: 02/22/2014
Pay Date: 02/26/2014

| Taxable Marital Status: | Single | Tax Override: | |
|---|---|---|---|
| Exemptions/Allowances: | | | |
| Federal: | 3 | Federal: | |
| State: | 3 | State: | |
| Local: | 0 | Local: | |
| Social Security Number: | | | |

**Woburn, MA 01801**

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 3600.00 |
| **Gross Pay** | | | **$400.00** | $3,600.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 115.92 |
| Social Security | -24.80 | 223.20 |
| Medicare | -5.80 | 52.20 |
| Massachusetts State Income | -12.81 | 115.29 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are $400.00

| Company Code | Number | Page |
|---|---|---|
| RG / M6S | 10271 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

**Earnings Statement**

Period Starting:  02/09/2014
Period Ending:  02/15/2014
Pay Date:  02/19/2014



Taxable Marital Status:  Single
Exemptions/Allowances:
    Federal:  3      Tax Override:
    State:  3      Federal:
    Local:  0      State:
Social Security Number:       Local:

**Woburn, MA 01801**

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 3200.00 |
| **Gross Pay** | | | **$400.00** | $3,200.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 103.04 |
| Social Security | -24.80 | 198.40 |
| Medicare | -5.80 | 46.40 |
| Massachusetts State Income | -12.81 | 102.48 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are  $400.00

**Company Code**
RG / M6S
Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

**Number**
10266

**Page**
1 of 1

## Earnings Statement



Period Starting:   02/02/2014
Period Ending:    02/08/2014
Pay Date:          02/12/2014

Taxable Marital Status:   Single
Exemptions/Allowances:        Tax Override:
  Federal:    3           Federal:
  State:      3           State:
  Local:      0           Local:
Social Security Number:

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|----------|------|-------------|-------------|--------------|
| Regular | | 40.00 | 400.00 | 2800.00 |
| **Gross Pay** | | | **$400.00** | **$2,800.00** |

| Statutory Deductions | this period | year to date |
|----------------------|-------------|--------------|
| Federal Income | -12.88 | 90.16 |
| Social Security | -24.80 | 173.60 |
| Medicare | -5.80 | 40.60 |
| Massachusetts State Income | -12.81 | 39.67 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are  $400.00

**Company Code**
RG / M6S
Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

**Number**
10261

**Page**
1 of 1

# Earnings Statement

**ADP**®

Period Starting:   01/26/2014
Period Ending:   02/01/2014
Pay Date:   02/05/2014

Taxable Marital Status:   Single
Exemptions/Allowances:
  Federal:   3   Tax Override:
  State:   3     Federal:
  Local:   0     State:
Social Security Number:     Local:

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 2400.00 |
| **Gross Pay** | | | **$400.00** | **$2,400.00** |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 77.28 |
| Social Security | -24.80 | 148.80 |
| Medicare | -5.80 | 34.80 |
| Massachusetts State Income | -12.81 | 76.86 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are  $400.00

**Earnings Statement**

| Company Code | Number | Page |
|---|---|---|
| RG / MGS | 10291 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

Period Starting:   03/09/2014
Period Ending:    03/15/2014
Pay Date:           03/19/2014

Taxable Marital Status:   Single
Exemptions/Allowances:                Tax Override:
   Federal:    3                     Federal:
   State:      3                     State:
   Local:      0                     Local:
Social Security Number:

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 4800.00 |
| **Gross Pay** | | | **$400.00** | $4,800.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 154.56 |
| Social Security | -24.80 | 297.60 |
| Medicare | -5.80 | 69.60 |
| Massachusetts State Income | -12.81 | 153.72 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are $400.00

**Company Code**   **Number**   **Page**
RG / MeS          10286        1 of 1
Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

**Earnings Statement**



Period Starting:   03/02/2014
Period Ending:     03/08/2014
Pay Date:          03/12/2014

Taxable Marital Status:   Single
Exemptions/Allowances:              Tax Override:
    Federal:    3                   Federal:
    State:      3                   State:
    Local:      0                   Local:
Social Security Number:

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 4400.00 |
| Gross Pay | | | **$400.00** | $4,400.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 141.68 |
| Social Security | -24.80 | 272.80 |
| Medicare | -5.80 | 63.80 |
| Massachusetts State Income | -12.81 | 140.91 |
| Net Pay | **$343.71** | |

Your federal taxable wages this period are  $400.00

| Company Code | Number | Page |
|---|---|---|
| RG / M6S | 10281 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

# Earnings Statement



Period Starting:  02/23/2014
Period Ending:    03/01/2014
Pay Date:         03/05/2014

Woburn, MA 01801

Taxable Marital Status:   Single
Exemptions/Allowances:          Tax Override:
   Federal:   3            Federal:
   State:     3            State:
   Local:     0            Local:
Social Security Number:

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 4000.00 |
| **Gross Pay** | | | **$400.00** | $4,000.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 128.80 |
| Social Security | -24.80 | 248.00 |
| Medicare | -5.80 | 58.00 |
| Massachusetts State Income | -12.81 | 128.10 |
| **Net Pay** | **$343.71** | |

Your federal taxable wages this period are  $400.00



| Company Code | Number | Page |
|---|---|---|
| RG / M6S | 10236 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

## Earnings Statement



Period Starting: 12/22/2013
Period Ending: 12/28/2013
Pay Date: 01/02/2014

Taxable Marital Status: Single
Exemptions/Allowances:    Tax Override:
    Federal: 3     Federal:
    State: 3     State:
    Local: 0     Local:
Social Security Number:

Woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 400.00 |
| **Gross Pay** | | | **$400.00** | $400.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 12.88 |
| Social Security | -24.80 | 24.80 |
| Medicare | -5.80 | 5.80 |
| Massachusetts State Income | -12.81 | 12.81 |
| **Net Pay** | **$343.71** | |



Your federal taxable wages this period are $400.00



**Company Code**  **Number**  Page
RG / M6S  10246  1 of 1
Tudo Na Brasa Inc
414 Main Street
Wobum, MA 01801

# Earnings Statement

Period Starting:    01/05/2014
Period Ending:    01/11/2014
Pay Date:    01/15/2014

FALTA
1/21

1600
˅00

Woburn, MA 01801

Taxable Marital Status:    Single
Exemptions/Allowances:    Tax Override:
    Federal:    3    Federal:
    State:    3    State:
    Local:    0    Local:
Social Security Number:

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular |  | 40.00 | 400.00 | 1200.00 |
| Gross Pay |  |  | $400.00 | $1,200.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -12.88 | 38.64 |
| Social Security | -24.80 | 74.40 |
| Medicare | -5.80 | 17.40 |
| Massachusetts State Income | -12.81 | 38.43 |
| Net Pay | $343.71 | |

Your federal taxable wages this period are  $400.00

| Company Code | Number | Page |
|---|---|---|
| RG / M6S | 0211 | 1 of 1 |

Tudo Na Brasa Inc
414 Main Street
Woburn, MA 01801

# Earnings Statement

**ADP**

Period Starting:   11/10/2013
Period Ending:    11/16/2013
Pay Date:          11/20/2013

Taxable Marital Status:    Single
Exemptions/Allowances:        Tax Override:
   Federal:   3        Federal:
   State:     3        State:
   Local:     0        Local:
Social Security Number:

woburn, MA 01801

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 400.00 | 12800.00 |
| **Gross Pay** | | | **$400.00** | $12,800.00 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -13.27 | 425.31 |
| Social Security | -24.80 | 793.60 |
| Medicare | -5.80 | 185.60 |
| Massachusetts State Income | -12.93 | 413.76 |
| **Net Pay** | **$343.20** | |

Your federal taxable wages this period are $400.00

2013 W-2 and EARNINGS SUMMARY

e-file

*fe, accurate,*
*ST! Use*
e-file at www.irs.gov/efile
Visit the IRS Web Site

Employee Reference Copy

**W-2** Wage and Tax Statement **2013**
OMB No. 1545-0008

*rn C for employee's records.*

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 0005 RG/M6S | | A | 5 |

Employer's name, address, and ZIP code
**TUDO NA BRASA INC**
**414 MAIN STREET**
**WOBURN, MA 01801**

Batch #93898

Employee's name, address, and ZIP code

/OBURN, MA 01801          X

| Employee's FED ID number | a Employee's SSA number |
|---|---|
| 0588 | |

| Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 14800.00 | 491.66 |

| Social security wages | 4 Social security tax withheld |
|---|---|
| 14800.00 | 917.60 |

| Medicare wages and tips | 6 Medicare tax withheld |
|---|---|
| 14800.00 | 214.60 |

| Social security tips | 8 Allocated tips |
|---|---|
| | |

| | 10 Dependent care benefits |
|---|---|
| Nonqualified plans | |

| Other | 12a See instructions for box 12 |
|---|---|
| | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan 3rd party sick pay |

| State | Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|---|
| MA | 204-600-588 03 | 14800.00 |

| State income tax | |
|---|---|
| 478.41 | |

| Local income tax | 20 Locality name |
|---|---|
| | |

---

This blue Earnings Summary section is included with your W-2 to help describe portions in more detail.
The reverse side includes general information that you may also find helpful.

1. The following information reflects your final 2013 pay stub plus any adjustments submitted by your employer.

| | | | |
|---|---|---|---|
| Gross Pay | 14800.00 | Social Security Tax Withheld Box 4 of W-2 | 917.60 | MA State Income Tax Box 17 of W-2 | 478.41 |
| | | | | SUI/SDI Box 14 of W-2 | |
| Fed. Income Tax Withheld Box 2 of W-2 | 491.66 | Medicare Tax Withheld Box 6 of W-2 | 214.60 | | |

2. Your Gross Pay was adjusted as follows to produce your W-2 Statement.

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | MA State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 14,800.00 | 14,800.00 | 14,800.00 | 14,800.00 |
| Reported W-2 Wages | 14,800.00 | 14,800.00 | 14,800.00 | 14,800.00 |

3. Employee W-4 Profile. To change your Employee W-4 Profile information, file a new W-4 with your payroll dept.

WOBURN, MA 01801

Social Security Number
Taxable Marital Status: SINGLE
Exemptions/Allowances:
FEDERAL: 3
STATE: 3

© 2013 ADP, INC.

--- Fold and Detach Here ---

| Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 14800.00 | 491.66 |

| Social security wages | 4 Social security tax withheld |
|---|---|
| 14800.00 | 917.60 |

| Medicare wages and tips | 6 Medicare tax withheld |
|---|---|
| 14800.00 | 214.60 |

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 0005 RG/M6S | | A | 5 |

Employer's name, address, and ZIP code
**TUDO NA BRASA INC**
**414 MAIN STREET**
**WOBURN, MA 01801**

| Employee's FED ID number | a Employee's SSA number |
|---|---|
| 0588 | |

| Social security tips | 8 Allocated tips |
|---|---|
| | |

| | 10 Dependent care benefits |
|---|---|
| Nonqualified plans | |

| Other | 12a See instructions for box 12 |
|---|---|
| | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan 3rd party sick pay |

Employee's name, address and ZIP code

/OBURN, MA 01801

| State | Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|---|
| MA | 204-600-588 03 | 14800.00 |

| State income tax | |
|---|---|
| 478.41 | |

| Local income tax | 20 Locality name |
|---|---|
| | |

Federal Filing Copy

**W-2** Wage and Tax Statement **2013**

# 2012 W-2 and EARNINGS SUMMARY

Visit the IRS Web Site
at www.irs.gov/efile

**Employee Reference Copy**

-2 Wage and Tax Statement

**2012**
OMB No. 1545-0008

The Blue Earnings Summary section is included with your W-2 to help describe portions in more detail.
The reverse side includes general information that you may also find helpful.

**1.** The following information reflects your final 2012 pay stub plus any adjustments submitted by your employer.

| | | | | | |
|---|---|---|---|---|---|
| Gross Pay | 4800.00 | Social Security Tax Withheld Box 4 of W-2 | 201.60 | MA. State Income Tax Box 17 of W-2 SUI/SDI Box 14 of W-2 | 160.20 |
| Fed. Income Tax Withheld Box 2 of W-2 | 167.28 | Medicare Tax Withheld Box 6 of W-2 | 69.60 | | |

**2.** Your Gross Pay was adjusted as follows to produce your W-2 Statement.

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | MA. State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| Reported W-2 Wages | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |

**3.** Employee W-4 Profile. To change your Employee W-4 Profile Information, file a new W-4 with your payroll dept.

WOBURN, MA 01801

Social Security Number
Taxable Marital Status: SINGLE
Exemptions/Allowances:
FEDERAL: 3
STATE: 3

© 2012 ADP, INC.

---

employee's records

| I number RG/M6S | Dept. | Corp. | Employer use only A | 5 |
|---|---|---|---|---|

yer's name, address, and ZIP code
UDO NA BRASA INC
14 MAIN STREET
/OBURN, MA 01801

**Batch #95014**

ree's name, address, and ZIP code

RN, MA 01801

| ID number 0588 | a Employee's SSA number |
|---|---|
| , tips, other comp. 4800.00 | 2 Federal income tax withheld 167.28 |
| security wages 4800.00 | 4 Social security tax withheld 201.60 |
| re wages and tips 4800.00 | 6 Medicare tax withheld 69.60 |
| security tips | 8 Allocated tips |
| | 10 Dependent care benefits |
| ified plans | 12a See instructions for box 12 |
| | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

Employer's state ID no. | 16 State wages, tips, etc.
204-600-588 03 | 4800.00
come tax | 18 Local wages, tips, etc.
160.20
come tax | 20 Locality name

---

| , tips, other comp. 4800.00 | 2 Federal income tax withheld 167.28 |
|---|---|
| security wages 4800.00 | 4 Social security tax withheld 201.60 |
| re wages and tips 4800.00 | 6 Medicare tax withheld 69.60 |
| number RG/M6S | Dept. | Corp. | Employer use only A | 5 |

yer's name, address, and ZIP code
UDO NA BRASA INC
14 MAIN STREET
/OBURN, MA 01801

| FED ID number 0588 | a Employee's SSA number |
|---|---|
| security tips | 8 Allocated tips |
| | 10 Dependent care benefits |
| ified plans | 12a See instructions for box 12 |
| | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

ree's name, address and ZIP code

RN, MA 01801

Employer's state ID no. | 16 State wages, tips, etc.
04-600-588 03 | 4800.00
come tax | 18 Local wages, tips, etc.
160.20
come tax | 20 Locality name

**Federal Filing Copy**

-2 Wage and Tax Statement

**2012**
OMB No. 1545-0008

filed with employee's Federal Income Tax Return

ORTHOPAEDIC SURGICAL ASSOCIATES, PC • 14 Research Place, N.Chelmsford MA 01863-2412

id                dob:

# Referral Order

09/23/2013

| To Provider | From Provider |
|---|---|
| Phone:<br>Fax: | ATUL BHAT, MD<br>OSA N. Chelmsford<br>14 Research Place<br>N.Chelmsford, MA 01863-2412<br>Phone: (978) 454-0706<br>Fax: (978) 970-0454 |

## Referral Order Information

| Diagnosis | 724.2: Lumbago |
|---|---|
| Order Name | Orders included: 1<br><br>724.2: Lumbago<br>• **PHYSICAL THERAPY REFERRAL**<br>Note to Provider: Chronic LBP, DDD L5-S1 |
| Notes | Chronic LBP, DDD L5-S1 |

Within Order Name, the nested box:

| Visits per Week: 2-3<br>Number of Weeks: 4-6<br>Exercises: Teach HEP<br>Modalities:<br>ROM/Stretching/Strengthening | Back Pain Treatment?: Y<br>Core Strengthening?: Y<br>Lower Extremity Stretching<br>Program?: Y<br>Evaluate & Treat: as indicated |
|---|---|

## Patient Information

| Patient Name | |
|---|---|
| Sex - DOB - Age | |
| Address | |
| Phone | H:<br>M: |
| Primary Insurance | BMC HEALTHNET - COMMONWEALTH CARE - PLAN TYPE I (MEDICAID HMO)<br>ID:<br>Group:<br>Policy Holder: |
| Secondary Insurance | None recorded. |

Electronically Signed by: ATUL BHAT, MD





Telephone: (978) 654-5050

**Orthopaedic**
**Surgical**
**Associates**

Telephone: (978) 454-0706

Samuel D. Gerber, MD
F.A.C.S.
*Sports Medicine*
*Knee and Shoulder Surgery*
*Arthroscopic Surgery*

Eric D. Holstein, MD
*General Orthopaedics*
*Sports Medicine*
*Fracture Care*

Scott A. Sigman, MD
*Sports Medicine*
*Knee and Shoulder Surgery*
*Arthroscopic Surgery*

Steven Alter, MD
*Hand and Upper Extremity Surgery*
*Trauma Surgery*

Mark A. Lapp, MD
*Spinal Surgery*
*Asst. Professor of Orthopaedics*
*Tufts University School of Medicine*

W. Howard Wu, MD
*Sports Medicine*
*Arthroscopic Surgery*
*Joint Reconstruction*

Atul L. Bhat, MD
*Interventional Physiatry*
*Spinal Disorders*

Jeremy M. Moses, MD
*Sports Medicine*
*Knee and Shoulder Surgery*
*Arthroscopic Surgery*

David J. Prybyla, MD
*Joint Reconstruction*
*Fracture Care*

June Stott, NP
Kristen Proverb, NP-C
Meredith Wall, PA-C
Roula Johnstone, NP-C

*14 Research Place*
*N. Chelmsford, MA 01863*
*Fax: (978) 970-0454*

## MERRIMACK VALLEY SPINE CENTER
### INSTRUCTIONS FOR INJECTIONS PERFORMED BY DR. BHAT

INJECTION #1- DATE  4/8/14          TIME  3:35pm

INJECTION #2-DATE  4/22/14          TIME  3:50pm

FOLLOW UP APPT  5/15/14          TIME  4:00pm

*IF YOUR INSURANCE REQUIRES A REFERRAL, PLEASE MAKE SURE IT IS IN PLACE PRIOR TO YOUR INJECTION DATE   \*CO-PAYS ARE DUE AT INJECTION APPTS\*\*.*

1. LUMBAR INJECTIONS REQUIRE A RIDE HOME, CERVICALS DO NOT

2. YOU MUST STOP TAKING ANY NON-STEROIDIAL ANTI-FLAMMITORY MEDICATION FOR THREE (3) FULL DAYS PRIOR. THESE INCLUDE: LODINE, FELDENE, INDOCIN, NAPROSYN, NAPROXEN, ADVIL, ALEVE, MOTRIN AND IBUPROFEN.

3. YOU MUST BE OFF THE FOLLOWING  BLOOD THINNERS (if applicable): TICID, COUMADIN, PLAVIX, LOVENOX, PRADAXA OR AGGRENOX- FOR 5 DAYS PRIOR TO INJECTION (unless instructed otherwise by MD).

4. CONTINUE TO TAKE ALL OF YOUR OTHER MEDICATIONS AS DIRECTED.

5. PLEASE WEAR LOOSE ELASTIC WAISTED PANTS FOR THE APPOINTMENT (no belts).

6. MAKE SURE TO EAT A LIGHT BREAKFAST/LUNCH PRIOR TO YOUR APPOINTMENT.

*Team Physicians - UMASS Lowell*

Confidentiality Notice- The documents and information submitted in this fax transmission contain confidential and privileged information from OSAL. The addressee reserves its confidentiality and privilege. If you are not the intended recipient, please be advised that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this fax in error, please notify us by telephone immediately to allow OSAL to arrange for retrieval of the original documents and copies at no cost to you. Our telephone number is 978-454-0706. Thank you.

**INDEX OF E EXHIBITS**

E-1    FC Notes

E-2    IC Notes

**FINAL CONFERENCE FLSA OUTLINE / NOTES**

**Date:** 6/24/2015

**Location:** BDO

**All Present:** Igor Gomes, Hugo Morales

- Concluded Investigation: explain findings.                    — Rolling quarter
- Coverage: why they are covered  ADV ↑ 500,00.      +2 EES
- SIP: explain dates  4/28/2013 TO 4/25/2015   2 PoI
                                                                                    2 year
- Investigative Steps (IC, tour, records review, determine compliance)
- Review violations found (explain from easier to more complex) Salary 455/
  - ✓ Sec. 15 — Retaliation                         managerial
  - 7 ✓ Sec. 13  EES not exempt              — 2 + EES
  - 2 ✓ Sec. 12  no vio CL                       → Hire/Fire
  - 4 ✓ Sec. 11 RR, Failure to Record Hours, Failure to OT Prem.
  - 6 ✓ Sec. 7 — no OT Paid
  - 5 ✓ Sec. 6 — min vio - Salary Paying EE below min.  ✓
  - 1 ✓ Sec. 3
  - 3 ✓ HW, Employment Relationship & Other Pubs.

- Ask for explanation of why, and what the plan is to correct it and future
  compliance  why cash Payments, why EES sign Book          — Rosales
                                                                                              — EES Asked
                                                                                              — Misunderstood
- Get commitment to full future compliance/agree to comply with all provisions

TIPS Property of TIPEES — NOT GR —           Marlene — no sign
9% No                                                                    — Not managerial
ER charge EES                                                  — Hire/Fire
Hourly Rates
TIPS To Pay Other EES ✓      2nd signature

Sign of Receipt of cash wages — ✓          Yes
                                                                                  ATC

Employment Tax
  ↳ Federal Income Tax
  ↳ SS v
  ↳ Medicare
  ↳ Unemployment Taxes

E-1-a

**Initial Conference**

Conference Date: _4_ / _23_ / _15_

Location: _woburn, MA_

Person met with and title: _Hugo Marael_ Telephone #: [redacted] 4830
                                                        (> cell

1. What is the Legal name of firm? _Tudo na Brage Inc._  Tag Rey Brazil

    a. Dba? (Name under which the general public would know the business)

    b. When was the firm established? (How long has the firm been in business?) _2007_

    c. What is the address of corporate office and telephone #? _(781) 938-0101_

    d. Does owner have any branch establishments or other businesses? _only one_

        i. where is the location or address? _only one_

2. How are you organized?  (What is the legal identity of firm?)  Is it a (corporation),

    partnership, sole proprietorship, etc? (Circle one)

    a. if corp, get corp officers' names, titles, address and who owns how much

        stock                  _owner_

                              _100 % owner_

    b. if partnership, get partner's name, addresses, telephone # and who owns

        what % of the business              _Prado_

3. Who are the principals of the firm?              _V.P_

                                                    _au_

4. Is there an individual (one of the principals, or someone else) involved in running

    the business who sets corporate policies such as human resources, payroll, etc? _Family_

                                                                                    _Father_

    Name_____ title _____

    a. Who does payroll? _ADP - weekly_

                        _Hugo → ADP - weekly_
                                  _Friday_

                                                    _6-7-2_

b. How are records kept? *Time Record* / *Time cords*

c. Who maintains the records — *ant to ADP*

5. What is the Federal ID #? (EIN) [redacted] *0 588*

6. What are the gross sales figures (ADV) for the past three years?

7. What is the nature of the business? (Type of work the firm does?)

*Full Service — /Body & style*

8. Majority (over half) of the establishment annual dollar volume of sales or

business comes from? Sales of vehicles or repairing vehicles from collisions?

9. What items are shipped or received in Interstate Commerce and by whom?

a. Orders placed by whom? Phone? Mail? Fax? *Hugo places NY orders*

b. Prepare orders?

c. Receive goods? Load? Unload?

d. Frequency?

*6 = Total / 665*

10. Any gov't contracts? (if applicable) *N/A*

*4-5*

11. What is the number of employees? *6*   Part-time *2* Full-Time *6*

12. What is the established work week? *Sun to Sat*  *Plus own*

13. What are the normal hours of operation? *11 AM — 10 PM establis*

14. What is your pay period? (weekly, biwkly, semi-monthly, etc.) *10:00 / 10:30 pm*

15. When is pay day? (What is the frequency of pay?) *weekly*  *once on Fri/*

16. What is the lunch/break policy? *40-min — no clock out*

How long? *40 min*

Paid or unpaid?

17. How are hours of work recorded? *Time cards*

18. How are employees paid? (Hrly, salary, commission, etc?)

*All Hourly*

*owner salary*

*Dishwash — 9, 10, 11*
*cooks —*

19. Who are your hourly EEs & titles?

20. Who are your salaried EEs & titles?  *— owner*

21. Who are your tipped EEs?  .

22. Who are your commissioned EEs & titles?  *N/A*

   If any, are they solely paid on commission?  *N/A*

23. Who are your EEs who receive bonuses?  *N/A*

24. Are there any deductions taken from their pay? (tools, uniforms)

25. (Exemptions claimed)  *Free — T-shirt*

26. Are overtime hours worked?  (Are hours in excess of 40 hours per week worked

   by any EEs?)  Yes/No

   If yes, who are the EEs most likely to work OT hours?  *— owners*
   *↳ Jose Hanhuez*

27. Is OT paid? _____  *—*

28. How is OT computed?  *↳ no [OT] —*

29. When was the last completed payroll date? (for SIP)

30. Any EEs under 18?  Past 2 years?  *D, D — some checks*
   *cash — no record of cash*

   a.  Youngest EE in SIP?

   b.  Hours?

   c.  CL work permits?  *No minors*

   Ages?  Duties?

# Attachment B



JACKIE LIMA

| Date | Time | Equation |
|---|---|---|
| | 19:00 | $157.00 + 63.00 = 199.00$ — |
| 07/29 | | |
| 08/05 | 63:24 | $317.00 + 156.00 = 473.00$ — |
| 08/05 | 65:06 | $325.50 + 171.90 = 497.40$ — |
| 08/12 | | |
| 08/12 333.00 CASH | | $320.92 + 182.63 = 503.55$ — |
| 08/19 | 64:11 | $320.92 + 182.63 = 447.94$ — |
| 08/19 | | |
| 08/26 | 53:07 | $265.58 + 182.36 = 447.94$ — |
| 08/26 | | |
| 09/02 | | |
| 09/02 | | $253.17 + 132.90 = 386.07$ |
| 09/09 -14 | | |
| 09/09 205. | 50:38 | $253.17 + 244.24 = 623.16$ |
| 09/16 | 75:47 | $378.92 + 194.36 = 519.19 + 40$ |
| 09/23 4.27 | | |
| 09/23 366 | 64:58 | $324.83 + 194.36 = 437.18$ JX |
| 09/30 | 48:26 CHECK | $242.17 + 195.01 = 459.05$ |
| 09/30 | | |
| 10/07 | 59:11 CASH CHECK | $295.92 + 163.13 = 410.43$ |
| 10/07 | | |
| 10/14 | 51:31 | $257.58 + 152.85 = 410.43$ |
| 10/14 | | |
| 10/21 | 69:41 | $348.42 + 253.17 = 601.59 +19.27$ — JX |
| 10/21 | | |
| 10/28 | 21:31 | $107.58 + 75.13 = 182.71$ |
| 10/28 | | |
| 11/04 | 56:33 | $169.65 + 224.26 = 393.91$ JL |
| 11/04 4 TO 10.5 | | |
| 11/11 176.00 | 27:11 | $81.55 + 120.07 = 201.62$ DIA 14:11? |
| 11/11 | | |
| 11/18 | 41:38 | $124.90 + 114.16 = 239.06$ |
| 11/18 | | |
| 11/25 | 46:08 | $138.24 + 255.77 = 394.01$ |
| 11/25 | | |
| 12/02 | 82:45 | $248.25 + 341.97 = 590.22$ |
| 12/02 | | |
| 12/09 | 62:52 | $188.60 + 265.47 = 454.07$ |
| 12/09 | | |
| 12/16 | 61:38 | $184.90 + 318.50 = 503.40$ |
| 12/16 | | |
| 12/23 | 46:52 | $140.60 + 162.39 = 302.99$ |
| 12/23 | | |
| 12/30 | 48:30 | $145.50 + 136.23 = 281.73$ |
| 12/30 HAVES | | |
| 01/06 | 57:34 | $172.70 + 204.65 = 377.35$ |
| 01/06 HAVER | | |
| 03/13 122.0 | | |

**DETAILED PAYROLL REPORT**    Employee Name: tudo, Daniel

Payroll Group: TimeTrax Payroll / Employee Group: Group 1

For The Pay Period: 12/29/2019 05:00 Thru 01/05/2020 05:00

Printed: 08-Jan-20  19:31

| PayCategory | Hours | Amount | PayCategory | Hours | Amount | PayCategory | Hours | Amount | PayRate |
|---|---|---|---|---|---|---|---|---|---|
| ılar | 33:45 | $506.25 | | | | | | | 15.00 |
| Overtime 1.5 | | | | | | | | | |
| Overtime 2 | | | | | | Total Pay: | | $506.25 | |

| Status | Actual | Edited | In/Out | Reg | Ot1 | Ot2 | Total |
|---|---|---|---|---|---|---|---|
| | Sun Dec 29 10:18 | Sun Dec 29 10:18 | In | | | | |
| | Sun Dec 29 23:02 | Sun Dec 29 23:02 | Out | 12:44 | | | 12:44 |
| | Fri Jan 03 15:18 | Fri Jan 03 15:18 | In | | | | |
| | Fri Jan 03 22:21 | Fri Jan 03 22:21 | Out | 7:03 | | | 7:03 |
| | Sat Jan 04 09:36 | Sat Jan 04 09:36 | In | | | | |
| | Sat Jan 04 23:34 | Sat Jan 04 23:34 | Out | 13:58 | | | 13:58 |
| | | | Total | 33:45 | 0:00 | 0:00 | 33:45 |

WED 3
WED -
THU -   3:20 - Close

5: CASH

START - 08/11  2: PAGAMENTO  
                          ATÉ          PAI ACEITOU    $ 681.88

        09/15 - 6: SEMANA      ~~H $639.05~~

09/22  ATÉ  01/12

09/22 -  175.76  
09/29 -  166.03  
10/06 -  
10/13 -  113.02  
10/20 -  151.24  
10/27 -  147.05  
11/03 -  141.76  
11/10 -  133.99  
11/17 -  57.87  
11/24 -  57.37  
12/01 -  5.38  
12/08 -  6.21  
12/15 -  + 3.00  
12/22 -  10.17  
12/30 -  + 2.58  
01/06 -  10.05  
01/12 -  9.36

$1,180.00

| Labor ▼ | Custom Date ▼ | 12-29-2019 | 01-04-2020 | All Hours ▼ | Oliveiro, Daniel ▼ |

The Dog House Bar & G... ▼                                                      Update    **Email Export**

< Return to Analytics & Reports (/restaurants/admin/analytics/home)

**mary**    Time Entries    Break Entries    Break Adherence    Hourly Sales Report

## Employee Summary

**Oliveiro, Daniel**    Location: The Dog House Bar & Grill

| Job Title | Regular Hours | Overtime Hours | Hourly Rate | Regular Pay | Overtime Pay | Total Pay |
|-----------|---------------|----------------|-------------|-------------|--------------|-----------|
| Chef | 30.42 | 0.00 | | | | |
| | 30.42 | 0.00 | | | | |

| Net Sales | Tips | Gratuity | Declared Tips |
|-----------|------|----------|---------------|
| $0.00 | $0.00 | $0.00 | $0.00 |

| Job Title | Regular Hours | Overtime Hours | Hourly Rate | Total Pay | Day | In Date | Out Date |
|-----------|---------------|----------------|-------------|-----------|-----|---------|----------|
| Chef | 0.00 | 0.00 | $0.00 | $0.00 | Sun | 12/29/19 10:18 AM | 12/29/19 10:18 AM |
| Chef | 12.00 | 0.00 | $0.00 | $0.00 | Tue | 12/31/19 9:00 AM | 12/31/19 9:00 PM |
| C | 14.00 | 0.00 | $0.00 | $0.00 | Thu | 1/2/20 9:17 AM | 1/2/20 11:17 PM |
| Chef | 4.41 | 0.00 | $0.00 | $0.00 | Fri | 1/3/20 10:19 AM | 1/3/20 2:44 PM |

**Generated on 1/11/20 4:40 PM**



SEQ 000494

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| RZ / 8M5▓ | 01/ | 2094114 | 1 of 1 |

The Dog House Bar & Grill LLC
434 Main St
Woburn, MA 01801-4235

**Earnings Statement**

ADP®

Period Starting:    09/05/2021
Period Ending:    09/11/2021
Pay Date:    09/17/2021

Taxable Filing Status: Single
Exemptions/Allowances:
　Federal:　Std W/H Table
　State:　0
　Local:　0
Social Security Number: XXX-XX-XXXX

Tax Override:
　Federal:
　State:
　Local:

**Woburn, MA 01801**

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 14.0000 | 24.29 | 340.06 | 3359.58 |
| **Gross Pay** | | | **$340.06** | **$3,359.58** |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -9.87 | 176.04 |
| Social Security | -21.08 | 208.29 |
| Medicare | -4.93 | 48.71 |
| Massachusetts State Income | -15.70 | 155.13 |
| Massachusetts Paid Medical | -0.84 | 8.32 |
| Massachusetts Paid Family | -0.44 | 4.37 |
| **Net Pay** | | **$287.20** |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Total Hours Worked | 24.29 | 239.97 |

| Deposits account number | transit/ABA | amount |
|---|---|---|
| XXXXXX3850 | XXXXXXXXX | 287.20 |

**Important Notes**

Basis of pay: Hourly

© 1998, 2006, ADP, Inc. All Rights Reserved.

Your federal taxable wages this period are $340.05

TEAR HERE

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

The Dog House Bar & Grill LLC
434 Main St
Woburn, MA 01801-4235

**Pay Date:**　09/17/2021

Deposited to the account
Checking DirectDeposit

THIS IS NOT A CHECK

| account number | transit/ABA | amount |
|---|---|---|
| XXXXXX3850 | XXXXXXXXX | 287.20 |

Woburn, MA 01801

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.　HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

# Attachment C



# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### REPORT OF INVESTIGATION



OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

---

02/23/2020 15:40 EST

Page 1 of 3

**CASE NUMBER**

**CASE OPENED**
4/17/2018

**CURRENT CASE TITLE**

**REPORT TITLE**
Significance of YMAX Telephone
(781) 451-7505

**REPORTED BY**
Michael Lenehan
SPECIAL AGENT

**APPROVED BY**
Jordan Regan
SPECIAL AGENT

**DATE APPROVED**
2/22/2020

**SYNOPSIS**

HSI Boston special agents are investigating TUDO NA BRASA and THE DOGHOUSE restaurants for alien smuggling, knowingly hiring and harboring illegal aliens, forced labor, document fraud, and money laundering. The owner of the restaurants, Hugo MORAES (hereafter HUGO), a naturalized U.S. citizen from Brazil, along with other family members, reportedly engage another relative in Brazil to provide a workforce comprised of illegal aliens to include minors. This relative, Chelbe MORAES (hereafter CHELBE), then coordinates the illegal entry of Brazilian family units, both legitimate and fraudulent, into the United States across the southern border.

---

| Current Case Title | ROI Number | Date Approved |
|---|---|---|
| | | 2/22/2020 |

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.




# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### REPORT OF INVESTIGATION

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

02/23/2020 15:40 EST                                                          Page 2 of 3

## DETAILS OF INVESTIGATION

HSI Boston special agents are investigating TUDO NA BRASA and THE DOGHOUSE restaurants for alien smuggling, knowingly hiring and harboring illegal aliens, forced labor, document fraud, and money laundering. The owner of the restaurants, Hugo MORAES (hereafter HUGO), a naturalized U.S. citizen from Brazil, along with other family members, reportedly engage another relative in Brazil to provide a workforce comprised of illegal aliens to include minors. This relative, Chelbe MORAES (hereafter CHELBE), then coordinates the illegal entry of Brazilian family units, both legitimate and fraudulent, into the United States across the southern border.

On June 1, 2018, Francisco Marcelo GRANATO DE OLIVEIRA (▇▇▇▇▇▇) and Alessandra Terezinha CHAVES DE OLIVEIRA ▇▇▇▇▇▇) provided telephone number (781) 451-7505 to U.S. Immigration authorities upon entering the United States .  GRANATO DE OLIVEIRA and CHAVES DE OLIVEIRA, who are believed to have entered as a fraudulent family unit, claimed the number was associated with their friend and U.S. contact, Sandra Siva, living at ▇▇▇▇▇▇▇▇, Lowell, MA.  An Immigration Enforcement Subpoena requesting subscriber information was sent to Ymax Communication Corporation.  Ymax Communications Company provides services for MagicJack which uses Voice Over Internet Protocol (VoIP).  Results returned November 19, 2018 reflect the following subscriber information:

Account ID: ▇▇▇▇▇

Name:  Marcos Deleon

Address: ▇▇▇▇▇, Wakefield, MA 01880

Records show the account was opened on April 19, 2018 and has several devices associated with it.  Among those devices is one Apple device, serial number VI1000038067C7, named "IPHONE DE MORAES".  The registered email for this account is ▇▇▇▇▇▇▇▇@hotmail.com.

*CHELBE's wife has been previously identified as Izabela BASILIO MARTINS and may be affiliated with this email address.*

Over the course of this investigation, Ymax Communication Corporation has been subpoenaed several times for subscriber and toll records relating to target number (781) 451-7505 in order to track any updates made to the account.  Subpoena results received on August 27, 2019 reflected that on March 30, 2019, alternate subscriber contact name, number and payment information had been added to the account.  The account updates were as follows:

Alternate phone number:  (781) 608-5201

| Current Case Title | ROI Number | Date Approved |
|---|---|---|
| ▇▇▇▇▇ | ▇▇▇▇▇ | 2/22/2020 |

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters with a copy of this document.




# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### REPORT OF INVESTIGATION

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

---

02/23/2020 15:40 EST                                                                        Page 3 of 3

List locations:  Caroline Moraes, ████████████████  Reading, MA 01867

Credit Card details:  Master Card ███████████3189

Research in ICE holdings on target number (781) 451-7505 indicates that number has been linked to border enforcement actions involving at least forty-two illegal aliens from Brazil, to include ████████ (see ROI ██████████████), since June 1, 2018.  A review of documents associated with these encounters shows the target number was provided to U.S. Border Patrol agents and/or ERO Deportation officers, attributed to various fictitious identities, as a U.S. point of contact (POC) for the alien to be released to.

On January 3, 2019, a pen register was initiated on target number (781) 451-7505.  Preliminary analysis of historical tolls and pen register data indicate the user(s) is in frequent contact with numerous airlines, hotels and travel agencies.  Other notable contacts include ████████-0068 (Jesse MORAES), ████████-5201 (Caroline DE MORAES), (████████-4993 (Ymax phone associated with Chelbe MORAES), ████████-4830 (HUGO), (████████-9147 (Julio MORAIS), and ████████0733 (Ymax phone associated with CHELBE).  CHELBE provided ████████ YMAX phone (203) 826-0733 to give to U.S. Immigration authorities as his/her U.S. POC.

The investigation continues.

---

| Current Case Title | ROI Number | Date Approved |
|---|---|---|
| ████████ | ████████ | 2/22/2020 |

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# Attachment D

# Department of Homeland Security
# US Immigration & Customs Enforcement
# Homeland Security Investigations
# HSI Boston
# Transcription Sheet

| | |
|---|---|
| **Case Name:** | |
| **Case Number:** | |
| **File Number:** | **2019-10-06-10-59-55** |
| **Incoming:** | **553197273586** |
| **Date:** | **October 06, 2019** |
| **Time:** | **10:59:55 EDT** |
| **Duration:** | **00:02:50** |
| **Transcribed by:** | **A. Pai** |
| **QC by:** | **D. Escobar** |
| **Language:** | **Portuguese** |

**PARTICIPANTS**

**Chelbe Moraes**

**NOTATIONS**

[PH]  = Phonetic Rendition

[UI]     unintelligible

[  ]   = Comments contained within brackets are the transcriber's comments.

[sic]  = Written exactly as spoken and not a mistake by transcriber.

*Italics* for words spoken in English. **VOICES AND NOTATIONS**

Case Number: [REDACTED]
Page 2 of 3    File #:  2019-10-06-10-59-55

| PARTICIPANTS | TRANSLATION |
|---|---|

[BEGINNING OF RECORDING]

MORAES        Hey [REDACTED], how are you? I spoke to Fabricio [PH] Wednesday…early morning, between Tuesday and Wednesday, it was almost one (1:00) AM. It was at the time they were getting into the immigration. Probably… no…[LAUGHS]…excuse me…I'm absolutely sure that they are at the immigration. What happens is that previously it wasn't taking much time at the immigration. Generally, it took around three (3) days, it was very quick. But the thing is, Brazilians, as usual, are always complicating things, uh…they have made lots of falsified documents at the immigration. And now they are taking DNA tests to verify if…later you do a search about it in the internet. You will find all the information, regarding DNA, DNA requirement for people crossing the border. And a DNA test isn't something that you do within two (2) or three (3) minutes. It does take a little bit more time. Then, for this reason, it is taking longer…then people are…this started this week, by coincidence. Uh…until last week they weren't…they were doing only randomly, choosing one (1) or another to take the DNA test. Now, practically everybody has to take the DNA. Then, they will be taking one (1) week… then, I believe that tomorrow they will let them go, understand? By my…by my calculations. They got in on Tuesday. It is taking one (1) week…Tuesday to Wednesday… then it will be between Monday and Tuesday. That is how long it is taking these days. Everybody that got in…for example, who got in on Saturday…last Saturday, was released the day before yesterday…the night between Friday and Saturday. And there are lots of people…and it's delaying things, [REDACTED]. But you know it, at least, he is at the immigration, and we are relaxed because we know

Confidential

they aren't in any danger, right? <mark>They are poorly housed, we know that, unfortunately. When they are with us, we can provide comfortable accommodations and so on, but there, at the immigration, we can't do anything about it.</mark> This way, we are waiting…actually, it wasn't only your brother. <mark>You know, many people came in together, on the same day, right? Only my people were sixteen (16) persons</mark>. Probably your brother told you this, that the group was large. <mark>He was even helping me organize things related to the hotel, meals and other stuff. He was very helpful. I even joke with him that I would have to pay him instead of him paying me.</mark> [LAUGHS] But…then, it was a lot of people, not even one (1) has been released so far. Because the situation is the same for all. DNA test. So, we have to wait. <mark>But we know that the government can't hold these people there because of the children.</mark> They can't be held there for many days. So, I believe between today and tomorrow…tomorrow we may have news from him, God wiling. Stay calm, [REDACTED], they are fine. You can rest assured they're fine.

[END OF RECORDING]

# Attachment E

Learn more about **LSEG**

REUTERS®

 My View    Following    Saved

Americas

# Insight: As Brazilians flock to the U.S. border, an alleged smuggler cashes in

By Gabriel Stargardter

October 12, 2021 4:43 PM EDT · Updated 2 years ago



[1/4] Brazilian citizen Chelbe Willams Moraes writes on a document as he is expulsed from Paraguay, in an unknown location, June 7, 2021. Courtesy of Direccion General De Migraciones Paraguay/Handout... _Acquire Licensing Rights_  Read more

BELO HORIZONTE, Brazil, Oct 12 (Reuters) - Record numbers of Brazilians have been arrested at the U.S. southern border this year, part of the United States' broader migration crisis. Police believe a child-custody dispute has led them to one of the smugglers moving migrants north.

In early June, Brazilian federal police arrested Chelbe Moraes, a businessman who had allegedly absconded with his three-year-old daughter when he lost custody to his ex-partner. After tapping the phones of Moraes' associates, the officers began to suspect he was a veteran people smuggler, or "coyote."

In a June 25 police report sent to a federal judge and seen by Reuters, they asked that criminal charges of child trafficking, human smuggling and criminal conspiracy be filed against Moraes.

Police accuse him of charging Brazilians who lack valid U.S. visas around $20,000 each to enter the United States via Mexico. To pull it off, Moraes has constructed an international network that includes corrupt cops and officials as well as U.S-based family members, the court filing says.

Advertisement · Scroll to continue

Reuters spoke to more than 20 people with knowledge of the case, including police, immigration officials, associates of Moraes and three people who claimed to be his clients. Those interviews paint a picture of a seasoned people smuggler whose business has thrived amid political and economic turmoil in Brazil.

Moraes, who has declared his innocence to the police, told Reuters he runs a legitimate consultancy advising people on U.S. asylum claims from his home state of Minas Gerais. He said he has served up to 200 customers over a 20-year career, charging clients who meet U.S. criteria up to 100,000 reais ($18,086) to help them migrate.

Advertisement · Scroll to continue

"My advice is expensive as hell, because I know American laws," Moraes said.



Small fires along the eastern edge of the Currowan fire still burn on the Princes Highway near in Milton, Australia January 5, 2020. REUTERS/Tracey Nearmy *Acquire Licensing Rights* ⬚

During the first 11 months of the 2021 fiscal year, 46,280 Brazilians were apprehended at the southern U.S. border, U.S. Customs and Border Protection (CBP) data show, compared with 17,893 in the whole of 2019. While that's just a fraction of the more than 550,000 Mexicans who've been nabbed so far this year, Brazilians now rank No. 6 among the nationalities detained in 2021.

Advertisement · Scroll to continue

They're part of a wave of Latin American migrants fleeing a region ravaged by COVID-19 and hoping for more lenient treatment since hard-line former President Donald Trump left office this year. Southern border apprehensions have jumped to their highest levels in 20 years, causing headaches for President Joe Biden.

"We've had flows with Brazilians in the past that I've seen, but not to this extent," said Ramon Romo, chief of the Human Smuggling Unit at Homeland Security Investigations, the investigative unit of U.S. Immigration and Customs Enforcement.

Advertisement · Scroll to continue

Brazilian federal prosecutors on July 7 charged Moraes, 60, with child trafficking for fleeing to neighboring Paraguay with his daughter. Moraes pleaded not guilty, saying it was a planned work trip. Now back in Brazil, Moraes remains free pending trial. No charges have been filed in connection to his suspected smuggling operation; prosecutors granted police more time to investigate Moraes' seized cellphone, computer hard drive and other documents.

Two people familiar with his alleged racket - a former customer and an ex-associate - told Reuters that Moraes coaches his clients to pose as tourists upon arrival in Mexico, sometimes gaining them entry with the help of bribed Mexican immigration officials.

Moraes then whisks the Brazilians north, where they either jump the border with the help of hired Mexican coyotes, or seek U.S. asylum using fake documents and elaborate cover stories Moraes has devised for them, the sources said.

Mexico's National Migration Institute, the country's federal immigration agency, did not respond to a request for comment.

People who can prove they face persecution at home due to their race, religion, nationality, social group or political opinions may be eligible for U.S. asylum. Backlogs in U.S. immigration courts mean that those who enter often can remain in the United States for years while their cases are processed.

Moraes said those who claim he ran a smuggling operation were "induced" to do so by police or were envious of his success.

But he acknowledged benefiting from Brazil's woes.

"The worse the government here gets, the better for me," he said.

**'UNPRECEDENTED'**

Brazilian migration to the United States has surged since 2018, when right-wing President Jair Bolsonaro was elected. Just over 1,500 Brazilians were detained at the U.S. southern border in 2018, a number that jumped 1,100% the following fiscal year.

Brazil has struggled with multiple crises on Bolsonaro's watch. More than 600,000 Brazilians have died from COVID-19, the world's second-highest death toll after the United States. Unemployment is around 14%, while annual inflation has hit double digits. Poverty has soared.

"The average Brazilian is disillusioned with everything," said Daniel Fantini, the lead detective investigating Moraes.

Bolsonaro's office did not respond to requests for comment.

To enter the United States, Brazilians must obtain a visitor visa. That process has gotten stricter due to COVID-19 and the growing number of travelers overstaying their visas, three U.S. officials told Reuters.

Many Brazilians are now turning to coyotes, according to migrants, their family members, police and officials who spoke with Reuters.

Lenilda dos Santos, a nurse from northern Brazil, died of thirst in September after crossing into New Mexico. Her brother, Leci Pereira, told Reuters she had agreed to pay $25,000 to a smuggler, pledging her house as security. The alleged smuggler, who only provides his clients with the nickname "Piskuila," did not respond to requests for comment.

In California, CBP agents are accustomed to speaking Spanish, the language of Mexico and most of Latin America. But they are struggling to handle what the agency calls an "unprecedented" jump in Portuguese-speaking Brazilians being stopped at the border.

Diplomatic efforts are underway to slow the flow.

Brazilians don't need visas to enter Mexico, making it easy for smugglers to fly migrants there and transport them north. The Biden administration wants Mexico to impose visa requirements on Brazilians to complicate that path, two sources familiar with the situation told Reuters.

The talks began in July, but Mexico has been resistant, citing lucrative Brazilian tourism and possible reciprocal action by Bolsonaro, one of the people said.

The U.S. State Department declined to comment on "ongoing diplomatic discussions."

The foreign ministries of Mexico and Brazil didn't respond to requests for comment.

**ACTIVE INVESTIGATION**

After Moraes fled Brazil with his daughter, federal police interrogated his alleged associates.

Geisiane Batista, whom authorities claim handled the finances of the smuggling operation, helped Moraes run a lingerie factory in Minas Gerais, according to her deposition in the police report seen by Reuters. She told police that would-be migrants, none with U.S. visas, frequently visited the factory to meet Moraes and arrange passage.

Case 1:21-cr-10175-ADB   Document 291   Filed 03/21/25   Page 209 of 274

Moraes denied Batista's account. Batista could not be reached for comment.

Jose Martins worked as Moraes' driver, taking migrants to Rio de Janeiro and São Paulo to catch flights to Mexico, he told police in his deposition. He said Moraes charged 100,000 reais to "put someone in the United States," and offered him a commission of 1,000 reais ($181) for each new client he brought in.

Among those Martins said he transported were Ismael da Silva and his wife. An unemployed security guard, da Silva said in his deposition that he sold his car, furniture and tools to help finance their $17,000 journey.

The couple never made it. Mexican officials denied them entry after they landed in Cancun in May, da Silva told police. Contacted by Reuters, da Silva declined to comment.

Others were luckier. Martins, the driver, told police the da Silvas were part of a group of 12 Brazilian migrants on that trip, six of whom entered the United States. Martins declined to comment.

Wiretap evidence suggests Moraes relies on some U.S.-based relatives, including an adult daughter, Janaina Moraes, to help move migrants, according to the police report. Brazilian police have not accused her of wrongdoing.

Janaina Moraes, who lives near Boston, told Reuters she occasionally used her phone to manage hotel check-ins for her father's clients, or to buy them food, but denied working for him.

A U.S. Department of Homeland Security spokesperson declined to comment on what she said was an active investigation.

## FAKE FAMILIES

Brazilian migrant Bruno Lube, now 41, told Reuters he hired Moraes in 2016, but was caught by U.S. agents after scaling the border wall near El Paso with a Mexican coyote. He said he spent nearly five months in U.S. detention before being deported back to Brazil, where he denounced Moraes to the federal police.

A federal police spokesperson confirmed Lube's 2017 complaint against Moraes, saying it was under investigation.

Moraes denied Lube's allegations, saying he didn't know him. U.S. CBP declined to comment about Lube's alleged detention.

Moraes has had better success in helping families gain entry, according to Brazilian police and a source with knowledge of his operation.

Central Americans and Mexicans with children often are expelled to Mexico upon arriving at the U.S border as part of a U.S. policy initiated during the pandemic. In contrast, almost all Brazilians traveling with minors who arrive at the southern border seeking asylum are admitted to await their hearings on American soil.

Through August of this fiscal year, 99.2% of Brazilian family units have been allowed entry, CBP data show, compared with about 15% of Mexican families, 57% of those from Guatemala and 66% of Honduran family units. When the expulsion policy began, Mexico said it would only accept expelled Mexicans and Central Americans from the United States, but it has since taken some other nationalities.

To game the system, the source said, Moraes created fake "families" out of unrelated adults and minors, providing them with phony paperwork as well as fictitious backstories of domestic violence or gang threats to bolster their asylum claims.

Moraes denied those allegations, saying he only advised bona fide families.

($1 = 5.5292 reais)

Reporting by Gabriel Stargardter in Belo Horizonte, Brazil; additional reporting by Mica Rosenberg in New York City, Daniela Desantis in Asunción, and Dave Graham and Frank Jack Daniel in Mexico City; editing by Marla Dickerson

Our Standards: **The Thomson Reuters Trust Principles.**

[ Acquire Licensing Rights 🗗 ]

## Read Next

Explainer
**US daylight saving time: When do clocks change and why was it created?**
October 31, 2023

Americas
**Bolivia severs ties with Israel, others recall envoys over Gaza**
November 1, 2023

# Attachment F

# Department of Homeland Security
# US Immigration & Customs Enforcement
# Homeland Security Investigations
# HSI Boston
# Transcription Sheet

| | |
|---|---|
| **Case Name:** | |
| **Case Number:** | |
| **File Number:** | **2019-12-02-14-29-33** |
| **Date:** | **November 02, 2019** |
| **Time:** | **14:29:33 EDT** |
| **Duration:** | **00:04:38** |
| **Transcribed by:** | **C. Raicovich** |
| **QC by:** | **D. Escobar** |
| **Language:** | **Portuguese** |

## PARTICIPANTS

Witness B

**Jesse James Moraes**

## NOTATIONS

[PH]  = Phonetic Rendition

[UI]  = unintelligible

[  ]  = Comments contained within brackets are the transcriber's comments.

[sic]  = Written exactly as spoken and not a mistake by transcriber.

*Italics* for words spoken in English. **VOICES AND NOTATIONS**

Case Number: [redacted]
Page 2 of 7 – File #: 2019-12-02-14-29-33

| PARTICIPANTS | TRANSLATION |
|---|---|

[BEGINNING OF RECORDING]

[BEGINNING OF CONVERSATION]

[BACKGROUND: LOUD NOISE, STATIC, AND VOICES
THROUGHOUT THE RECORDING]

**Witness B**

[U/I] Hello, yeah …[U/I] understand?

**MORAES**

[ASIDE: Oh shit! Look here; I, I, I don't know, Chelbe, I won't, I won't get into this, I'm just going to tell you how it is; talk to you partner, you talk to your partner, talk to your partner there and tell them that they are not paying; that's all there is, I don't care; alright Chelbe, alright. I know, okay my brother, be with God, bye, bye. (BACKGROUND: MUSICAL RINGTONE) Hello, hi, mm-hmm, mm-hmm, mm-hmm, no, no, all is well, it's fine, what? Goodness, poor guy! Goodness, how he suffered! Alright, alright then, whenever I can, I'll send it, it's okay, cool, be with God, bye.] Let me tell you one (1) more thing, you are playing with fire....

**Witness B**

Mm-hmm, I already know it.

**MORAES**

The problem is that you don't care about shit; you don't care about my things; you don't care about anything.

**Witness B**

Chelbe said that I am playing with fire.

**MORAES**

That's true; I'm telling you; It doesn't matter to me, to me it makes no difference, I'm just putting this here for you to see... [U/I].

Confidential

USAO-0023073

Case Number:
Page 3 of 7 – File #: 2019-12-02-14-29-33

| PARTICIPANTS | TRANSLATION |
|---|---|

[VOICES OVERLAP]

Witness B

If you want to put the woman at the house; if you want to put the woman at the house; leave her at the house, pay her rent and I'll hit the road; the end; It's as simple as that to resolve. You ask her to stay until February, like it's under your name, you can leave her there, no problem; it makes no difference to me, and starting tomorrow, that's it, I'll leave the house. It's simple to resolve. And then I'll go away; if I have to play with fire…

MORAES

[U/I] You are playing with fire, for sure.

[VOICES OVERLAP]

Witness B

Yessss and so, I am aware that I'm playing with fire, you just finished saying…

[VOICES OVERLAP]

MORAES

[REDACTED].

[VOICES OVERLAP]

Witness B

There is no problem … don't bring my son into this … there is no problem.

MORAES

It's him.

Witness B

Yes, there is no problem.

MORAES

It's him.

Witness B

There is no problem. This, what you are saying that's him, there is no

Confidential

Case Number: [redacted]
Page 4 of 7 – File #: 2019-12-02-14-29-33

| PARTICIPANTS | TRANSLATION |
|---|---|
| | problem. |

[VOICES OVERLAP]

MORAES

[U/I] You are playing … [U/I].

Witness B

Yes, we are playing Jesse…if we get burned, if we get burned, where are we going to go? We'll be underground, right?

MORAES

Sometimes not.

Witness B

Is not underground?

[VOICES OVERLAP]

MORAES

Sometimes not.

Witness B

If you are burned by fire, where do you go? Goes underground.

MORAES

Sometimes not.

Witness B

Underground, and if you go underground, that's it, no more problem, it's solved.

[VOICES OVERLAP]

MORAES

Sometimes, some people get burned and they suffer… they suffer.

[VOICES OVERLAP]

Witness B

There is no problem, there is not problem, above the ground there is no problem; the only problem is if the person goes underground. Only. And if

Confidential

Case Number: [redacted]
Page 5 of 7 – File #: 2019-12-02-14-29-33

| PARTICIPANTS | TRANSLATION |
|---|---|
| | you are underground the problem is over. It's simple. The end. [BACKGROUND: VIBRATION SOUND] I think they have to do what they have to do and that's it. |
| MORAES | …I am just telling you. Why are you, why are you like that? |
| Witness B | I am not like that Jesse! Why?! |
| | [VOICES OVERLAP] |
| MORAES | Why don't assume your responsibilities, your commitments? Why don't you do the right thing? |
| Witness B | I am doing it… |
| MORAES | No, you are doing [U/I]. |
| | [VOICES OVERLAP] |
| Witness B | I am here working for you! Do I leave this place?! |
| | [VOICES OVERLAP] |
| MORAES | [U/I] I am not talking about that; I'm talking about the way you manage your finances. |
| | [VOICES OVERLAP] |
| Witness B | I am doing it; I am doing it … I live inside this place, I'm always inside this place; |

Confidential

Case Number:
Page 6 of 7 – File #:  2019-12-02-14-29-33

| PARTICIPANTS | TRANSLATION |
|---|---|
| | [VOICES OVERLAP] |
| MORAES | And it's not working. |
| | [VOICES OVERLAP] |
| Witness B | I get here at nine (9:00) in the morning, I clean; don't do that to me… |
| | [VOICES OVERLAP] |
| MORAES | But why don't you manage the rest? Why don't you pay the bills? |
| | [VOICES OVERLAP] |
| Witness B | Because it's just me, it's just me for now working. |
| | [VOICES OVERLAP] |
| MORAES | Not for now, for your whole life. |
| | [VOICES OVERLAP] |
| Witness B | There is no problem Jesse! That's the way it is, I am a mother! |
| | [VOICES OVERLAP] |
| MORAES | No, but you have your commitments. |
| | [VOICES OVERLAP] |
| Witness B | I am a mother! |

Confidential

USAO-0023077

Case Number: [redacted]
Page 7 of 7 – File #: 2019-12-02-14-29-33

| PARTICIPANTS | TRANSLATION |
| --- | --- |
| MORAES | Nothing to do with being a mother. |
| Witness B | Oh Jesse, there is no problem; let's go, let's go see what I owe here ... |

[END OF CONVERSATION]

[END OF RECORDING]

Confidential

# Attachment G

*MVM, Inc.*



Case No:                    Unknown

TRANSCRIBER:                R. Jermano

REVIEWER:                   A. Muñoz

DATE:                       January 9, 2020

TIME:                       N/A

DURATION:                   0:27:15

LANGUAGE:                   Portuguese

PARTICIPANTS:               Witness B

                            Graziela Dutra da Silva

                            Jesse James Moraes

                            Unidentified Male 1 (UM1)

                            Unidentified Male 2 (UM2)

                            Unidentified Female (UF)


[U/I] = UNINTELLIGIBLE

[PH]    PHONETIC RENDITION

[  ] =TRANSCRIBERS COMMENTS

ITALICS SPOKEN IN *ENGLISH*

*MVM, Inc.*                                            2

| PARTICIPANTS | TRANSCRIPTION | TRANSLATION |
|---|---|---|
| | [INÍCIO DA GRAVAÇÃO] | [BEGINNING OF RECORDING] |
| | [FUNDO: BARULHO DURANTE TODA A CONVERSA] | [BACKGROUND: NOISE THROUGHOUT THE CONVERSATION] |
| UM1: | [U/I] | [U/I] |
| UM2: | [U/I] | [U/I] |
| UM1: | [U/I] se eu não quebrar ela [U/I] | [U/I] if I don't break her/it [U/I] |
| UM2: | [U/I] [RISOS] | [U/I] [LAUGHS] |
| UM1: | [U/I] | [U/I] |
| UM2: | [U/I] Adivinha? [RISOS] [U/I] | [U/I] Guess? [LAUGHS] [U/I] |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| UM1: | [U/I] | [U/I] |
| UM2: | [U/I] | [U/I] |
| Witness B | [U/I] | [U/I] |
| UM1: | [U/I] se usar direto, não [U/I] | [U/I] but if it is always used [U/I] |
| Witness B | [U/I] | [U/I] |
| UM1: | [U/I] vai precisar ligar agora [U/I] | [U/I] have to call now [U/I] |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| Witness B | [U/I] com ele? Você falou? | [U/I] with him? Did you talk? |
| UF: | [U/I] Sim. | [U/I] Yes. |
| Witness B | [U/I] Falou o quê? | [U/I] Said what? |
| UF: | [U/I] | [U/I] |
| Witness B | [U/I] | [U/I] |
| UF: | [U/I] não vou nem falar nada não porque [U/I], eles falam demais, né [U/I] Sei lá… [FUNDO: TINIDO] Você entendeu? | [U/I] I'm not going to say anything because [U/I], they talk too much, right [U/I] I don't know… [BACKGROUND: CLANKING] |

*MVM, Inc.* 3

| | | |
|---|---|---|
| | | Did you understand? |
| Witness B | [U/I] | [U/I] |
| G. Dutra Da Silva: | [U/I] | [U/I] |
| Witness B | [U/I] graças a Deus abriu um [U/I] | [U/I] thank God, an [U/I] opened. |
| G. Dutra Da Silva: | [U/I] um monte [U/I] | [U/I] a bunch [U/I] |
| Witness B | [U/I] | [U/I] |
| G. Dutra Da Silva: | [U/I] chegou lá e nem falou [U/I] | [U/I] got there and didn't say [U/I] |
| Witness B | [U/I] | [U/I] |
| G. Dutra Da Silva: | [U/I] é tudo a mesma [U/I] É tudo a mesma merda. [FUNDO: BARULHO] Vou te falar uma coisa; porque não é só o Chelbe, entende, porque ele é um amável, entende. Não é o Chelbe. Não é o Chelbe. Você acha que ele sozinho consegue fazer dinheiro assim [U/I]? Não pode. Você falou quantas vezes…quem [U/I] não mexe [U/I] | [U/I] it's all the same [U/I] It's all the same shit. [BACKGROUND: NOISE] Let me tell you something; because it's not only Chelbe, you know, because he's a good guy, you know. It's not Chelbe. It's not Chelbe. Or do you think that he, alone, can make that kind of money [U/I]? He can't. How many times did you say…whoever [U/I] doesn't mess with [U/I] |
| Witness B | [U/I] | [U/I] |
| G. Dutra Da Silva: | [U/I] | [U/I] |
| Witness B | [U/I] | [U/I] |
| G. Dutra Da Silva: | [U/I] Você não conhece esse povo aqui não? [U/I] | [U/I] You know what these people here are like, don't you? [U/I] |
| Witness B | [U/I] | [U/I] |
| G. Dutra Da Silva: | [U/I] Mas eu sempre te falei [U/I] | [U/I] But I have always told you [U/I] |
| Witness B | [U/I] | [U/I] |
| G. Dutra Da Silva: | Tem gente que pega até no [U/I] da gente [U/I] por causa de dívida. Tem gente que mata, que | There are people who will even take our [U/I] because of debt. There are people who will kill, |

*MVM, Inc.*                                        *4*

| | | |
|---|---|---|
| | nem eu te falei [U/I] | |
| Witness B | Meu pai [U/I] tem medo… | My father [U/I] is afraid… |
| G. Dutra Da Silva: | [U/I] Seu pai. Seu pai. Seu pai é igual ao meu. Um homem velho que [U/I] dá um tiro no [U/I] e cai pra trás. Igual meu pai. [U/I] Meu pai não tem medo de ninguém. [U/I] | [U/I] Your father. Your father. Your father is just like mine. An old man [U/I] who will shoot the [U/I] and fall backwards. Just like my father. [U/I] My father isn't afraid of anyone. [U/I] |
| Witness B | Seu pai… | Your father … |
| G. Dutra Da Silva: | Seu pai. Seu pai é igual ao meu pai [U/I] e nada mais. | Your father. Your father is like my father [U/I] and that's it. |
| Witness B | [U/I] [FUNDO: TINIDO] [FUNDO VOZ: UF: [U/I]] | [U/I] [BACKGROUND NOISE: CLANKING] [BACKGROUND VOICE: UF: [U/I]] |
| G. Dutra Da Silva: | Chelbe. Chelbe, eu não sei do Chelbe. Mas com certeza [U/I] também. Eu não te contei [U/I], mas eu já vivi no mundo do crime. Eu sei como é que é. Eu sei como que é o mundo do crime. Eu não acredito em ninguém, entendeu. Aquele menino [U/I] eu não acredito, entendeu. [U/I] | Chelbe. Chelbe, I don't know about Chelbe. But for sure [U/I] also. I didn't tell you [U/I] but I've already lived in the criminal world. I know what it's like. I know what the criminal world is like. I don't believe anyone, you know. That [U/I] boy, I don't trust him, you know. [U/I] |
| Witness B | [U/I] | [U/I] |
| G. Dutra Da Silva: | Procurar a paz [U/I] Eu falo por mim. Eu não falo por você ou por ninguém. Mas eu acho melhor procurar seu canto [U/I] Porque coração dos outros é terra que ninguém entra, entendeu. [U/I] | Find peace [U/I] I speak for myself. I don't speak for you or for anyone. But I think it is best for you to find your place [U/I] Because someone else's heart is a place where no one gets in, you know. [U/I] |
| Witness B | Mas eu não dei mais de cinco mil (5,000) [U/I] pagar [U/I] | But I didn't pay more than five thousand (5,000) [U/I] pay [U/I] |
| G. Dutra Da Silva: | [U/I] de pagar "X:. [U/I] Se fosse você já tinha pagado isso há muito tempo. [U/I] | [U/I] to pay "X". [U/I] If I were you I would have already paid this off a long time ago. [U/I] |
| Witness B | [U/I] | [U/I] |

*MVM, Inc.*                                    5

| G. Dutra Da Silva: | Witness B mas você tem que ver o tempo que você trabalhou [U/I] o que você pegou e o que foi pago pelo seu pai. [U/I] igual a eu [U/I] Eu sei quanto eu peguei com eles e o [U/I] Você tem que falar: eu peguei "X", paguei "X",te dei X. É assim que agente faz. Não adianta você falar: eu trabalhei cinco (5) meses [U/I], você me pagou cem (100) dólares e a conta foi [U/I], tipo assim, não vai dar. Tem que ver o que você pegou. Se [U/I] Não tem outro jeito. | [U/I] Witness B you have to see how long you have worked [U/I] what you got and what was paid by your father. [U/I] just like me [U/I] I know how much I got from them and [U/I] You have to say: I got "X", paid "X", I gave you "X". That's how we do it. It won't do you any good to say, I worked five (5) months, you paid me one hundred (100) dollars and the bill was [U/I], like, it's not going to work. You have to see what you got. If [U/I] There is no other way. |
| Witness B | [U/I] | [U/I] |
| G. Dutra Da Silva: | [U/I] Tenho filho, tem minha mãe, tem meu pai. Meu pai [U/I] Não tem medo de ninguém. [U/I] comprou briga com ele. [U/I] | [U/I] I have my kids, my mother, my father. My father [U/I] He's not afraid of anyone. [U/I] got into a fight with him. [U/I] |
| Witness B | E o negócio [U/I] sério. | That issue [U/I] serious. |
| G. Dutra Da Silva: | [U/I] médico o dia que o Rômulo pagou para [U/I], que o Chelbe [U/I] chegar comigo, [U/I] o Rômulo foi atrás deles [U/I] Se estão preso, sei lá, [U/I], que você não fala nada [U/I] [U/I] Júnior [U/I] é uma coisa séria. Vou procurar [U/I] sua casa. Eu não [U/I] Um dia agente volta [U/I] O cara roubou [U/I] E voltou com dinheiro. Podia pelo menos me pagar [U/I] [U/I] que tinha dinheiro [U/I] O cara matou ele por causa de [U/I], você nem entendia o que [U/I] Ficou anos aqui [U/I] O dinheiro que passou a perna no [U/I] Eu não mexo [U/I] não. Acho | [U/I] the doctor the day Rômulo paid for [U/I], that Chelbe [U/I] arrived with me, [U/I] Rômulo went after them [U/I] If they are in jail, I don't know, [U/I], you just don't say anything [U/I] [U/I] Junior [U/I] is something serious. I'm going to look for [U/I] your house. I am not [U/I] Some day we will go back [U/I] The guy robbed [U/I] and came back with money. He could have at least paid me for [U/I] had money. The guy killed him because of [U/I], you couldn't even understand what [U/I] He was here for years [U/I] The money is what did a number on |

*MVM, Inc.*                                     6

| | | |
|---|---|---|
| | melhor agente pagar. Entra num acordo. | [U/I] I don't mess around with [U/I] I think it's better to just pay. Make a deal. |
| Witness B | [U/I] Deus dá sabedoria [U/I] | [U/I] God gives us knowledge [U/I] |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| G. Dutra Da Silva: | [U/I] | [U/I] |
| Witness B | [U/I] | [U/I] |
| UM1: | [U/I] [FUNDO: BARULHO] [U/I] | [U/I] [BACKGROUND: NOISE] [U/I] |
| Witness B | Ah, hoje [U/I] Conversar sobre a dívida [U/I] nós dois. [U/I] nós dois porque eu já estou quase indo embora. Falei com meu pai mas [U/I] que vamos embora [U/I] Os meninos lá tão tudo querendo ir embora. Não tem nem [U/I] mesmo ir embora né. Aí eu virei para…aí eu falei assim, eu vou conversar com o J. J. Moraes porque do dia daquela discussão nossa, não foi brincadeira mas já até me desculpa, mas às vezes você também me humilha demais. Você me colocou na frente da Gisele e nós duas nem conversando nós duas tava e voce colocou eu ali [U/I] Aí, meu pai, você colocou. Nem tava conversando nós duas. Agradeço muito a ela por eu estar aqui mas… | Ah, today [U/I] Us two to talk about the debt [U/I] [U/I] us two because I am ready to leave. I spoke with my father but [U/I] we are leaving [U/I] All the boys over there want to leave. There is no [U/I] we have to leave, right. Then I turned to…then I said the following, I am going to talk with J. J. Moraes because on the day we had an argument, it wasn't a joke, but I already apologized, but sometimes you really humiliate me. You put me in front of Gisele and the two (2) of us weren't even talking, and you put me there [U/I] Then, Lord, you put me there. We weren't even talking to each other. I am very grateful to her because I am here, but… |
| J. J. Moraes: | Não, [U/I] | No, [U/I] |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| Witness B | Oh Jesse, para [U/I] você chamou para conversar sobre dívida… | Jesse, stop [U/I] you called to talk about debt… |

*MVM, Inc.*                                      7

| | | |
|---|---|---|
| J. J. Moraes: | Não, eu não, aí eu falei, porque pra ela saber que ela vai ter que pagar. Saber o que ela pagou, que ela já mandou dinheiro pro Chelbe. | No, not me. Then I said, for her to know that she has to pay. Know what she paid, that she already sent the money to Chelbe. |
| Witness B | Uh-hum. Aí eu quero saber, entendeu…porque... | Mm-hmm. Then, I want to know, okay…because… |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| G. Dutra Da Silva: | [U/I] [FUNDO: PESSOA CANTANDO] | [U/I] [BACKGROUND: PERSON SINGING] |
| Witness B | É, quanto que eu vou ficar te devendo porque eu acredito que no ano que vem eu quero ir embora. Não vou ficar aqui mais não. E aí o dinheiro dos quinhentos (500) dólares, aí eu vou conversar com a Faith pra aí vocês já podem até ficar, entendeu, que eu vou pegar uns bico com o cara lá. E vou ver se eu aguento até uns sete (7) meses, porque eu não vou ficar. Já te disse que eu não vou ficar por aqui. Não vou ficar de jeito nenhum. Aí eu quero saber mais ou menos quanto é que restou da minha parte só. Só da minha parte. Só da minha que eu quero saber. Não quero saber de Bruno, não quero saber de Mateus, não quero saber de ninguém. Quero saber da minha. | Yes, how much will I owe because I believe that next year I want to leave. I am not going to stay here any longer. And the money for the five hundred (500) dollars, I will talk to Faith so you can go ahead and keep it, okay, because I am going to get some odd jobs with the guy over there. I am going to try and handle about seven (7) months, because I am not going to stay. I already told you I am not going to stay here. No way, I am not staying. So, I want to know more or less how much is left over only my part. Only my part. I only want to know about my part. I don't want to know about Bruno. I don't want to know about Mateus. I don't want to know about anyone. Only mine. |
| J. J. Moraes: | [U/I] do Mateus eu falei com o Chelbe que ele não ia dar a parte dele não. Acertar com você. Ele não quis receber do Mateus, também. [U/I] o Mateus [U/I] receber dele. Ele vai receber do Mateus. | [U/I] about Mateus' part, I told Chelbe he is not going to pay his part. Take care of your's. He also didn't want to receive from Mateus. [U/I] Mateus [U/I] receive from him. He will receive it from Mateus. |
| Witness B | Eu sei. Eu falei com o Mateus. | I know. I spoke with Mateus. |

*MVM, Inc.*                                   8

| | | |
|---|---|---|
| J. J. Moraes: | Mateus vai pagar caro. O problema…o Chelbe está muito ocupado lá. Porque não é só o Chelbe. Mas o Chelbe está com muito [U/I] Porque não é coisa que se faça, não. Mateus é moleque. Seu filho, não é? Moleque sem responsabilidade, sem compromisso, falo com você e falo com ele. Que eu já falei com ele. E falo pra ele, tem que pagar pra [U/I], não. Deixar a mãe dele trabalhando. Seus meninos era pra estar tudo bem aqui. Se você tivesse me escutado no começo, Witness B sua vida hoje seria outra. | Mateus is going to pay a very high price. The problem is…Chelbe is very busy. Because it's not only Chelbe. But Chelbe has a lot [U/I] Because it's not something you do. Mateus is a punk. Your son, right? He's a kid with no responsibility, no commitments; I say this to you and say it to him. I already spoke to him. And I told him he has to pay to [U/I], okay. Leave his mother working. Your boys should all be well off here. If you had listened to me in the beginning, Witness B your life today would be completely different. |
| Witness B | Meu filho, escutar qual parte você fala? | Dear, listen to which part? |
| J. J. Moraes: | Na parte, que você ficar sozinha e deixar eles se virar. Deixa se virar. Olha o que que deu. Você perdeu um apartamento bom, pagando lá trezentos (300)… | The part where you live your life and let them figure things out. Let them figure it out. Look at what happened. You lost a good apartment, paying what, three hundred (300)… |
| Witness B | Mas eu perdi também porque no início eu tinha falado com aquele menino que eu não ia renovar. Que eu não queria ficar. Porque estava caro pra mim. Conta de luz de mil (1,000) e cacetada e aí eu ia entrar num quarto e pagar uns quinhentos (500) dólares e tentar concertar… | But I also lost it because in the beginning I had told that boy that I wasn't going to renew. That I didn't want to stay. Because it was expensive for me. The light bill was over a thousand (1,000), and then I was going to move into a room and pay five hundred (500) dollars and try and fix… |
| J. J. Moraes: | Deixa eu te falar uma coisa. Tudo porque você plantou, se você, [NO FUNDO: BARULHO ALTO] você não enxerga o | Let me say something. Everything is because you planted it, if you, [BACKGROUND NOISE: |

*MVM, Inc.*                                    9

| | | |
|---|---|---|
| | passado e nem enxerga o futuro. Que esse é o problema dos seus. Vocês não enchergam o passado e não enchergam o futuro. E o presente, [NO FUNDO: PAPEL FARFALHANDO] está me entendendo? Porque... presta atenção, se quando eu falei com você a situação estava mais ou menos, mas eu ia te ajudar muito. [U/I] Falei com você, Witness B deixa eles se virando. Ou sai do apartamento ou põe eles pra fora. Pega o quarto, aluga o quarto aí para um casal e vai sobrar pra você uma mixaria pra você pagar por mês. Você faz o seu dinheiro, paga a sua conta. Eles vão ter que se virar fora, eles vão ter que pagar. | LOUD NOISE], you don't see the past and you can't see the future. That is the problem with all of you. You don't see the past and you can't see the future. And the present, [BACKGROUND NOISE: RUSTLING SOUND] do you understand? Because... pay attention, when I spoke with you your situation was so, so, but I was willing to help you out. [U/I] I told you, Witness B let them figure things out on their own. Or, leave the apartment or put them out. Get the room, rent the room to a couple and you will be left with a tiny bill to pay every month. You make your money and pay your bill. They will have to figure things out for themselves, they will have to pay. |
| Witness B | Como agora eles vão se virar? | How are they going to figure things out now? |
| J. J. Moraes: | Mas é por isso que o caldo entornou. | That is why things got complicated. |
| Witness B | Porque o caldo entornou? | Why did it get complicated? |
| J. J. Moraes: | Uai, porque vocês perderam o apartamento. Você vai morar num... | Because you lost the apartment. You are going to live in a... |
| Witness B | Eu vou morar ali na frente ali num quarto... | I'm going to live in front, in a room... |
| J. J. Moraes: | Você vai pagar um quarto... | You are going to pay for a room... |
| Witness B | Quinhentos (500) dólares. | Five hundred (500) dollars. |
| J. J. Moraes: | Quinhentos (500), não. | Not five hundred (500). |
| Witness B | Lógico que é quinhentos (500), eu já aluguei. Quinhentos (500) dólares eu já paguei. | Of course, it's five hundred (500), I already rented it. I already paid the five hundred |

*MVM, Inc.*                                             *10*

| | | (500) dollars. |
|---|---|---|
| J. J. Moraes: | Você e a Bruna? | You and Bruna? |
| Witness B | A Bruna vai pagar quinhentos (500) e eu vou pagar quinhentos (500). É a parte dela. | Bruna will pay five hundred (500) and I will pay five hundred (500). It's her part. |
| J. J. Moraes: | Um quarto, mil (1,000) dólares. | One (1) room, a thousand (1,000) dollars. |
| Witness B | Eu não vou… | I am not going… |
| J. J. Moraes: | Um quarto, mil (1,000) dólares. Só pra você ver. Tem banheiro dentro do quarto? | A thousand (1,000) dollars for a room. It's an example. Is there a bathroom inside the room? |
| Witness B | Não, é em baixo… | No, it's downstairs… |
| J. J. Moraes: | Tem cozinha dentro do quarto? | Is there a kitchen in the room? |
| Witness B | Não, mas isso não faz diferença. | No, but that doesn't matter. |
| J. J. Moraes: | Não, não, não… | No, no, no… |
| Witness B | Agente nem fica em casa. [U/I] pra quê? Agente não fica em casa. Não vai durar uma cozinha, não vai durar nada. Você desce um piso, vai no banheiro e tal, normal. Agente só vai no serviço e do serviço pra casa, então… | We don't stay at home. [U/I] for what? We don't stay at home. A kitchen won't last, nothing lasts. You go downstairs, go to the bathroom, and so on, normal. We only go to work and back home, so… |
| J. J. Moraes: | Mas é diferente… | It's different… |
| Witness B | Eu sei…agente ter a casa da gente para agente conversar, falar o que agente quer e tudo. Eu sei, eu sei. | I know. To have our own home to be able to talk, say what we want and so on. I know, I know. |
| J. J. Moraes: | Não, é outra coisa. | No, it's something else. |
| Witness B | Mas também não adiantava só eu fazer a minha parte sozinha. | But what was the point of me doing my part alone. |
| J. J. Moraes: | Mas acontece Witness B que você, a sua parte era…Vamos embora, deixa quieto. Quem quer trabalhar fica comigo. Quem não quer… Quem quer trabalhar taí o quarto para alugar. Cada um vai me dar tanto. [U/I] serviço. Isso | Witness B it's the following, your part was to…Let it be, let's go. People who want to work stay with me. Those who don't… For those who want to work, there is the room to rent. Each one will give me so much. |

*MVM, Inc.*                                        *11*

| | | |
|---|---|---|
| | iria consertar os seus filhos, você iria dar responsabilidade pra eles e você hoje tava bem. Você estava bem. Você não estava nem pensando em ir embora. Você estava tão bem que olha, você sabe se você entrar com o seu processo…vou te falar as coisas que eu sei. Não estou te falando besteira não. Não adianta os outros da rua falar não que ninguém sabe merda nenhuma. Eles falam um monte de merda. O brasileiro principalmente. Enche a cabeça dos outros de [U/I] Ah, trouxe fulano, cara [U/I] mas é porque não está no [U/I] Que o ferro não vai entrar neles. Mas a pessoa fala, mas põe a pessoa lá no lugar [U/I] Está me entendendo? Se você tivesse entrado com seu papel, eu não sei como esses indivíduos não foram bater atrás de você aí. Se você ainda entrar com o seu papel com pedido de asilo político, você pega, além de você pegar o seu documento pra ficar aqui, você ainda consegue ajuda governamental dessa forma, entrando, sabendo de você, que a imigração como você está, a imigração vai te ver agora com olhos de fugitiva. Então quer dizer… | [U/I] service. This would fix your kids, you would give them responsibility and today you would be fine. You would be well off. You wouldn't even want to leave. You would be so well off that, look, you know that if you start your application…I am going to tell you the things I know. I am not bullshitting here. There is no point listening to everyone out there because nobody knows anything. They just bullshit. Especially Brazilians. They fill everyone's head with [U/I] Oh, I brought so, and-so, the [U/I] but that is because he is not in [U/I] They are not going to suffer the consequences. But the person talks, but puts the person over there in [U/I] place. Do you understand? If you had started your application …I don't know how these guys didn't go there after you. If you still start your application with the request for political asylum, you will get, in addition to your documents to stay here, you can still get governmental help, and by applying, they will know who you are because the way things are, in the eyes of the immigration you are a fugitive. So, what I mean… |
| Witness B | Não, eu não estou figitiva… | I am not marked as a fugitive… |
| J. J. Moraes: | Não, ainda não. Ainda não. | No, not yet. Not yet. |
| Witness B | Tenho *court* agora em junho. | I have *court* now in June. |

*MVM, Inc.*                                    *12*

| J. J. Moraes: | Pois é, tem corte, eu sei. Mas você tinha que entrar, tinha que arrumar dinheiro pra você entrar com seu papel. Só pra você ver, esse dinheiro todo que você ficou pagando…pagando…sustentando eles lá, você já tinha resolvido sua vida, tinha entrado com seu papel e eles iam se virar e eles também iam dar um jeito de ficar tranquilo. Está me entendendo? Então você pensa que ajudou e tudo, mas foi errado. Está me entendendo? Agora está você aí, grávida. Entendeu? Isso aí, se… | I know, you have court, I know. But you have to apply, you have to get some money so you can start the paperwork. Look, all that money you kept paying and paying to support all of them, you would have taken care of your life, started your paperwork and they would have figured things out and they would be okay. Do you understand? So, you think you helped and all, but it was wrong. Do you understand? Now you are pregnant. Understand? This, if… |
| Witness B | Isso aí pra mim não é…[U/I] você sabe que não atrapalha. | That to me doesn't… |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| J. J. Moraes: | Se você… | If you… |
| Witness B | Porque toda minha vida eu trabalhei, toda vida eu criei meus filhos sozinha, nunca fiquei parada… | I have worked all my life. My whole life I raised my kids on my own, I was never without a job… |
| J. J. Moraes: | Eu sei… | I know… |
| Witness B | …isso aí pra mim não atrapalha em nada. | …that doesn't bother me at all. |
| J. J. Moraes: | Mas é difícil. Isso é difícil, Witness B Olha… | But it is hard. This is tough, Witness B Look… |
| Witness B | Eu sei que é difícil aqui nesse país pra cuidar de menino e sair pra trabalhar e deixar o menino, eu sei que isso é difícil, mas… | I know it's tough here in this country to take care of a child and go to work and leave the child, I know it is hard, but… |
| J. J. Moraes: | Mesmo isso aí… | But even that… |
| Witness B | Toda a vida eu criei meus filhos [U/I] | I raised my kids [U/I] |
| J. J. Moraes: | Você pode arrumar uma casa, arrumar pra esse menino pra olhar…isso aí você consegue se você estiver sozinha. Agora, com | You can get a house, get someone to look after you child…that you can do if you are alone. Now, bringing the whole |

*MVM, Inc.*                                      *13*

| | | |
|---|---|---|
| | a turma atrás de você você não consegue não. Só se você estiver sozinha, aí você consegue. A Bruna, se resolver trabalhar vai ganhar, mas acho que ela não gosta. Ela gosta é de farra. Entendeu? Só pra você ver que ela taí até hoje sem nada. | bunch along with you, you won't make it. Only if you are alone…then you can make it. If Bruna decides to work she can make money, but I don't think she likes to work. She likes to party. Understand? Just look, she has nothing. |
| Witness B | Mas ela está trabalhando. | But she is working. |
| J. J. Moraes: | Certo. | Right. |
| Witness B | Pouco, mas está: três (3), quarto (4) dias da semana ela está trabalhando. | A little, but she is. She is working three (3), four (4) days a week. |
| J. J. Moraes: | O que adianta isso aqui na América? [U/I] Quantos dias você trabalha? Quantas horas você trabalha e sempre caçando mais serviço? Entendeu? Eles deixar... o, Witness B aquele menino seu deixar você levantar de manhã pra limpar as coisas num frio desses, sabe, ele não tem coragem de levantar pra te trazer de carro, que ele não tem coragem…ele tem coragem de deixar você. Você ache que isso é amor? | What good is that here in America? [U/I] How many days do you work? How many hours do you work and you still look for more to do? Do you understand? If they let... Witness B that son of yours lets you get up early to clean things in this cold weather, you know, but he doesn't have the guts to get up to give you a ride in the car, he doesn't have the courage…but he will let you. Do you think this is love? |
| Witness B | Mas filho é assim mesmo, Jesse, não liga não. | That's how kids are, Jesse, don't worry. |
| J. J. Moraes: | Não. *No*. Não são todos não. [U/I] | No. *No*. Not all are like this. [U/I] |
| Witness B | Filho é assim mesmo. Você não viu a mãe da Gil. Como que é a Gil. Como que ela fazia com a Gil, como fazia com as irmãs dela. | That's how kids are. Look at Gil's mother. Look how Gil is. How her mother treated Gil and her sisters. |
| J. J. Moraes: | A mãe, a mãe é assim… | The mother, the mother is… |
| Witness B | Pois é, como se vê, a mãe… | Yeah, as you can see, the mother… |

*MVM, Inc.*           *14*

| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
|---|---|---|
| J. J. Moraes: | A gente está [U/I] A mãe é assim, é doida. | We are [U/I] The mother is crazy. |
| Witness B | Pois é. E eu já, graças a Deus, eu não sou doida. Eu já sou o contrário. Se eu tivesse que… | Yeah. And me, thank God, I am not crazy. I am the opposite. If I had to… |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| J. J. Moraes: | Se você já tivesse largado seus filhos você estava bem. Está certo? Por outro lado, você é do outro lado, ao contrário dela. Você fica agarrado com filho achando que está ajudando. Não está. Está atrapalhando. Entendeu? | If you would have cut your children loose, you would be well off. Right? On the other hand, you are on the opposite side, unlike her. You think that you are helping by hanging on to you kids. You are not. You are making it worse. Do you understand? |
| Witness B | Mas está bom. A vida é assim mesmo. A gente que é mãe é complicado. | Yeah, okay. That is life. It is complicated for us, mothers. |
| J. J. Moraes: | Witness B eu vou mandar o resto do dinheiro pro Chelbe. Vou ver quanto que ele vai fazer que ele ia ver com os outros caras lá se tirava um pouco. Eu mando aí cinco mil (5,000) dólares pra eles. A Gisele mandou os cinco mil (5,000), porque eu não tinha… | Witness B I am going to send the rest of the money to Chelbe. Let me see how much he is going to charge because he was going to check with the other guys there if he can bring it down a bit. I will send them five thousand (5,000) dollars. Gisele sent the five thousand (5,000), because I didn't have… |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| Witness B | Você mandou cinco mil (5,000) e a Gisele… | You sent five thousand (5,000) and Gisele… |
| J. J. Moraes: | A Gisele. A Gisele mandou os cinco mil (5,000). | Gisele. Gisele sent the five thousand (5,000). |
| Witness B | Uh-huh. | Uh-huh. |
| J. J. Moraes: | Aí eu vou ver quanto que ele vai fazer da sua parte. Eu não quero nada. Não quero nem um centavo, nem nada. Eu falei com | And I am going to see what he's going to do about your part. I don't want anything. I don't want a penny, nothing. I spoke |

*MVM, Inc.*                                      *15*

| | | |
|---|---|---|
| | ele pra mim cobrar só as despesas suas e tal, esse negócio, entendeu. Eu falei que apertou um pouco aí e ele ficou puto: não vou perdoar não Jesse. Você vai pagar e vai pagar tudo. E eu falei: eu pago tudo. [U/I] mas ele não vai me cobrar tudo. Aí você [U/I] do jeito que você quiser… | to him about me collecting payment only on your expenses and so on, this deal. Do you understand? I told him things got tight and he got pissed. I am not going to cancel the debt, Jesse. You are going to pay and you will pay everything. And I said I will pay everything. [U/I] but he's not going to make me pay everything. And you [U/I] however you want… |
| Witness B | Aí é, eu vou fazer o seguinte. Pegar lá o dinheiro com o [U/I] e vou ficar passando e vou ver se eu pego aí algumas horas lá com aquele cara lá, sabe. | Okay, I am going to do the following. I am going to get the money there with [U/I] and I will keep stopping by so I can get some hours over there with that guy, you know. |
| J. J. Moraes: | Que cara? | What guy? |
| Witness B | Lá onde eu vou trabalhar lá com ele. | There where I am going to work with him. |
| J. J. Moraes: | Não sei. Lá aonde? | I don't know. Where? |
| Witness B | É aqui perto. Acho que uns dez (10) minutos daqui lá. | It's close by. I think about ten (10) minutes from here. |
| J. J. Moraes: | À pé ou de carro? | On foot or by car? |
| Witness B | De carro. | Car. |
| J. J. Moraes: | Nossa senhora. | Oh my God. |
| Witness B | Ué, meu filho, eu preciso. Você quer que eu faça o quê? | What? I need it. What do you want me to do? |
| J. J. Moraes: | Quem vai te levar? | Who's going to take you? |
| Witness B | Vou de Uber. | I'm going by Uber. |
| J. J. Moraes: | Mas só o que você vai gastar de Uber. | But just what you are going to spend on Uber. |
| Witness B | Mais ou menos uns quarenta (40) dólares, por semana, por aí. | More or less forty (40) dollars a week, around that. |
| J. J. Moraes: | Mas [U/I] | But [U/I] |

MVM, Inc.                                16

| Witness B | Mas eu preciso, Jesse. Eu não estou encontrando, se encontrasse nesses lugares por aqui [U/I] pegar, eu ia pegar mas eu não consigo, não consigo. | But I need it, Jesse. But I am not finding anything; if I could find something in these places around here [U/I] I would take it, but I can't find anything, I can't. |
|---|---|---|
| J. J. Moraes: | [U/I] | [U/I] |
| Witness B | Tem, mas aí paga mais ou menos o valor [U/I] | There is, but it pays more or less the amount [U/I] |
| J. J. Moraes: | Porque você não vai na, na…eu não sei. [U/I] o dinheiro, mandei cinco mil (5,000) dólares…a Gisele mandou cinco mil (5,000) dólares pra ele. Por enquanto. [U/I] | Why don't you go to, to…I don't know. [U/I] the money, I sent five thousand (5,000) dollars…Gisele sent the five thousand (5,000) dollars to him. For now. [U/I] |
| Witness B | Mas aí eu tenho que conversar com você e o Hugo de novo sobre o dinheiro ou eu preciso…é já passou, eu vou esquecer desse dinheiro porque o ano que vem eu quero ir embora não vou ficar. | But then do I have to talk with you and Hugo again about the money or do I have…yeah, it's too late, I have to forget about this money because next year I want to leave. I am not going to stay. |
| J. J. Moraes: | Uh-hum. | Mm-hmm. |
| Witness B | Eu preciso conversar com você e o Hugo de novo ou você mesmo conversa e já fica com esse dinheiro? Porque eu não vou ficar. | Do I have to speak with you and Hugo again or you can talk to him and then keep this money? Because I am not going to stay. |
| J. J. Moraes: | Vai. | You will. |
| Witness B | Você acha que mais ou menos vai demorar um ano para eu pagar essa dívida? | Do you think it will take more or less a year for me to pay off this debt? |
| J. J. Moraes: | Aonde? Vocês pensa que focinho de porco é tomada. Não é. Faz as contas, Witness B Faz as contas. Se você der quinhentos (500) dólares por mês, se você der quinhentos (500) dólares por mês, quer dizer, a limpeza lá é oitocentos (800), não é mil | Where? You guys think a pig's nose is a power outlet. It's not. Do the math, Witness B Do the math. If you pay five hundred (500) a month, if you pay five hundred (500) a month, that is, the cleaning over there is eight hundred (800), it's not one |

*MVM, Inc.*            *17*

| | | |
|---|---|---|
| | (1,000) mais, é oitocentos (800). Mas vamos supor você dá quinhentos (500) dólares por mês. Um ano são doze (12) meses. Em um ano, quanto você pagou? | thousand (1,000) anymore, it's eight hundred (800). But let's imagine you pay five hundred (500) a month. One (1) year is twelve (12) months. In one (1), how much did you pay? |
| Witness B | Não sei. | I don't know. |
| J. J. Moraes: | Seis mil (6,000) dólares. Só a Gisele mandou cinco mil (5,000) dólares pro Chelbe. Ele vai ver o resto do [U/I] quanto é que é e eu vou mandar o resto. Entendeu? Então, aqui você paga a dívida… | Six thousand (6,000) dollars. Gisele alone sent five thousand (5,000) to Chelbe. He is going to look at the rest of the [U/I] how much it is and I will send the rest. Do you understand? So, here you pay the debt… |
| Witness B | Pois é, mas aí… | Yeah, but then… |
| J. J. Moraes: | Se você aguentar… | If you can handle it… |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| Witness B | Mas a minha não vai ser mais de dez (10) não. Não foi mais de dez mil (10,000). Se foi vinte e dois (22) você divide pra mim e Mateus. | But mine is not more than ten (10). It wasn't more than ten thousand (10,000). If it was twenty-two (22), you can divide it between Mateus and I. |
| J. J. Moraes: | Não sei. | I don't know. |
| Witness B | Fala aí. Foi vinte e dois (22). | Tell me. It was twenty-two (22). |
| J. J. Moraes: | Não sei. [U/I] se cobrou vinte e dois (22), não sei quanto não. [U/I] é que vai me passar. [U/I] vai me passar. Não sei. | I don't know. [U/I] if he charged twenty-two (22), I don't know how much. [U/I] is the one who will give me the amount. [U/I] will give me the amount. I don't know. |
| Witness B | Eu quero ficar livre [U/I] porque [U/I] eu quero ir embora. Eu não quero correr risco… | I want to be free [U/I] because [U/I] I want to leave. I don't want to risk… |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| J. J. Moraes: | Deixa eu falar uma coisa só pra você escutar. Eu já falei pra você várias vezes, quem está devendo, | Let me tell you something only for you to hear. I already told you many times that for those |

*MVM, Inc.*                                    *18*

| | | |
|---|---|---|
| | a primeira coisa tem que preocupar é em pagar porque abre as portas. Se você ficar assim, não, está devendo e não procura um jeito de pagar… se eu estou devendo eu deixo de comer mas eu pago. Muitas vezes eu passava assim e dava vontade de comer um pé de moleque e tal, com dinheiro no bolso, mas eu tinha que pagar, tinha que pagar a roupa que comprei, então eu não comia. Eu comeria… | who owe, the first thing they have to worry about is paying their debt because it opens doors. If you continue like this owing and you don't find a way to pay…if I owe, I will go without eating but I will pay. Many times I would feel like eating a peanut brittle bar, for example, and I had the money in my pocket, but I had to pay, I had to pay for the clothes I bought, so I didn't eat it. I would eat… |
| Witness B | Mas agora aí você está bem, okay. Eu quero saber o valor. Vê se amanhã você me fala isso…pra eu ficar ciente, entendeu. Pra ficar ciente. É só isso. Então tá, vou esquecer [U/I] | But now you are well, okay. I just want to know how much. See if you can tell me tomorrow…just so I know, okay. Just so I'll know. That is it. Okay, I am going to forget [U/I] |
| J. J. Moraes: | Não [U/I] | No [U/I] |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| Witness B | [U/I] Eu vou embora. | [U/I] I am leaving. |
| J. J. Moraes: | [U/I] Você vai ter que parar. E a hora que o menino nascer? | [U/I] You will have to stop. And when the baby is born? |
| Witness B | Oh, meu filho. Isso é um (1) mês só. Só um (1) mês e [U/I]… | Oh, my son. That is only one (1) month. Only one (1) month [U/I]… |
| J. J. Moraes: | Quem vai tomar conta do menino? | Who is going to take care of the boy? |
| Witness B | Oh, Jesse, no dia eu sei. Só Deus sabe. Mas no dia eu sei. Por isso mesmo eu tenho que correr contra o tempo. Eu vou correr contra o tempo e correr para esse outro serviço. Pra mim acabar de pagar essa dívida. Porque se Mateus não está preocupado com a dívida dele, nem com [U/I], eu | Oh, Jesse, I will know when the day comes. Only God knows. But I will know on the day. That is why I am racing against time. I am going to race against time and race to this other job. So I can pay off this debt. Because if Mateus is not worried about his debt, neither with [U/I], I am |

*MVM, Inc.*                              *19*

| | | |
|---|---|---|
| | estou preocupada. Eu pago essa com meu pai. E eu falei com ele que eu não vou ficar aqui que é muita correria e eu vou embora. [U/I] ficar por aí, entendeu. | worried. I will pay for this one with my father. I told him I am not going to stay here because it is too much running around and I am leaving. [U/I] to stick around, you know. |
| J. J. Moraes: | Nossa, [U/I] Porque lá você vive de [U/I] na sua. [U/I] tranquilo. | Wow, [U/I] Because over there you can live [U/I] on your own. [U/I] in peace. |
| Witness B | Com certeza. Trabalho, você sabem que toda a vida eu trabalho aí… | For sure. I work, you know I have worked my whole life… |
| J. J. Moraes: | Você trabalhou mesmo. E esse tem por obrigação mandar dinheiro pra você. É o que não vai acontecer, não é? Lógico. | You really do work. And this one is obligated to send you money. It is not going to happen, right? Of course. |
| Witness B | Isso eu nunca vou esperar de ninguém. Graças a Deus. Não vou esperar nunca, de ninguém. Não vou esperar. | I would never expect that from anyone. Thank God. I will never expect that, from anyone. I don't expect it. |
| J. J. Moraes: | A questão aqui é você sabe que eles podem mandar. Eles podem ser filhos e mandar mais. Se esperar… | The issue is you know they can send it. They could be real children and send more. If you wait… |
| Witness B | E se eles são cobrados e eu assim é perigoso, né? | And if they are charged and I am like this, it is dangerous, right? |
| J. J. Moraes: | Ah, com certeza. Eles [U/I] Com certeza. Eu vou te falar assim igual dois (2) e dois (2) é quarto (4). Com ceretiza eles pegam eles lá. Eles vão pegar eles aqui. O Mateus vai ser pego aqui. Então, eu sei quem são os caras. Sei, não mexo. Não mexo. Mas eu sei porque eu sei. Eu sei quem é. Eu sei todo mundo que vem aqui. Quem chegou agora pouco? | Oh, for sure. They [U/I] For sure. I am going to explain it just like two (2) and two (2) is four (4). For sure they will get them there. They will get them here. They will get Mateus here. So, I know who these guys are. I know, but I don't deal with them. I don't. But I know because I know. I know who it is. I know everyone who comes here. Who just arrived? |
| Witness B | Quem chegou? | Who arrived? |

*MVM, Inc.*                          *20*

| | | |
|---|---|---|
| J. J. Moraes: | É. Agora. O irmão do Nei. | Yeah. Just now. Nei's brother. |
| Witness B | Quem que é o irmão do Nei? | Who is Nei's brother? |
| J. J. Moraes: | O irmão do Nei veio, veio do mesmo jeito, no cai-cai. Aí eu conversando com ele, ele falou assim: "Ah, fulano de tal. Já sei quem que é." Ele é um fazendeiro, esse cara que [U/I] Esse cara é ruim. Esse cara é ruim. Mas um tanto. Tanto que ele pegou de garantia três (3) alqueires do sogro dele e cobrou cinquenta mil (50,000) dólares pra trazer ele, a mulher e dois menino. Um absurdo. Cobrou deles cinquenta mil (50,000) dólares pra ele pagar dez mil (10,000) reais por mês. Só pra você ver. Eu falei com ele: "velho, você não vai dar conta pra pagar." Aí o Nei falou com eles também, porque o Nei não sabia. Aí o Nei pegou e falou com ele: "nossa, como é que voce faz isso?" E ele falou: "é o meu sogro né." Porque eles se viram pra lá porque a terra é deles. Ele não vai perder a terra pra lá. Com certeza ele perdeu os três (3) alqueires. E se o sogro não entregar, não entregar, pode ter certeza; o sogro vai ser o último que eles vão pegar. O último. Quando a pessoa deve, o quê que eles fazem? Eles pegam, fazem a pessoa sofrer ou pagar. Entendeu? Eles pegam um (1), falam: "olha, eu já peguei um. Matei um (1)." Se não matar eles tiram uma orelha, tira…sério. | Nei's brother arrived here the same way, under the "catch and release". And then, while I talk with him, he said: "Oh, so-and-so." I know who it is. He is a farmer, this guy that [U/I] This is a bad guy. This guy is bad. Really bad. So much so, he took three (3) acres from his father-in-law as collateral and charged him fifty thousand (50,000) dollars to bring him, his wife and two boys. An absurd. He charged them fifty thousand (50,000) dollars and for him to pay ten thousand (10,000) reais a month. Just for you to have an idea. I told him: "man, you are not going to be able to pay." And Nei talked with them too, because Nei didn't know. Then Nei told him: "how could you do this?" And he said: "It's my father-in-law." Because they can figure things out there because the land is theirs. He is not going to lose the land over there. For sure he lost the three (3) acres. And if his father-in-law doesn't turn it over, turn it over, you can be sure; the father-in-law will be the last one they get. The last one. When a person owes, what do they do? They get the person, make the person suffer or pay. Understand? They get one (1) and say, "Look, I already got one (1). I killed one (1)." If they |

*MVM, Inc.*                                   21

| | | |
|---|---|---|
| | Quebra braço, quebra…só começa dando uns couro. Eles começam a bater aí depois começa aquela…se alguém vai ser pego aqui, mas pode ter certeza, pode ter certeza, eles vão quebrar ele aqui. Primeiro, é pagar. Se não pagar, aí eles podem fazer qualquer outra coisa com outras pessoas para ele sentir. Só que ele não sente nada. Ele não está nem aí com ninguém. [U/I] tem que pegar, eles vão pegar ele mesmo. Se quiser pegar, pegam a **Witness B** | don't kill the person, they take an ear…seriously. They break an arm, break it…they start off just beating up. They start beating and then they start that…If someone is going to be targeted here, you can be sure, they will beat him up here. First, pay. If you don't pay, then they can do anything they want with other people so he can feel it. Just that he doesn't feel anything. He doesn't care about anyone. [U/I] has to pay, they will get him. If they want to they can get **Witness B** |
| **[Witness B]** | A **Witness B** também? | **Witness B** too? |
| J. J. Moraes: | Que é a mulher do Mateus. Antes de chegar no Mateus eles devem pegar a **Witness B** a filha do Mateus, estou te falando tudo o que acontece, **Witness B** Eu estou te falando isso não é por mal não. Não é que eu quero não. Eu não estou ameaçando o Mateus. Eu não estou ameaçando ninguém. Você está entendendo? Eu estou conversando com você. Depois você sai aí falando que o Jesse falou que eles vão te pegar. Eu não falei nada. | Mateus' wife. Before they get to Mateus they will get **Witness B** Mateus' daughter. I am telling you everything that happens, **Witness B** I am telling you this with no bad intentions. It's not that I want this, no. I am not threatening anyone. Are you understanding? I am talking with you. After you go around saying that Jesse said they are going to get you. I didn't say anything. |
| **Witness B** | Não. Eu sei. Eu sei. | No. I know. I know. |
| J. J. Moraes: | Eu não falei nada. | I didn't say anything. |
| **Witness B** | Eu sei. Mas a Graça tava ali conversando ali [U/I] | I know. But Graça was there talking. [U/I] |
| J. J. Moraes: | Esse é perigoso. O cara é [U/I] no México. É por isso que eu vou pagar a sua dívida. Eu não quero que nada de mal te aconteça. Eu | This one is dangerous. The guy is [U/I] in Mexico. That is why I am going to pay your debt. I don't want anything bad to |

*MVM, Inc.*                                22

| | | |
|---|---|---|
| | não quero. O pai dos seus filhos também. Não deixo não. Mas sua…mandei os cinco mil (5,000) dólares... a Gisele mandou. Eu vou ver quanto que é o resto, Chelbe, conversar com eles, botar o restante, entendeu. Você fica me devendo e quando você for embora você se quiser pagar você paga, se não quiser…eu não vou fazer nada. | happen to you. I don't. Your kids father too. I won't let it happen. But your…I sent the five thousand (5,000) dollars…Gisele sent it. I will see how much is left over, Chelbe, talk to them, put in the rest. You understand? And then you owe me and when you leave you can pay if you want, if you don't…I won't do anything. |
| Witness B | Não, eu vou te pagar… | No, I am going to pay… |
| | [SOBREPOSIÇÃO DE VOZES] | [VOICES OVERLAP] |
| J. J. Moraes: | Witness B vai da minha palavra. Estou te falando. Eu não vou fazer nada contra você. Nunca te desejei mal. Muito pelo contrário. Sabe, a Gisele a mesma coisa. Então, presta atenção. Você quer pagar. Lógico. Quando você paga, abre as portas. Eu falo isso. Eu falo isso. Eu posso dever quem fosse [U/I], não, não, eu vou te pagar cara. Taqui, ó. Me deu desconto. Maravilha. Graças a Deus. Eu já fiz isso. Entendeu? Pagar é a melhor coisa que a gente faz. Pagar as contas da gente. Deus abre as portas pra gente. Entendeu? Agora, é outro caso. Eu só falo; ele está brincando com fogo. [U/I] está brincando com fogo. Que não é o Chelbe não. O Chelbe que é o Chelbe tem o mesmo coração do meu. Mas ele não vai pagar a conta dele. E ele deve pros cara lá. Mas ele não vai pagar a conta de jeito nenhum. E depois pode ficar | Witness B this is my word. I am telling you. I will not do anything against you. I never wished anything bad for you. Much to the contrary. You know, with Gisele is the same thing. So, pay attention. You want to pay. Of course. When you pay, doors open. I always say this. I can owe whoever it may be [U/I], no, no, I will pay you man. Here it is. Gave me a discount. Great. Thank God. I have already done this. Understand? To pay is the best thing we can do. Pay our bills. God will open the doors for us. Understand? Now, it's another case. All I am saying; he is playing with fire. [U/I] is playing with fire. And it is not Chelbe. Chelbe who is Chelbe has the same kind of heart as I do. But he will not pay his bill. He owes the guys there. But there is no way he will pay the bill. And it will come with a |

*MVM, Inc.*                                                    23

| | | |
|---|---|---|
| | caro. Mas, aí é ele, viu. Agora, ameaçar eu não ameaço porque eu não preciso. Pra você ter uma idéia. Pra não acontecer nada com você o quê que eu tô fazendo? | price. But that is on him. Now, I don't threaten because I don't have to. To give you a clear idea. So nothing will happen to you, what am I doing? |
| Witness B | Uh-hum. | Mm-hmm. |
| J. J. Moraes: | Entendeu? Quero dizer, estou te protegendo. [U/I] | Do you understand? What I am saying is I am protecting you. [U/I] |
| | [NO FUNDO: ASSOBIO DURANTE TODA A CONVERSA, BARULHO DE ÁGUA DA TORNEIRA ENQUANTO SÃO LAVADOS PRATOS E PANELAS] | [BACKGROUND: HISSING THROUGHOUT THE CONVERSATION, SOUND OF RUNNING WATER WHILE WASHING DISHES AND PANS] |
| UM1: | [U/I] | [U/I] |
| UF: | [U/I] | [U/I] |
| UM1: | [U/I] | [U/I] |
| UF: | [U/I] | [U/I] |
| | [FIM DA GRAVAÇÃO] | [END OF RECORDING] |

# Attachment H

# Employer Notice to W2 Employee

*Covered Entities with 25 or more Workers*

Rights and Obligations under the Massachusetts Family and Medical Leave Law, M.G.L. c. 175M



The Dog House Bar & Grill LLC

(Employer Name)

434 Main Street

(Employer Street Address)

Woburn, Ma 01801

(Employer City, State, Zip)

0951

(Federal Employer ID Number) (FEIN)

## Explanation of Benefits

- **Beginning January 1, 2021,** you may be entitled to up to
  - 12 weeks of paid family leave in a benefit year for the birth, adoption, or foster care placement of a child, or because of a qualifying exigency arising out of the fact that a family member is on active duty or has been notified of an impending call to active duty in the Armed Forces;
  - 20 weeks of paid medical leave in a benefit year if they have a serious health condition that incapacitates them from work
  - 26 weeks of paid family leave in a benefit year to care for a family member who is a covered service member undergoing medical treatment or otherwise addressing consequences of a serious health condition relating to the family member's military service.

- **Beginning July 1, 2021,** you may be entitled to up to
  - 12 weeks of paid family leave in a benefit year to care for a family member with a serious health condition.
  - 26 total weeks, in the aggregate, of paid family and medical leave in a single benefit year.

- **Your weekly benefit amount** will be based on the employee's earnings, with a maximum benefit of $850 per week.

## Job Protection, Continuation of Health Insurance, No Retaliation

- **Job Protection:** Generally, if you take family or medical leave under the law you must be restored to your previous position or to an equivalent position, with the same status, pay, employment benefits, length-of-service credit and seniority as of the date of leave.

- **Continuation of Health Insurance:** Your employer must continue to provide for and contribute to your employment-related health insurance benefits, if any, at the level and under the conditions coverage would have been provided if you had continued working continuously for the duration of such leave.

- **No Retaliation:** It is unlawful for any employer to discriminate or retaliate against you for exercising any right to which you're entitled under the paid family and medical leave law.  An employee or former employee who is discriminated or retaliated against for exercising rights under the law may, not more than three years after the violation occurs, institute a civil action in the superior court.

## Contributions to the DFML Family and Employment Security Trust Fund

On October 1, 2019, contributions to the Department of Family and Medical Leave (DFML) Employment Security Trust Fund will begin. An employer will be responsible for sending contributions to the DFML for all employees, though they may deduct a portion from employee pay. The contribution rate may be adjusted annually and can be found in the attached effective rate notice.

## How to File a Claim

Employees must file claims for paid family and medical leave benefits with the DFML using the Department's forms. Forms and claim instructions will be available on the Department's website www.mass.gov/DFML before January 2021.

Employees are required to provide at least 30 days' notice to their employer of the anticipated starting date of any leave, the anticipated length of the leave and the expected date of return. An employee who is unable to provide 30 days' notice due to circumstances beyond his or her control is required to provide notice as soon as practicable.

## Payment for Concurrent Leave

Any paid leave provided under a collective bargaining agreement or employer policy and paid at the same or higher rate than paid leave available under this law shall count against the allotment of leave benefits available under this law.

## Private Plan Exemption

An employer that offers paid leave with benefits that are at least as generous as those provided under the law may apply for an exemption from paying the Department of Family and Medical Leave Family and Employment Security Trust Fund contribution. An employer may apply for an exemption from the medical leave contribution, family leave contribution, or both.

The details of any private plan must be provided to employees by an employer at the same time as this Notice.

Employees enjoy rights to job-protected leave and from discrimination and retaliation under the law even if their employer is approved to provide leave benefits through a private plan.

| | |
|---|---|
| | X  Does not have an approved private plan; |
| The Dog House Bar & Grill LLC | ☐ Has an approved private plan for both family and medical leave; |
| (Employer Name) | ☐ Has an approved private plan for family leave only; |
| | ☐ Has an approved private plan for medical leave only. |

## Department of Family and Medical Leave (DFML) Contact Information

**The Massachusetts Department of Family and Medical Leave**
Charles F. Hurley Building
19 Staniford Street, 1st Floor
Boston, MA 02114
(617) 626-6565
www.mass.gov/DFML

## More Information is Available

For more detailed information, please consult the Department's website: **www.mass.gov/DFML**.

## ACKNOWLEDGMENT

Your signature below acknowledges your receipt of the information above within 30 days from the start date of your employment or prior to October 1, 2019, whichever is later.

_____      _____

**Signature**                                                                    **Date**

_____

**Name (Print)**

Your signed acknowledgement will be retained by your employer. Please retain a copy for your own reference.

**Effective Rates: 2019**

*For employers with 25 or more employees*

| Family Leave Contribution | Medical Leave Contribution | Total Contribution Amount |
|---|---|---|
| .13% | .62% | .75% |

On October 1, 2019, contributions to the Department of Family and Medical Leave (DFML) Employment Security Trust Fund will begin. An employer will be responsible for sending contributions to the DFML for all employees.

Currently, the total contribution amount is 00.75% of wages. Of that 00.75% total contribution amount, there is a split: 17.3% is a family leave contribution and 82.7% is a medical leave contribution.

Under the law, employers are responsible for a minimum of 60% of the medical leave contribution (.372% of wages), but are permitted to deduct from employees' wages up to 40% of the medical leave contribution (.248% of wages) and up to 100% of the family leave contribution (.13% of wages).

| Medical Leave | Total Required Contribution: .62% | | | |
|---|---|---|---|---|
| | The Dog House Bar & Grill LLC | will contribute | 60 % | of the medical leave contribution |
| | (Employer Name) | and the remaining | 40 % | will be deducted from your earnings |

| Family Leave | Total Required Contribution: .13% | | | |
|---|---|---|---|---|
| | The Dog House Bar & Grill LLC | will contribute | 0 % | of the family leave contribution |
| | (Employer Name) | and the remaining | 100 % | will be deducted from your earnings |

Initial _____

## ACKNOWLEDGMENT

Your signature below acknowledges your receipt of the information above within 30 days from the start date of your employment or prior to October 1, 2019, whichever is later.

_____            _____

**Signature**                                                              **Date**

_____

**Name (Print)**

Your signed acknowledgement will be retained by your employer. Please retain a copy for your own reference.

# Form W-4 (2019)

**Future developments.** For the latest information about any future developments related to Form W-4, such as legislation enacted after it was published, go to *www.irs.gov/FormW4*.

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Consider completing a new Form W-4 each year and when your personal or financial situation changes.

**Exemption from withholding.** You may claim exemption from withholding for 2019 if **both** of the following apply.

• For 2018 you had a right to a refund of **all** federal income tax withheld because you had **no** tax liability, **and**

• For 2019 you expect a refund of **all** federal income tax withheld because you expect to have **no** tax liability.

If you're exempt, complete **only** lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2019 expires February 17, 2020. See Pub. 505, Tax Withholding and Estimated Tax, to learn more about whether you qualify for exemption from withholding.

## General Instructions

If you aren't exempt, follow the rest of these instructions to determine the number of withholding allowances you should claim for withholding for 2019 and any additional amount of tax to have withheld. For regular wages, withholding must be based on allowances you claimed and may not be a flat amount or percentage of wages.

You can also use the calculator at *www.irs.gov/W4App* to determine your tax withholding more accurately. Consider

using this calculator if you have a more complicated tax situation, such as if you have a working spouse, more than one job, or a large amount of nonwage income not subject to withholding outside of your job. After your Form W-4 takes effect, you can also use this calculator to see how the amount of tax you're having withheld compares to your projected total tax for 2019. If you use the calculator, you don't need to complete any of the worksheets for Form W-4.

Note that if you have too much tax withheld, you will receive a refund when you file your tax return. If you have too little tax withheld, you will owe tax when you file your tax return, and you might owe a penalty.

**Filers with multiple jobs or working spouses.** If you have more than one job at a time, or if you're married filing jointly and your spouse is also working, read all of the instructions including the instructions for the Two-Earners/Multiple Jobs Worksheet before beginning.

**Nonwage income.** If you have a large amount of nonwage income not subject to withholding, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you might owe additional tax. Or, you can use the Deductions, Adjustments, and Additional Income Worksheet on page 3 or the calculator at *www.irs.gov/W4App* to make sure you have enough tax withheld from your paycheck. If you have pension or annuity income, see Pub. 505 or use the calculator at *www.irs.gov/W4App* to find out if you should adjust your withholding on Form W-4 or W-4P.

**Nonresident alien.** If you're a nonresident alien, see Notice 1392, Supplemental Form W-4 Instructions for Nonresident Aliens, before completing this form.

## Specific Instructions

### Personal Allowances Worksheet

Complete this worksheet on page 3 first to determine the number of withholding allowances to claim.

**Line C. *Head of household please note:*** Generally, you may claim head of household filing status on your tax return only if you're unmarried and pay more than 50% of the costs of keeping up a home for yourself and a qualifying individual. See Pub. 501 for more information about filing status.

**Line E. Child tax credit.** When you file your tax return, you may be eligible to claim a child tax credit for each of your eligible children. To qualify, the child must be under age 17 as of December 31, must be your dependent who lives with you for more than half the year, and must have a valid social security number. To learn more about this credit, see Pub. 972, Child Tax Credit. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line E of the worksheet. On the worksheet you will be asked about your total income. For this purpose, total income includes all of your wages and other income, including income earned by a spouse if you are filing a joint return.

**Line F. Credit for other dependents.** When you file your tax return, you may be eligible to claim a credit for other dependents for whom a child tax credit can't be claimed, such as a qualifying child who doesn't meet the age or social security number requirement for the child tax credit, or a qualifying relative. To learn more about this credit, see Pub. 972. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line F of the worksheet. On the worksheet, you will be asked about your total income. For this purpose, total

---

Separate here and give Form W-4 to your employer. Keep the worksheet(s) for your records.

| Form **W-4** |  | **Employee's Withholding Allowance Certificate** |  |  | OMB No. 1545-0074 |
|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service |  | ► Whether you're entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS. |  |  | 20**19** |

| 1 Your first name and middle initial | Last name |  | 2 Your social security number |
|---|---|---|---|

| Home address (number and street or rural route) | 3 ☐ Single  ☐ Married  ☐ Married, but withhold at higher Single rate.  *Note: If married filing separately, check "Married, but withhold at higher Single rate."* |
|---|---|
| City or town, state, and ZIP code | 4 If your last name differs from that shown on your social security card, check here. You must call 800-772-1213 for a replacement card. ► ☐ |

| | |
|---|---|
| 5  Total number of allowances you're claiming (from the applicable worksheet on the following pages) . . . | 5 |
| 6  Additional amount, if any, you want withheld from each paycheck   .   .   .   .   .   .   .   .   .   .   .   .   . | 6  $ |
| 7  I claim exemption from withholding for 2019, and I certify that I meet **both** of the following conditions for exemption. | |

• Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability, **and**

• This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability.

If you meet both conditions, write "Exempt" here  .   .   .   .   .   .   .   .   .   .   .   .   ▶ | 7

Under penalties of perjury, I declare that I have examined this certificate and, to the best of my knowledge and belief, it is true, correct, and complete.

**Employee's signature**
(This form is not valid unless you sign it.) ▶                                                                                            Date ▶

| 8 Employer's name and address (**Employer:** Complete boxes 8 and 10 if sending to IRS and complete boxes 8, 9, and 10 if sending to State Directory of New Hires.) | 9 First date of employment | 10 Employer identification number (EIN) |
|---|---|---|

For Privacy Act and Paperwork Reduction Act Notice, see page 4.                    Cat. No. 10220Q                    Form **W-4** (2019)

Form W-4 (2019)

income includes all of your wages and other income, including income earned by a spouse if you are filing a joint return.

**Line G. Other credits.** You may be able to reduce the tax withheld from your paycheck if you expect to claim other tax credits, such as tax credits for education (see Pub. 970). If you do so, your paycheck will be larger, but the amount of any refund that you receive when you file your tax return will be smaller. Follow the instructions for Worksheet 1-6 in Pub. 505 if you want to reduce your withholding to take these credits into account. Enter "-0-" on lines E and F if you use Worksheet 1-6.

## Deductions, Adjustments, and Additional Income Worksheet

Complete this worksheet if you're able to reduce the tax withheld from your paycheck to account for your itemized deductions and other adjustments to income, such as IRA contributions. If you do so, your refund at the end of the year will be smaller, but your paycheck will be larger. You're not required to complete this worksheet or reduce your withholding if you don't wish to do so.

You can also use this worksheet to figure out how much to increase the tax withheld from your paycheck if you have a large amount of nonwage income not subject to withholding, such as interest or dividends.

Another option is to take these items into account and make your withholding more accurate by using the calculator at www.irs.gov/W4App. If you use the calculator, you don't need to complete any of the worksheets for Form W-4.

## Two-Earners/Multiple Jobs Worksheet

Complete this worksheet if you have more than one job at a time or are married filing jointly and have a working spouse. If you

don't complete this worksheet, you might have too little tax withheld. If so, you will owe tax when you file your tax return and might be subject to a penalty.

Figure the total number of allowances you're entitled to claim and any additional amount of tax to withhold on all jobs using worksheets from only one Form W-4. Claim all allowances on the W-4 that you or your spouse file for the highest paying job in your family and claim zero allowances on Forms W-4 filed for all other jobs. For example, if you earn $60,000 per year and your spouse earns $20,000, you should complete the worksheets to determine what to enter on lines 5 and 6 of your Form W-4, and your spouse should enter zero ("-0-") on lines 5 and 6 of his or her Form W-4. See Pub. 505 for details.

Another option is to use the calculator at www.irs.gov/W4App to make your withholding more accurate.

**Tip:** If you have a working spouse and your incomes are similar, you can check the "Married, but withhold at higher Single rate" box instead of using this worksheet. If you choose this option, then each spouse should fill out the Personal Allowances Worksheet and check the "Married, but withhold at higher Single rate" box on Form W-4, but only one spouse should claim any allowances for credits or fill out the Deductions, Adjustments, and Additional Income Worksheet.

## Instructions for Employer

**Employees, do not complete box 8, 9, or 10. Your employer will complete these boxes if necessary.**

**New hire reporting.** Employers are required by law to report new employees to a designated State Directory of New Hires. Employers may use Form W-4, boxes 8, 9,

and 10 to comply with the new hire reporting requirement for a newly hired employee. A newly hired employee is an employee who hasn't previously been employed by the employer, or who was previously employed by the employer but has been separated from such prior employment for at least 60 consecutive days. Employers should contact the appropriate State Directory of New Hires to find out how to submit a copy of the completed Form W-4. For information and links to each designated State Directory of New Hires (including for U.S. territories), go to **www.acf.hhs.gov/css/employers.**

If an employer is sending a copy of Form W-4 to a designated State Directory of New Hires to comply with the new hire reporting requirement for a newly hired employee, complete boxes 8, 9, and 10 as follows.

**Box 8.** Enter the employer's name and address. If the employer is sending a copy of this form to a State Directory of New Hires, enter the address where child support agencies should send income withholding orders.

**Box 9.** If the employer is sending a copy of this form to a State Directory of New Hires, enter the employee's first date of employment, which is the date services for payment were first performed by the employee. If the employer rehired the employee after the employee had been separated from the employer's service for at least 60 days, enter the rehire date.

**Box 10.** Enter the employer's employer identification number (EIN).

Form W-4 (2019)                                                                                                                    Page **3**

## Personal Allowances Worksheet (Keep for your records.)

**A** Enter "1" for yourself . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **A** ____

**B** Enter "1" if you will file as married filing jointly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **B** ____

**C** Enter "1" if you will file as head of household . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **C** ____

**D** Enter "1" if:
- You're single, or married filing separately, and have only one job; or
- You're married filing jointly, have only one job, and your spouse doesn't work; or
- Your wages from a second job or your spouse's wages (or the total of both) are $1,500 or less.

**D** ____

**E** **Child tax credit.** See Pub. 972, Child Tax Credit, for more information.
- If your total income will be less than $71,201 ($103,351 if married filing jointly), enter "4" for each eligible child.
- If your total income will be from $71,201 to $179,050 ($103,351 to $345,850 if married filing jointly), enter "2" for each eligible child.
- If your total income will be from $179,051 to $200,000 ($345,851 to $400,000 if married filing jointly), enter "1" for each eligible child.
- If your total income will be higher than $200,000 ($400,000 if married filing jointly), enter "-0-" . . . . . . . . . **E** ____

**F** **Credit for other dependents.** See Pub. 972, Child Tax Credit, for more information.
- If your total income will be less than $71,201 ($103,351 if married filing jointly), enter "1" for each eligible dependent.
- If your total income will be from $71,201 to $179,050 ($103,351 to $345,850 if married filing jointly), enter "1" for every two dependents (for example, "-0-" for one dependent, "1" if you have two or three dependents, and "2" if you have four dependents).
- If your total income will be higher than $179,050 ($345,850 if married filing jointly), enter "-0-" . . . . . . . . . **F** ____

**G** **Other credits.** If you have other credits, see Worksheet 1-6 of Pub. 505 and enter the amount from that worksheet here. If you use Worksheet 1-6, enter "-0-" on lines E and F . . . . . . . . . . . . . . . . . . . . . **G** ____

**H** Add lines A through G and enter the total here . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ **H** ____

**For accuracy, complete all worksheets that apply.**
- If you plan to **itemize** or **claim adjustments to income** and want to reduce your withholding, or if you have a large amount of nonwage income not subject to withholding and want to increase your withholding, see the **Deductions, Adjustments, and Additional Income Worksheet** below.
- If you **have more than one job at a time** or are **married filing jointly and you and your spouse both work,** and the combined earnings from all jobs exceed $53,000 ($24,450 if married filing jointly), see the **Two-Earners/Multiple Jobs Worksheet** on page 4 to avoid having too little tax withheld.
- If **neither** of the above situations applies, **stop here** and enter the number from line H on line 5 of Form W-4 above.

## Deductions, Adjustments, and Additional Income Worksheet

**Note:** Use this worksheet *only* if you plan to itemize deductions, claim certain adjustments to income, or have a large amount of nonwage income not subject to withholding.

**1** Enter an estimate of your 2019 itemized deductions. These include qualifying home mortgage interest, charitable contributions, state and local taxes (up to $10,000), and medical expenses in excess of 10% of your income. See Pub. 505 for details . . . . . . . . . . . . . . . . . . . . . . . . . **1** $ _____

**2** Enter:
- $24,400 if you're married filing jointly or qualifying widow(er)
- $18,350 if you're head of household
- $12,200 if you're single or married filing separately

**2** $ _____

**3** **Subtract** line 2 from line 1. If zero or less, enter "-0-" . . . . . . . . . . . . . . . . . . . . . . **3** $ _____

**4** Enter an estimate of your 2019 adjustments to income, qualified business income deduction, and any additional standard deduction for age or blindness (see Pub. 505 for information about these items) . . **4** $ _____

**5** **Add** lines 3 and 4 and enter the total . . . . . . . . . . . . . . . . . . . . . . . . . . . **5** $ _____

**6** Enter an estimate of your 2019 nonwage income not subject to withholding (such as dividends or interest) . **6** $ _____

**7** **Subtract** line 6 from line 5. If zero, enter "-0-". If less than zero, enter the amount in parentheses . . . **7** $ _____

**8** **Divide** the amount on line 7 by $4,200 and enter the result here. If a negative amount, enter in parentheses. Drop any fraction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8** _____

**9** Enter the number from the **Personal Allowances Worksheet,** line H, above . . . . . . . . . . . **9** _____

**10** **Add** lines 8 and 9 and enter the total here. If zero or less, enter "-0-". If you plan to use the **Two-Earners/Multiple Jobs Worksheet,** also enter this total on line 1 of that worksheet on page 4. Otherwise, **stop here** and enter this total on Form W-4, line 5, page 1 . . . . . . . . . . . . . . . . . . . . . . **10** _____

Form W-4 (2019)                                                                                                           Page **4**

| Two-Earners/Multiple Jobs Worksheet |
|---|

**Note:** Use this worksheet *only* if the instructions under line H from the **Personal Allowances Worksheet** direct you here.

1   Enter the number from the **Personal Allowances Worksheet,** line H, page 3 (or, if you used the **Deductions, Adjustments, and Additional Income Worksheet** on page 3, the number from line 10 of that worksheet) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **1** _____

2   Find the number in **Table 1** below that applies to the **LOWEST** paying job and enter it here. **However,** if you're married filing jointly and wages from the highest paying job are $75,000 or less and the combined wages for you and your spouse are $107,000 or less, don't enter more than "3" . . . . . . . . . . . . . . .   **2** _____

3   If line 1 is **more than or equal to** line 2, subtract line 2 from line 1. Enter the result here (if zero, enter "-0-") and on Form W-4, line 5, page 1. **Do not** use the rest of this worksheet . . . . . . . . . . . . . .   **3** _____

**Note:** If line 1 is **less than** line 2, enter "-0-" on Form W-4, line 5, page 1. Complete lines 4 through 9 below to figure the additional withholding amount necessary to avoid a year-end tax bill.

4   Enter the number from line 2 of this worksheet . . . . . . . . . . . . .   **4** _____
5   Enter the number from line 1 of this worksheet . . . . . . . . . . . . .   **5** _____
6   **Subtract** line 5 from line 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **6** _____
7   Find the amount in **Table 2** below that applies to the **HIGHEST** paying job and enter it here . . . . . .   **7** $ _____
8   **Multiply** line 7 by line 6 and enter the result here. This is the additional annual withholding needed . . .   **8** $ _____
9   **Divide** line 8 by the number of pay periods remaining in 2019. For example, divide by 18 if you're paid every 2 weeks and you complete this form on a date in late April when there are 18 pay periods remaining in 2019. Enter the result here and on Form W-4, line 6, page 1. This is the additional amount to be withheld from each paycheck . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **9** $ _____

| Table 1 | | | | | Table 2 | | | |
|---|---|---|---|---|---|---|---|---|
| **Married Filing Jointly** | | **All Others** | | | **Married Filing Jointly** | | **All Others** | |
| If wages from LOWEST paying job are— | Enter on line 2 above | If wages from LOWEST paying job are— | Enter on line 2 above | | If wages from HIGHEST paying job are— | Enter on line 7 above | If wages from HIGHEST paying job are— | Enter on line 7 above |
| $0 - $5,000 | 0 | $0 - $7,000 | 0 | | $0 - $24,900 | $420 | $0 - $7,200 | $420 |
| 5,001 - 9,500 | 1 | 7,001 - 13,000 | 1 | | 24,901 - 84,450 | 500 | 7,201 - 36,975 | 500 |
| 9,501 - 19,500 | 2 | 13,001 - 27,500 | 2 | | 84,451 - 173,900 | 910 | 36,976 - 81,700 | 910 |
| 19,501 - 35,000 | 3 | 27,501 - 32,000 | 3 | | 173,901 - 326,950 | 1,000 | 81,701 - 158,225 | 1,000 |
| 35,001 - 40,000 | 4 | 32,001 - 40,000 | 4 | | 326,951 - 413,700 | 1,330 | 158,226 - 201,600 | 1,330 |
| 40,001 - 46,000 | 5 | 40,001 - 60,000 | 5 | | 413,701 - 617,850 | 1,450 | 201,601 - 507,800 | 1,450 |
| 46,001 - 55,000 | 6 | 60,001 - 75,000 | 6 | | 617,851 and over | 1,540 | 507,801 and over | 1,540 |
| 55,001 - 60,000 | 7 | 75,001 - 85,000 | 7 | | | | | |
| 60,001 - 70,000 | 8 | 85,001 - 95,000 | 8 | | | | | |
| 70,001 - 75,000 | 9 | 95,001 - 100,000 | 9 | | | | | |
| 75,001 - 85,000 | 10 | 100,001 - 110,000 | 10 | | | | | |
| 85,001 - 95,000 | 11 | 110,001 - 115,000 | 11 | | | | | |
| 95,001 - 125,000 | 12 | 115,001 - 125,000 | 12 | | | | | |
| 125,001 - 155,000 | 13 | 125,001 - 135,000 | 13 | | | | | |
| 155,001 - 165,000 | 14 | 135,001 - 145,000 | 14 | | | | | |
| 165,001 - 175,000 | 15 | 145,001 - 160,000 | 15 | | | | | |
| 175,001 - 180,000 | 16 | 160,001 - 180,000 | 16 | | | | | |
| 180,001 - 195,000 | 17 | 180,001 and over | 17 | | | | | |
| 195,001 - 205,000 | 18 | | | | | | | |
| 205,001 and over | 19 | | | | | | | |

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. Internal Revenue Code sections 3402(f)(2) and 6109 and their regulations require you to provide this information; your employer uses it to determine your federal income tax withholding. Failure to provide a properly completed form will result in your being treated as a single person who claims no withholding allowances; providing fraudulent information may subject you to penalties. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation; to

cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws; and to the Department of Health and Human Services for use in the National Directory of New Hires. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You aren't required to provide the information requested on a form that's subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating

to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by Code section 6103.

The average time and expenses required to complete and file this form will vary depending on individual circumstances. For estimated averages, see the instructions for your income tax return.

If you have suggestions for making this form simpler, we would be happy to hear from you. See the instructions for your income tax return.



**Employment Eligibility Verification**

**Department of Homeland Security**

U.S. Citizenship and Immigration Services

**USCIS**
**Form I-9**
OMB No. 1615-0047
Expires 08/31/2019

▶ **START HERE:** Read instructions carefully before completing this form. The instructions must be available, either in paper or electronically, during completion of this form. Employers are liable for errors in the completion of this form.

**ANTI-DISCRIMINATION NOTICE:** It is illegal to discriminate against work-authorized individuals. Employers **CANNOT** specify which document(s) an employee may present to establish employment authorization and identity. The refusal to hire or continue to employ an individual because the documentation presented has a future expiration date may also constitute illegal discrimination.

## Section 1. Employee Information and Attestation *(Employees must complete and sign Section 1 of Form I-9 no later than the first day of employment, but not before accepting a job offer.)*

| Last Name *(Family Name)* | First Name *(Given Name)* | | Middle Initial | Other Last Names Used *(if any)* | | |
|---|---|---|---|---|---|---|
| ShePPARD | Linda | | A. | | | |
| Address *(Street Number and Name)* | | Apt. Number | City or Town | | State | ZIP Code |
|  | | / | Somerville | | MA | 02144 |
| Date of Birth *(mm/dd/yyyy)* | U.S. Social Security Number | | Employee's E-mail Address | | Employee's Telephone Number | |
| 1964 | 0261 | | 350@gmail.com | | -3423 | |

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

I attest, under penalty of perjury, that I am (check one of the following boxes):

- [✓] 1. A citizen of the United States
- [ ] 2. A noncitizen national of the United States *(See instructions)*
- [ ] 3. A lawful permanent resident    (Alien Registration Number/USCIS Number): _____
- [ ] 4. An alien authorized to work    until (expiration date, if applicable, mm/dd/yyyy): _____
  Some aliens may write "N/A" in the expiration date field. *(See instructions)*

*Aliens authorized to work must provide only one of the following document numbers to complete Form I-9:*
*An Alien Registration Number/USCIS Number OR Form I-94 Admission Number OR Foreign Passport Number.*

1. Alien Registration Number/USCIS Number: _____
   **OR**
2. Form I-94 Admission Number: _____
   **OR**
3. Foreign Passport Number: _____
   Country of Issuance: _____

QR Code - Section 1
Do Not Write In This Space

| Signature of Employee | Today's Date *(mm/dd/yyyy)* |
|---|---|
| Linda A. Sheppard | 6-25-19 |

## Preparer and/or Translator Certification (check one):

- [ ] I did not use a preparer or translator.    [ ] A preparer(s) and/or translator(s) assisted the employee in completing Section 1.

*(Fields below must be completed and signed when preparers and/or translators assist an employee in completing Section 1.)*

I attest, under penalty of perjury, that I have assisted in the completion of Section 1 of this form and that to the best of my knowledge the information is true and correct.

| Signature of Preparer or Translator | | Today's Date *(mm/dd/yyyy)* |
|---|---|---|
| Last Name *(Family Name)* | First Name *(Given Name)* | |
| Address *(Street Number and Name)* | City or Town | State | ZIP Code |

 *Employer Completes Next Page* 

Form I-9  07/17/17  N

Page 1 of 3



**Employment Eligibility Verification**

**Department of Homeland Security**

U.S. Citizenship and Immigration Services

USCIS
**Form I-9**
OMB No. 1615-0047
Expires 08/31/2019

## Section 2. Employer or Authorized Representative Review and Verification

*(Employers or their authorized representative must complete and sign Section 2 within 3 business days of the employee's first day of employment. You must physically examine one document from List A OR a combination of one document from List B and one document from List C as listed on the "Lists of Acceptable Documents.")*

| Employee Info from Section 1 | Last Name (Family Name) Sheppard | First Name (Given Name) Linda | M.I. A. | Citizenship/Immigration Status United States |
|---|---|---|---|---|

| List A — Identity and Employment Authorization | OR | List B — Identity | AND | List C — Employment Authorization |
|---|---|---|---|---|
| Document Title | | Document Title Driver's License | | Document Title Social security card |
| Issuing Authority | | Issuing Authority massachusetts | | Issuing Authority SSA |
| Document Number | | Document Number | | Document Number -0261 |
| Expiration Date (if any)(mm/dd/yyyy) | | Expiration Date (if any)(mm/dd/yyyy) 2022 | | Expiration Date (if any)(mm/dd/yyyy) N/a |
| Document Title | | | | |
| Issuing Authority | | Additional Information | | QR Code - Sections 2 & 3 Do Not Write In This Space |
| Document Number | | | | |
| Expiration Date (if any)(mm/dd/yyyy) | | | | |
| Document Title | | | | |
| Issuing Authority | | | | |
| Document Number | | | | |
| Expiration Date (if any)(mm/dd/yyyy) | | | | |

**Certification: I attest, under penalty of perjury, that (1) I have examined the document(s) presented by the above-named employee, (2) the above-listed document(s) appear to be genuine and to relate to the employee named, and (3) to the best of my knowledge the employee is authorized to work in the United States.**

The employee's first day of employment *(mm/dd/yyyy)*: _____    *(See instructions for exemptions)*

| Signature of Employer or Authorized Representative | Today's Date (mm/dd/yyyy) | Title of Employer or Authorized Representative Manager |
|---|---|---|
| Last Name of Employer or Authorized Representative Mraes | First Name of Employer or Authorized Representative Hugo | Employer's Business or Organization Name Dog House |
| Employer's Business or Organization Address (Street Number and Name) 434 main st | City or Town woburn | State MA    ZIP Code 01801 |

## Section 3. Reverification and Rehires *(To be completed and signed by employer or authorized representative.)*

| A. New Name (if applicable) | | | | B. Date of Rehire (if applicable) |
|---|---|---|---|---|
| Last Name (Family Name) | First Name (Given Name) | | Middle Initial | Date (mm/dd/yyyy) |

**C.** If the employee's previous grant of employment authorization has expired, provide the information for the document or receipt that establishes continuing employment authorization in the space provided below.

| Document Title | Document Number | Expiration Date (if any) (mm/dd/yyyy) |
|---|---|---|

**I attest, under penalty of perjury, that to the best of my knowledge, this employee is authorized to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.**

| Signature of Employer or Authorized Representative | Today's Date (mm/dd/yyyy) | Name of Employer or Authorized Representative |
|---|---|---|

## LISTS OF ACCEPTABLE DOCUMENTS
## All documents must be UNEXPIRED

Employees may present one selection from List A
or a combination of one selection from List B and one selection from List C.

| LIST A<br><br>Documents that Establish<br>Both Identity and<br>Employment Authorization | OR | LIST B<br><br>Documents that Establish<br>Identity | LIST C<br><br>Documents that Establish<br>Employment Authorization<br>AND |
|---|---|---|---|
| 1. U.S. Passport or U.S. Passport Card<br><br>2. Permanent Resident Card or Alien Registration Receipt Card (Form I-551)<br><br>3. Foreign passport that contains a temporary I-551 stamp or temporary I-551 printed notation on a machine-readable immigrant visa<br><br>4. Employment Authorization Document that contains a photograph (Form I-766)<br><br>5. For a nonimmigrant alien authorized to work for a specific employer because of his or her status:<br>  a. Foreign passport; and<br>  b. Form I-94 or Form I-94A that has the following:<br>   (1) The same name as the passport; and<br>   (2) An endorsement of the alien's nonimmigrant status as long as that period of endorsement has not yet expired and the proposed employment is not in conflict with any restrictions or limitations identified on the form.<br><br>6. Passport from the Federated States of Micronesia (FSM) or the Republic of the Marshall Islands (RMI) with Form I-94 or Form I-94A indicating nonimmigrant admission under the Compact of Free Association Between the United States and the FSM or RMI | | 1. Driver's license or ID card issued by a State or outlying possession of the United States provided it contains a photograph or information such as name, date of birth, gender, height, eye color, and address<br><br>2. ID card issued by federal, state or local government agencies or entities, provided it contains a photograph or information such as name, date of birth, gender, height, eye color, and address<br><br>3. School ID card with a photograph<br><br>4. Voter's registration card<br><br>5. U.S. Military card or draft record<br><br>6. Military dependent's ID card<br><br>7. U.S. Coast Guard Merchant Mariner Card<br><br>8. Native American tribal document<br><br>9. Driver's license issued by a Canadian government authority<br><br>**For persons under age 18 who are unable to present a document listed above:**<br><br>10. School record or report card<br><br>11. Clinic, doctor, or hospital record<br><br>12. Day-care or nursery school record | 1. A Social Security Account Number card, unless the card includes one of the following restrictions:<br>  (1) NOT VALID FOR EMPLOYMENT<br>  (2) VALID FOR WORK ONLY WITH INS AUTHORIZATION<br>  (3) VALID FOR WORK ONLY WITH DHS AUTHORIZATION<br><br>2. Certification of report of birth issued by the Department of State (Forms DS-1350, FS-545, FS-240)<br><br>3. Original or certified copy of birth certificate issued by a State, county, municipal authority, or territory of the United States bearing an official seal<br><br>4. Native American tribal document<br><br>5. U.S. Citizen ID Card (Form I-197)<br><br>6. Identification Card for Use of Resident Citizen in the United States (Form I-179)<br><br>7. Employment authorization document issued by the Department of Homeland Security |

**Examples of many of these documents appear in Part 13 of the Handbook for Employers (M-274).**

**Refer to the instructions for more information about acceptable receipts.**





**FORM M-4**

Rev. 1/12

**MASSACHUSETTS EMPLOYEE'S WITHHOLDING EXEMPTION CERTIFICATE**

Print full name .. Linda Sheppard

Social Security no. .................. 0261

Print home address ..

City .. Somerville State .. MA Zip .. 02149

---

**Employee:**

File this form or Form W-4 with your employer. Otherwise, Massachusetts Income Taxes will be withheld from your wages without exemptions.

**Employer:**

Keep this certificate with your records. If the employee is believed to have claimed excessive exemptions, the Massachusetts Department of Revenue should be so advised.

**HOW TO CLAIM YOUR WITHHOLDING EXEMPTIONS**

1. Your personal exemption. Write the figure "1." If you are age 65 or over or will be before next year, write "2" ........

2. If married and if exemption for spouse is allowed, write the figure "4." If your spouse is age 65 or over or will be before next year and if otherwise qualified. write "5." See Instruction C .......................... ........

3. Write the number of your qualified dependents. See Instruction D ........................... ........

4. Add the number of exemptions which you have claimed above and write the total ..................................... 0

5. Additional withholding per pay period under agreement with employer $ _____

A. ☐ Check if you will file as head of household on your tax return.

B. ☐ Check if you are blind.      C. ☐ Check if spouse is blind and not subject to withholding.

D. ☐ Check if you are a full-time student engaged in seasonal, part-time or temporary employment whose estimated annual income will not exceed $8,000.

**EMPLOYER: DO NOT withhold if Box D is checked.**

---

I certify that the number of withholding exemptions claimed on this certificate does not exceed the number to which I am entitled.

Date.. 6-25-19     Signed .. Linda Sheppard

**THIS FORM MAY BE REPRODUCED**

---

**THE COMMONWEALTH OF MASSACHUSETTS, DEPARTMENT OF REVENUE**

**A. Number.** If you claim **more** than the correct number of exemptions, civil and criminal penalties may be imposed. You may claim a smaller number of exemptions. If you do not file a certificate, your employer must withhold on the basis of no exemptions.

If you expect to owe more income tax than will be withheld, you may either claim a smaller number of exemptions or enter into an agreement with your employer to have additional amounts withheld.

You should claim the total number of exemptions to which you are entitled to prevent excessive overwithholding, unless you have a significant amount of other income.

**If you work for more than one employer at the same time, you must not claim any exemptions with employers other than your principal employer.**

If you are married and if your spouse is subject to withholding, each may claim a personal exemption.

**B. Changes.** You may file a new certificate at any time if the number of exemptions **increases**. You **must** file a new certificate within 10 days if the number of exemptions previously claimed by you **decreases.** For example. if during the year your dependent son's income indicates that you will not provide over half of his support for the year, you must file a new certificate.

**C. Spouse.** If your spouse is not working or if she or he is working but not claiming the personal exemption or the age 65 or over exemption, generally you may claim those exemptions in line 2. However, if you are planning to file separate annual tax returns, you should not claim withholding exemptions for your spouse or for any dependents that will not be claimed on your annual tax return.

If claiming a wife or husband, write "4" in line 2. Using "4" is the withholding system adjustment for the $4,400 exemption for a spouse.

**D. Dependent(s).** You may claim an exemption in line 3 for each individual who qualifies as a dependent under the Federal Income Tax Law. In addition, if one or more of your dependents will be under age 12 at year end, add "1" to your dependents total for line 3.

**You are not allowed to claim "federal withholding deductions and adjustments" under the Massachusetts withholding system.**

**If you have income not subject to withholding, you are urged to have additional amounts withheld to cover your tax liability on such income.** See line 5.

**IF THE ALLOWABLE MASSACHUSETTS WITHHOLDING EXEMPTIONS ARE THE SAME AS YOU ARE CLAIMING FOR U.S. INCOME TAXES, COMPLETE U.S. FORM W-4 ONLY.**





## ADP Payroll Employment Information

First Name: _Inda_          Last Name: _Sheppard_

Social Security: ____ 0261          D.O.B.: ____ -64

Gender: _female_


Address: ____

City: _Somerville_     State: _MA_     Zip Code: _02144_

Email Address: ____ _@gmail.com_

Contact number: ( ___ ) _3423_



**Employment Eligibility Verification**

**Department of Homeland Security**

U.S. Citizenship and Immigration Services

**USCIS**
**Form I-9**
OMB No. 1615-0047
Expires 08/31/2019

▶ **START HERE:** Read instructions carefully before completing this form. The instructions must be available, either in paper or electronically, during completion of this form. Employers are liable for errors in the completion of this form.

**ANTI-DISCRIMINATION NOTICE:** It is illegal to discriminate against work-authorized individuals. Employers **CANNOT** specify which document(s) an employee may present to establish employment authorization and identity. The refusal to hire or continue to employ an individual because the documentation presented has a future expiration date may also constitute illegal discrimination.

**Section 1. Employee Information and Attestation** *(Employees must complete and sign Section 1 of Form I-9 no later than the **first day of employment**, but not before accepting a job offer.)*

| Last Name *(Family Name)* | First Name *(Given Name)* | Middle Initial | Other Last Names Used *(if any)* |
|---|---|---|---|
| Scalisi-Morales | Jasmine | I | Morales |

| Address *(Street Number and Name)* | Apt. Number | City or Town | State | ZIP Code |
|---|---|---|---|---|
| [redacted] | | Woburn | MA | 01801 |

| Date of Birth *(mm/dd/yyyy)* | U.S. Social Security Number | Employee's E-mail Address | Employee's Telephone Number |
|---|---|---|---|
| 2008 | - 7667 | @gmail.com | 0343 |

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

I attest, under penalty of perjury, that I am (check one of the following boxes):

- [✓] 1. A citizen of the United States
- [ ] 2. A noncitizen national of the United States *(See instructions)*
- [ ] 3. A lawful permanent resident    (Alien Registration Number/USCIS Number):
- [ ] 4. An alien authorized to work    until (expiration date, if applicable, mm/dd/yyyy):
  Some aliens may write "N/A" in the expiration date field. *(See instructions)*

*Aliens authorized to work must provide only one of the following document numbers to complete Form I-9:*
*An Alien Registration Number/USCIS Number OR Form I-94 Admission Number OR Foreign Passport Number.*

**1.** Alien Registration Number/USCIS Number:
**OR**
**2.** Form I-94 Admission Number:
**OR**
**3.** Foreign Passport Number:

Country of Issuance:

QR Code - Section 1
Do Not Write In This Space

| Signature of Employee | Today's Date *(mm/dd/yyyy)* |
|---|---|
| | 06/30/2019 |

**Preparer and/or Translator Certification (check one):**

- [✓] I did not use a preparer or translator.    [ ] A preparer(s) and/or translator(s) assisted the employee in completing Section 1.

*(Fields below must be completed and signed when preparers and/or translators assist an employee in completing Section 1.)*

I attest, under penalty of perjury, that I have assisted in the completion of Section 1 of this form and that to the best of my knowledge the information is true and correct.

| Signature of Preparer or Translator | Today's Date *(mm/dd/yyyy)* |
|---|---|
| | |

| Last Name *(Family Name)* | First Name *(Given Name)* |
|---|---|
| | |

| Address *(Street Number and Name)* | City or Town | State | ZIP Code |
|---|---|---|---|
| | | | |

⬛ *Employer Completes Next Page* ⬛

**Employment Eligibility Verification**

**Department of Homeland Security**

U.S. Citizenship and Immigration Services

**USCIS**
**Form I-9**
OMB No. 1615-0047
Expires 08/31/2019

## Section 2. Employer or Authorized Representative Review and Verification

*(Employers or their authorized representative must complete and sign Section 2 within 3 business days of the employee's first day of employment. You must physically examine one document from List A OR a combination of one document from List B and one document from List C as listed on the "Lists of Acceptable Documents.")*

| Employee Info from Section 1 | Last Name *(Family Name)* English-Morales | First Name *(Given Name)* Jasmine | M.I. I | Citizenship/Immigration Status |
|---|---|---|---|---|

| List A Identity and Employment Authorization | OR | List B Identity | AND | List C Employment Authorization |
|---|---|---|---|---|

| List A | List B | List C |
|---|---|---|
| Document Title U.S. Passport | Document Title | Document Title |
| Issuing Authority Department of State | Issuing Authority | Issuing Authority |
| (blank) | Document Number | Document Number |
| Expiration Date *(if any)(mm/dd/yyyy)* 09/29/2020 | Expiration Date *(if any)(mm/dd/yyyy)* | Expiration Date *(if any)(mm/dd/yyyy)* |
| Document Title | | |
| Issuing Authority | Additional Information | QR Code - Sections 2 & 3 Do Not Write In This Space |
| Document Number | | |
| Expiration Date *(if any)(mm/dd/yyyy)* | | |
| Document Title | | |
| Issuing Authority | | |
| Document Number | | |
| Expiration Date *(if any)(mm/dd/yyyy)* | | |

**Certification:** I attest, under penalty of perjury, that (1) I have examined the document(s) presented by the above-named employee, (2) the above-listed document(s) appear to be genuine and to relate to the employee named, and (3) to the best of my knowledge the employee is authorized to work in the United States.

The employee's first day of employment *(mm/dd/yyyy)*: _____    *(See instructions for exemptions)*

| Signature of Employer or Authorized Representative | Today's Date *(mm/dd/yyyy)* | Title of Employer or Authorized Representative manager |
|---|---|---|
| Last Name of Employer or Authorized Representative Morales | First Name of Employer or Authorized Representative Hugo | Employer's Business or Organization Name Dog House |
| Employer's Business or Organization Address (Street Number and Name) 434 main st | City or Town Woburn | State MA | ZIP Code 01801 |

## Section 3. Reverification and Rehires *(To be completed and signed by employer or authorized representative.)*

| A. New Name *(if applicable)* | | | B. Date of Rehire *(if applicable)* |
|---|---|---|---|
| Last Name *(Family Name)* | First Name *(Given Name)* | Middle Initial | Date *(mm/dd/yyyy)* |

C. If the employee's previous grant of employment authorization has expired, provide the information for the document or receipt that establishes continuing employment authorization in the space provided below.

| Document Title | Document Number | Expiration Date *(if any) (mm/dd/yyyy)* |
|---|---|---|

I attest, under penalty of perjury, that to the best of my knowledge, this employee is authorized to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.

| Signature of Employer or Authorized Representative | Today's Date *(mm/dd/yyyy)* | Name of Employer or Authorized Representative |
|---|---|---|

## LISTS OF ACCEPTABLE DOCUMENTS
### All documents must be UNEXPIRED

Employees may present one selection from List A
or a combination of one selection from List B and one selection from List C.

| LIST A<br><br>Documents that Establish<br>Both Identity and<br>Employment Authorization | | LIST B<br><br>Documents that Establish<br>Identity | LIST C<br><br>Documents that Establish<br>Employment Authorization |
|---|---|---|---|
| | OR | | AND |
| 1. U.S. Passport or U.S. Passport Card<br><br>2. Permanent Resident Card or Alien Registration Receipt Card (Form I-551)<br><br>3. Foreign passport that contains a temporary I-551 stamp or temporary I-551 printed notation on a machine-readable immigrant visa<br><br>4. Employment Authorization Document that contains a photograph (Form I-766)<br><br>5. For a nonimmigrant alien authorized to work for a specific employer because of his or her status:<br><br>  a. Foreign passport; and<br><br>  b. Form I-94 or Form I-94A that has the following:<br><br>    (1) The same name as the passport; and<br><br>    (2) An endorsement of the alien's nonimmigrant status as long as that period of endorsement has not yet expired and the proposed employment is not in conflict with any restrictions or limitations identified on the form.<br><br>6. Passport from the Federated States of Micronesia (FSM) or the Republic of the Marshall Islands (RMI) with Form I-94 or Form I-94A indicating nonimmigrant admission under the Compact of Free Association Between the United States and the FSM or RMI | | 1. Driver's license or ID card issued by a State or outlying possession of the United States provided it contains a photograph or information such as name, date of birth, gender, height, eye color, and address<br><br>2. ID card issued by federal, state or local government agencies or entities, provided it contains a photograph or information such as name, date of birth, gender, height, eye color, and address<br><br>3. School ID card with a photograph<br><br>4. Voter's registration card<br><br>5. U.S. Military card or draft record<br><br>6. Military dependent's ID card<br><br>7. U.S. Coast Guard Merchant Mariner Card<br><br>8. Native American tribal document<br><br>9. Driver's license issued by a Canadian government authority<br><br>**For persons under age 18 who are unable to present a document listed above:**<br><br>10. School record or report card<br><br>11. Clinic, doctor, or hospital record<br><br>12. Day-care or nursery school record | 1. A Social Security Account Number card, unless the card includes one of the following restrictions:<br><br>  (1) NOT VALID FOR EMPLOYMENT<br><br>  (2) VALID FOR WORK ONLY WITH INS AUTHORIZATION<br><br>  (3) VALID FOR WORK ONLY WITH DHS AUTHORIZATION<br><br>2. Certification of report of birth issued by the Department of State (Forms DS-1350, FS-545, FS-240)<br><br>3. Original or certified copy of birth certificate issued by a State, county, municipal authority, or territory of the United States bearing an official seal<br><br>4. Native American tribal document<br><br>5. U.S. Citizen ID Card (Form I-197)<br><br>6. Identification Card for Use of Resident Citizen in the United States (Form I-179)<br><br>7. Employment authorization document issued by the Department of Homeland Security |

**Examples of many of these documents appear in Part 13 of the Handbook for Employers (M-274).**

**Refer to the instructions for more information about acceptable receipts.**

FORM
M-4

**MASSACHUSETTS EMPLOYEE'S WITHHOLDING EXEMPTION CERTIFICATE**    Rev. 1/12

Print full name . Yasmine Isabella Sealisi-Mones    Social Security no. _____-7667

Print home address . _____    City WOBURN    State MA    Zip 01801

**Employee:**
File this form or Form W-4 with your employer. Otherwise, Massachusetts Income Taxes will be withheld from your wages without exemptions.

**Employer:**
Keep this certificate with your records. If the employee is believed to have claimed excessive exemptions, the Massachusetts Department of Revenue should be so advised.

**HOW TO CLAIM YOUR WITHHOLDING EXEMPTIONS**

1. Your personal exemption. Write the figure "1." If you are age 65 or over or will be before next year, write "2"    0

2. If married and if exemption for spouse is allowed, write the figure "4." If your spouse is age 65 or over or will be before next year and if otherwise qualified, write "5." See Instruction C........................    .......

3. Write the number of your qualified dependents. See Instruction D........................    .......

4. Add the number of exemptions which you have claimed above and write the total........................    0

5. Additional withholding per pay period under agreement with employer $ _____

   A. ☐ Check if you will file as head of household on your tax return.

   B. ☐ Check if you are blind.    C. ☐ Check if spouse is blind and not subject to withholding.

   D. ☐ Check if you are a full-time student engaged in seasonal, part-time or temporary employment whose estimated annual income will not exceed $8,000.

**EMPLOYER: DO NOT withhold if Box D is checked.**

I certify that the number of withholding exemptions claimed on this certificate does not exceed the number to which I am entitled.

Date. 06/30/2019 ..... Signed _____

**THIS FORM MAY BE REPRODUCED**

---

**THE COMMONWEALTH OF MASSACHUSETTS, DEPARTMENT OF REVENUE**

**A. Number.** If you claim **more** than the correct number of exemptions, civil and criminal penalties may be imposed. You may claim a smaller number of exemptions. If you do not file a certificate, your employer must withhold on the basis of no exemptions.

If you expect to owe more income tax than will be withheld, you may either claim a smaller number of exemptions or enter into an agreement with your employer to have additional amounts withheld.

You should claim the total number of exemptions to which you are entitled to prevent excessive overwithholding, unless you have a significant amount of other income.

**If you work for more than one employer at the same time, you must not claim any exemptions with employers other than your principal employer.**

If you are married and if your spouse is subject to withholding, each may claim a personal exemption.

**B. Changes.** You may file a new certificate at any time if the number of exemptions **increases**. You **must** file a new certificate within 10 days if the number of exemptions previously claimed by you **decreases**. For example, if during the year your dependent son's income indicates that you will not provide over half of his support for the year, you must file a new certificate.

**C. Spouse.** If your spouse is not working or if she or he is working but not claiming the personal exemption or the age 65 or over exemption, generally you may claim those exemptions in line 2. However, if you are planning to file separate annual tax returns, you should not claim withholding exemptions for your spouse or for any dependents that will not be claimed on your annual tax return.

If claiming a wife or husband, write "4" in line 2. Using "4" is the withholding system adjustment for the $4,400 exemption for a spouse.

**D. Dependent(s).** You may claim an exemption in line 3 for each individual who qualifies as a dependent under the Federal Income Tax Law. In addition, if one or more of your dependents will be under age 12 at year end, add "1" to your dependents total for line 3.

**You are not allowed to claim "federal withholding deductions and adjustments" under the Massachusetts withholding system.**

**If you have income not subject to withholding, you are urged to have additional amounts withheld to cover your tax liability on such income. See line 5.**

**IF THE ALLOWABLE MASSACHUSETTS WITHHOLDING EXEMPTIONS ARE THE SAME AS YOU ARE CLAIMING FOR U.S. INCOME TAXES, COMPLETE U.S. FORM W-4 ONLY.**



# Employer Notice to W2 Employee

*Covered Entities with 25 or more Workers*

Rights and Obligations under the Massachusetts Family and Medical Leave Law, M.G.L. c. 175M



| The Dog House Bar & Grill LLC |
|---|
| (Employer Name) |
| 434 Main Street |
| (Employer Street Address) |
| Woburn, Ma 01801 |
| (Employer City, State, Zip) |
| )951 |
| (Federal Employer ID Number) (FEIN) |

## Explanation of Benefits

- **Beginning January 1, 2021,** you may be entitled to up to
  - ○ 12 weeks of paid family leave in a benefit year for the birth, adoption, or foster care placement of a child, or because of a qualifying exigency arising out of the fact that a family member is on active duty or has been notified of an impending call to active duty in the Armed Forces;
  - ○ 20 weeks of paid medical leave in a benefit year if they have a serious health condition that incapacitates them from work
  - ○ 26 weeks of paid family leave in a benefit year to care for a family member who is a covered service member undergoing medical treatment or otherwise addressing consequences of a serious health condition relating to the family member's military service.

- **Beginning July 1, 2021,** you may be entitled to up to
  - ○ 12 weeks of paid family leave in a benefit year to care for a family member with a serious health condition.
  - ○ 26 total weeks, in the aggregate, of paid family and medical leave in a single benefit year.

- **Your weekly benefit amount** will be based on the employee's earnings, with a maximum benefit of $850 per week.

## Job Protection, Continuation of Health Insurance, No Retaliation

- **Job Protection:** Generally, if you take family or medical leave under the law you must be restored to your previous position or to an equivalent position, with the same status, pay, employment benefits, length-of-service credit and seniority as of the date of leave.

- **Continuation of Health Insurance:** Your employer must continue to provide for and contribute to your employment-related health insurance benefits, if any, at the level and under the conditions coverage would have been provided if you had continued working continuously for the duration of such leave.

- **No Retaliation:** It is unlawful for any employer to discriminate or retaliate against you for exercising any right to which you're entitled under the paid family and medical leave law.  An employee or former employee who is discriminated or retaliated against for exercising rights under the law may, not more than three years after the violation occurs, institute a civil action in the superior court.

## Contributions to the DFML Family and Employment Security Trust Fund

On October 1, 2019, contributions to the Department of Family and Medical Leave (DFML) Employment Security Trust Fund will begin. An employer will be responsible for sending contributions to the DFML for all employees, though they may deduct a portion from employee pay. The contribution rate may be adjusted annually and can be found in the attached effective rate notice.

## How to File a Claim

Employees must file claims for paid family and medical leave benefits with the DFML using the Department's forms. Forms and claim instructions will be available on the Department's website www.mass.gov/DFML before January 2021.

Employees are required to provide at least 30 days' notice to their employer of the anticipated starting date of any leave, the anticipated length of the leave and the expected date of return. An employee who is unable to provide 30 days' notice due to circumstances beyond his or her control is required to provide notice as soon as practicable.

## Payment for Concurrent Leave

Any paid leave provided under a collective bargaining agreement or employer policy and paid at the same or higher rate than paid leave available under this law shall count against the allotment of leave benefits available under this law.

## Private Plan Exemption

An employer that offers paid leave with benefits that are at least as generous as those provided under the law may apply for an exemption from paying the Department of Family and Medical Leave Family and Employment Security Trust Fund contribution. An employer may apply for an exemption from the medical leave contribution, family leave contribution, or both.

The details of any private plan must be provided to employees by an employer at the same time as this Notice.

Employees enjoy rights to job-protected leave and from discrimination and retaliation under the law even if their employer is approved to provide leave benefits through a private plan.

|  |  |
|---|---|
| The Dog House Bar & Grill LLC<br>_____<br>(Employer Name) | X    Does not have an approved private plan;<br><br>☐  Has an approved private plan for both family and medical leave;<br><br>☐  Has an approved private plan for family leave only;<br><br>☐  Has an approved private plan for medical leave only. |

## Department of Family and Medical Leave (DFML) Contact Information

**The Massachusetts Department of Family and Medical Leave**
Charles F. Hurley Building
19 Staniford Street, 1st Floor
Boston, MA 02114
(617) 626-6565
www.mass.gov/DFML

## More Information is Available

For more detailed information, please consult the Department's website: **www.mass.gov/DFML**.

## ACKNOWLEDGMENT

Your signature below acknowledges your receipt of the information above within 30 days from the start date of your employment or prior to October 1, 2019, whichever is later.

_____          _____

**Signature**                                                                     **Date**

_____

**Name (Print)**

Your signed acknowledgement will be retained by your employer. Please retain a copy for your own reference.

**Effective Rates: 2019**

*For employers with 25 or more employees*

| Family Leave Contribution | Medical Leave Contribution | Total Contribution Amount |
|---|---|---|
| .13% | .62% | .75% |

On October 1, 2019, contributions to the Department of Family and Medical Leave (DFML) Employment Security Trust Fund will begin. An employer will be responsible for sending contributions to the DFML for all employees.

Currently, the total contribution amount is 00.75% of wages. Of that 00.75% total contribution amount, there is a split: 17.3% is a family leave contribution and 82.7% is a medical leave contribution.

Under the law, employers are responsible for a minimum of 60% of the medical leave contribution (.372% of wages), but are permitted to deduct from employees' wages up to 40% of the medical leave contribution (.248% of wages) and up to 100% of the family leave contribution (.13% of wages).

| Medical Leave | Total Required Contribution: .62% | | | |
|---|---|---|---|---|
| | The Dog House Bar & Grill LLC | will contribute | 60 % | of the medical leave contribution |
| | (Employer Name) | and the remaining | 40 % | will be deducted from your earnings |

| Family Leave | Total Required Contribution: .13% | | | |
|---|---|---|---|---|
| | The Dog House Bar & Grill LLC | will contribute | 0 % | of the family leave contribution |
| | (Employer Name) | and the remaining | 100 % | will be deducted from your earnings |

Initial _____

## ACKNOWLEDGMENT

Your signature below acknowledges your receipt of the information above within 30 days from the start date of your employment or prior to October 1, 2019, whichever is later.

_____     _____

**Signature**                                                                            **Date**

_____

**Name (Print)**

Your signed acknowledgement will be retained by your employer. Please retain a copy for your own reference.

# Form W-4 (2019)

**Future developments.** For the latest information about any future developments related to Form W-4, such as legislation enacted after it was published, go to *www.irs.gov/FormW4*.

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Consider completing a new Form W-4 each year and when your personal or financial situation changes.

**Exemption from withholding.** You may claim exemption from withholding for 2019 if **both** of the following apply.

• For 2018 you had a right to a refund of **all** federal income tax withheld because you had **no** tax liability, **and**

• For 2019 you expect a refund of **all** federal income tax withheld because you expect to have **no** tax liability.

If you're exempt, complete **only** lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2019 expires February 17, 2020. See Pub. 505, Tax Withholding and Estimated Tax, to learn more about whether you qualify for exemption from withholding.

## General Instructions

If you aren't exempt, follow the rest of these instructions to determine the number of withholding allowances you should claim for withholding for 2019 and any additional amount of tax to have withheld. For regular wages, withholding must be based on allowances you claimed and may not be a flat amount or percentage of wages.

You can also use the calculator at *www.irs.gov/W4App* to determine your tax withholding more accurately. Consider

using this calculator if you have a more complicated tax situation, such as if you have a working spouse, more than one job, or a large amount of nonwage income not subject to withholding outside of your job. After your Form W-4 takes effect, you can also use this calculator to see how the amount of tax you're having withheld compares to your projected total tax for 2019. If you use the calculator, you don't need to complete any of the worksheets for Form W-4.

Note that if you have too much tax withheld, you will receive a refund when you file your tax return. If you have too little tax withheld, you will owe tax when you file your tax return, and you might owe a penalty.

**Filers with multiple jobs or working spouses.** If you have more than one job at a time, or if you're married filing jointly and your spouse is also working, read all of the instructions including the instructions for the Two-Earners/Multiple Jobs Worksheet before beginning.

**Nonwage income.** If you have a large amount of nonwage income not subject to withholding, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you might owe additional tax. Or, you can use the Deductions, Adjustments, and Additional Income Worksheet on page 3 or the calculator at *www.irs.gov/W4App* to make sure you have enough tax withheld from your paycheck. If you have pension or annuity income, see Pub. 505 or use the calculator at *www.irs.gov/W4App* to find out if you should adjust your withholding on Form W-4 or W-4P.

**Nonresident alien.** If you're a nonresident alien, see Notice 1392, Supplemental Form W-4 Instructions for Nonresident Aliens, before completing this form.

## Specific Instructions

### Personal Allowances Worksheet

Complete this worksheet on page 3 first to determine the number of withholding allowances to claim.

**Line C. *Head of household please note:*** Generally, you may claim head of household filing status on your tax return only if you're unmarried and pay more than 50% of the costs of keeping up a home for yourself and a qualifying individual. See Pub. 501 for more information about filing status.

**Line E. Child tax credit.** When you file your tax return, you may be eligible to claim a child tax credit for each of your eligible children. To qualify, the child must be under age 17 as of December 31, must be your dependent who lives with you for more than half the year, and must have a valid social security number. To learn more about this credit, see Pub. 972, Child Tax Credit. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line E of the worksheet. On the worksheet you will be asked about your total income. For this purpose, total income includes all of your wages and other income, including income earned by a spouse if you are filing a joint return.

**Line F. Credit for other dependents.** When you file your tax return, you may be eligible to claim a credit for other dependents for whom a child tax credit can't be claimed, such as a qualifying child who doesn't meet the age or social security number requirement for the child tax credit, or a qualifying relative. To learn more about this credit, see Pub. 972. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line F of the worksheet. On the worksheet, you will be asked about your total income. For this purpose, total

---

Separate here and give Form W-4 to your employer. Keep the worksheet(s) for your records.

| Form **W-4** Department of the Treasury Internal Revenue Service | **Employee's Withholding Allowance Certificate** ▶ Whether you're entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS. | OMB No. 1545-0074 20**19** |
|---|---|---|

| 1 | Your first name and middle initial | Last name | | 2 Your social security number |
|---|---|---|---|---|

| Home address (number and street or rural route) | 3 ☐ Single  ☐ Married  ☐ Married, but withhold at higher Single rate. **Note:** If married filing separately, check "Married, but withhold at higher Single rate." |
|---|---|
| City or town, state, and ZIP code | 4 If your last name differs from that shown on your social security card, check here. You must call 800-772-1213 for a replacement card. ▶ ☐ |

| 5 | Total number of allowances you're claiming (from the applicable worksheet on the following pages) . . . . | 5 | |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck   .   .   .   .   .   .   .   .   .   .   .   . | 6 | $ |

7 I claim exemption from withholding for 2019, and I certify that I meet **both** of the following conditions for exemption.

• Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability, **and**

• This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability.

If you meet both conditions, write "Exempt" here   .   .   .   .   .   .   .   .   .   .   .   .   ▶ | 7 |

Under penalties of perjury, I declare that I have examined this certificate and, to the best of my knowledge and belief, it is true, correct, and complete.

**Employee's signature**
(This form is not valid unless you sign it.) ▶                                                                Date ▶

| 8 | Employer's name and address (**Employer:** Complete boxes 8 and 10 if sending to IRS and complete boxes 8, 9, and 10 if sending to State Directory of New Hires.) | 9 First date of employment | 10 Employer identification number (EIN) |
|---|---|---|---|

**For Privacy Act and Paperwork Reduction Act Notice, see page 4.**          Cat. No. 10220Q          Form **W-4** (2019)

income includes all of your wages and other income, including income earned by a spouse if you are filing a joint return.

**Line G. Other credits.** You may be able to reduce the tax withheld from your paycheck if you expect to claim other tax credits, such as tax credits for education (see Pub. 970). If you do so, your paycheck will be larger, but the amount of any refund that you receive when you file your tax return will be smaller. Follow the instructions for Worksheet 1-6 in Pub. 505 if you want to reduce your withholding to take these credits into account. Enter "-0-" on lines E and F if you use Worksheet 1-6.

## Deductions, Adjustments, and Additional Income Worksheet

Complete this worksheet to determine if you're able to reduce the tax withheld from your paycheck to account for your itemized deductions and other adjustments to income, such as IRA contributions. If you do so, your refund at the end of the year will be smaller, but your paycheck will be larger. You're not required to complete this worksheet or reduce your withholding if you don't wish to do so.

You can also use this worksheet to figure out how much to increase the tax withheld from your paycheck if you have a large amount of nonwage income not subject to withholding, such as interest or dividends.

Another option is to take these items into account and make your withholding more accurate by using the calculator at *www.irs.gov/W4App*. If you use the calculator, you don't need to complete any of the worksheets for Form W-4.

## Two-Earners/Multiple Jobs Worksheet

Complete this worksheet if you have more than one job at a time or are married filing jointly and have a working spouse. If you

don't complete this worksheet, you might have too little tax withheld. If so, you will owe tax when you file your tax return and might be subject to a penalty.

Figure the total number of allowances you're entitled to claim and any additional amount of tax to withhold on all jobs using worksheets from only one Form W-4. Claim all allowances on the W-4 that you or your spouse file for the highest paying job in your family and claim zero allowances on Forms W-4 filed for all other jobs. For example, if you earn $60,000 per year and your spouse earns $20,000, you should complete the worksheets to determine what to enter on lines 5 and 6 of your Form W-4, and your spouse should enter zero ("-0-") on lines 5 and 6 of his or her Form W-4. See Pub. 505 for details.

Another option is to use the calculator at *www.irs.gov/W4App* to make your withholding more accurate.

**Tip:** If you have a working spouse and your incomes are similar, you can check the "Married, but withhold at higher Single rate" box instead of using this worksheet. If you choose this option, then each spouse should fill out the Personal Allowances Worksheet and check the "Married, but withhold at higher Single rate" box on Form W-4, but only one spouse should claim any allowances for credits or fill out the Deductions, Adjustments, and Additional Income Worksheet.

## Instructions for Employer

**Employees, do not complete box 8, 9, or 10. Your employer will complete these boxes if necessary.**

**New hire reporting.** Employers are required by law to report new employees to a designated State Directory of New Hires. Employers may use Form W-4, boxes 8, 9,

and 10 to comply with the new hire reporting requirement for a newly hired employee. A newly hired employee is an employee who hasn't previously been employed by the employer, or who was previously employed by the employer but has been separated from such prior employment for at least 60 consecutive days. Employers should contact the appropriate State Directory of New Hires to find out how to submit a copy of the completed Form W-4. For information and links to each designated State Directory of New Hires (including for U.S. territories), go to *www.acf.hhs.gov/css/employers*.

If an employer is sending a copy of Form W-4 to a designated State Directory of New Hires to comply with the new hire reporting requirement for a newly hired employee, complete boxes 8, 9, and 10 as follows.

**Box 8.** Enter the employer's name and address. If the employer is sending a copy of this form to a State Directory of New Hires, enter the address where child support agencies should send income withholding orders.

**Box 9.** If the employer is sending a copy of this form to a State Directory of New Hires, enter the employee's first date of employment, which is the date services for payment were first performed by the employee. If the employer rehired the employee after the employee had been separated from the employer's service for at least 60 days, enter the rehire date.

**Box 10.** Enter the employer's employer identification number (EIN).

Form W-4 (2019)                                                                                                                    Page **3**

## Personal Allowances Worksheet (Keep for your records.)

**A**   Enter "1" for yourself   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **A** _____

**B**   Enter "1" if you will file as married filing jointly . . . . . . . . . . . . . . . . . . . . . . . . **B** _____

**C**   Enter "1" if you will file as head of household   . . . . . . . . . . . . . . . . . . . . . . . **C** _____

**D**   Enter "1" if:   { • You're single, or married filing separately, and have only one job; or

                   { • You're married filing jointly, have only one job, and your spouse doesn't work; or          }       **D** _____

                   { • Your wages from a second job or your spouse's wages (or the total of both) are $1,500 or less.

**E**   **Child tax credit.** See Pub. 972, Child Tax Credit, for more information.

     • If your total income will be less than $71,201 ($103,351 if married filing jointly), enter "4" for each eligible child.

     • If your total income will be from $71,201 to $179,050 ($103,351 to $345,850 if married filing jointly), enter "2" for each eligible child.

     • If your total income will be from $179,051 to $200,000 ($345,851 to $400,000 if married filing jointly), enter "1" for each eligible child.

     • If your total income will be higher than $200,000 ($400,000 if married filing jointly), enter "-0-"   . . . . . . .   **E** _____

**F**   **Credit for other dependents.** See Pub. 972, Child Tax Credit, for more information.

     • If your total income will be less than $71,201 ($103,351 if married filing jointly), enter "1" for each eligible dependent.

     • If your total income will be from $71,201 to $179,050 ($103,351 to $345,850 if married filing jointly), enter "1" for every two dependents (for example, "-0-" for one dependent, "1" if you have two or three dependents, and "2" if you have four dependents).

     • If your total income will be higher than $179,050 ($345,850 if married filing jointly), enter "-0-"   . . . . . . .   **F** _____

**G**   **Other credits.** If you have other credits, see Worksheet 1-6 of Pub. 505 and enter the amount from that worksheet here. If you use Worksheet 1-6, enter "-0-" on lines E and F   . . . . . . . . . . . . . . . . . . . . . **G** _____

**H**   Add lines A through G and enter the total here   . . . . . . . . . . . . . . . . . . . . . . . . ▶ **H** _____

<table>
<tr><td rowspan="4">For accuracy,<br>complete all<br>worksheets<br>that apply.</td><td>• If you plan to <b>itemize</b> or <b>claim adjustments to income</b> and want to reduce your withholding, or if you have a large amount of nonwage income not subject to withholding and want to increase your withholding, see the <b>Deductions, Adjustments, and Additional Income Worksheet</b> below.</td></tr>
<tr><td>• If you <b>have more than one job at a time</b> or are married filing jointly and you and your spouse both <b>work,</b> and the combined earnings from all jobs exceed $53,000 ($24,450 if married filing jointly), see the <b>Two-Earners/Multiple Jobs Worksheet</b> on page 4 to avoid having too little tax withheld.</td></tr>
<tr><td>• If <b>neither</b> of the above situations applies, <b>stop here</b> and enter the number from line H on line 5 of Form W-4 above.</td></tr>
</table>

## Deductions, Adjustments, and Additional Income Worksheet

**Note:** Use this worksheet *only* if you plan to itemize deductions, claim certain adjustments to income, or have a large amount of nonwage income not subject to withholding.

**1**   Enter an estimate of your 2019 itemized deductions. These include qualifying home mortgage interest, charitable contributions, state and local taxes (up to $10,000), and medical expenses in excess of 10% of your income. See Pub. 505 for details   . . . . . . . . . . . . . . . . . . . . . . . **1** $ _____

**2**   Enter:   { $24,400 if you're married filing jointly or qualifying widow(er)

             { $18,350 if you're head of household          }   . . . . . . . . .   **2** $ _____

             { $12,200 if you're single or married filing separately

**3**   **Subtract** line 2 from line 1. If zero or less, enter "-0-"   . . . . . . . . . . . . . . . . .   **3** $ _____

**4**   Enter an estimate of your 2019 adjustments to income, qualified business income deduction, and any additional standard deduction for age or blindness (see Pub. 505 for information about these items) . .   **4** $ _____

**5**   **Add** lines 3 and 4 and enter the total   . . . . . . . . . . . . . . . . . . . . . .   **5** $ _____

**6**   Enter an estimate of your 2019 nonwage income not subject to withholding (such as dividends or interest) .   **6** $ _____

**7**   **Subtract** line 6 from line 5. If zero, enter "-0-". If less than zero, enter the amount in parentheses   . . .   **7** $ _____

**8**   **Divide** the amount on line 7 by $4,200 and enter the result here. If a negative amount, enter in parentheses. Drop any fraction   . . . . . . . . . . . . . . . . . . . . . . . . . . .   **8** _____

**9**   Enter the number from the **Personal Allowances Worksheet,** line H, above   . . . . . . . . .   **9** _____

**10**   Add lines 8 and 9 and enter the total here. If zero or less, enter "-0-". If you plan to use the **Two-Earners/Multiple Jobs Worksheet,** also enter this total on line 1 of that worksheet on page 4. Otherwise, **stop here** and enter this total on Form W-4, line 5, page 1   . . . . . . . . . . . . . . . . . . . .   **10** _____

Form W-4 (2019)

## Two-Earners/Multiple Jobs Worksheet

**Note:** Use this worksheet *only* if the instructions under line H from the **Personal Allowances Worksheet** direct you here.

| | | | |
|---|---|---|---|
| 1 | Enter the number from the **Personal Allowances Worksheet**, line H, page 3 (or, if you used the **Deductions, Adjustments, and Additional Income Worksheet** on page 3, the number from line 10 of that worksheet) . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | |
| 2 | Find the number in **Table 1** below that applies to the **LOWEST** paying job and enter it here. **However,** if you're married filing jointly and wages from the highest paying job are $75,000 or less and the combined wages for you and your spouse are $107,000 or less, don't enter more than "3" . . . . . . . . . . . . | 2 | |
| 3 | If line 1 is **more than or equal to** line 2, subtract line 2 from line 1. Enter the result here (if zero, enter "-0-") and on Form W-4, line 5, page 1. **Do not** use the rest of this worksheet . . . . . . . . . | 3 | |

**Note:** If line 1 is **less than** line 2, enter "-0-" on Form W-4, line 5, page 1. Complete lines 4 through 9 below to figure the additional withholding amount necessary to avoid a year-end tax bill.

| | | | | |
|---|---|---|---|---|
| 4 | Enter the number from line 2 of this worksheet . . . . . . . . . . | 4 | | |
| 5 | Enter the number from line 1 of this worksheet . . . . . . . . . . | 5 | | |
| 6 | **Subtract** line 5 from line 4 . . . . . . . . . . . . . . . . . . . . . . | | 6 | |
| 7 | Find the amount in **Table 2** below that applies to the **HIGHEST** paying job and enter it here . . . . . . | | 7 | $ |
| 8 | **Multiply** line 7 by line 6 and enter the result here. This is the additional annual withholding needed . . . | | 8 | $ |
| 9 | **Divide** line 8 by the number of pay periods remaining in 2019. For example, divide by 18 if you're paid every 2 weeks and you complete this form on a date in late April when there are 18 pay periods remaining in 2019. Enter the result here and on Form W-4, line 6, page 1. This is the additional amount to be withheld from each paycheck . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 9 | $ |

### Table 1

| Married Filing Jointly | | All Others | |
|---|---|---|---|
| If wages from **LOWEST** paying job are— | Enter on line 2 above | If wages from **LOWEST** paying job are— | Enter on line 2 above |
| $0 - $5,000 | 0 | $0 - $7,000 | 0 |
| 5,001 - 9,500 | 1 | 7,001 - 13,000 | 1 |
| 9,501 - 19,500 | 2 | 13,001 - 27,500 | 2 |
| 19,501 - 35,000 | 3 | 27,501 - 32,000 | 3 |
| 35,001 - 40,000 | 4 | 32,001 - 40,000 | 4 |
| 40,001 - 46,000 | 5 | 40,001 - 60,000 | 5 |
| 46,001 - 55,000 | 6 | 60,001 - 75,000 | 6 |
| 55,001 - 60,000 | 7 | 75,001 - 85,000 | 7 |
| 60,001 - 70,000 | 8 | 85,001 - 95,000 | 8 |
| 70,001 - 75,000 | 9 | 95,001 - 100,000 | 9 |
| 75,001 - 85,000 | 10 | 100,001 - 110,000 | 10 |
| 85,001 - 95,000 | 11 | 110,001 - 115,000 | 11 |
| 95,001 - 125,000 | 12 | 115,001 - 125,000 | 12 |
| 125,001 - 155,000 | 13 | 125,001 - 135,000 | 13 |
| 155,001 - 165,000 | 14 | 135,001 - 145,000 | 14 |
| 165,001 - 175,000 | 15 | 145,001 - 160,000 | 15 |
| 175,001 - 180,000 | 16 | 160,001 - 180,000 | 16 |
| 180,001 - 195,000 | 17 | 180,001 and over | 17 |
| 195,001 - 205,000 | 18 | | |
| 205,001 and over | 19 | | |

### Table 2

| Married Filing Jointly | | All Others | |
|---|---|---|---|
| If wages from **HIGHEST** paying job are— | Enter on line 7 above | If wages from **HIGHEST** paying job are— | Enter on line 7 above |
| $0 - $24,900 | $420 | $0 - $7,200 | $420 |
| 24,901 - 84,450 | 500 | 7,201 - 36,975 | 500 |
| 84,451 - 173,900 | 910 | 36,976 - 81,700 | 910 |
| 173,901 - 326,950 | 1,000 | 81,701 - 158,225 | 1,000 |
| 326,951 - 413,700 | 1,330 | 158,226 - 201,600 | 1,330 |
| 413,701 - 617,850 | 1,450 | 201,601 - 507,800 | 1,450 |
| 617,851 and over | 1,540 | 507,801 and over | 1,540 |

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. Internal Revenue Code sections 3402(f)(2) and 6109 and their regulations require you to provide this information; your employer uses it to determine your federal income tax withholding. Failure to provide a properly completed form will result in your being treated as a single person who claims no withholding allowances; providing fraudulent information may subject you to penalties. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation; to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws; and to the Department of Health and Human Services for use in the National Directory of New Hires. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You aren't required to provide the information requested on a form that's subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by Code section 6103.

The average time and expenses required to complete and file this form will vary depending on individual circumstances. For estimated averages, see the instructions for your income tax return.

If you have suggestions for making this form simpler, we would be happy to hear from you. See the instructions for your income tax return.